*No. 24-2199*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**KELLY CAHILL, ET AL.,**

*Plaintiffs-Respondents*,

and

**ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP,**

*Media Org. Intervenor-Respondent,*

v.

**NIKE, INC.,**

*Defendant-Petitioner.*

On Appeal from the United States District Court for the District of Oregon
Hon. Marco A. Hernández
Case No. 3:18-cv-01477-JR

**DEFENDANT-PETITIONER NIKE, INC.'S
EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL
RE: DISTRICT COURT'S APRIL 9, 2024 ORDER**

**Relief Needed On or Before April 9, 2024**

Daniel Prince, CA Bar No. 237112
Felicia A. Davis, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Email: danielprince@paulhastings.com
Email: feliciadavis@paulhastings.com

Attorneys for *Defendant-Petitioner*
NIKE, INC.

## CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to Circuit Rule 27-3(c), counsel for Defendant-Petitioner NIKE, Inc. ("NIKE") certifies as follows in support of NIKE's emergency motion:

### I.      Contact Information for Counsel is Provided in Appendix A.

As required by Circuit Rule 27-3(c)(i), the names, telephone numbers, e-mail addresses, and office addresses of the attorneys for the parties to this action are attached as Appendix A to this Certificate.

### II.      The Court's Intervention is Required on or before April 9, 2024.

Emergency relief is necessary here because the Magistrate's report and recommendations, adopted by the District Court of Oregon on April 9, 2024 allow Advance Local Media, *d/b/a the Oregonian Media Group* (the "Oregonian"), to publicize confidential discovery material subject to a Protective Order and in violation of this Court's Stay Order. *See* Declaration of Daniel Prince ("Prince Decl."), ¶ 11, Ex. H. The District Court confirmed that no temporary stay is in effect, which is why emergency relief is needed today. Publication of the underlying material that Plaintiffs' counsel disclosed to the Oregonian *after* the Ninth Circuit Stay Order threatens to moot the pending appeal, would cause irreparable harm to non-parties, and is sanctionable. Emergency relief is required.

The confidential discovery material contains unverified, unsubstantiated, and unofficial allegations of harassment and discrimination, including the identities of

i

those raising the concerns, the witnesses thereto, and the purported persons of interest (the "Documents"). Although irrelevant to the underlying pay and promotions claims in the matter below, Plaintiffs have crafted their case around these unrelated harassment allegations. Plaintiffs fought vigorously for access to these Documents, and NIKE ultimately produced them following an order on a motion to compel. Some of these Documents have been filed in the matter below in connection with Plaintiffs motion for class certification, but, while the allegations are public, the identities of the complainants, witnesses, and subjects remain sealed and are currently subject to an appeal and a stay order in this Court. *Id*. The remainder of the Documents, which have been clearly marked as "Confidential" or "Attorney's Eyes Only," have never been filed publicly in connection with any matter in this litigation and are prohibited from disclosure under the operative protective order in the matter below (the "Protective Order"). The Oregonian now has both the identities of the individuals subject to the stay in this Court and the allegations that have not been used to support the issues in this litigation and are protected from disclosure under the Protective Order.

The Oregonian obtained the Documents in violation of the Stay Order entered in this Court and the Protective Order below. The Oregonian intervened in the matter below to access the names of the individuals mentioned in the alleged

ii

complaints filed in connection with the class certification motion.[1]  After two rounds of briefing, Magistrate Judge Jolene Russo agreed with the Oregonian and ordered that the names be unsealed (the "Unsealing Order").  The District Court adopted the recommendation.  NIKE, thereafter, appealed and sought a stay of the Unsealing Order, which this Court granted on January 19, 2024 (the "Stay Order").  Prince Decl., ¶ 11, Ex. H.   Within hours of that order, a reporter for the Oregonian met with counsel for Plaintiffs in this matter at a coffee shop to discuss harassment allegations by an individual not involved in the underlying litigation.  At that meeting, Plaintiffs' counsel sent the Oregonian the Documents, which were protected from disclosure by both the Protective Order and this Court's Stay Order.  Plaintiffs' counsel and the Oregonian now claim that said disclosure was inadvertent, but Plaintiffs' counsel failed to notify NIKE regarding the same until almost a week later, when it became clear that the Oregonian was going to publicize counsel's breach.   Moreover, Plaintiffs' counsel and the Oregonian have stonewalled NIKE's attempts to obtain discovery into the disclosure to understand the true nature and extent of the violations.  A motion to compel discovery related to the breach is pending in the District Court.

After finally notifying NIKE of the breach, Plaintiffs moved for an injunction

---

[1] The Oregonian intervened with Media Organizations Insider, Inc., *d/b/a Business Insider*, and American Business Journals, Inc., *d/b/a Portland Business Journal* (collectively, the "Media Intervenors").

seeking return of the Documents (that NIKE joined). While originally agreeing that the Documents should be returned, after substantial briefing, the Magistrate recommended that the Oregonian could keep the Documents, despite Plaintiffs' counsel's violation of the Protective Order. Prince Decl., ¶ 14, Ex. K, ¶ 27, Ex. X. NIKE appealed the Order and filed this Motion to Stay on an expedited basis, seeking to preserve the status quo and avoid irreparable harm until the merits of this appeal may be addressed. Prince Decl. ¶ 3, Ex. A, ¶ 31, Ex. BB.

