**Docket No. 24-2199**

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

———•———

KELLY CAHILL; HEATHER HENDER; SARA JOHNSTON; LINDSAY ELIZABETH,

*Plaintiffs-Appellees,*

v.

INSIDER, INC.; ADVANCE LOCAL MEDIA, LLC; AMERICAN CITY BUSINESS JOURNALS,

*Intervenors-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

_____

Appeal from a Decision of the United States District Court for the District of Oregon, Portland,
No. 3:18-cv-01477-JR · Honorable Marco A. Hernandez

# RECORD EXCERPTS
## VOLUME 1 of 5 – Pages 1 to 14

DANIEL PRINCE, CA BAR 237112
FELICIA A. DAVIS, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
danielprince@paulhastings.com
feliciadavis@paulhastings.com

*Attorneys for Defendant-Appellant,
NIKE, Inc.*



COUNSEL PRESS · (213) 680-2300          PRINTED ON RECYCLED PAPER 

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | No. 3:18-cv-01477-JR<br><br>ORDER |
| Plaintiffs, | |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

HERNÁNDEZ, District Judge,

Magistrate Judge Jolie A. Russo issued an Order on February 28, 2024, in which she denied Plaintiffs' Motion Requesting Return Of Inadvertently Disclosed Materials, ECF 410; denied Defendant's Request for Discovery, ECF 429; and granted Defendant's Request For A Temporary Stay, ECF 429, to the extent that the status quo regarding the materials remains in effect pending a decision by this Court regarding objections to the Order. On March 13, 2024,

1 - ORDER

Case 3:18-cv-01477-JR    Document 458    Filed 04/08/24    Page 2 of 3

Plaintiffs and Defendant filed Objections to the Order. Media Intervenors filed responses to those Objections. The matter is now before the Court pursuant to Federal Rule of Civil Procedure 72(a).

Under Rule 72(a), "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). The standard of review for an order with objections is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A)(applying the "clearly erroneous or contrary to law" standard of review for non-dispositive motions). If a ruling on a motion is not determinative of "a party's claim or defense," it is not dispositive and, therefore, is not subject to *de novo* review as are proposed findings and recommendations for dispositive motions under 28 U.S.C. § 636(b)(1)(B).

Relying on *Mitchell v. Valenzuela*, 791 F3d 1166 (9th Cir. 2015), Defendant asserts the appropriate standard of review is *de novo* because the Order "effectively denie[s]" a request for an injunction "even though it is styled as something else." That case, however, does not support *de novo* review here. In *Mitchell* "the state conceded that the stay denial . . . 'was tantamount to a dismissal' of the unexhausted claims, and there was 'no way' Mitchell would be able to return to federal court to assert those claims later." *Id.* The court, therefore, concluded the magistrate judge did not have the authority to ultimately decide the motion to stay because denial of a stay was effectively dispositive of the plaintiff's claims. At issue here is Plaintiffs' request that the Court order The Oregonian to return and destroy documents that Plaintiffs' counsel inadvertently disclosed. Neither Judge Russo's decision nor this Court's evaluation of it will dispose of any claim or defense in this case. This matter concerns issues more like "'evidentiary rulings, pretrial

2 - ORDER

ER-0003

discovery matters, and the imposition of sanctions for discovery abuses,'" which courts have concluded are nondispositive matters. *See, e.g., Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 20-CV-00406-AJB-DDL, 2024 WL 666341, at *2 (S.D. Cal. Feb. 16, 2024)(quoting *Estakhrian v. Obenstine*, No. CV 11-03480 GAC(CWx), 2012 WL 12884889, at *3 (C.D. Cal. Nov. 9, 2012)); *adidas Am., Inc. v. Fashion Nova, Inc.*, 341 F.R.D. 263, 265 (D. Or. 2022) (reviewing magistrate judge's order on defendant's motion to compel under the clearly erroneous standard because discovery motions are nondispositive); *Arista Recs., LLC v. Doe 3,* 604 F.3d 110, 116 (2d Cir. 2010)("Matters concerning discovery generally are considered 'nondispositive' of the litigation."); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)(noting dispositive motions are often "unrelated, or only tangentially related, to the underlying cause of action")(internal quotations omitted). The Court, therefore, reviews Judge Russo's Order under the "clearly erroneous" or "contrary to law" standard. 28 U.S.C. § 636(b)(1)(A).