If an injunction is not issued immediately, the Oregonian will immediately publish the improperly obtained Documents and their contents regarding salacious allegations of harassment about individuals who did not consent to or expect to be the subject of the news. These individuals are not parties to this proceeding; nor have Plaintiffs alleged that any of the individuals engaged in or witnessed any conduct that pertains to their claims. This Court has already agreed with NIKE that the identities of non-parties—who have nothing to do with the claims or defenses in this case—should not be disclosed while the appeal on the very issue of whether they can be publicly accessed is pending. Prince Decl., ¶ 11, Ex. H. The same is true now. Disclosure of this information serves no other purpose other than to harass, embarrass, and shame. Allowing disclosure now, before NIKE's appeal may be heard, will cause immediate and irreparable harm to these individuals because once it is published, it cannot be undone. It also would moot not only this appeal,

but NIKE's appeal concerning the sealing of the identities of the complainants, witnesses, and alleged persons of interest, which is pending before the Court, at Case No. 24-165. Finally, given that the Oregonian improperly obtained the Documents, allowing the Oregonian to publish this material before NIKE has a chance to exercise its right to appeal would serve to reward it for conduct that may eventually be found to be entirely improper and in contravention of clear court orders.

Accordingly, NIKE respectfully requests that this Court issue an injunction pending appeal, and at minimum, a temporary order staying the District Court's Order below while the Court considers NIKE's Emergency Motion.

### III.   Counsel Was Notified of the Emergency Motion by Email.

On April 9, 2024, NIKE notified counsel for the Plaintiffs, the Oregonian and Markowitz Herbold PC ("Markowitz") via email of NIKE's intent to seek an emergency stay. *See* Prince Decl. ¶ 32, Ex. CC. NIKE did not receive a response from the Oregonian, the Media Intervenors, or Plaintiffs in connection with the request for emergency relief. *Id.* NIKE also served Markowitz, the Oregonian, and Plaintiffs with its Emergency Motion on April 9, 2024 via email and U.S. mail.

### IV.   The Emergency Motion was Filed Expeditiously.

The District Court denied NIKE's objections pursuant to Fed. R. Civ. P. 72 on April 9, 2024. NIKE thereafter provided notice to counsel on April 9, 2024, filed a Notice of Appeal on April 9, 2024, and filed this Emergency Motion on April 9,

2024, after a case number became available.

Date:  April 9, 2024                    Respectfully submitted,

                                        PAUL HASTINGS LLP


                                        By: _____*s/Daniel Prince*_____
                                                 DANIEL PRINCE

                                        Attorneys for *Defendant-Petitioner*
                                        NIKE, INC.

## Appendix A:  Contact Information of Attorneys

*Attorneys for Defendant-Petitioner NIKE, Inc.*

DANIEL PRINCE
danielprince@paulhastings.com
FELICIA A. DAVIS
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

JOHN A. BERG
jberg@littler.com
PAUL E. CIRNER
pcirner@littler.com
LITTLER MENDELSON, P.C.
1300 SW 5th Avenue, Ste. 2050
Portland, OR 97201
Telephone: (503) 221-0309
Facsimile: (503) 242-2457

*Attorneys for Media Intervenors-Respondents Insider Inc., d/b/a Business Insider, and American City Business Journals, Inc., d/b/a Portland Business Journal*

TIMOTHY VOLPERT
tim@timvolpertlaw.com
TIM VOLPERT, P.C.
3934 SE Hawthorne Blvd., Ste. 343
Portland, OR 97214
Telephone: (503) 703-9054

LISA ZYCHERMAN
lzycherman@rcfp.org
KATIE TOWNSEND
ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St., NW, Ste. 1020
Washington, D.C. 20005
Telephone: (202) 795-9300

*Attorneys for Plaintiffs-Respondents Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender*

LAURA L. HO
lho@gbdhlegal.com
BARRY GOLDSTEIN
bgoldstein@gbdhlegal.com
JAMES KAN

LAURA SALERNO OWENS
laurasalerno@
markowitzherbold.com
DAVID B. MARKOWITZ
davidmarkowitz@

vii

jkan@gbdhlegal.com
BYRON GOLDSTEIN
brgoldstein@gbdhlegal.com
KATHARINE L. FISHER
kfisher@gbdhlegal.com
MENGFEI SUN
msun@gbdhlegal.com
GOLDSTEIN, BORGEN,
DARDARIAN & HO
155 Grand Avenue, Ste. 900
Oakland, CA 94612
Telephone: (510) 763-9800
Facsimile: (510) 835-1417

markowitzherbold.com
HARRY B. WILSON
harrywilson@markowitzherbold.com
KATHRYN P. ROBERTS
kathrynroberts@
markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Ste. 1900
Portland, OR 97201
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

*Attorneys for Media Intervenor-Respondent Advance Local Media LLC, d/b/a Oregonian Media Group*

EDWIN A. HARNDEN
eharnden@barran.com
BRUCE T. GARRETT
bgarrett@barran.com
BARRAN LIEBMAN LLP
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159

*Attorneys for Plaintiffs Counsel Markowitz Herbold PC*

DAVID J. ELKANICH
delkanich@buchalter.com
DAVID A. BERNSTEIN
dbernstein@buchalter.com
BUCHALTER, PC
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone (503) 226-1191

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant-Respondent NIKE, Inc. states that it has no parent corporation and that no publicly held corporation owns ten (10) percent or more of its stock.