The Court has carefully considered Plaintiffs' and Defendant's objections and concludes they do not provide a basis to modify the Magistrate Judge's Order.

## CONCLUSION

The Court AFFIRMS Magistrate Judge Russo's Order, ECF 431.

IT IS SO ORDERED.

DATED: _____April 8, 2024\_\_\_\_\_.

_____
MARCO A. HERNÁNDEZ
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477-JR<br><br>ORDER |
| Plaintiffs, | |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

RUSSO, Magistrate Judge:

INTRODUCTION

Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender brought this action seeking class action status alleging that defendant Nike systematically discriminates against them and other similarly situated women regarding salary and promotions. Several additional plaintiffs filed consents to join this action. During the pendency of plaintiffs' motion for class certification, defendant sought to seal certain portions of the documents filed in relation to the motion. At that time, a group of non-party media organizations, moved to intervene seeking access to those sealed documents. The Court granted defendant's motion to seal in part. The Court also

Page 1 – ORDER

granted the non-party media organizations' motion to intervene for the limited purpose of challenging the parties' stipulated redactions regarding the briefing surrounding plaintiffs' motion for class certification. However, the Court denied the media organization's request for further briefing and to unseal or access documents produced pursuant to the protective order in place in this case. Nonetheless, the Court invited the media organizations to file a renewed motion for the purpose of opposing any remaining stipulated redactions following final resolution of the motion for class certification. The motion to certify has now been denied and the Court granted the media organizations' motion to unredact a number of documents (ECF 363, 403). However, defendant appealed the order, and the Ninth Circuit granted a temporary stay pending the appeal. (ECF 407, 408).

On January 25, 2024, plaintiffs' counsel notified the Court she inadvertently disclosed to an Oregonian reporter (appearing in this action as Advance Local Media LLC) confidential discovery material obtained from the defendant. Despite plaintiffs' request, Advance Local Media [the Oregonian] refused to return the material. Accordingly, plaintiffs moved this Court for the return of the documents (ECF 410 (sealed), 422 (unsealed)). Given the confidential nature of the material and the Ninth Circuit's stay regarding the redactions, on January 26, 2024, the Court issued an order requiring the Oregonian to return the inadvertently disclosed confidential material, to not disseminate those materials, and destroy any copies in its possession by January 31, 2024 (ECF 417).

The Oregonian filed an emergency Motion to Vacate the Order or stay the proceedings prior to January 31, 2024 (ECF 414). On January 29, 2024, Judge Marco Hernandez granted the motion and vacated the January 26 order (ECF 417). However, Judge Hernandez preserved the status quo until the Motion to Vacate is resolved and remanded the matter back to the undersigned

Case 3:18-cv-01477-JR    Document 431    Filed 02/28/24    Page 3 of 10

for renewed review. All concerned parties have provided extensive briefing on the matter. For the reasons stated below, plaintiffs' motion seeking return of inadvertently disclosed materials is denied.

BACKGROUND

On April 8, 2022, the Oregonian (along with several other media organizations) sought to intervene in this action for the limited purpose of vindicating the right of the press and the public to access judicial records in this matter (ECF 205). In particular, the media organizations sought intervention to unseal judicial records filed under seal by the parties pursuant to a protective order and to oppose defendant's then pending motion to seal. The media organizations' motion indicated detailed knowledge of the protective order (ECF 82) entered in this case.

Before the Court ruled on the motion to intervene, counsel for the media organizations notified the Court that she:

> was mistakenly granted access via ECF/PACER to—and, as a result, on June 3, 2022, obtained—unredacted copies of three theretofore non-public documents filed by the plaintiffs in this case. Counsel was unaware at the time she downloaded those documents from ECF/PACER that they were not the publicly filed versions of those documents and, before realizing that fact, disclosed a piece of non-public information contained in one of them … to a reporter for one of the proposed Media Intervenors…. Upon realizing that the three documents in her possession were the unredacted, theretofore non-public versions of those documents, counsel for Media Intervenors promptly took appropriate steps, including notifying the Court on June 6, 2022, that she had access via ECF/PACER to unredacted, non-public documents on the docket in this case…. Counsel for Proposed Media Intervenors have maintained the status quo with respect to those three documents and the information therein.