# <u>TABLE OF CONTENTS</u>

I.      BACKGROUND ................................................................6

II.    LEGAL STANDARD ...................................................10

III.   A STAY PENDING APPEAL IS NECESSARY HERE............................12

     A.    There Will be Irreparable Injury Without a Stay Pending Appeal. ...12

     B.    NIKE Has Raised Serious Legal Questions. .....................................14

     C.    The Balance of Hardships Favors NIKE and its Employees. ............21

     D.    The Public Interest Favors a Stay Pending Appeal...........................22

IV.   CONCLUSION................................................................23

CERTIFICATE OF SERVICE ...............................................25

STATEMENT OF RELATED CASE ........................................26

CERTIFICATE OF COMPLIANCE.......................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ..................................................................12

*Align Tech., Inc. v. SmileDirectClub, LLC*,
  No. 23-CV-00023-EMC, 2023 WL 2347431 (N.D. Cal. Mar. 3,
  2023) ........................................................................................................15

*Ball v. Skillz Inc.*,
  No. 2:20-cv-00888-JAD-BNW, 2020 WL 10180904 (D. Nev. Nov.
  16, 2020), *aff'd, Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir.
  2021) ...................................................................................................14, 24

Beltran v. Meyers,
  677 F.2d 1317 (9th Cir. 1982) ...............................................................16

*Branzburg v. Hayes*,
  408 U.S. 665 (1972).............................................................................3, 19

*C.f. Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D. Cal. 1998)............................................................24

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*,
  No. 21-mc-80091-JST, 2024 WL 393492 (N.D. Cal. Feb. 1, 2024).................14

*Eli Lilly & Co. v. Gottstein*,
  617 F.3d 186 (2d Cir. 2010) ..................................................................19

*Engebretson v. Mahoney*,
  724 F.3d 1034 (9th Cir. 2013) ...............................................................24

*Feldman v. Ariz. Sec'y of State's Off.*,
  843 F.3d 366 (9th Cir. 2016) .................................................................11

*Ground Zero Ctr. for Non-Violent Action v. United States Dep't of
  Navy*,
  860 F.3d 1244 (9th Cir. 2017) ...........................................................4, 20

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) .................................................................15

*Hunton v. Am. Zurich Ins. Co.*,
   No. CV-16-00539-PHX-DLR, 2019 WL 399708 (D. Ariz. Jan. 31,
   2019) ....................................................................................................15, 23

*In re Zyprexa Injunction*,
   474 F. Supp. 2d at 417-18.................................................................18, 21

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ...........................................................12, 16

*Lim v. Transforce, Inc.*,
   2020 U.S. Dist. LEXIS 261450 (C.D. Cal. Oct. 23, 2020) ................17

*Nelson v. NASA*,
   568 F.3d 1028 (9th Cir. 2009) ..............................................................16

*Nken v. Holder*,
   556 U.S. 418 (2009)........................................................................11, 13

*Quint v. Vail Resorts, Inc.*,
   89 F.4th 803 (10th Cir. 2023) ..................................................................5

*Reynaga v. Cammisa*,
   971 F.2d 414 (9th Cir. 1992) ...................................................................5

*Rice v. Cayetano*,
   941 F. Supp. 1529 (D. Haw. 1996).......................................................11

*Salcido v. Ditomas*,
   No. 22-15294, 2022 WL 3584903 (9th Cir. Mar. 18, 2022) ..............5

*Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs*,
   472 F.3d 1097 (9th Cir. 2006) ..............................................................11

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984).........................................................................3, 20

*Sweet v. City of Mesa*,
   No. CV-17-00152-PHX-GMS, 2022 WL 912561 (D. Ariz. Mar.
   29, 2022) ..................................................................................................10

*Valdez v. City & Cnty. of Denver*,
   878 F.2d 1285 (10th Cir. 1989) ........................................................... 24

*Wachner v. Aramark Educ. Servs., Inc.*,
   No. CV 02-528-BR, 2003 WL 23538037 (D. Or. Dec. 12, 2003) .................... 18

*Zemel v. Rusk*,
   381 U.S. 1 (1965) ................................................................................. 19

## Other Authorities

U.S. Const., First Amendment ............................................................. *passim*

Fed. R. App. P. 8(a)(1) ..................................................................... 12

Fed. R. Civ. P. 72(a) .......................................................................... 5

## EMERGENCY MOTION FOR STAY

This is not NIKE's first request for emergency relief from this Court to protect its current and former employees who are not involved in the litigation below. NIKE previously sought an emergency stay to prevent media outlets from publicizing third-party names in harassment complaints before NIKE could appeal the ruling unsealing those names. The Court granted that motion. Prince Decl., ¶ 11, Ex. H. Since then, one of those Media Intervenors, the Oregonian, and Plaintiffs' counsel teamed up to violate the Ninth Circuit Stay Order (and the operative Protective Order below), which resulted in the Oregonian's improper receipt and possession of material directly protected by this Court's order. NIKE now seeks an injunction and preservation of the status quo because the District Court below held that the Oregonian may keep and publish those materials, as well as additional confidential discovery materials, despite the blatant violations of two court orders.

Immediate court intervention is needed because, without it, the Oregonian would moot NIKE's appeal of a prior District Court order relating to the same documents. The Oregonian has made clear that it intends to publish the exact documents at issue in the pending appeal, for which a stay already has been granted. Public disclosure of this non-party information—without their consent and, indeed,

1

without their knowledge or expectation—would result in severe harm to their personal and professional lives.