Motion for Clarification p. 2 (ECF 255).

The media organizations' counsel requested the Court enter an order clarifying that she had no obligation of confidentiality with respect to the unredacted copies in her possession, or any information contained therein. Indeed, counsel asserted the disclosure amounted to a public

Page 3 – ORDER

disclosure that makes continued sealing unwarranted noting the media organizations are not parties to the protective order.

> In response, the Court ordered:
>
> proposed intervenors' counsel to return all copies of the redacted materials and refrain from any further disclosures until the Court rules on the proposed intervenors' motions to intervene and unseal. In addition, the Court requests proposed intervenors' Counsel to request the reporter refrain from any disclosure of the confidential information until the Court has ruled on the motions and then only to disclose to the extent allowed by the Court.

Order (June 13, 2022) (ECF 259).

On September 30, 2022, the Court granted in part defendant's motion to seal certain Nike employee information and:

> [r]ecognize[d] the distinct perspective the non-party media organizations offer to this litigation, along with their well-established common law and First Amendment rights to challenge the sealing of judicial records. Therefore, the Court finds the most prudent and efficient course of action is to grant the non-party media organizations' motion to intervene but deny their request for further briefing and to unseal or access documents produced under the Protective Order. However, following the final resolution of plaintiffs' Motion for Class Certification, the non-party media organizations may file a renewed motion for the purposes of opposing any remaining stipulated redactions. At that point the parties shall identify all exhibits admitted into evidence they contend should remain sealed and include explanations supporting their contentions.

Order pp.13-14 (Sept. 30, 2022) (ECF 273).

As noted above, after the Court denied the motion to certify, it granted the media intervenors' motion to unseal certain judicial records, however the Ninth Circuit stayed that order pending appeal. As such, the documents remain sealed pursuant to the protective order.

According to plaintiffs' counsel Laura Salerno Owens, on January 19, 2024, she met with Matthew Kish, a reporter for the Oregonian, at his request (ECF 411, 423). Kish informed Owens he had received a declaration made in connection with this action containing allegations of sexual harassment and sexual assault that an employee experienced while working at Nike and inquired

Page 4 – ORDER

whether plaintiffs could provide comment on those allegations. Owens asserts she responded by limiting her comments to information contained in the publicly available records in this case. Id.

Owens goes on to relate:

> To that end, I asked my team to compile a PDF of [the surveys Nike propounded to its employees about workplace culture]. I had intended to only have copies of those that were available in the public record pursuant to the Court's October 11, 2023 order…
> In my January 19, 2024, meeting with Mr. Kish, I stated that I would provide a limited comment on [the] declaration. I emailed him the comment at 1:58 p.m. with the subject line, "Quote."
> Mr. Kish reviewed the comment and noticed I referenced [a survey]. He asked me which [part] supported the comment.
> I then emailed Mr. Kish an index referencing where in the documents the allegations were found that supported the comment. I emailed him that index at 2:02 p.m. in an email with the subject line, "Citations to public record."
> Mr. Kish then told me that the index referenced page numbers that were not ECF numbers. I explained to him that we had a packet of the publicly available [surveys] and the index was referencing those pages in the packet. Because the docket in this case is very complex, with the same document being filed in various places in various forms, for ease of reference, I emailed to Mr. Kish the packet of what I believed at the time were the publicly available documents.
> Specifically, I emailed to Mr. Kish a … PDF of the [the surveys] and an index referencing where in the documents the allegations were found that supported the comment. I emailed him that information at 2:10 p.m. in an email with the subject line, "Public record documents." …
> When I sent Exhibit 3, I understood that the attachment was made up of [surveys] that the Court had ordered unsealed, and that they contained redactions on those unsealed documents. I never intended to send Mr. Kish any documents he could not otherwise access through PACER.
> After I sent the email marked as Exhibit 3, Mr. Kish told me that he opened the PDF. He did not review the documents, but he commented that the number of documents seemed like more than he had previously seen. That immediately worried me, and I told him I would look into it.
> I had another meeting with a client from 2:30 p.m. to 3:30 p.m. On my way to that meeting, I called a staff member at my firm, explained my concern, and asked them to please look into the issue immediately while I was in my other meeting.
> Shortly after the conclusion of my 3:30 p.m. meeting, I realized my mistake: [the PDF] were documents plaintiffs received from Nike in discovery, not only publicly available documents. I immediately texted Mr. Kish at 3:41 p.m. and asked him to call me back as soon as he could. I also called him at 4:30 p.m., but he did not answer the call. I sent him another text message at 4:50 p.m. asking for him to call me that day.