If that were not cause enough, the Oregonian should not even be in possession of these Documents. It only has them because a reporter for the Oregonian and Plaintiffs' counsel decided to meet while they were not supposed to discuss or share the Documents by court order. ***Nevertheless, this is exactly what they did***. The Documents shared contained information (*i.e.*, the names of third party complainants, witnesses, and subjects in the allegations) that is currently up on appeal in this Court and is subject to a stay, which prohibited disclosure of that very information. Case No. 24-165 Dkt. No. 12.1. The Oregonian is a party to, and in fact, is an opposing appellee to that appeal. *Id.* ***Thus, the Oregonian's receipt of those Documents violates that order.*** The Documents also contain information that has never been publicly filed in connection with any matter in the case below and is subject to the Protective Order below. The Oregonian is an intervenor whose sole purpose was to modify the Protective Order to obtain confidential documents. ***Thus, the disclosure of those Documents violates that order, too.*** And now, absent an injunction, the Oregonian stands to benefit off of its ill-gotten gains.

In the court below, the Oregonian was successful in framing this dispute as

2

one tied to constitutional freedoms under the First Amendment. In short, the Oregonian argued that it engaged in newsgathering, it was entitled to keep the Documents, and any court order requiring it to return the Documents would constitute a prior restraint under the First Amendment. But the Oregonian's improper framing, led to an improper ruling. The issue is not whether a clawback order to return the Documents would constitute a prior restraint, but whether the Court has the inherent authority to remedy violations of its orders. The Oregonian argued for an illusory interpretation of the First Amendment that has no limitations. But there is a necessary balance between the right to speak and publish and the Court's authority to control and protect its proceedings to ensure fair litigation, privacy of non-parties, and impartiality. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."). Where, as here, the newsgathering involves a "source" inextricably intertwined in this litigation (namely, receipt of *confidential discovery* from an *attorney to the litigation*), the Court has authority to control and protect information disclosed via its processes, and it does not infringe on free speech by exercising that authority. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ("a party "may disseminate the

3

identical information covered by the protective order as long as the information is gained through means independent of the court's processes."); *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017) ("By independent source, we mean what the district court implied: Ground Zero may discuss and distribute the documents in question so long as it acquires the documents from a source not involved in this litigation[.]").  The District Court's order, on the other hand, creates a world in which courts are powerless to enforce its own orders and protect its litigants who disclose highly confidential information in reliance on the operative protective order.  This is not only dangerous precedent, but it is not the law.

The Oregonian's continued possession of the Documents lies in contradiction to the Court's power to protect itself, its processes, and its orders.  NIKE aims to prove this on appeal so that it can protect the non-parties named within these confidential discovery materials.  But it can only do so if this Court preserves the status quo and prevents the Oregonian from immediately publicly disseminating the information when the District Court's Order takes effect on April 9, 2024.  A stay of the effect and a bar on use and dissemination is necessary and warranted under the circumstances because irreparable harm would befall the non-parties and the appeal involves serious legal

4

questions of constitutional concern and judicial integrity.

There is also a significant question and real question whether the District Court applied the correct standard in reviewing the Magistrate Judge's ruling. The Ninth Circuit applies a functional approach to determining whether dispositive motions, including those seeking injunctions, are beyond what a Magistrate Judge may rule on. *Reynaga v. Cammisa*, 971 F.2d 414, 416–17 (9th Cir. 1992) (applying functional approach). Here, the District Court's order had the functional approach of *denying* NIKE's request for an injunction and *granting* (over an appeal) the ultimate relief the Media Intervenors sought (the unsealed documents). As such, under the functional approach, the Magistrate Judge *could* not rule on the motion but instead could only issue a report and recommendation which the District Court should have reviewed *de novo*. *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 809 (10th Cir. 2023) ("The district court therefore erred by construing the R&R, which considered a motion seeking injunctive relief, as addressing a nondispositive matter under Rule 72(a) and by applying the clearly-erroneous-or-contrary-to-law review standard."); *cf. Salcido v. Ditomas*, No. 22-15294, 2022 WL 3584903, at *1 (9th Cir. Mar. 18, 2022) ("On remand, the district judge may treat the magistrate judge's December 27, 2021 order as a report and recommendation.").

5

Accordingly, NIKE respectfully requests that the Court preserve the status quo pending appeal, but *at minimum*, until this Court resolves NIKE's Emergency Motion.

## I.   <u>BACKGROUND</u>

Plaintiffs have staked their case on the Documents, even though none relate to their claims regarding pay and promotions. ECF No. 376; ECF. No. 1 ¶ 54. Following motions to compel and a Court order, NIKE produced the Documents to Plaintiffs under the terms of the Protective Order. ECF. Nos. 82, 111. Plaintiffs filed a portion of those Documents in connection with their motion for class certification. While the substance of the Documents was public, Plaintiffs and NIKE agreed to redact the names of non-party witnesses, complainants, and subjects of the unverified allegations who have no connection to the named Plaintiffs' claims. The Media Intervenors intervened in this action to modify the Protective Order and unseal the redacted information, ECF No. 205, and for almost two years have fought for unfettered access to the names of non-party individuals identified in the Documents. *E.g.,* ECF Nos. 205, 343, and 383. NIKE has opposed such attempts.