Page 5 – ORDER

Case 3:18-cv-01477-JR   Document 431   Filed 02/28/24   Page 6 of 10

> Mr. Kish called me at 5:08 p.m. I told him during that call that I made an inadvertent disclosure, that he had documents that (I then believed) were not publicly available, and that I needed him to return the documents immediately and destroy the documents in his possession. He said that it was after hours and that he had to talk to his editor. He then called me at 5:40 p.m. and said that he would get back to me on Monday, January 22, 2024, regarding what they are going to do. He assured me no story would be coming out over the weekend or on Monday about these inadvertently disclosed documents.
>
> ….
>
> On Monday, January 22, 2024, Mr. Kish called me at 11:44 a.m. and at 5:56 p.m. In both calls he told me that the Oregonian had not decided yet what it was going to do with the documents. He again assured me that the Oregonian was not intending on running a story or distributing the documents in any way. I reiterated my demand that he return the documents. I asked if my ethics counsel could speak with the Oregonian or their counsel to convince them to return the documents. He said possibly, but not that evening.
>
> The next morning, on Tuesday, January 23, 2024 at 9:14 a.m., I sent Mr. Kish an email reiterating the demands I had made during our conversations to return the documents and instructing him not to share or disseminate the documents….
>
> On Wednesday, January 24, 2024, I called Mr. Kish at 11:51 a.m. I received his voicemail and left him a message telling him I was calling to inquire about the status of the Oregonian's decision and to call me back. He returned my call at 12:29 p.m. while I was in a meeting, and left me a voicemail stating that he was returning my call. I then called him at 1:15 p.m. and we spoke. He told me the Oregonian still had not decided whether they were going to return and destroy the documents. I reiterated my demand that they do so, and told him that we might have to take action soon if the Oregonian continued to hold these documents. I once again asked if our lawyers could communicate with one another on this issue. He said he would pass along that request.
>
> On Thursday, January 25, 2024, Mr. Kish sent me an email at 2:47 p.m. responding to my email from January 23, 2024. He informed me that the Oregonian does not intend to return the inadvertently disclosed documents, and that they would give me notice before publication….

Id. at pp. 2-6.

Owens indicates the disclosure includes pages of materials that had not previously been filed with the Court along with pages filed with the Court but including redactions on the publicly available docket. Id. at pp. 6-7.

The Oregonian asserts Kish engaged in the newsgathering process when seeking comment from Owens regarding a separate allegation of sexual harassment at Nike by an alleged victim who

Page 6 – ORDER

ER-0010

is not a plaintiff in this case, and which had nothing to do with its role as an intervenor. Accordingly, the Oregonian opposes plaintiffs' motion to return the documents.

DISCUSSION

This Court initially ordered the Oregonian to return the inadvertently disclosed documents pursuant to Fed. R. Civ. P. 26(b)(5)(B) which requires parties, after notice of a claim of protection, to promptly return or destroy the specified information. The Oregonian asserts it is not a party in this action and has intervened only as a non-party for a limited purpose—albeit for a purpose directly related to unsealing the documents it inadvertently obtained from a party in this case.

After careful review of the record, the Court agrees the Oregonian is not a party to this action for purposes of the protective order. As noted above, the Oregonian intervened as a non-party to unseal records in this case and make them public. Intervention was granted well after the Court entered the stipulated protective order to which plaintiffs' and defendant agreed. While the Oregonian intervened in this case for the limited purpose of unsealing non-public portions of the record, it did not intervene to challenge or revise the protective order. Moreover, the parties did not seek to alter the protective order to bind the Oregonian to its parameters.