On October 11, 2023, the Magistrate issued recommendations to grant the Media Intervenors' request to unseal the non-party names. ECF No. 363. The District Court adopted the Magistrate's recommendations over NIKE's objections, but granted NIKE

a 7-day stay to seek a stay directly from this Court.  ECF No. 404.  Shortly thereafter,

NIKE obtained a temporary stay order from this Court, which went into effect on

January 11, 2024 and remained in effect until this Court ruled on NIKE's motion to stay

pending appeal.  Prince Decl., ¶ 10, Ex G.  On January 19, 2024, this Court added the

Media Intervenors as appellees and entered the Stay Order.  *Id*.

Plaintiffs' counsel and the Oregonian violated that order within hours of its entry.

Ms. Laura Salerno Owens of Markowitz met with Matthew Kish, a reporter for the

Oregonian, to discuss purportedly unconnected allegations raised by a "current or

former NIKE employee."  ECF No. 416 ¶ 2.  According to the Oregonian, Ms. Salerno

Owens provided a comment and sent three emails to Mr. Kish from two different

devices during their meeting—one of which included unredacted copies of the

Documents.  *Id*. ¶ 3.  Specifically, Ms. Salerno Owens forwarded a PDF—over half of

which contained material (1) that has never been publicly filed and is subject to the

Protective Order, and/or (2) that was subject to this Court's Stay Order.  ECF No. 411

¶ 9, 411-6.

Ms. Salerno Owens now claims that this disclosure of protected material was

"inadvertent."  However, Plaintiffs chose not to notify NIKE regarding the blatant

violation of the Protective Order and Stay Order until six days later, on January 25,

7

2024, after the Oregonian confirmed that it would soon publish Plaintiffs' breach. ECF Nos. 426 ¶¶ 3-4, 416 ¶ 7, 411 ¶ 19. NIKE has been kept largely in the dark regarding this issue. To date, Markowitz and the Oregonian have stonewalled NIKE's attempts to obtain discovery surrounding the disclosure, forcing NIKE to file a motion to compel, which is currently pending in the District Court. ECF Nos. 426 ¶¶ 7-11, 427 ¶¶ 3-5.

What is clear is that Ms. Salerno Owens met with Mr. Kish on January 19, 2024, almost immediately after the Stay Order was entered, to discuss allegations from a NIKE employee. ECF No. 411 ¶ 2. At that time, Ms. Salerno Owens was aware, *at minimum*, that a temporary stay was in effect preventing discussion and disclosure of the redacted/sealed names to the Oregonian. ECF No. 407. And her law firm was apprised of the full Stay Order, which was entered hours before Ms. Salerno Owens breached it. ECF Nos. 426 ¶ 5, 426-1 at 2-3. Nevertheless, Ms. Salerno Owens met with Mr. Kish at a coffee shop to discuss the very documents subject to the nondisclosure order. And during that meeting, Ms. Salerno Owens sent Mr. Kish a packet of documents that contained not only the names of the non-parties subject to the Stay Order, but additional discovery subject to the Protective Order. *Id*. ¶ 9.

Rather than immediately notify NIKE regarding the disclosure, as required under the Protective Order, Ms. Salerno Owens tried to convince Mr. Kish to return the

8

documents.  ECF No. 411 ¶¶ 13-19.  Mr. Kish refused.  ECF No. 416 ¶ 7.  Only after, when Mr. Kish informed Ms. Salerno Owens that he intended to publish her violation, did Plaintiffs inform NIKE.  ECF No. 426 ¶ 4.  That same day, Markowitz filed a motion to request return of the Documents.  ECF No. 410.  Reserving its rights, NIKE joined the request.  ECF No. 426 ¶ 6.  The Magistrate issued recommendations on January 26, 2024, ordering the Oregonian to return the documents and destroy any copies.  ECF No. 412.  On January 29, 2024, the Oregonian filed a motion to vacate the earlier ruling ("Motion to Vacate").  ECF No. 414.  On January 30, 2024, the District Court granted the Motion to Vacate, but ordered the status quo remain in effect until the issues were resolved.  ECF No. 417.  The Magistrate then directed the parties to respond to the Oregonian's Motion to Vacate.  ECF No. 418.

After briefing, on February 28, 2024, the Magistrate issued recommendations (the "Recommendations"), denying the injunction and return of the Documents.  The Magistrate recognized that which was patently obvious (and indeed admitted): "[P]laintiff's counsel violated the protective order in place in this case[.]"  *Id.* Notwithstanding the violation, the Magistrate concluded that the Oregonian had no obligation to return the documents at issue because the Oregonian's limited intervention meant it "has not violated any orders to which it is bound" and the Court

9

lacked authority to "restrain the Oregonian" because such an order would be an impermissible prior restraint in violation of the First Amendment.  ECF No. 431. The Recommendations also denied NIKE's request for discovery, ECF No. 429, but granted NIKE's request for a temporary stay, preserving the status quo pending a decision by the District Court regarding any objections. ECF No. 431.   The Recommendations also denied parties request for oral argument. *Id.*

On  March  13,  Markowitz  and  NIKE  filed  objections  to  the Recommendations.  ECF No. 436.  On April 9, 2024, the District Court adopted the Recommendations  without  modification  (the  "Order").    ECF  No. 458. This Emergency Motion followed.

## II.    LEGAL STANDARD

NIKE meets the standard for a discretionary stay of the effect of the District Court's Order and preservation of the status quo from this Court.  *Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2022 WL 912561, at *3 (D. Ariz. Mar. 29, 2022) (the *Nken v. Holder*, 556 U.S. 418, 434–435 (2009) factors apply "when the parties seek to stay the *effect* of a court's order") (emphasis in original); *Rice v. Cayetano*, 941 F. Supp. 1529, 1553 (D. Haw. 1996) (denying a motion for preliminary injunction, but "stay[ing] the effect of its order . . . to allow the plaintiffs

10

an opportunity to appeal th[e] order"). This Court understands, and has already recognized by granting NIKE's previous Motion to Stay the unsealing of the non-party names, the importance of preserving appellate rights—and forestalling actions until legal rights can be determined. *See, e.g.*, *Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). The injunction analysis pending appeal is comparable to an appellate stay and in turn comparable to a preliminary injunction analysis. *See, e.g.*, *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016); *Nken*, 556 U.S. at 434.

NIKE satisfies the four factors this Court considers in deciding whether to stay the order pending appeal: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006–07 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434–435). In considering the stay request, this Court also applies a "sliding scale" approach such that a stronger showing of one element may offset a weaker showing of another. *Al Otro Lado*, 952 F.3d at 1007; *see also Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

III.    **A STAY PENDING APPEAL IS NECESSARY HERE**

A stay pending appeal of the District Court's Order is necessary because, in its absence, the Oregonian will publish the Documents it improperly obtained in public articles.  Publishing the names of these non-party individuals, as well as the allegations surrounding them, will cause them irreparable harm.  It would also destroy NIKE's right to appeal to protect its current and former employees.  NIKE has also demonstrated that this issue, which concerns the Court's inherent authority and constitutional concerns, is a serious issue that warrants a stay below.  The remaining *Nken* factors also weigh in favor of granting NIKE's Emergency Motion.  As such, NIKE asks that the Court issue an injunction to preserve the status quo pending resolution of NIKE's appeal, or *at minimum*, until resolution of NIKE's Emergency Motion.

A.    **There Will be Irreparable Injury Without a Stay Pending Appeal.**

Absent a continuous stay pending resolution of NIKE's appeal, non-parties to this suit will be irreparably harmed.  The Oregonian has made clear that it does not intend to comply with the District Court's Protective Order or this Court's Stay Order.  ECF Nos. 427, 442.  It will immediately publicize the names protected by the stay—which this Court has already confirmed will cause irreparable harm,

12

Prince Decl., ¶ 11, Ex. H.—and the remaining the allegations, much of which *has never been filed in and are unrelated to* this action.  Thus, a stay does not merely prevent individuals from viewing the Documents on PACER; it prevents publication (by the Oregonian, and subsequently any media conglomerate seeking to disseminate the story) of confidential discovery materials that have no bearing on any issue in this litigation to date and were only obtained through collusion and violations of two court orders.   Once these documents are accessed and disseminated, the publication cannot be erased or remedied.

Indeed, "the wrongful disclosure of sensitive information is inherently irreparable." *CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*, No. 21-mc-80091-JST, 2024 WL 393492, at *3 (N.D. Cal. Feb. 1, 2024) (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010)).   And the harm here is apparent.  The subject matter of the Documents is sensitive, containing salacious allegations regarding harassment and other matters, which have not been verified and concern non-party individuals. Publication would only bring embarrassment, emotional damage, and reputational harm to the individuals named within them—*e.g.*, loss of professional opportunities, personal humiliation and ridicule, impacted personal and professional relationships and networks, etc.  None of these individuals bargained for, or even expected, that

13

these allegations would be the subject of news headlines. And once publicized, that harm is irreparable because the information within them can never be fully clawed back. *See Ball v. Skillz Inc.*, No. 2:20-cv-00888-JAD-BNW, 2020 WL 10180904, at *2 (D. Nev. Nov. 16, 2020), *aff'd, Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir. 2021) (finding irreparable injury absent stay given inability to claw back revealed information from public record); *see also Align Tech., Inc. v. SmileDirectClub, LLC*, No. 23-CV-00023-EMC, 2023 WL 2347431 at *1 (N.D. Cal. Mar. 3, 2023) ("'[When] the information is publicly filed, what once may have been [confidential] no longer will be.'") (quoting *Apple, Inc. v. Samsung Elecs. Co.,* No. 11-CV-01846-LHK, 2012 WL 4936595 at *1 (N.D. Cal. Oct. 17, 2012)).

Disclosure also frustrates multiple appeals. *See Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2019 WL 399708, at *3 (D. Ariz. Jan. 31, 2019) (opposing counsel disclosed unsealed information to third party in absence of a stay pending appeal). "An appeal after disclosure" cannot vindicate the "irreparable harm a party likely will suffer if [documents are] disclose[d]." *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (citation omitted).

**B.   NIKE Has Raised Serious Legal Questions.**

NIKE's likelihood of success on appeal also weighs in NIKE's favor. At this

stage, NIKE need only establish that success is a "reasonable probability," a "*fair prospect*," "substantial case on the merits," or that "serious legal questions are raised." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-968 (9th Cir. 2011) (citations omitted, emphasis in original). The Ninth Circuit has maintained that none of these standards "demand a showing that success is more likely than not." *Id*. at 968.

First, the appeal involves "serious legal questions" and a "substantial case on the merits." This Court has often found that "serious legal questions" are raised when the issue involves or touches on constitutional concerns. *See, e.g.*, *Nelson v. NASA*, 568 F.3d 1028, 1035 (9th Cir. 2009) (holding that a serious legal question had been raised in inquiring whether the government has the right to violate employee privacy); *Beltran v. Meyers*, 677 F.2d 1317, 1322 (9th Cir. 1982) (holding that a serious legal question had been raised where the law's meaning was in question). Likewise, district courts have interpreted "substantial case on the merits" to mean a case that: (1) raises genuine matters of first impression within the Ninth Circuit; (2) may implicate a constitutional question; or (3) otherwise addresses a pressing legal issue which urges that the Ninth Circuit hear the case. *Lim v. Transforce, Inc*., 2020 U.S. Dist. LEXIS 261450, at \*7 (C.D. Cal. Oct. 23, 2020) (collecting cases).

15

The issue here fits squarely into the type of serious and substantial matters that warrant a stay below. The Oregonian has raised a constitutional question as to its First Amendment rights. This alone involves a serious legal question. But because the matter is further complicated by circumstances involving the Oregonian's acquisition of the Documents—namely, an intervenor and appellee's receipt of documents prohibited from disclosure by two court orders from counsel to a party in the matter—the appeal is also one of pressing concern to this Court. Indeed, of equal importance to the constitutional questions raised, is the question concerning the scope and extent of the Court's inherent authority to remedy violations of its clear orders. The balancing of those issues is of utmost importance and generates a substantial question on appeal meriting a stay of the order below.

Second, there is, at minimum, a "reasonable probability" and "fair prospect" of success on appeal. NIKE maintains that the District Court erred in holding that it could not order the return of the documents because, *inter alia*, (1) the Court is not powerless to remedy clear breaches of its orders, and (2) exercising that authority does not implicate freedom of speech because the Oregonian did not receive the Documents from a truly independent newsgathering process.

As NIKE argued below, "[t]he Court has inherent authority to enforce its

16

orders[,]" *Wachner v. Aramark Educ. Servs., Inc.*, No. CV 02-528-BR, 2003 WL 23538037, at *3 (D. Or. Dec. 12, 2003), a power that "carries with it the equal power to punish for a disobedience," *In re Zyprexa Injunction,* 474 F. Supp. 2d at 417-18 (citation omitted). The Oregonian, here, clearly violated at least one order that it is a party to: this Court's Stay Order. Prince Decl., ¶ 11, Ex. H. The Oregonian also participated *and was complicit in* Plaintiffs' counsel's violation of the Protective Order in the matter below. As an intervenor in the litigation and an appellee in the appeal in which the Stay Order was issued, the Court's power extends to the Oregonian and can be exercised to remedy the breaches and prevent further harm to non-party individuals. Even if the Oregonian were *not* an intervenor or an appellee, the Court would not be precluded from issuing an injunction to redress the violations and return the Documents. The Oregonian was in tacit collusion with Plaintiffs' counsel by choosing to meet in-person, during this Court's stay, to talk about and exchange information that Plaintiffs' counsel knows *solely* from her involvement as an attorney in this case (not as any truly independent source). Under such circumstances, the Court may reach even "third parties who aid and abet the violation of their protective orders." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (upholding an injunction issued against a third party who colluded with

17

a retained expert to disseminate documents under a protective order to the press).

This power is not limited by the Oregonian's feigned First Amendment concerns. The Oregonian gets the question wrong. It framed the issue in the District Court as one of prior restraint. But that question cannot even arise until it is understood how the Oregonian acquired that information. The question that must be answered first is one of newsgathering. Because if the newsgathering is improper, the issue of prior restraint is not implicated or, at minimum, justified by the interest in the integrity of judicial processes.

While the right to speak and publish is broad, it "does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965). "It has generally been held that the First Amendment ***does not guarantee the press*** a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) (emphasis added). Based on this principle, courts have significant authority to limit access to proceedings and confidential documents via protective orders and other mechanisms to ensure impartiality, fair litigation, and privacy of non-parties. *See e.g.*, *id*. ("Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, [judicial] conferences, the meetings of other

18

official bodies gathered in executive session, and the meetings of private organizations."); *see also* <u>Seattle Times Co. v. Rhinehart,</u> 467 U.S. 20, 28 (1984) ("Assuming then that a protective order may fall, ostensibly, at least, within the definition of a 'prior restraint of free expression,' we are convinced that the interest of the judiciary in the integrity of its discovery processes is sufficient to meet the 'heavy burden' of justification.  The need to preserve that integrity is adequate to sustain a rule . . . which authorizes a trial court to protect the confidentiality of information given for purposes of litigation.").

Accordingly, the question is whether the Oregonian received the Documents from a "traditionally public source of information," *Seattle Times*, 467 U.S. at 22, or a source "involved in this litigation."  *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017).  Indeed, this Court has confirmed that the Court can enforce its orders and prohibit dissemination of information "***so long as [the press] acquires the documents from a source [ ] involved in this litigation[.]***"  *Id*.  This is what happened here.

No amount of artful argument can mask the fact that the "source" here was an attorney to a party to this litigation.  She only had the Documents in her possession because she received them during discovery from another party to this

19

litigation—NIKE. She is only a *source* by virtue of her position as counsel in this matter. She only has information regarding the case because her clients or NIKE provided that information. She is not a NIKE employee or a friend or family member of a NIKE employee. Without this position as counsel, she would not have this information. As such, she is *not* a traditionally public source of information. Counsel is inextricably tied to this litigation, and the Documents are confidential discovery material that she was prohibited from disclosing. The Court has the authority to control the dissemination of documents and information obtained via its processes. The Court can likewise remedy the disregard of that authority by ordering the return of the Documents without a "prior restraint" worry. *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007) (injunction to return documents received in violation of a protective order did not infringe on "expression" because it was not issued "because of the content of petitioners' expression . . . but because of . . . prior unlawful conduct"). Thus, NIKE has shown, at minimum, a "reasonable probability" or "fair prospect" that the District Court misunderstood the issue as one of prior restraint, rather than one of the Court's authority. The Court should, therefore, grant a stay.

20

**C.    The Balance of Hardships Favors NIKE and its Employees.**

A stay would not injure any interested party.  First, Plaintiffs have access to the Documents without redaction.  The Documents are not even relevant to the pay and promotions claims.  Moreover, Plaintiffs maintain their currently untested position that the Documents were "inadvertently" given to the Oregonian, so any claim of irreparable injury to them would be in blatant conflict with that position.

The Oregonian likewise would be no worse off to wait for this Court to review the serious legal questions presented here.  In fact, the newspaper has already published articles describing the allegations in the Documents that have been publicly filed in this case and are subject to the Stay Order and appeal.  *See* ECF No. 458.  Any additional delay from simply waiting until resolution on appeal is significantly outweighed by justice for the individuals whose identities are currently sealed, and the lack of any harm to the litigants themselves.  *See WOF SW GGP 1, LLC*, 2020 WL 2758779, at *2 ("[T]he timeframe for the appeal is not so arduously long that it creates an unnecessary burden[.]").

The Oregonian will undoubtedly argue that its First Amendment rights will be impeded should it have to wait to publish the information in the improperly-obtained Documents.  The Oregonian misses the point.  The question here is whether

21

the Oregonian engaged in improper newsgathering.  It did.  It violated *two* court orders.  Based on this, the Court has the inherent authority to remedy those violations without infringing on any constitutional rights.  The First Amendment does not protect newsgathering in violation of court orders.

### D.  The Public Interest Favors a Stay Pending Appeal.

Finally, public interest weighs in favor of NIKE's position.  If denied a stay now, the issues raised in both this appeal, and NIKE's previous appeal may be mooted far in advance of being heard by this Court.  *Hunton*, 2019 WL 399708, at *3 ("Although the Court could issue a stay that prevents Plaintiff from disclosing these documents to others going forward, it is not clear how the Court can undo the disclosures that already have occurred.").  Allowing parties to seek appellate review without mooting the subject of the inquiry is a significant public interest; finding otherwise would effectively create a "race to the courthouse," whereby Plaintiffs and/or the Media Intervenors would attempt to publicize the Records before this Court has time to consider NIKE's appeal.  *C.f. Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998) ("[C]ourts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum.").

By contrast, minimal harm would befall the public interest if proceedings are stayed pending appeal. *See Ball*, 2020 WL 10180904, at *2 (finding slight delay in revealing contested information while an appeal is pursued has minimal effect on public interest). Finally, the Court should consider the significant public interest inherent in encouraging employees to raise workplace concerns without risk that their names will be splashed across the news wires without their consent.

There is a significant public interest in the respect and adherence to court orders and in fair and efficient litigation. *See, e.g.*, *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) ("The public interest demands strict adherence to judicial decrees."); *Engebretson v. Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013) ("the public interest in the enforcement of court orders" is "essential").

## IV.    <u>CONCLUSION</u>

To avoid frustrating the purpose of the collateral order doctrine and irreparable harm to NIKE's current and former employees, NIKE requests an emergency order by April 9, 2024, staying the effect of the District Court's April 9, 2024 Order pending the resolution of NIKE's appeal of that order. At minimum, NIKE asks that the status quo be preserved while the Court considers NIKE's Emergency Motion.

23

Date:  April 9, 2024

Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
       DANIEL PRINCE

By: _____*s/Felicia A. Davis*_____
      FELICIA A. DAVIS

Attorneys for *Defendant-Petitioner*
NIKE, INC.

24

## **CERTIFICATE OF SERVICE**

I hereby certify that my firm electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 9, 2024.

I certify that Plaintiffs' Counsel in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. Counsel for Intervenors were served on April 9, 2024 via email and U.S. Mail.

Date:  April 9, 2024                      Respectfully submitted,

                                          PAUL HASTINGS LLP

                                          By: _____ *s/Daniel Prince* _____
                                                   DANIEL PRINCE

                                          Attorneys for *Defendant-Petitioner*
                                          NIKE, INC.

25

## STATEMENT OF RELATED CASE

Pursuant to Circuit Rule 28-2.6, Defendant-Petitioner NIKE certifies that Ninth Circuit Appeal No. 24-165 is a related case because it involves a prior appeal in this case and raises closely related issues. That appeal stemmed from the District Court's decision to unseal documents previously filed with the District Court. NIKE obtained a temporary stay from this Court until it could duly consider and rule on NIKE's motion for a stay. This Court granted NIKE's motion for a stay pending appeal, preventing the immediate unsealing of the confidential documents. As explained above, violations of that motion form part of this appeal's subject matter.

Date:  April 9, 2024                     Respectfully submitted,

PAUL HASTINGS LLP

By: _____ *s/Daniel Prince* _____
         DANIEL PRINCE

Attorneys for *Defendant-Petitioner*
NIKE, INC.

26

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 5(c) and that this brief contains 5,160 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Date:  April 9, 2024                    Respectfully submitted,

                                        PAUL HASTINGS LLP

                                        By: _____ *s/Daniel Prince* _____
                                               DANIEL PRINCE

                                        Attorneys for *Defendant-Petitioner*
                                        NIKE, INC.

27