The Oregonian as a limited purpose intervenor to this action lacks the status of a full party. Cf., e.g., Burns v. MLK Express Serv., LLC, 2020 WL 1891175, at *2 (M.D. Fla. Apr. 16, 2020) (permitting a non-party with a similar class action filed in another jurisdiction to intervene for the purpose of objecting to a report and recommendations when it could impact the resolution of the non-party's case); Friant Water Auth. v. Jewell, 2014 WL 5325352, at *5 (E.D. Cal. Oct. 17, 2014) (granting intervention for the limited purpose of opposing a motion to transfer); Sec. & Exch. Comm'n v. Muroff, 2018 WL 7108114, at *5 (D. Idaho Dec. 4, 2018) (granting intervention for the limited purpose of opposing a motion to stay); Boca Raton Cnty. Hosp., Inc. v. Tenet

Page 7 – ORDER

Healthcare Corp., 271 F.R.D. 530, 535 (S.D. Fla. 2010) (granting intervention for the limited purpose of modifying a protective order). In addition, the Oregonian never joined in the protective order agreement as demonstrated by the enforced lack of access to the sealed documents in the docket. Cf., Univ. of Kansas Ctr. for Rsch., Inc. v. United States, 2010 WL 571824, at *13 (D. Kan. Feb. 12, 2010) (finding invalid a provision that binds a non-party to the jurisdiction of the court for purposes of enforcing a protective order). Accordingly, while plaintiffs' counsel violated the protective order in place in this case, purportedly inadvertently, the Oregonian has not violated any orders to which it is bound. See Protective Order p.3 (ECF 82) ("Confidential" information or documents shall be restricted to the litigation of this case and shall "not be used by any **party** for any business, commercial, or competitive purpose.") (emphasis added). Moreover, the protective order did not restrict "the disclosure or use of any information or documents lawfully obtained by the receiving party through means or sources outside of this litigation." Id.

To the extent the Court has any authority to direct the conduct of the Oregonian as a case participant, rather than as a party litigant, in its use of the improperly disclosed documents, it must comply with the parameters of the First Amendment. Cf., Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984) ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit.").

Although, at first glance, it is tempting to conclude that Kish, but for the discovery process, would not have obtained the documents at issue, the Oregonian's possession of these documents did not involve any Court process emanating from this case. Despite plaintiffs' counsel's failure to guard confidential materials in her possession, the Court cannot impute any violation of the protective order to Kish or to the Oregonian. Accordingly, before the Court can restrain the Oregonian from publishing any information contained in the documents or compel their return, it

must determine that this is an exceptional case justifying such prior restraint. See Columbia Broad. Sys., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal., 729 F.2d 1174, 1183 (9th Cir. 1984) ("under our constitutional system prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances"). Neither defendant, nor plaintiffs, have identified such extraordinary circumstances. At best, privacy concerns of Nike employees and former employees are at stake. And while those interests are significant, they are not sufficient to justify prior restraint on First Amendment rights. See Org. for a Better Austin v. Keefe, 402 U.S. 415, 419–20 (1971) (no prior decisions support prior restraint based on the claimed interest of an individual in being free from public criticism of his business practices or free from invasion of privacy).

To the extent Kish was aware the documents were confidential, and that Owens should not have disclosed them based on the protective order, such awareness does not overcome First Amendment protections afforded the Oregonian. See Bartnicki v. Vopper, 532 U.S. 514, 535 (2001) ("stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern"); N.Y. Times Co. v. United States, 403 U.S. 713, 714 (1971) (declining to enforce prior restraint of publication of illegally acquired information by newspaper's source). Therefore, plaintiffs' motion requesting the return of inadvertently disclosed materials is denied.

Defendant's request for discovery into the circumstances of the disclosure are irrelevant to the Oregonian's First Amendment rights. Accordingly, to the extent the motion is directed at the Oregonian, the motion is denied. The Court expresses no opinion as to the propriety of any such discovery directed to plaintiffs or plaintiffs' counsel and whether any sanction may be available for Owen's conduct at this time. In addition, defendant's request for a stay to preserve the status quo pending a decision by Judge Hernandez regarding any objections to this Order is granted.

Page 9 – ORDER

CONCLUSION

Plaintiffs' motion requesting return of inadvertently disclosed materials (ECF 410) is denied. Defendant's request for discovery (ECF 429) is denied and defendant's request for a temporary stay (ECF 429) is granted to the extent that the status quo regarding the materials remains in effect pending a decision by Judge Hernandez regarding any objections to this Order. The parties' request for oral argument is denied.

DATED this 28th day of February, 2024.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge