## Docket No. 24-2199

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

KELLY CAHILL; HEATHER HENDER; SARA JOHNSTON;
LINDSAY ELIZABETH,

*Plaintiffs-Appellees,*

v.

INSIDER, INC.; ADVANCE LOCAL MEDIA, LLC;
AMERICAN CITY BUSINESS JOURNALS,

*Intervenors-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

_____

*Appeal from a Decision of the United States District Court for the District of Oregon, Portland,
No. 3:18-cv-01477-JR · Honorable Marco A. Hernandez*

## RECORD EXCERPTS
## VOLUME 2 of 5 – Pages 15 to 308

DANIEL PRINCE, CA BAR 237112
FELICIA A. DAVIS, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
danielprince@paulhastings.com
feliciadavis@paulhastings.com

*Attorneys for Defendant-Appellant,
NIKE, Inc.*

 

| | |
|---|---|
| **From:** | info@ord.uscourts.gov |
| **Sent:** | Monday, April 1, 2024 4:36 PM |
| **To:** | nobody@ord.uscourts.gov |
| **Subject:** | [EXT] Activity in Case 3:18-cv-01477-JR Cahill et al v. Nike, Inc. Scheduling Order |

**--- External Email ---**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Oregon**

## Notice of Electronic Filing

The following transaction was entered on 4/1/2024 at 4:35 PM PDT and filed on 4/1/2024

| | |
|---|---|
| **Case Name:** | Cahill et al v. Nike, Inc. |
| **Case Number:** | 3:18-cv-01477-JR |
| **Filer:** | |
| **Document Number:** | 454(No document attached) |

**Docket Text:**
**ORDER** issued by Magistrate Judge Jolie A. Russo: Setting a Telephonic Oral Argument re: Plaintiffs' Emergency Request for Rule 16 Conference [432], Defendant's Motion for Protective Order [443] and Motion to Quash or alternative Motion for Protective Order [443], Defendant's Motions to Compel [445] & [447], and Plaintiffs' Motion to Compel [451] for 4/29/2024 at 10:00AM in Portland Chambers before Magistrate Judge Jolie A. Russo. (gm)

**3:18-cv-01477-JR Notice has been electronically mailed to:**

Edwin A. Harnden (Terminated)    eharnden@barran.com, jaufmuth@barran.com

David B. Markowitz    davidmarkowitz@markowitzherbold.com, 6951479420@filings.docketbird.com, alysagoodfellow@markowitzherbold.com, docket@markowitzherbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com

1

David J. Elkanich (Terminated)     delkanich@buchalter.com, rturenne@buchalter.com,
scrawford@buchalter.com, srainey@buchalter.com

Laura R. Salerno Owens     LauraSalerno@MarkowitzHerbold.com, 8359710420@filings.docketbird.com,
AbigailAdams@MarkowitzHerbold.com, Docket@MarkowitzHerbold.com,
sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com

Laura E. Rosenbaum     laura.rosenbaum@stoel.com, docketclerk@stoel.com, freddie.mahaffey@stoel.com

John A. Berg     jberg@littler.com, ihaas@littler.com, sarney@littler.com

Felicia A. Davis     feliciadavis@paulhastings.com, arlenefigueroa@paulhastings.com,
deisycastro@paulhastings.com, ecf-ord-6374354248433664@inbound.docketalarm.com,
lindseyjackson@paulhastings.com

Harry B. Wilson     harrywilson@markowitzherbold.com, 2591600420@filings.docketbird.com,
SarahDubrule@MarkowitzHerbold.com, docket@markowitzherbold.com,
joannastalheim@markowitzherbold.com, sarapomerening@markowitzherbold.com

Kathryn P. Roberts     KathrynRoberts@MarkowitzHerbold.com, 9717759420@filings.docketbird.com,
Docket@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com,
SarahDubrule@MarkowitzHerbold.com, andremena@markowitzherbold.com

Chad A. Naso     chadnaso@markowitzherbold.com, 2609173420@filings.docketbird.com,
Docket@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com,
SarahDubrule@MarkowitzHerbold.com, joannastalheim@markowitzherbold.com

Katharine L. Fisher     kfisher@gbdhlegal.com

Laura L. Ho     lho@gbdhlegal.com, efile@gbdhlegal.com, sgrimes@gbdhlegal.com

Byron Goldstein     brgoldstein@gbdhlegal.com, efile@gbdhlegal.com

India Lin Bodien     india@indialinbodienlaw.com, jb@ackermanntilajef.com

Craig J. Ackermann     cja@ackermanntilajef.com, ak@ackermanntilajef.com, bd@ackermanntilajef.com,
jb@ackermanntilajef.com

Daniel Prince     danielprince@paulhastings.com, alyssatapper@paulhastings.com, ecf-ord-
6705547519524864@inbound.docketalarm.com, francinesheldon@paulhastings.com,
lisavermeulen@paulhastings.com, maggiehall@paulhastings.com

Zachary P. Hutton     zachhutton@paulhastings.com

Barry Goldstein     bgoldstein@gbdhlegal.com

James P. Kan     jkan@gbdhlegal.com

Paul E. Cirner     pcirner@littler.com, tzharyuk@littler.com

ER-0017

Mengfei Sun      msun@gbdhlegal.com, dvaldez@gbdhlegal.com

Brian Walter Denlinger      brian.w.denlinger@gmail.com

Nicole Lueddeke      nicolelueddeke@paulhastings.com

Bruce T. Garrett (Terminated)      bgarrett@barran.com, jaufmuth@barran.com

David Aaron Bernstein (Terminated)      dbernstein@buchalter.com, docket@buchalter.com, mlavine@buchalter.com, rturenne@buchalter.com, scrawford@buchalter.com, srainey@buchalter.com

**3:18-cv-01477-JR Notice will <u>not</u> be electronically mailed to:**

3

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant.<br>_____ | Case No. 3:18-cv-01477-JR<br><br>**DECLARATION OF DANIEL PRINCE IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO FED. R. CIV. P. 45 SUBPOENA TO MARKOWITZ HERBOLD P.C.; AND MOTION TO COMPEL RESPONSES TO NIKE'S INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ADVANCE LOCAL MEDIA LLC**<br><br>**FILED UNDER SEAL**<br><br>**ORAL ARGUMENT REQUESTED** |

PRINCE DECLARATION ISO NIKE, INC.'S MOTION TO COMPEL

## DECLARATION OF DANIEL PRINCE

I, Daniel Prince, hereby declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California.  I am admitted *pro hac vice* in the United States District Court for the District Court of Oregon.  I am a partner with the law firm of Paul Hastings LLP, counsel of record for Defendant NIKE, Inc. ("NIKE") in the above-captioned matter.  I have personal knowledge of the facts herein, and if called upon to do so, could and would competently testify thereto.

2.      I submit this Declaration in Support of NIKE's Motion to Compel Production of Documents in Response to Fed. R. Civ. P. 45 Subpoena to Markowitz Herbold P.C. ("Markowitz"); Motion to Compel Responses to NIKE's Interrogatories and Requests for Production to Advance Local Media LLC, *d/b/a Oregonian Media Group* (the "Oregonian").

3.      Attached hereto as **Exhibit A** is a true and correct copy of NIKE's Fed. R. Civ. P. 45 Subpoena to Product Documents, Information, or Objections or to Permit Inspection of Premises in a Civil Action to Markowitz, dated February 2, 2024.

4.      Attached hereto as **Exhibit B** is a true and correct copy of NIKE's First Set of Requests for Production of Documents to the Oregonian, dated February 2, 2024.

5.      Attached hereto as **Exhibit C** is a true and correct copy of NIKE's First Set of Interrogatories to the Oregonian, dated February 2, 2024.

6.      Attached hereto as **Exhibit D** is a true and correct copy of Markowitz's Objections to NIKE's Subpoena, dated February 16, 2024.

7.      Attached hereto as **Exhibit E** is a true and correct copy of NIKE's Letter in Response to Markowitz's Objections to NIKE's Subpoena, dated February 22, 2024.

8.    Attached hereto as **Exhibit F** is a true and correct copy of Markowitz's Letter Response to NIKE's February 22, 2024 letter, dated February 28, 2024.

9.    Attached hereto as **Exhibit G** is a true and correct copy of NIKE's Letter in Response to Markowitz's February 28, 2024 letter, dated March 5, 2024.

10.    Attached hereto as **Exhibit H** is a true and correct copy of Markowitz's Letter Response to NIKE's March 5, 2024 letter, dated March 15, 2024, which includes Markowitz's production of screenshots of call logs and text messages between Laura Salerno Owens and Matthew Kish from January 19, 2024 to January 24, 2024.

11.    Attached hereto as **Exhibit I** is a true and correct copy of my email correspondence with counsel for Markowitz, Buchalter LLP, regarding NIKE's Subpoena to Markowitz and NIKE's request for a privilege log, dated March 15, 2024 to March 19, 2024.

12.    Attached hereto as **Exhibit J** is a true and correct copy of the Oregonian's letter regarding NIKE's requests for discovery to the Oregonian, dated March 1, 2024.

13.    Attached hereto as **Exhibit K** is a true and correct copy of NIKE's Letter Regarding NIKE's Requests to the Oregonian, dated March 15, 2024.

14.    Attached hereto as **Exhibit L** is a true and correct copy of the Oregonian's response to NIKE's March 15, 2024 letter regarding NIKE's requests for discovery to the Oregonian, dated March 20, 2024.

15.    Since Markowitz disclosed NIKE's confidential discovery materials to the Oregonian on January 19, 2024, and its notification to NIKE and the Court on January 25, 2024, NIKE has been forced to prepare and file seven briefs (so far, and not including the instant Motion) in both this Court and the Ninth Circuit.  *See* ECF Nos. 425, 429, 436.  Those briefs include (1) NIKE's Response to the Oregonian's Motion to Vacate the Court's Order to Return

Page 2 –   PRINCE DECLARATION ISO NIKE, INC.'S MOTION TO COMPEL

the Documents, dated February 6, 2024, ECF No. 425; (2) NIKE's Oral Argument Request,

Emergency Motion for a Temporary Administrative Stay, Request for Discovery, and Objection,

February 14, 2024, ECF No. 429; (3) NIKE's Rule 72 Objections to the Magistrate Judge's

February 28, 2024 Findings and Recommendations, dated March 13, 2024, ECF No. 436;

(4) NIKE's Motion for Time Extension to File Opening Brief and Notice of Respondent's

Breach of the January 19, 2024 Order in the Ninth Circuit, dated January 26, 2024, Dkt.

No. 14.1; (5) NIKE's Reply in Support of Motion for Time Extension to File Opening Brief in

the Ninth Circuit, dated February 1, 2024, Dkt. No. 18.1; (6) NIKE's Second Motion for Time

Extension to File Opening Brief in the Ninth Circuit due to continued proceedings in this Court

regarding the Disclosure, dated March 15, 2024, Dkt. No. 20.1; and (7) NIKE's Reply in Support

of Second Motion for Time Extension to File Opening Brief, dated March 22, 2024, Dkt.

No. 22.1.

     I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on this 29th day of March, 2024, at Los Angeles,

California.

*/s/ Daniel Prince*
DANIEL PRINCE

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon  ▾

| | |
|---|---|
| Cahill et. al.,<br><br>_____<br>*Plaintiff*<br>v.<br>NIKE, Inc.<br><br>_____<br>*Defendant* | )<br>)<br>)<br>)  Civil Action No.  3:18-CV-01477-JR<br>)<br>)<br>) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Markowitz Herbold PC, 1455 SW Broadway Ste. 1900, Portland OR 97201

To: _____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Please see attached requests and produce them to Paul Hastings, LLP's Los Angeles office, 515 South Flower Street 25th Floor, Los Angeles, CA 90071, by the above specified date and time.

| Place: Paul Hastings LLP, 515 South Flower Street 25 Floor, Los Angeles, CA 90071 | Date and Time:<br><br>03/02/2024 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ____02/02/2024____

| CLERK OF COURT | | |
|---|---|---|
| | OR | /s/ Daniel Prince |
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  NIKE
_____, who issues or requests this subpoena, are:
Daniel Prince Paul Hastings LLP, 515 South Flower Street 25 Floor, Los Angeles, CA 90071 213.683.6169

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Prince Decl. Exhibit A, Page 1 of 15

ER-0023

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:18-CV-01477-JR

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _0.00_ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Prince Decl. Exhibit A, Page 2 of 15

ER-0024

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Prince Decl. Exhibit A, Page 3 of 15

ER-0025

1

## Proof of Service

2

STATE OF CALIFORNIA )

3                                                    ) ss:

CITY OF LOS ANGELES AND COUNTY OF )

4    LOS ANGELES )

5

6          I am employed in the City of Los Angeles and County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action.  My business address is 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, California  90071-2228.

7

8          On February 2, 2024, I served the foregoing document(s) described as:

9    **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

10

11   on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

12

13        David J. Elkanich

14        David Bernstein

         BUCHALTER

15        805 SW Broadway

         Suite 1500

16        Portland, OR 97205

         Phone:      (503) 226-8646

17        Fax:  (503) 226-0079

18        Email:      delkanich@buchalter.com

         Email:      dbernstein@buchalter.com

19        *Attorneys for MARKOWITZ*

20        *HERBOLD PC*

21

22   ☐      **VIA OVERNIGHT MAIL:**

23        VIA _____:By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

24

25   ☒      **VIA U.S. MAIL:**

         I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on February 2, 2024 with postage thereon fully prepaid, at Los Angeles, California.

26

27

28

PROOF OF SERVICE

Prince Decl. Exhibit A, Page 4 of 15

ER-0026

☐    **VIA PERSONAL DELIVERY:**

I personally delivered such sealed envelope(s) by hand to the offices of the addressee(s) pursuant to CCP § 1011.

☐    **VIA FACSIMILE:**

The facsimile transmission report indicated that the transmission was complete and without error. The facsimile was transmitted to Facsimile #_____ on February 2, 2024 at _____. A copy of that report, which was properly issued by the transmitting machine, is attached hereto. **[Permitted by written agreement of the parties.]**

☒    **VIA ELECTRONIC MAIL:**

By personally emailing the aforementioned document(s) in PDF format to the respective email address(es) listed above on February 2, 2024. I did not receive an electronic message indicating any errors in transmission.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 2, 2024, at Los Angeles, California.

*Ana A. Vermuele*

- 2 -

PROOF OF SERVICE

Prince Decl. Exhibit A, Page 5 of 15

ER-0027

LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

PAUL HASTINGS LLP
DANIEL PRINCE (pro hac vice)
danielprince@paulhastings.com
FELICIA A. DAVIS (pro hac vice)
feliciadavis@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., | CASE NO. 3:18-CV-01477-JR |
| Plaintiff, | **DEFENDANT NIKE, INC.'S RULE 45 SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS TO MARKOWITZ HERBOLD PC** |
| vs. | |
| NIKE, INC. an Oregon Corporation, | |
| Defendant. | **DATE:** March 3, 2024 |
| | **TIME:** 5:00 PM PT |

Prince Decl. Exhibit A, Page 6 of 15

ER-0028

**THE DISTRICT OF OREGON SENDS GREETINGS TO:**

**Markowitz Herbold PC**
1455 SW Broadway Ste. 1900,
Portland, OR 97201

YOU ARE COMMANDED to produce and permit inspection and copying of designated books, documents or tangible things in your possession, custody, or control pursuant to the requests contained herein by **March 3, 2024, 5:00 PM PST** to Paul Hastings, LLP's Los Angeles office at 515 South Flower Street 25th Floor, Los Angeles, CA 90071, on or before the above specified date and time.

## I.

## DEFINITIONS AND INSTRUCTIONS

A.    Definitions

1.    As used herein, the words "DOCUMENT" or "DOCUMENTS" mean any kind of written, typewritten, printed, electronic, or recorded material whatsoever, stored in any medium and including but not limited to, any notes, memoranda, charges, complaints, claims, affidavits, statements, papers, files, forms, data, magnetic or optical discs, cards or tapes, printouts, letters, reports, summaries, compilations, chronicles, publications, books, manuals, handbooks, certificates, minutes, agenda, communications, contracts, agreements, electronic communications or messages, facsimiles, records, correspondence, diaries, calendars, appointment books, logs, audio and/or video recordings and transcriptions of recordings, microfilm, microfiche, electronically stored information or representations of any kind (including but not limited to electronic mail, internet files, instant or text messages, internet relay chat, internet or intranet postings or communications, social or professional network postings or messaging communications, attachments to any of the foregoing, voicemail and other recordings whether in digital or analog format, databases and all electronic file formats) on any type of computer readable storage media (including but not limited to programs, drives, desktops, laptops, servers,

Prince Decl. Exhibit A, Page 7 of 15

ER-0029

networks, archives, back-up or disaster recovery systems, magnetic or optical tapes, cards or discs, CDs, DVDs, portable or removable media such as flash or thumb drives, smart cards, mobile phones and personal devices such as iPhones, Androids, Blackberries) whether or not ever printed out or displayed, photographs, pictures, diagrams, or any other writing, however produced or reproduced, and further including, without limitation, originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such documents whether or not used, within the possession, custody, and/or control of Plaintiffs' Counsel, or her agents, attorneys, physicians, psychologists, psychiatrists, counselors, and/or any other persons who may act on her behalf, excepting only those documents that are privileged or otherwise protected from discovery, as to which the claim of privilege or protection is specifically stated by pleadings.

2.      "NIKE" or "DEFENDANT" refers to Defendant NIKE, INC. and/or to any past or present officers, employees and/or agents of said named entity and/or all divisions, subsidiaries, parent, affiliated, related or predecessor companies, or any of them.

3.      "MEDIA INTERVENORS" refers to Non-Party Media Organizations Insider Inc., *d/b/a Business Insider*, Advance Local Media LLC, *d/b/a Oregonian Media Group*, and American City Business Journals, Inc., *d/b/a Portland Business Journal*, including agents and/or representatives, past or present.

4.      "PLAINTIFFS" refers to Plaintiffs Kelly Cahill, Heather Hender, Sara Johnston, and Lindsay Elizabeth.

5.      "COUNSEL" refers to counsel for the respective parties, including the various law firms, including Laura Salerno Owens, David B. Markowitz, Harry B. Wilson, and Kathryn Roberts of Markowitz Herbold PC; Laura L. Ho, Barry Goldstein, James Kan, Byron Goldstein, Katharine L. Fisher, and Mengfei Sun of Goldstein, Borgen, Dardarian & Ho; Craig Ackermann of Ackermann & Tilajef PC; and India Lin Bodien, including agents and/or representatives, past or present.

Prince Decl. Exhibit A, Page 8 of 15

ER-0030

6.     "COMMUNICATE" and "COMMUNICATIONS" mean and include any meeting, conference, face-to-face conversation, telephone conversation, or conference or communication used by any media, as well as any written, taped, or recorded communication of any kind whatsoever.

7.     "RELATE TO," "RELATES TO," and "RELATING TO" mean analyzing, commenting upon, constituting, dealing with, defining, describing, discussing, concerning, containing, evidencing, embodying, reflecting, identifying, involving, listing, mentioning, referring to, responding to, stating, or in any way pertaining to.

8.     "STARFISH SURVEYS" has the same meaning as provided in Attorney Salerno Owens' sealed declaration, dated January 25, 2024 (ECF No. 411), including Paragraph 3 therein.

B.     <u>Instructions</u>

1.     Construction of "And" and "Or"

As used herein, the words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

2.     Construction of "Any" and "All"

As used herein, the words "any" and "all" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these Interrogatories any response that would otherwise not be brought within its scope.

Prince Decl. Exhibit A, Page 9 of 15

ER-0031

3.    Construction of the Singular and Plural Forms

As used herein, the singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

## II.

## DOCUMENTS REQUIRED TO BE PRODUCED

### REQUEST FOR PRODUCTION NO. 1:

All Documents, including Communications, supporting Attorney Laura Salerno Owens' contention that she "inadvertently disclosed" the Starfish Surveys to the Oregonian referenced in paragraph 14 of Attorney Laura Salerno Owens' sealed declaration, dated January 25, 2024.  ECF No. 411.

### REQUEST FOR PRODUCTION NO. 2:

All Communications between Counsel for Plaintiffs and the Media Intervenors, including but not limited to Matthew Kish of the Oregonian, regarding the Starfish Surveys.

### REQUEST FOR PRODUCTION NO. 3:

All Documents, including attachments, provided by Plaintiffs' Counsel to any of the Media Intervenors, including but not limited to Matthew Kish of the Oregonian.

### REQUEST FOR PRODUCTION NO. 4:

All Documents, including Communications, Relating To the decision by Plaintiffs and/or their Counsel to notify Counsel for NIKE, Inc. of the "inadvertent disclosure" as referenced in paragraph 14 of Attorney Laura Salerno Owens' sealed declaration, dated January 25, 2024.  ECF

Prince Decl. Exhibit A, Page 10 of 15

ER-0032

No. 411. This includes all Communications occurring during the six day period from January 19, 2024 (when the "inadvertent disclosure" was made) to January 25, 2024 (when Plaintiffs' Counsel notified NIKE of the same).

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, including Communications, Relating To the Ninth Circuit's January 19, 2024 order granting NIKE, Inc.'s "motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records[,]" including Plaintiffs' Counsel's receipt of the same.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, including Communications, between Plaintiffs' Counsel and any of the Media Intervenors, including but not limited to Matthew Kish of the Oregonian, regarding Pam Parker.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, including Communications, Relating To the publication of a news story by any of the Media Intervenors, including the Oregonian, relating to the Starfish Surveys.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, including Communications, indicating when the Counsel for Plaintiffs (other than Markowitz Herbold PC) learned of the "inadvertent disclosure" as referenced in paragraph 14 of Attorney Laura Salerno Owens' sealed declaration, dated January 25, 2024. ECF No. 411. This includes all Communications occurring during the six day period from January 19, 2024 (when the "inadvertent disclosure" was made) to January 25, 2024 (when Plaintiffs' Counsel notified NIKE of the same).

Prince Decl. Exhibit A, Page 11 of 15

ER-0033

**REQUEST FOR PRODUCTION NO. 9:**

All Communications surrounding the 154-page PDF sent by Attorney Laura Salerno Owens to Matthew Kish of the Oregonian and the transmittal email, referenced in paragraph 9 of Attorney Laura Salerno Owens' sealed declaration, dated January 25, 2024. ECF No. 411.

**REQUEST FOR PRODUCTION NO. 10:**

All Communications between Attorney Laura Salerno Owens and her firm's "risk management partners" referenced in paragraph 15 of Attorney Laura Salerno Owens' sealed declaration, dated January 25, 2024. ECF No. 411.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents that Attorney Salerno Owens displayed to Matthew Kish using "her phone or iPad," ECF No. 416 at ¶ 3, and Mr. Kish's Communications with Attorney Salerno Owens regarding each Document displayed during that meeting.

**REQUEST FOR PRODUCTION NO. 12:**

All Communications made between Attorney Salerno Owens and other Counsel, including agents and/or representatives of Counsel, in preparation of and/or compilation of any PDF containing the Starfish Surveys that were attached to any email correspondence between Plaintiffs' Counsel and any of the Media Intervenors.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, including Communications, Relating To Matthew Kish's receipt of any document (including a declaration) made by Pam Parker. This includes all Documents and Communications Relating To how Mr. Kish came to be in receipt of any documents made by Pam

Prince Decl. Exhibit A, Page 12 of 15

ER-0034

Parker and the Document and Communications Relating To Attorney Salerno Owens' assertion that "plaintiffs' counsel did not provide the declaration" to Mr. Kish.

**REQUEST FOR PRODUCTION NO. 14:**

To the extent not provided above, all documents referenced in or by Attorney Salerno Owens' sealed declaration, dated January 25, 2024.  ECF No. 411.

Date: February 2, 2024            */S/ Daniel Prince* _____

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:   (213) 627-0705

Prince Decl. Exhibit A, Page 13 of 15

ER-0035

## Proof of Service

STATE OF CALIFORNIA                               )
                                                  ) ss:
CITY OF LOS ANGELES AND COUNTY OF                 )
LOS ANGELES                                       )


     I am employed in the City of Los Angeles and County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action.  My business address is 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, California  90071-2228.

     On February 2, 2024, I served the foregoing document(s) described as:

**DEFENDANT NIKE, INC.'S RULE 45 SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS TO MARKOWITZ HERBOLD PC**

on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:


David J. Elkanich
David Bernstein
BUCHALTER
805 SW Broadway
Suite 1500
Portland, OR 97205
Phone:       (503) 226-8646
Fax:  (503) 226-0079
Email:       delkanich@buchalter.com
Email:       dbernstein@buchalter.com
*Attorneys for **MARKOWITZ HERBOLD PC***


☐    **VIA OVERNIGHT MAIL:**

    VIA _____:By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☒    **VIA U.S. MAIL:**

    I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on February 2, 2024 with postage thereon fully prepaid, at Los Angeles, California.

Prince Decl. Exhibit A, Page 14 of 15

ER-0036

☐ **VIA PERSONAL DELIVERY:**

I personally delivered such sealed envelope(s) by hand to the offices of the addressee(s) pursuant to CCP § 1011.

☐ **VIA FACSIMILE:**

The facsimile transmission report indicated that the transmission was complete and without error.  The facsimile was transmitted to Facsimile #_____ on February 2, 2024 at _____.  A copy of that report, which was properly issued by the transmitting machine, is attached hereto. **[Permitted by written agreement of the parties.]**

☒ **VIA ELECTRONIC MAIL:**

By personally emailing the aforementioned document(s) in PDF format to the respective email address(es) listed above on February 2, 2024.  I did not receive an electronic message indicating any errors in transmission.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 2, 2024, at Los Angeles, California.

*Ana A. Vermeul*

Prince Decl. Exhibit A, Page 15 of 15

ER-0037

LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

PAUL HASTINGS LLP
DANIEL PRINCE *(pro hac vice)*
danielprince@paulhastings.com
FELICIA A. DAVIS *(pro hac vice)*
feliciadavis@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendant NIKE, INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., | CASE NO. 3:18-CV-01477-JR |
| Plaintiff, | **DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC** |
| vs. | |
| NIKE, INC. an Oregon Corporation, | |
| Defendant. | |

Page 1 | DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 1 of 11

ER-0038

**TO ADVANCE LOCAL MEDIA LLC AND TO ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 ("Rule 34"), counsel for Media Intervenor Advance Local Media LLC *d/b/a the Oregonian Media Group* (the "Oregonian") is hereby requested to produce for inspection and copying the documents and tangible things described hereinbelow on or before March 3, 2024 at the law offices of Paul Hastings LLP, 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071-2228. Counsel for the Oregonian may comply with this Request by transmitting the documents and physical evidence by mail or overnight delivery service so long as they arrive at the designated place by the aforestated date and time (attention: Daniel Prince, Esq.).

In accordance with Rule 34, counsel for the Oregonian also must serve within 30 days after service of this Request a written response, responding separately to each item or category of item included in the Request by a statement that counsel for the Oregonian will comply with the particular request, a representation that counsel for the Oregonian lack the ability to comply with the particular request, or an objection to the particular request. NOTICE: ANY FAILURE TO SERVE A TIMELY WRITTEN RESPONSE IN ACCORDANCE WITH RULE 34 WILL CONSTITUTE A WAIVER BY COUNSEL FOR THE OREGONIAN OF ANY OBJECTION TO THIS REQUEST, INCLUDING ONE BASED ON PRIVILEGE OR WORK PRODUCT.

## I.
## DEFINITIONS AND INSTRUCTIONS

A.    Definitions

1.    As used herein, the words "DOCUMENT" or "DOCUMENTS" mean any kind of written, typewritten, printed, electronic, or recorded material whatsoever, stored in any medium and including but not limited to, any notes, memoranda, charges, complaints, claims, affidavits, statements, papers, files, forms, data, magnetic or optical discs, cards or tapes, printouts, letters, reports, summaries, compilations, chronicles, publications, books, manuals, handbooks,

DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 2 of 11

ER-0039

certificates, minutes, agenda, communications, contracts, agreements, electronic communications or messages, facsimiles, records, correspondence, diaries, calendars, appointment books, logs, audio and/or video recordings and transcriptions of recordings, microfilm, microfiche, electronically stored information or representations of any kind (including but not limited to electronic mail, internet files, instant or text messages, internet relay chat, internet or intranet postings or communications, social or professional network postings or messaging communications, attachments to any of the foregoing, voicemail and other recordings whether in digital or analog format, databases and all electronic file formats) on any type of computer readable storage media (including but not limited to programs, drives, desktops, laptops, servers, networks, archives, back-up or disaster recovery systems, magnetic or optical tapes, cards or discs, CDs, DVDs, portable or removable media such as flash or thumb drives, smart cards, mobile phones and personal devices such as iPhones, Androids, Blackberries) whether or not ever printed out or displayed, photographs, pictures, diagrams, or any other writing, however produced or reproduced, and further including, without limitation, originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such documents whether or not used, within the possession, custody, and/or control of counsel of the Oregonian, or her agents, attorneys, physicians, psychologists, psychiatrists, counselors, and/or any other persons who may act on her behalf, excepting only those documents that are privileged or otherwise protected from discovery, as to which the claim of privilege or protection is specifically stated by pleadings.

2. "NIKE" or "DEFENDANT" refers to Defendant NIKE, INC. and/or to any past or present officers, employees and/or agents of said named entity and/or all divisions, subsidiaries, parent, affiliated, related or predecessor companies, or any of them.

3. "MEDIA INTERVENORS" refers to Non-Party Media Organizations Insider Inc., *d/b/a Business Insider*, Advance Local Media LLC, *d/b/a Oregonian Media Group*, and American City Business Journals, Inc., *d/b/a Portland Business Journal*, including agents and/or representatives, past or present.

Page 3 | DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 3 of 11

ER-0040

4.    "PLAINTIFFS" refers to Plaintiffs Kelly Cahill, Heather Hender, Sara Johnston, and Lindsay Elizabeth.

5.    "COUNSEL" refers to counsel for the respective parties, including the various law firms, including Laura Salerno Owens, David B. Markowitz, Harry B. Wilson, and Kathryn Roberts of Markowitz Herbold PC; Laura L. Ho, Barry Goldstein, James Kan, Byron Goldstein, Katharine L. Fisher, and Mengfei Sun of Goldstein, Borgen, Dardarian & Ho; Craig Ackermann of Ackermann & Tilajef PC; and India Lin Bodien, including agents and/or representatives, past or present.

6.    "COMMUNICATE" and "COMMUNICATIONS" mean and include any meeting, conference, face-to-face conversation, telephone conversation, or conference or communication used by any media, as well as any written, taped, or recorded communication of any kind whatsoever.

7.    "RELATE TO," "RELATES TO," and "RELATING TO" mean analyzing, commenting upon, constituting, dealing with, defining, describing, discussing, concerning, containing, evidencing, embodying, reflecting, identifying, involving, listing, mentioning, referring to, responding to, stating, or in any way pertaining to.

8.    "STARFISH SURVEYS" has the same meaning as provided in the declaration of Matthew Kish, dated January 29, 2024 (ECF No. 416), including Paragraph 3 therein.

DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 4 of 11

ER-0041

B.    <u>Instructions</u>

1.    Construction of "And" and "Or"

As used herein, the words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

2.    Construction of "Any" and "All"

As used herein, the words "any" and "all" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these Interrogatories any response that would otherwise not be brought within its scope.

3.    Construction of the Singular and Plural Forms

As used herein, the singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

## II.

## <u>DOCUMENTS REQUIRED TO BE PRODUCED</u>

## <u>REQUEST FOR PRODUCTION NO. 1:</u>

All Documents, including Communications, with any representative of Plaintiffs (including Plaintiffs' Counsel) Relating To the "inadvertent" disclosure of the Starfish Survey or other Documents to any employee or agent of the Oregonian, including Matthew Kish.  ECF No. 416 at ¶¶ 5-6.

DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 5 of 11

ER-0042

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, including Communications, between any employee or representative of the Oregonian (including Matthew Kish) and any representative of Plaintiffs in the above-captioned litigation (including Plaintiffs' Counsel) regarding the Starfish Surveys. This includes all Communications preceding, during, and following the meeting on January 19, 2024 between Matthew Kish and Attorney Salerno Owens. ECF No. 416 at ¶¶ 2-7.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, including attachments, provided by Plaintiffs' Counsel to any employee or representative of the Oregonian (including Matthew Kish) Relating To the Starfish Surveys.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, including Communications, supporting the contentions contained in Paragraph 2 of Matthew Kish's declaration, dated January 29, 2024. ECF No. 416. This Request Includes Documents and Communications supporting Mr. Kish's contention that he discussed "sexual harassment allegations that were being raised by either a current or former employee at Nike, Inc." and that "this employee is not one of the Plaintiffs in this case."

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, including Communications, with any representative of Plaintiffs (including Plaintiffs' Counsel) or anyone else Relating To informing NIKE, Inc. of the "inadvertent" disclosure of the Starfish Survey by Plaintiffs' Counsel to Michael Kish. ECF No. 416 at ¶¶ 5-6.

Page 6 | DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 6 of 11

ER-0043

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, including Communications, Relating To the Ninth Circuit's January 19, 2024 order granting NIKE, Inc.'s motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records, including the Oregonian's receipt of the same.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, including Communications, indicating when the other Counsel for Media Intervenors, including the Oregonian, learned of the "inadvertent[] email" of the Starfish Surveys to Matthew Kish.  ECF No. 416 at ¶ 6.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, including Communications, Relating To the publication of a news story by any of the Media Intervenors, including the Oregonian, Relating To the Starfish Surveys.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, including Communications, Relating To the "five-page summary of the survey responses, obtained separately by The Oregonian/OregonLive" as referenced in Matthew Kish of the Oregonian's January 29, 2024 article titled, *Judge orders The Oregonian/OregonLive to return or destroy documents 'inadvertently disclosed' in Nike sex discrimination lawsuit*, accessible at the following URL: https://www.oregonlive.com/business/2024/01/judge-orders-the-oregonianoregonlive-to-return-or-destroy-documents-inadvertently-released-in-nike-sex-discrimination-lawsuit.html.

DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

**REQUEST FOR PRODUCTION NO. 10:**

All Documents, including Communications, Relating To the return, dissemination, and/or destruction of the Starfish Surveys and/or any Documents in the Oregonian's possession that were disclosed to it by Plaintiffs or any of their representatives, including Plaintiffs' Counsel.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents, including Communications, between any Media Intervenors, including Matthew Kish of the Oregonian, and Plaintiffs' Counsel regarding Pam Parker.

**REQUEST FOR PRODUCTION NO. 12:**

The Starfish Surveys and any Document sent by Attorney Laura Salerno Owens to Matthew Kish of the Oregonian and the transmittal email, as referenced in paragraph 6 of Matthew Kish's declaration, dated January 29, 2024.  ECF No. 416.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, including Communications, Relating to or reflecting the comparison performed by Matthew Kish of the Documents he received from Plaintiffs' Counsel on January 19, 2024 to the Documents that "appeared in the public record."  ECF No. 416 at ¶ 4.

**REQUEST FOR PRODUCTION NO. 14:**

a separate request for all communications between the Oregonian, including Matthew Kish, and Attorney Salerno Owens regarding their in-person meeting on January 19, 2024.

**REQUEST FOR PRODUCTION NO. 15:**

To the extent not provided above, all Documents referenced in or by Matthew Kish's declaration, dated January 29, 2024.  ECF No. 416.

DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Date: February 2, 2024                    _/S/ Daniel Prince_____

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, INC.

Page 9 | DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit B, Page 9 of 11

ER-0046

1

2

**Proof of Service**

3

4

STATE OF CALIFORNIA       )
                                    ) ss:
CITY OF LOS ANGELES AND COUNTY OF  )
LOS ANGELES                           )

5

6

7

        I am employed in the City of Los Angeles and County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action.  My business address is 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, California  90071-2228.

8

        On February 2, 2024, I served the foregoing document(s) described as:

9

10

11

**DEFENDANT NIKE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ADVANCE LOCAL MEDIA LLC**

12

on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

13

14

15

16

17

18

19

20

21

22

23

Edwin A. Harnden
Bruce T. Garrett
BARRAN LIEBMAN LLP
601 SW 2nd Avenue
Suite 2300
Portland, OR 97205
Phone:     (503) 276-2101
Fax:  (503) 274-1212
Email:     EHarnden@barran.com
Email:     bgarrett@barran.com
*Attorneys for **ADVANCE LOCAL MEDIA LLC, D/B/A/ OREGONIAN MEDIA GROUP'S (THE OREGONIAN)***

24

25

26

27

☐    **VIA OVERNIGHT MAIL:**

VIA _____:By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

28

PROOF OF SERVICE
Prince Decl. Exhibit B, Page 10 of 11

ER-0047

☒ **VIA U.S. MAIL:**

I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on February 2, 2024 with postage thereon fully prepaid, at Los Angeles, California.

☐ **VIA PERSONAL DELIVERY:**

I personally delivered such sealed envelope(s) by hand to the offices of the addressee(s) pursuant to CCP § 1011.

☐ **VIA FACSIMILE:**

The facsimile transmission report indicated that the transmission was complete and without error.  The facsimile was transmitted to Facsimile #_____ on February 2, 2024 at _____.  A copy of that report, which was properly issued by the transmitting machine, is attached hereto. **[Permitted by written agreement of the parties.]**

☒ **VIA ELECTRONIC MAIL:**

By personally emailing the aforementioned document(s) in PDF format to the respective email address(es) listed above on February 2, 2024.  I did not receive an electronic message indicating any errors in transmission.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 2, 2024, at Los Angeles, California.

*Ana A. Vermeule*

- 2 -

LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

PAUL HASTINGS LLP
DANIEL PRINCE *(pro hac vice)*
danielprince@paulhastings.com
FELICIA A. DAVIS *(pro hac vice)*
feliciadavis@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>                 Plaintiff,<br><br>     vs.<br><br>NIKE, INC. an Oregon Corporation,<br><br>                 Defendant. | CASE NO. 3:18-CV-01477-JR<br><br>**DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC** |

Page 1 | DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit C, Page 1 of 10

ER-0049

**TO ADVANCE LOCAL MEDIA LLC AND TO ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 33 ("Rule 33"), counsel for Advance Local Media LLC, *d/b/a Oregonian Media Group* (the "Oregonian") is hereby requested to answer under oath the following Interrogatories and serve its answers to the offices of Paul Hastings LLP, 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071-2228 on or before March 3, 2024. Counsel for the Oregonian may comply with these Interrogatories by transmitting the answers by mail or overnight delivery service so long as they arrive at the designated place by the aforestated date and time (attention: Daniel Prince, Esq.).

In accordance with Rule 33, counsel for the Oregonian also must serve within 30 days after service of these Interrogatories, responding separately to each item or category of item included in the Interrogatories by a statement that counsel for the Oregonian will comply with the particular Interrogatory, a representation that counsel for the Oregonian lacks the ability to comply with the particular Interrogatory, or an objection to the particular Interrogatory. NOTICE: ANY FAILURE TO SERVE A TIMELY WRITTEN RESPONSE IN ACCORDANCE WITH RULE 33 WILL CONSTITUTE A WAIVER BY COUNSEL FOR THE OREGONIAN OF ANY OBJECTION TO THESE INTERROGATORIES, INCLUDING ONE BASED ON PRIVILEGE OR WORK PRODUCT.

## I.

## DEFINITIONS AND INSTRUCTIONS

A.    Definitions

1.    As used herein, the words "DOCUMENT" or "DOCUMENTS" mean any kind of written, typewritten, printed, electronic, or recorded material whatsoever, stored in any medium and including but not limited to, any notes, memoranda, charges, complaints, claims, affidavits, statements, papers, files, forms, data, magnetic or optical discs, cards or tapes, printouts, letters, reports, summaries, compilations, chronicles, publications, books, manuals, handbooks,

DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit C, Page 2 of 10

ER-0050

certificates, minutes, agenda, communications, contracts, agreements, electronic communications or messages, facsimiles, records, correspondence, diaries, calendars, appointment books, logs, audio and/or video recordings and transcriptions of recordings, microfilm, microfiche, electronically stored information or representations of any kind (including but not limited to electronic mail, internet files, instant or text messages, internet relay chat, internet or intranet postings or communications, social or professional network postings or messaging communications, attachments to any of the foregoing, voicemail and other recordings whether in digital or analog format, databases and all electronic file formats) on any type of computer readable storage media (including but not limited to programs, drives, desktops, laptops, servers, networks, archives, back-up or disaster recovery systems, magnetic or optical tapes, cards or discs, CDs, DVDs, portable or removable media such as flash or thumb drives, smart cards, mobile phones and personal devices such as iPhones, Androids, Blackberries) whether or not ever printed out or displayed, photographs, pictures, diagrams, or any other writing, however produced or reproduced, and further including, without limitation, originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such documents whether or not used, within the possession, custody, and/or control of counsel of the Oregonian, or her agents, attorneys, physicians, psychologists, psychiatrists, counselors, and/or any other persons who may act on her behalf, excepting only those documents that are privileged or otherwise protected from discovery, as to which the claim of privilege or protection is specifically stated by pleadings.

2.    "NIKE" or "DEFENDANT" refers to Defendant NIKE, INC. and/or to any past or present officers, employees and/or agents of said named entity and/or all divisions, subsidiaries, parent, affiliated, related or predecessor companies, or any of them.

3.    "MEDIA INTERVENORS" refers to Non-Party Media Organizations Insider Inc., *d/b/a Business Insider*, Advance Local Media LLC, *d/b/a Oregonian Media Group*, and American City Business Journals, Inc., *d/b/a Portland Business Journal*, including agents and/or representatives, past or present.

Page 3     | DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL
             | MEDIA LLC

Prince Decl. Exhibit C, Page 3 of 10

ER-0051

4.      "PLAINTIFFS" refers to Plaintiffs Kelly Cahill, Heather Hender, Sara Johnston, and Lindsay Elizabeth.

5.      "COUNSEL" refers to counsel for the respective parties, including the various law firms, including Laura Salerno Owens, David B. Markowitz, Harry B. Wilson, and Kathryn Roberts of Markowitz Herbold PC; Laura L. Ho, Barry Goldstein, James Kan, Byron Goldstein, Katharine L. Fisher, and Mengfei Sun of Goldstein, Borgen, Dardarian & Ho; Craig Ackermann of Ackermann & Tilajef PC; and India Lin Bodien, including agents and/or representatives, past or present.

6.      "COMMUNICATE" and "COMMUNICATIONS" mean and include any meeting, conference, face-to-face conversation, telephone conversation, or conference or communication used by any media, as well as any written, taped, or recorded communication of any kind whatsoever.

7.      "RELATE TO," "RELATES TO," and "RELATING TO" mean analyzing, commenting upon, constituting, dealing with, defining, describing, discussing, concerning, containing, evidencing, embodying, reflecting, identifying, involving, listing, mentioning, referring to, responding to, stating, or in any way pertaining to.

8.      "STARFISH SURVEYS" has the same meaning as provided in Matthew Kish of the Oregonian's declaration, dated January 29, 2024 (ECF No. 416), including Paragraph 3 therein.

Page 4 | DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit C, Page 4 of 10

ER-0052

B.    <u>Instructions</u>

1.    Construction of "And" and "Or"

As used herein, the words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

2.    Construction of "Any" and "All"

As used herein, the words "any" and "all" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these Interrogatories any response that would otherwise not be brought within its scope.

3.    Construction of the Singular and Plural Forms

As used herein, the singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of this Request any documents that would otherwise not be brought within its scope.

## II.

## <u>FIRST SET OF INTERROGATORIES:</u>

## <u>INTERROGATORY NO. 1:</u>

Describe all facts supporting the contention contained in Paragraph 2 of Matthew Kish of the Oregonian's declaration, dated January 29, 2024.  ECF No. 416.  This Request Includes Documents and Communications supporting Mr. Kish's contention that he discussed "sexual harassment allegations that were being raised by *either* a current or former employee at Nike, Inc." and that "this employee is not one of the Plaintiffs in this case." (emphasis added).

Page 5          DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL
                MEDIA LLC

Prince Decl. Exhibit C, Page 5 of 10

ER-0053

**INTERROGATORY NO. 2:**

Describe all facts Relating To Matthew Kish's meeting at a coffee shop on January 19, 2024 with Attorney Salerno Owens.  This includes when and why the meeting was arranged, a description of the specific Documents that Attorney Salerno Owens displayed to Mr. Kish using "her phone or iPad," ECF No. 416 at ¶ 3, and Mr. Kish's Communications with Attorney Salerno Owens regarding each Document displayed during that meeting.

**INTERROGATORY NO. 3:**

Describe all facts Relating To Matthew Kish's email correspondence to any of Plaintiffs' Counsel, including Attorney Salerno Owens.  This includes the preparation of and/or compilation of any PDF containing the Starfish Surveys that were attached to any Communications between Plaintiffs' Counsel and Matthew Kish.

**INTERROGATORY NO. 4:**

Describe all facts Relating To when, how, and at what time Counsel for Media Intervenors received the Ninth Circuit's January 19, 2024 order granting NIKE, Inc.'s motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records.

**INTERROGATORY NO. 5:**

Describe all facts Relating To the comparison that Matthew Kish performed between the Starfish Surveys he received from Plaintiffs' Counsel and Documents that "appeared in the public record."  ECF No. 416 at ¶ 4.

|  DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC

**INTERROGATORY NO. 6:**

Describe the bases for Matthew Kish receiving a copy of any document (including a declaration) made by Pam Parker. This includes all facts relating to how Mr. Kish came to be in receipt of any documents made by Pam Parker.

**INTERROGATORY NO. 7:**

Describe all circumstances Relating To the Oregonian's knowledge that the Starfish Surveys (or other Documents) were "inadvertently" disclosed by Plaintiffs' Counsel to the Oregonian. This includes describing all facts and Communications between the Oregonian (or any of its representatives) and Plaintiffs' Counsel Relating To such disclosure.

**INTERROGATORY NO. 8:**

Describe all facts Relating To the return, dissemination, and/or destruction of the Starfish Surveys and/or any Documents in the Oregonian's possession that were disclosed to it by Plaintiffs or any of their representatives, including Plaintiffs' Counsel.

**INTERROGATORY NO. 9:**

Describe all facts Relating To when, how, and at what time Matthew Kish learned of the Ninth Circuit's January 19, 2024 order granting NIKE, Inc.'s motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records.

**INTERROGATORY NO. 9:**

Describe all facts Relating To when, how, and at what time Matthew Kish learned of the Ninth Circuit's January 19, 2024 order granting NIKE, Inc.'s motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records.

DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit C, Page 7 of 10

ER-0055

Date: February 2, 2024                  */S/ Daniel Prince*_____

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, INC.

| DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC

Prince Decl. Exhibit C, Page 8 of 10

ER-0056

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Proof of Service

STATE OF CALIFORNIA                                    )
                                                       ) ss:
CITY OF LOS ANGELES AND COUNTY OF                      )
LOS ANGELES                                            )

       I am employed in the City of Los Angeles and County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action.  My business address is 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, California  90071-2228.

       On February 2, 2024, I served the foregoing document(s) described as:

**DEFENDANT NIKE, INC.'S FIRST SET OF INTERROGATORIES TO ADVANCE LOCAL MEDIA LLC**

on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

Edwin A. Harnden
Bruce T. Garrett
BARRAN LIEBMAN LLP
601 SW 2nd Avenue
Suite 2300
Portland, OR 97205
Phone:        (503) 276-2101
Fax:  (503) 274-1212
Email:        EHarnden@barran.com
Email:        bgarrett@barran.com
*Attorneys for **ADVANCE LOCAL MEDIA LLC, D/B/A/ OREGONIAN MEDIA GROUP'S (THE OREGONIAN)***

☐    **VIA OVERNIGHT MAIL:**
    VIA _____:By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

PROOF OF SERVICE
Prince Decl. Exhibit C, Page 9 of 10

☒ **VIA U.S. MAIL:**

I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on February 2, 2024 with postage thereon fully prepaid, at Los Angeles, California.

☐ **VIA PERSONAL DELIVERY:**

I personally delivered such sealed envelope(s) by hand to the offices of the addressee(s) pursuant to CCP § 1011.

☐ **VIA FACSIMILE:**

The facsimile transmission report indicated that the transmission was complete and without error. The facsimile was transmitted to Facsimile #_____ on February 2, 2024 at _____. A copy of that report, which was properly issued by the transmitting machine, is attached hereto. **[Permitted by written agreement of the parties.]**

☒ **VIA ELECTRONIC MAIL:**

By personally emailing the aforementioned document(s) in PDF format to the respective email address(es) listed above on February 2, 2024. I did not receive an electronic message indicating any errors in transmission.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 2, 2024, at Los Angeles, California.

*Ana A. Vermuelen*

- 2 -

February 16, 2024

**VIA E-MAIL (DANIELPRINCE@PAULHASTINGS.COM)**

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

Re:   Objections to Defendant Nike's Subpoena to Markowitz Herbold P.C.
*Kelly Cahill, et. al. v. Nike, Inc.*
U.S. District Court of Oregon, Case No. 3:18-cv-01477-JR

Dear Mr. Prince:

Markowitz Herbold P.C. ("Markowitz") is in possession of the two subpoenas issued by Defendant Nike, Inc. ("Nike"), one on February 2, 2024, and one on February 13, 2024.  Other than the date signed, the two subpoenas appear to request the same information.  If that is not correct, please let me know right away.

First, Markowitz already has provided documents to the Court and to Nike, which would be responsive to Nike's Rule 45 Subpoena to Produce Documents, Information, or Objects (the "Subpoena").  *See* Ms. Salerno Owens' Declaration in Support of Plaintiffs' Motion to Request Return of Inadvertently Disclosed Materials [ECF 411 (January 25, 20024)]; Elkanich Email to Felicia Davis (January 31, 2024) (producing 154-page .pdf).  If you have lost or do not have access to those documents, please let me know.

Second, to the extent Nike's Subpoena seeks additional documents above and beyond the documents already provided, Markowitz responds and objects in whole to the Subpoena because it is premature, seeks irrelevant information, and seeks to impose obligations on non-parties beyond those permitted by applicable law, the Federal Rules of Civil Procedure, or the Local Rules for the U.S. District Court for the District of Oregon.  *See* Fed. R. Civ. P. 45(d)(2)(B).  In particular:

Prince Decl. Exhibit D, Page 1 of 2

ER-0059

•    The Subpoena seeks irrelevant information.  None of the additional documents requested by the Subpoena are relevant to the claims and defenses asserted in the above-entitled case.  Moreover, Nike has not demonstrated any particularized relevance or need for the requested documents, whether in the Subpoena or in briefing it has filed relating to Ms. Salerno Owens' inadvertent disclosure.  The Subpoena would result in an undue burden on Markowitz, a non-party in this proceeding.

•    The Subpoena seeks information protected from disclosure by Rule of Professional Conduct (RPC) 1.6(a) [the duty of confidentiality], the attorney-client privilege, and/or the attorney work product doctrine.  Moreover, to the extent that the Subpoena requests information from "All Counsel" or "other Counsel," such requests are objected to for violating the common interest privilege.

There are no non-objectionable requests in Nike's Subpoena that Markowitz has responsive documents to produce at this time, other than the documents already filed, or produced to Nike. Markowitz reserves the right to amend or supplement any objection or response to Nike's Subpoena as allowed under the applicable Rules of Civil Procedure.

Sincerely,
BUCHALTER
A Professional Corporation

*David J. Elkanich*

David J. Elkanich

DJE:sr
cc:    Felicia A. Davis  (*feliciaadavis@paulhastings.com*)
    Laura E. Rosenbaum (*laura.rosenbaum@stoel.com*)
    John A. Berg (*jberg@littler.com*)
    Paul E. Cirner (*pcirner@littler.com*)
    Edwin A. Harnden (*eharnden@barran.com*)
    Bruce T. Garrett (*bgarrett@barran.com*)
    Laura L. Ho (*lho@gbdhlegal.com*)
    Barry Goldstein (*bgoldstein@gbdhlegal.com*)
    James Kan (*jkan@gbdhlegal.com*)
    Byron R. Goldstein (*brgoldstein@gbdhlegal.com*)
    Mengfei Sun (*msun@gbdhlegal.com*)
    Craig Ackermann (*cja@ackermanntilajef.com*)
    India Lin Bodien (*india@indialinbodienlaw.com*)

Prince Decl. Exhibit D, Page 2 of 2

ER-0060



1(213) 683-6169
danielprince@paulhastings.com


February 22, 2024

**VIA E-MAIL**

David J. Elkanich (delkanich@buchalter.com)
805 SW Broadway, Suite 1500
Portland, OR 97205

*Re:*      *Cahill, et al. v. Nike, Inc., Case No. 3:18-cv-01477-JR,*
           *Letter in Response to Markowitz Herbold P.C.'s Objections to NIKE's Subpoena*

Dear Counsel:

We write in response to your February 16, 2024 letter setting forth Markowitz Herbold P.C.'s ("Markowitz") objections to NIKE's Subpoena. The Subpoena seeks information that will help clarify the circumstances surrounding what Markowitz has deemed an "inadvertent disclosure" of protected discovery material to the Oregonian—an intervenor whose sole purpose in this matter was to obtain such confidential documents—in violation of **two court orders**. As set forth in NIKE's opposition to the Oregonian's motion to vacate, Dkt. No. 425, the documents that were disclosed here have been central to this litigation since the beginning of the case. What's more, the circumstances of the disclosure directly relate to at least the parties' (inclusive of their counsel) compliance with court orders entered in the litigation, NIKE's merits brief in the Ninth Circuit appeal, and pending briefing in the District Court. *See* Dkt. Nos. 410, 414, 425, 429. Your refusal to produce *any* documents in response to this Subpoena is inappropriate given their relevance to multiple disputes at issue in this litigation, as well as troubling in light of your position regarding the nature of the disclosure. NIKE is entitled to information relating to the disclosure, and the refusal to provide the same has no basis in law or fact. Please confirm ASAP whether responsive information is being withheld. *See, e.g.,* FRCP 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). Also, please advise whether and when NIKE may expect to receive responsive information or if Markowitz intends to stand on its objections. We respond to the rest of the assertions in your letter below, and reserve all rights, including to seek sanctions in connection with the disclosure and any subsequent refusal to provide information concerning the same.

*First*, the fact that Markowitz provided cherry-picked documents surrounding this issue does not excuse Markowitz from producing other documents pertinent to the supposed inadvertent disclosure in response to the Subpoena. Indeed, Laura Salerno Owens' declaration filed with the court suggests that more responsive documents exist. *See* Dkt. No. 423 at ¶¶ 13 (referencing text messages), 17 (referencing an email); *see* RFP No. 14 (requesting documents referenced in Ms. Salerno Owens' declaration but not yet produced). Of course, NIKE suspects further documents must exist beyond the communications referenced in the public filings, including communications with Mr. Kish regarding Pam Parker and the scheduling of Mr. Kish and Ms. Salerno Owens' meeting in the first instance. *See* RFP Nos. 1, 6, 11, 13. Unless you can confirm that no other responsive documents exist, your self-serving selection of documents does not satisfy or excuse your obligations under the Subpoena.

*Second*, Markowitz's boilerplate relevancy objection does not justify its refusal to produce documents. *Makaneole v. SolarWorld Indus. Am., Inc.,* 2016 U.S. Dist. LEXIS 182243, at *8 (D. Or. Sep. 2, 2016) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")

Paul Hastings LLP | 515 South Flower Street | Twenty-Fifth Floor | Los Angeles, CA 90071
t: +1.213.683.6000 | www.paulhastings.com

Prince Decl. Exhibit E, Page 1 of 3

ER-0061


PAUL
HASTINGS

February 22, 2024
Page 2

(citations omitted).  The disclosure itself concerns documents that Plaintiffs have repeatedly urged are relevant to this matter, seeking motions to compel and scheduling depositions relating to what they refer to as the Starfish surveys—and the Court has allowed such discovery.  *See e.g.*, Dkt. No. 111.  Counsel cannot now claim, after years of arguments to the contrary, that such documents have no bearing on the case because it would serve them to do so.  Regardless, courts permit discovery into violations of the protective orders governing the litigation.  *See e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.,* 2014 U.S. Dist. LEXIS 11778, at *22 (N.D. Cal. Jan. 29, 2014) (allowing document production and depositions following counsel's disclosure of documents in violation of a protective order).  This discovery is especially crucial because the Oregonian now refuses to return these documents, claiming innocent and lawful acquisition, requiring court intervention.  Both the Oregonian and Markowitz have submitted declarations detailing their version of the facts to the court, acknowledging the factual nature surrounding the Oregonian's First Amendment claim.  NIKE's discovery seeks to uncover information surrounding the disclosure.  The requested discovery is, thus, directly relevant to the instant dispute.

*Third*, your claim that the discovery would impose an undue burden is insufficient.  *Brown v. Sperber-Porter,* 2017 U.S. Dist. LEXIS 226244, at *9 (D. Ariz. Dec. 7, 2017) (conclusory assertions of undue burden are insufficient).  You fail to explain how an undue burden would be imposed, particularly where, as here, the information relating to the disclosure is in the possession of Markowitz and its attorneys.  Indeed, your objection based on burden for collecting documents for an event that occurred only a month ago is especially ironic given Plaintiffs' own requests to NIKE for documents and information regarding multiple events concerning and involving multiple individuals dating back over a decade.  The burden here, in comparison, is minimal.

*Fourth*, to the extent that you claim that any responsive documents in your possession are protected from production by the attorney-client or any other applicable privilege, your objection is inadequate.  The plain language of Federal Rule of Civil Procedure 45 requires that when responding to a subpoena, a non-party must provide a log of information that they withhold based on assertions of privilege:  "A person withholding subpoenaed information under a claim that it is privileged . . . must . . . describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim."  Fed. R. Civ. P. 45(e)(2)(A).  Courts consistently hold that a subpoenaed non-party must provide a privilege log when withholding responsive documents based on privilege. *Relevant Grp., LLC v. Nourmand,* 2021 U.S. Dist. LEXIS 262721, at *20 (C.D. Cal. July 26, 2021) (Rule 45's privilege log requirement is well established); *see also Sidlo v. Kaiser Permanente Ins. Co.,* 2016 U.S. Dist. LEXIS 199239, at *16 (D. Haw. May 6, 2016) (requiring a non-party to prepare a privilege log under Rule 45).

In any event, NIKE's requests seek communications with third parties or documents that pertain to counsel's comments to the press that were, in counsel's and the Oregonian's own words, unrelated to this litigation.  *See e.g.*, RFP Nos. 2 (communications with Mr. Kish and the Media Intervenors), 6 (same), 10 (communications relating to Ms. Salerno's transmittal of the documents to Mr. Kish).  Privilege could not attach to these third party communications disconnected from any litigation preparation or advice to the client.  *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 296 F. Supp. 3d 1230, 1242 (D. Or. 2017) (finding that documents relating to press releases were not privileged because the "primary purpose of drafting press releases . . . was not to communicate with counsel or prepare for litigation"); *Pate v. Pac. Harbor Line, Inc.,* 2023 U.S. Dist. LEXIS 158880, at *48 (C.D. Cal. Sep. 6, 2023) (communications with third parties are only privileged if they have been engaged to assist the attorney in providing legal advice).

Prince Decl. Exhibit E, Page 2 of 3

ER-0062



February 22, 2024
Page 3

In short, your unsupported and generic objections do not excuse Markowitz from producing these documents.  Markowitz put these documents at issue when it disclosed them to the Oregonian, failed to notify NIKE, and requested court intervention to remedy its claimed "inadvertent" disclosure.  It cannot now hide the documents that would confirm such characterization and the extent of Markowitz's violation. It is apparent from your phrasing that there are no "non-objectionable" requests requiring production, that responsive documents do exist.  Because your objections are insufficient as stated above, these documents must be produced or you must confirm that none are in your possession.

Please confirm that you will comply with your obligations under the Subpoena by February 28, 2024 or let us know when you are available to meet and confer on these issues.

Sincerely,

**/s/ Daniel Prince**

Daniel Prince
for PAUL HASTINGS LLP

# Buchalter

805 SW Broadway
Suite 1500
Portland, OR 97205
503.226.1191 Phone
503.226.0079 Fax

File Number: M6473-0004
503.226.8646 Direct
delkanich@buchalter.com

February 28, 2024

**VIA E-MAIL (DANIELPRINCE@PAULHASTINGS.COM)**

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

      Re:    *Cahill, et al. v. Nike, Inc.*
              Case No.  3:18-cv-01477-JR
              Response to Nike, Inc.'s February 22, 2024 Letter

Dear Mr. Prince,

      We are in receipt of your February 22, 2024 letter.  I write on behalf of my client, Markowitz Herbold P.C. ("Markowitz"), in response to your letter regarding Markowitz's objections to Nike's Subpoena.

      Contrary to your allegations, Markowitz did not make generic, boilerplate objections but rather listed objections that applied to each and every item of discovery requested.  None of Nike's third-party subpoena requests contain requests relevant to the underlying claims or defenses at issue in the litigation.  Nor was this relevance stated in your February 22, 2024 letter.  Ninth Circuit courts do not require opposing counsel to be subject to discovery requests, especially where relevance appears hinged upon pure speculation.  *See, e.g., In re Allergan, Inc*, No. 14CV02004DOCKES, 2016 WL 5922717, at *8 (C.D. Cal. Sept. 23, 2016) (court noting that where the possible relevance "is entirely speculative at this juncture," there was sufficient undue burden to not require opposing counsel to produce documents in response to a third party subpoena.)  Unless Nike can demonstrate that its requested discovery of non-party opposing counsel is somehow relevant to the claims or defenses actually being litigated in this case, the requested discovery is simply beyond the scope of Fed. R. Civ. P. 26.

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

BN 81132117v5

Prince Decl. Exhibit F,  Page 1 of 3

ER-0064

# Buchalter

Mr. Daniel Prince
Re:  *Cahill, et al. v. Nike, Inc.*
February 28, 2024
Page 2

As noted by the Supreme Court in *Hickman v. Taylor*, limitations are placed in the Rules of Civil Procedure to prevent discovery being requested:  "in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry.  And as Fed. R. Civ. P. 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."  *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947).  Not only are Nike's requests irrelevant to the claims and defenses at issue in this litigation, such requests seemingly impinge on protected attorney work product and privileged client confidential information.

As set forth under *Hickman* and subsequent case law, even ordinary, fact-based work product is subject to be produced only after a showing of "substantial need for the information and that the information cannot be otherwise obtained without undue hardship."  *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.,* 333 F.R.D. 638, 641 (D. Or. 2019).  Markowitz already has provided sufficient documents for Nike, the Media Intervenors, and the Court to fully understand how the inadvertent disclosure occurred.  Markowitz will not permit open-ended discovery into its attorney work product and client confidential information, such as communications with its clients and with co-counsel, where there has been no demonstrated relevance or need for such information.

Additionally, Oregon Rule of Professional Conduct (RPC) 1.6 provides that a "lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation" or the disclosure is permitted under certain enumerated exceptions.  Plaintiffs have not given Markowitz consent to provide any additional client confidential information, including communications amongst plaintiffs' co-counsel and between plaintiffs' counsel and third parties, nor would such disclosure be otherwise permitted by the rule.

As a result, Markowitz is ethically prohibited from providing additional client confidential information in response to any specific request.  Moreover, to the extent your requests either explicitly seek communications with Markowitz's risk management partners, or otherwise seek communications with Markowitz' own lawyers, such communications are protected by the attorney-client privilege and not subject to disclosure.

Prince Decl. Exhibit F,  Page 2 of 3

# Buchalter

Mr. Daniel Prince
Re: *Cahill, et al. v. Nike, Inc.*
February 28, 2024
Page 3


     For each of those reasons and those provided in Markowitz's Objections to Defendant Nike's Subpoena, Markowitz maintains its objections and has no further documents to produce in response to Nike's Subpoena at this time.

                    Sincerely,
                    BUCHALTER
                    A Professional Corporation

                    *David J. Elkanich*

                    David J. Elkanich

DJE:sr

Prince Decl. Exhibit F,  Page 3 of 3



1(213) 683-6169
danielprince@paulhastings.com

March 5, 2024

**VIA E-MAIL**

David J. Elkanich (delkanich@buchalter.com)
805 SW Broadway, Suite 1500
Portland, OR 97205

*Re:*    ***Cahill, et al. v. Nike, Inc., Case No. 3:18-cv-01477-JR,***
***Letter in Response to Markowitz Herbold P.C.'s Objections to NIKE's Subpoena***

Dear Counsel:

We write in response to your February 28, 2024 letter regarding NIKE's Subpoena to Markowitz Herbold P.C. ("Markowitz").

As you may know, Plaintiffs have attempted to put the claimed "Starfish" documents at issue in this litigation since the initiation of the action. Though irrelevant to the named Plaintiffs' actual claims—which have nothing to do with harassment—Plaintiffs have fought vigorously to obtain documents related to these unverified complaints and have raised them at every opportunity both leading up to, and now after, class certification. Indeed, from the beginning of this dispute, Plaintiffs have attempted to make Starfish a leading issue in this case:

- Plaintiffs referred to the alleged complaints in their complaint filed in 2018. *See, e.g.*, Dkt. No. 1 ¶ 51 (citing news articles referring to the alleged complaints).

- Plaintiffs requested and then moved to compel production of the Starfish documents. *See* Dkt. No. 111 at 8.

- The Court granted Plaintiffs' motion to compel these documents. *Id.*

- NIKE complied with the Court's order and produced the alleged complaints.

- Plaintiffs relied on the alleged complaints in their motion for class certification, though they were irrelevant to the issues at hand. Dkt. No. 276 at 37-42.

- The Media Intervenors intervened in this action to gain unfettered access to those documents. Dkt. No. 205.

- NIKE's redaction of certain names of witnesses, subjects, and complainants identified in the claimed Starfish documents has been briefed in the District Court, on an emergency motion to the Ninth Circuit, and is now the subject of a pending appeal. Dkt. No. 406.

- Plaintiffs continue to take depositions related to "Starfish" post-denial of class certification, including of Genevieve Long and, as of last Friday, Melanie Strong.

Paul Hastings LLP | 515 South Flower Street | Twenty-Fifth Floor | Los Angeles, CA 90071
t: +1.213.683.6000 | www.paulhastings.com

Prince Decl. Exhibit G, Page 1 of 4

ER-0067



March 5, 2024
Page 2

To claim now that documents related to the disclosure of the Starfish documents (including Ms. Salerno Owens' meeting with a reporter, for the purpose of disclosing those documents in violation of two court orders) is inconsistent with the position that Plaintiffs have taken in this litigation since 2018.  What's more, the *unsealing and disclosure* of the alleged complaints are also directly relevant to the issues in dispute in this litigation.  Whether or not the names of the individuals in the alleged complaints may become public is currently on appeal.  The Ninth Circuit issued a stay of the unsealing of the names referenced in the Starfish documents pending a ruling on the merits.  In direct contradiction to this order, Ms. Salerno Owens met with the Oregonian and handed over the very documents she was not supposed to disclose pursuant to two court orders.  By doing so, Ms. Salerno Owens has put her disclosure at issue in this litigation because it was in violation of *two court orders in this litigation.  See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 11778, at *22 (N.D. Cal. Jan. 29, 2014) (allowing document production and depositions following counsel's disclosure of documents in violation of a protective order); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 406 (E.D.N.Y. 2007) (ordering a third party who conspired to obtain documents subject to a protective order to produce documents regarding the dissemination of the documents) *judgment entered sub nom. In re Zyprexa Litig.,* No. 07-CV-0504, 2007 WL 669797 (E.D.N.Y. Mar. 1, 2007), and *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010).  In fact, the Court has recently confirmed as much, by holding that "**plaintiffs' counsel violated the protective order in place in this case**."  Dkt. No. 431 at 8 (emphasis added).  NIKE is entitled to know the circumstances of the disclosure even absent the appeal on the very issue.  But because NIKE is currently preparing an opening brief on an issue that may now be affected by Markowitz's breach, these documents are critical.

Accordingly, your argument that this discovery is sought to harass or annoy Markowitz is meritless.  The discovery is relevant here, particularly in light of counsel's supposed "inadvertent" disclosure of the Starfish documents.  Dkt. No. 431 at 8.  Further, your citation to *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), does not tip the scales in Markowitz's favor.  *Hickman* has nothing to do with the circumstances at issue here.  Unlike in *Hickman*, NIKE is not seeking "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Id.* NIKE seeks documents related to a meeting between counsel and the press that was separate from counsel's legal duties in this case (*i.e.*, purportedly to discuss allegations by a NIKE employee not involved in the litigation) that then resulted in counsel's disclosure of confidential discovery materials in violation of two court orders.  None of this involves counsel's "mental impressions" related to the preparation for litigation, such that it would constitute attorney work product, as found in *Hickman.  Id.* Frankly, it strains all reason and logic to argue otherwise.

Nor does NIKE seek any privileged communications from Markowitz.  Your Letter fails to address the fact that the majority of the documents sought by NIKE in its Subpoena are documents and communications between Markowitz / Ms. Salerno Owens and the Oregonian and the other Media Intervenors relating to the disclosure and the alleged complaints.  *See, e.g.*, RFP Nos. 1, 2, 3, 6, 7, 9, 11, 13, 14.  These are third-party communications that were not made for the purpose of soliciting or providing legal advice, and as such, privilege does not attach to these communications.  *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1242 (D. Or. 2017) (finding that documents relating to press releases were not privileged because the "primary purpose of drafting press releases . . . was not to communicate with counsel or prepare for litigation"); *Pate v. Pac. Harbor Line, Inc.*, 2023 U.S. Dist. LEXIS 158880, at *48 (C.D. Cal. Sep. 6, 2023) (communications with third parties are only privileged if they have been engaged to assist the attorney in providing legal advice).  And again, these documents cannot be work product because they do not involve attorney strategy or mental impressions *concerning the litigation itself.*  "A media campaign is not a litigation strategy."  *Egiazaryan v. Zalmayev,* 290 F.R.D. 421,



March 5, 2024
Page 3

431 (S.D.N.Y. 2013); *Andrade-Tafolla v. United States*, 2022 U.S. Dist. LEXIS 47998, at *12 (D. Or. Mar. 17, 2022) (third party communications with media outlets did not qualify as work product). For many of the same reasons, even the internal communications and communications among Plaintiffs' counsel related to Ms. Salerno Owens' disclosure cannot qualify for any privilege protection because they do not involve the requesting or providing of legal advice or the preparation for litigation. *See e.g.*, RFP Nos. 4, 8, 10, 11. As we are sure you know, just because two lawyers communicate does not mean that those communications are privileged.

However, to the extent that Markowitz believes any of NIKE's requests do seek privileged material, your Letter that asserts a blanket privilege over every single document related to this issue is improper. As explained in our last letter, Rule 45 requires Markowitz to "describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). To satisfy this requirement, courts require third parties to prepare a privilege log. *Relevant Grp., LLC v. Nourmand,* 2021 U.S. Dist. LEXIS 262721, at *20 (C.D. Cal. July 26, 2021) (Rule 45's privilege log requirement is well established); *see also Sidlo v. Kaiser Permanente Ins. Co.,* 2016 U.S. Dist. LEXIS 199239, at *16 (D. Haw. May 6, 2016) (requiring a non-party to prepare a privilege log under Rule 45). Your failure to produce a privilege log here is particularly interesting, given Plaintiffs' position regarding NIKE's privilege objections throughout this litigation. Markowitz must comply with its own standard—*i.e.,* Markowitz must produce a privilege log and "must state whether it withheld documents pursuant to each objection." Plaintiffs' January 18, 2024 Letter. NIKE is not "required to guess whether documents were withheld or not pursuant to" Markowitz's privilege objection. *Id.*

Finally, your invocation of Oregon Rule of Professional Code (RPC) 1.6 is ironic, at best. As you are undoubtedly aware, Ms. Salerno Owens' and Plaintiffs' counsel's conduct in disclosing discovery material contrary to a Protective Order (and a court order) may implicate the RPC. *See, e.g.*, Rule 3.4(c). But even setting that aside, Rule 1.6, which prevents the disclosure of confidential client information, is not at issue here. As discussed, NIKE does not seek confidential information relating to Markowitz's *clients*. NIKE seeks documents concerning *Markowitz's* disclosure of discovery material during a meeting with the Oregonian regarding an issue that—according to Plaintiffs—was unconnected to Plaintiffs themselves. Dkt. No. 416 ¶ 2 (the "employee is not one of the Plaintiffs in this case"). Put simply, NIKE seeks documents relating to *Markowitz* and *Markowitz's* conduct; not protected information about Plaintiffs.

In sum, Markowitz's refusal to produce *any* documents in response to NIKE's Subpoena is not grounded in law, and your objections are insufficient under the rules. As the due date for the responses to the Subpoena has passed, please confirm immediately whether Markowitz continues to refuse to produce responsive documents. If NIKE is forced to compel such documents, please be advised that it will seek fees and costs relating to the same (in addition to sanctions for the underlying breach of two court orders). *See In re Zyprexa Injunction*, 474 F. Supp. 2d at 406 (ordering deposition of counsel who provided confidential documents to a third party reporter).

Please confirm that you will comply with your obligations under the Subpoena by March 8, 2024, or let us know when you are available to meet and confer this week to further discuss these issues.



March 5, 2024
Page 4

Sincerely,

*/s/ Daniel Prince*

Daniel Prince
for PAUL HASTINGS LLP

Prince Decl. Exhibit G, Page 4 of 4

ER-0070

# Buchalter

805 SW Broadway
Suite 1500
Portland, OR 97205
503.226.1191 Phone
503.226.0079 Fax

File Number: M6473-0004
503.226.8646 Direct
delkanich@buchalter.com

March 15, 2024

**VIA E-MAIL (DANIELPRINCE@PAULHASTINGS.COM)**

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

> Re:  *Cahill, et al. v. Nike, Inc.*
> Case No.  3:18-cv-01477-JR
> Response to Nike, Inc.'s March 5, 2024 Letter

Dear Mr. Prince,

In response to your March 5, 2024 letter, I write on behalf of my client, Markowitz Herbold P.C. ("Markowitz").  Thank you for the additional time to respond in order to review this matter further and as a result of my personal circumstances.

As a threshold matter, and as we have explained more than once, there should be no question that the documents at issue were inadvertently provided to Matthew Kish at The Oregonian.  I know that you have put inadvertently in quotes, and have suggested in pleadings that Laura Salerno Owens may have acted intentionally in providing the documents to Mr. Kish, but that is not true and simply does not make sense.  Ms. Salerno Owens took reasonably prompt steps to have the documents returned, filed a motion with the court, and has repeatedly taken measures to seek their return.  Since Nike, Inc. ("Nike") has not presented any evidence to suggest otherwise (despite my requests they do so), we must assume you have no such evidence other than wild speculation and innuendo.

In addition, as we discussed in our prior letter, Markowitz already has provided ample information from which the only logical inference can be that this was an inadvertent disclosure.  See, for example, Ms. Salerno Owens' January 25, 2024 Declaration, and exhibits attached.  In addition to the Declaration, Markowitz also has provided you a copy of the pdf that was inadvertently provided to Mr. Kish.  Simply put, there is no information to suggest this was an intentional bad act or that further discovery will reveal as much.  As a result, Markowitz continues

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

Prince Decl. Exhibit H, Page 1 of 11

# Buchalter

Mr. Daniel Prince
Re: *Cahill, et al. v. Nike, Inc.*
March 15, 2024
Page 2

to believe that Nike has not demonstrated a legitimate basis upon which further discovery into the inadvertent disclosure would be relevant, or could lead to the discovery of admissible information.

Nonetheless, and turning to the Requests for Production included with your Subpoena, any response is prohibited by Oregon Rule of Professional Conduct ("RPC") 1.6 [duty of confidentiality]. Your March 5, 2024 letter asserts that RPC 1.6 does not apply because Nike is not "seek[ing] confidential information relating to Markowitz's *clients*." (Page 3, emphasis in original). We disagree. Under RPC 1.6(a), a lawyer "shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by [the exceptions in] paragraph (b)." Markowitz's conduct on behalf of its client is clearly information "relating to" its representation of the plaintiffs. As a result, without client consent or another exception, Markowitz would be prohibited from providing any information in response to the Subpoena.

In addition, many of your requests are so overbroad and unbounded that they are both entirely disconnected from the inadvertent disclosure and impermissibly seek privileged attorney-client communications and protected attorney work product. For example:

- Request No. 1: Markowitz has already provided, via Ms. Salerno Owens's declaration, my prior communications, and now via a production of additional communications, all of her communications with Mr. Kish (and any of the Media Intervenors) related to the inadvertent disclosure. To the extent Nike takes the position that this request implicates internal communications among counsel, it improperly seeks documents subject to the attorney-client privilege and work product doctrine.

- Request No. 2: This request is overbroad because it seeks information that could be considered work product of counsel. Notwithstanding, Markowitz has already provided emails with Mr. Kish responsive to this request. In addition, Markowitz will produce text messages and logs of phone calls from Ms. Salerno Owens with Mr. Kish that relate to their meeting and the inadvertent production.

- Request No. 3: This request is overbroad as it has no time limitation and would presumably seek any communications at any time between Markowitz and the Media Intervenors. It further is not limited to Markowitz or Ms. Salerno Owens, and on its face would presumably apply to any of the plaintiffs' lawyers even though there is no allegation that anyone else was involved.

- Request No. 4: This request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

Prince Decl. Exhibit H, Page 2 of 11

# Buchalter

Mr. Daniel Prince
Re:  *Cahill, et al. v. Nike, Inc.*
March 15, 2024
Page 3

- Request No. 5:  This request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.  If you would like any emails received from the court relating to the Ninth Circuit's order, please let me know.

- Request No. 6:  To the extent this is covered by Request Nos. 1-4, this request also is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

- Request No. 7:  To the extent Nike seeks communications with the Media Interveners, this request is covered by the prior responses.  To the extent Nike seeks other information regarding plaintiffs' counsels' communication with the Media Interveners, such request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

- Request No. 8:  To the extent Nike seeks communications with the Media Interveners, this request is covered by the prior responses.  To the extent Nike seeks other information, such as internal discussions relating to the inadvertent disclosure, or discussions with counsel, such request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

- Request No. 9:  To the extent Nike seeks communications with the Media Interveners, this request is covered by the prior responses.  To the extent Nike seeks other information, such as internal discussions relating to the inadvertent disclosure, or discussions with counsel, such request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine

- Request No. 10:  This request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

- Request No. 11:  This request is overbroad and impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

- Request No. 12:  To the extent Nike seeks communications with the Media Interveners, this request is covered by the prior responses.  To the extent Nike seeks other information, such as internal discussions relating to the inadvertent disclosure, or discussions with counsel, such request is overbroad and

# Buchalter

Mr. Daniel Prince
Re:  *Cahill, et al. v. Nike, Inc.*
March 15, 2024
Page 4

> impermissibly seeks information that would be covered by the attorney-client privilege and work product doctrine.

- Request No. 13:  To the extent Nike seeks communications with the Media Interveners, this request is covered by the prior responses.  Otherwise, Markowitz had no involvement in how Mr. Kish came to be in receipt of any documents made by Ms. Parker.

- Request No. 14:  In addition to the previously provided documents, I have included the text messages and call logs between Ms. Salerno Owens and Mr. Kish relating to the inadvertent production.

As is evident from the above, Nike's requests seek "all documents" relating to broad categories of demonstrably privileged materials including:  Plaintiffs' counsels' decision making processes (Request No. 4), Plaintiffs' reaction to a Court order (Request No. 5), internal communication amongst Plaintiffs' counsels (Requests Nos. 8-10), and counsel's investigatory efforts unrelated to any inadvertent disclosure (Request No. 13).  Such requests are inappropriate attempts to pierce privileged materials and/or materials protected under the work product doctrine. We disagree with your contention that your requests do not seek Markowitz's work product or mental impressions; Markowitz's emails to co-counsel, their own lawyers, and their clients necessarily contain Markowitz's work product, mental impressions, and are at the heart of what is to be protected by the attorney-client privilege and work product doctrine.

I hope this resolves the issues posed in your last letter.  We are, however, amenable to meeting and conferring with you at a mutually agreeable time to discuss any additional concerns. Given the production of the prior documents, and the text messages and call logs here, there are no relevant documents that can be produced that are not subject to privilege and work product. Please feel free to reach out to me to discuss a mutually convenient time for us to meet and confer over those items and any remaining issues Nike has after reviewing this letter.

Sincerely,
BUCHALTER
A Professional Corporation

*David J. Elkanich*

David J. Elkanich

DJE:sr
Enclosure

BN 81299544v5

Prince Decl. Exhibit H, Page 4 of 11

ER-0074




Prince Decl. Exhibit 2 MARKOWITZ_000001




Prince Decl. Exhibit QW-12_000002
MARKOWITZ_1_000002

Case 3:18-cv-01477-JR     Document 448     Filed 03/29/24     Page 59 of 70

 

Prince Decl. Exhibit 2 — MARKOWITZ_000003

ER-0077




Prince Decl. Exhibit 2 MARKOWITZ_1000004




Prince Decl. Exhibit KL-2     MARKOWITZ_000005

Case 3:18-cv-01477-JR    Document 448    Filed 03/29/24    Page 62 of 70




Prince Decl. Exhibit 2    MARKOWITZ_000006



Prince Decl. Exhibit 112    MARKOWITZ_000007

| | |
|---|---|
| **From:** | Elkanich, David J. |
| **To:** | Prince, Daniel |
| **Cc:** | Bernstein, David A.; Tapper, Alyssa; Rainey, Sherry |
| **Subject:** | [EXT] RE: Cahill et al. v. Nike - Response to March 5 Letter |
| **Date:** | Tuesday, March 19, 2024 5:16:34 PM |

### --- External Email ---

Daniel,

We decline your request to provide a privilege log because any further description of the requested privileged and/or attorney-work product protected documents would itself reveal privileged and confidential information. Under LR 26-5(b), "a party may preserve its privilege or its protection against production of attorney work product or trial preparation material without simultaneously providing a 'privilege log' or a description of the claims of privilege or work product required by Fed. R. Civ. P. 26(b)(5). However, such a 'privilege log' **or description of the claims of privilege or work product** required by Fed. R. Civ. P. 26(b)(5) must be provided within a reasonable time after service of timely objections to a discovery request." (Emphasis added.) *See also Koumoulis v. Indep. Fin. Mktg. Grp.*, Inc., 29 F. Supp. 3d 142, 151 (E.D.N.Y. 2014) ("So long as Plaintiffs provide Defendants with the information required by FRCP 26(b)(5)(A), i.e., 'the nature of the documents, communications, or tangible things not produced or disclosed' ... 'in a manner that ... will enable other parties to assess the claim,' the format used to do so is irrelevant.")**.**

We have complied with the requirement of Fed. R. Civ. P. 26(b)(5) because we have provided a description of the claims of privilege or work product. As we explained in our prior correspondence, your requests directly seek documents including internal discussion amongst Plaintiffs' counsel and communications between counsel and their clients over a variety of topics. Such confidential and privileged communications are expressly protected from disclosure in any form, and Markowitz need not describe any such documents any further than it already has to allow Nike to assess Markowitz's claims as to privilege over these requested privileged communications.

Best,
David

## Buchalter

**David J. Elkanich**
Shareholder
**T** (503) 226-8646
**C** (503) 367-4227
**F** (503) 226-0079
delkanich@buchalter.com

805 SW Broadway Suite 1500

Prince Decl. Exhibit I, Page 1 of 3

ER-0082

Portland, OR 97205

1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
www.buchalter.com

---

**From:** Prince, Daniel <danielprince@paulhastings.com>
**Sent:** Saturday, March 16, 2024 4:05 PM
**To:** Rainey, Sherry <srainey@buchalter.com>
**Cc:** Bernstein, David A. <dbernstein@buchalter.com>; Elkanich, David J.
<delkanich@buchalter.com>; Tapper, Alyssa <alyssatapper@paulhastings.com>
**Subject:** RE: Cahill et al. v. Nike - Response to March 5 Letter [IMAN-BN.FID4781078]

| This message has originated from an **External Email**. Prince, Daniel <danielprince@paulhastings.com>: |
| --- |

---

David:

Please provide a privilege log by Tuesday.  We continue to reserve all rights.

Daniel

**From:** Rainey, Sherry <srainey@buchalter.com>
**Sent:** Friday, March 15, 2024 4:43 PM
**To:** Prince, Daniel <danielprince@paulhastings.com>
**Cc:** Bernstein, David A. <dbernstein@buchalter.com>; Elkanich, David J.
<delkanich@buchalter.com>; Rainey, Sherry <srainey@buchalter.com>; Tapper, Alyssa
<alyssatapper@paulhastings.com>
**Subject:** [EXT] Cahill et al. v. Nike - Response to March 5 Letter [IMAN-BN.FID4781078]

Dear Mr. Prince,

Attached is a letter from David Elkanich on behalf of Markowitz Herbold, P.C. in regards to *Cahill et al. v. Nike*.

Sincerely,
Sherry Rainey

## Buchalter

**Sherry Rainey**
Legal Assistant to David Elkanich, Frank Curci and Olivia Courogen,
**T** (503) 226-8659
**F** (503) 226-0079
srainey@buchalter.com

805 SW Broadway Suite 1500
Portland, OR 97205
www.buchalter.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

************************************************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.
Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Prince Decl. Exhibit I, Page 3 of 3

ER-0084



Edwin A. Harnden
(503) 276-2101
eharnden@barran.com

March 1, 2024

**VIA EMAIL**
Danielprince@paulhastings.com

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

Re:    Defendant Nike's Requests for Discovery to Advance Local Media LLC, d/b/a The
        Oregonian Media Group ("The Oregonian")

Pursuant to Judge Russo's Order, ECF 431, from February 28, 2024 (ECF 431), Nike's discovery
requests (requests for production of documents and interrogatories) directed to The Oregonian are
irrelevant and do not require a response.

Very truly yours,

BARRAN LIEBMAN LLP

Edwin A. Harnden

EAH:tt

Prince Decl. Exhibit J, Page 1 of 1

601 SW Second Avenue ▪ Suite 2300 ▪ Portland, Oregon 97204-3159 ▪ ph: (503) 228-0500 ▪ fax: (503) 274-1212

ER-0085



1(213) 683-6169
danielprince@paulhastings.com

March 15, 2024

**VIA E-MAIL**

Edwin A. Harnden (eharnden@barran.com)
Barran Liebman LLp
601 SW 2nd Avenue, Suite 2300
Portland, OR 97204

*Re:*     *Cahill, et al. v. Nike, Inc., Case No. 3:18-cv-01477-JR,*
        *Letter Regarding NIKE's Discovery Requests to the Oregonian*

Dear Counsel:

We write in response to your March 1, 2024 letter regarding NIKE's Requests for Production ("RFPs") and Interrogatories ("Rogs") to Advance Local Media LLC, d/b/a The Oregonian Media Group ("the Oregonian").

The Oregonian's one sentence letter, which does not propound any objections or offer any response to NIKE's requests, is an insufficient answer to discovery requests. Because you fail to assert any objections, the Oregonian has waived them. *See Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."); Fed. R. Civ. P. 33(a) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *Franklin v. Tate,* 2021 U.S. Dist. LEXIS 76985, at *7 (E.D. Cal. Apr. 20, 2021) ("By failing to timely object or respond to the current motion, Plaintiff has waived any objections to the request for production of documents"); Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."). Therefore, the Oregonian must produce all requested documents.

The Oregonian's assertion that the Magistrate's Order on February 28, 2024 (ECF No. 431) excuses it from responding to NIKE's discovery is otherwise meritless. As explained, this is not a proper objection. Regardless, the Magistrate's *recommendations* that NIKE's discovery request be denied does not justify the Oregonian's non-response to relevant discovery regarding its perpetuation of a breach of court orders. NIKE's request for discovery sought to obtain discovery "prior to the ruling on the Motion to Vacate." *See* ECF No. 429 at 3. Thus, the Magistrate's recommendation denying NIKE's request was limited to concluding that the discovery was not needed prior to her recommendations, not that the discovery is denied in full. ECF No. 431 at 9. Because NIKE propounded the requests, at minimum, the Oregonian must follow the procedure under the rules in responding to the discovery. Because it did not, the documents must be produced.

Moreover, as you are aware, the Magistrate's recommendations are just that—recommendations. *See* 28 U.S.C. § 636(b)(1)(A) (magistrate judges are precluded from issuing ultimate rulings on motions that seek injunctive relief); ECF No. 436 16-17. In accordance with Rule 72, NIKE has submitted objections to the recommendations, and the District Court has yet to rule. NIKE believes its objections have merit because, *inter alia,* (1) the Oregonian is a party subject to the Court's and the Ninth Circuit's orders, it violated such orders when it obtained the confidential discovery from Plaintiffs' counsel, and thus the



March 15, 2024
Page 2

Court has the inherent authority to order the return of the documents; (2) the Court has the inherent authority to order the return of the documents even if the Oregonian is not a party; (3) the Magistrate improperly framed the issue as a question of prior restraint, rather than one focused on how the documents were gathered—here, improperly from counsel to this litigation; and (4) *at minimum*, authority holds that discovery was needed prior to the Magistrate's recommendations.  ECF No. 436; *see also* ECF No. 434 at 3 (Plaintiffs' counsel agrees that "the Oregonian inserted itself into this case as an intervening party, and . . . successfully moved to unseal the documents . . . and peel back redactions of other previously sealed documents." Thus, "[t]he Court should therefore be permitted to find that The Oregonian, as an intervening party, should be held to the obligations of the protective order."). Accordingly, the Oregonian's refusal to produce any documents is both legally insufficient, and based on an improper premise.

As the due date for the responses to the discovery has passed, please confirm immediately whether the Oregonian will produce responsive documents and provide substantive responses to the Interrogatories. Please confirm that you will comply with your discovery obligations by March 20, 2024, or let us know when you are available to meet and confer to further discuss these issues.  NIKE reserves all rights.

Sincerely,

*/s/ Daniel Prince*

Daniel Prince
for PAUL HASTINGS LLP

Prince Decl. Exhibit K, Page 2 of 2

ER-0087



Edwin A. Harnden
(503) 276-2101
eharnden@barran.com

March 20, 2024

**VIA EMAIL**
Danielprince@paulhastings.com

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

Re:    Defendant Nike's Requests for Discovery to Advance Local Media LLC, d/b/a The Oregonian Media Group ("The Oregonian")

Mr. Prince:

In response to your inquiry regarding discovery, The Oregonian has not and does not waive its objections to Nike's request for discovery. Any required response was superseded by the Order of Judge Russo dated February 28, 2024. Judge Russo was clear in her Order that "Defendant's request for discovery into the circumstances of the disclosure are irrelevant to the Oregonian's First Amendment rights. Accordingly, to the extent the motion is directed at the Oregonian, the motion is denied." Enclosed is an additional copy of that Order for your further reference.

Very truly yours,

BARRAN LIEBMAN LLP

Edwin A. Harnden

EAH: as/lh
Enclosure: Judge Russo's Order (ECF 431)
4879-7889-1951

601 SW Second Avenue ▪ Suite 2300 ▪ Portland, Oregon 97204-3159 ▪ ph: (503) 228-0500 ▪ fax: (503) 274-1212

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

Daniel Prince (admitted *pro hac vice*)
danielprince@paulhastings.com
Felicia A. Davis (admitted *pro hac vice* )
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL and SARA JOHNSTON, individually and on behalf of others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>NIKE, INC., an Oregon corporation,<br><br>              Defendant. | Case No.: 3:18-cv-01477-JR<br><br>**DEFENDANT NIKE, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO FED. R. CIV. P. 45 SUBPOENA TO MARKOWITZ HERBOLD P.C.; AND MOTION TO COMPEL RESPONSES TO NIKE'S INTERROGATORIES AND REQUESTS FOR PRODUCTION TO ADVANCE LOCAL MEDIA LLC**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

**Page**

**I.**    INTRODUCTION ............................................................................1

I.    RELEVANT FACTUAL BACKGROUND ...................................2

II.    ARGUMENT ...............................................................................5

    A.    Legal Standard ...................................................................5

    B.    NIKE's Discovery Is Directly Relevant To Issues In This Case And Compliance By Plaintiffs' Counsel And The Oregonian Is Mandatory. ................5

    C.    The Requested Communications Are Not Privileged. .........................8

III.    CONCLUSION ...........................................................................10

## TABLE OF AUTHORITIES

Page(s)

CASES

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*,
   881 F.2d 1486 (9th Cir. 1989)...........................................................................10

*Andrade-Tafolla v. United States*,
   No. 3:20-cv-01361-IM, 2022 WL 807658 (D. Or. Mar. 17, 2022).........................9

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 5:11-cv-01846-LHK (PSG), 2014 U.S. Dist. LEXIS 11778
   (N.D. Cal. Jan. 29, 2014)...............................................................................2, 8

*Berrey v. Plaintiff Inv. Funding LLC*,
   No. CV-14-00847-PHX-BSB, 2014 WL 6908525 (D. Ariz. Dec. 9, 2014)...........5

*BofI Fed. Bank v. Erhart*,
   No. 15cv2353 BAS (NLS), c (S.D. Cal. Apr. 26, 2016).....................................10

*Brown v. Sperber-Porter*,
   No. CV-16-02801-PHX-SRB, 2017 WL 11482463 (D. Ariz. Dec. 8, 2017).........6

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*,
   408 F.3d 1142 (9th Cir. 2005).......................................................................8, 10

*Egiazaryan v. Zalmayev*,
   290 F.R.D. 421 (S.D.N.Y. 2013).....................................................................10

*In re Zyprexa Injunction*,
   474 F. Supp. 2d 385 (E.D.N.Y. 2007), *aff'd*,
   *Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010)..............................................................................8

*Makaneole v. SolarWorld Indus. Am., Inc.*,
   No. 3:14-CV-1528-PK, 2016 WL 7856433 (D. Or. Sept. 2, 2016).......................6

*Relevant Grp., LLC v. Nourmand*,
   No. CV 19-5019-ODW, 2021 WL 9696765 (C.D. Cal. July 26, 2021).................8

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992)...........................................................................6

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
   305 F.R.D. 630 (D. Or. 2015)........................................................................5, 6

*United States v. Chen,*
    99 F.3d 1495 (9th Cir. 1996)............................................................................10

**RULES**

FED. R. CIV. P. 26 ............................................................................................1

FED. R. CIV. P. 26(b)(1) ................................................................................5, 6

FED. R. CIV. P. 26(b)(3) ...................................................................................10

FED. R. CIV. P. 26(b)(5) .....................................................................................9

FED. R. CIV. P. 45 ...............................................................................1, 4, 5, 8

FED. R. CIV. P. 45(a)(1)(A)(iii) ..........................................................................5

FED. R. CIV. P. 45(d)(2)(B) ................................................................................5

FED. R. CIV. P. 45(e)(2)..................................................................................2, 10

FED. R. CIV. P. 45(e)(2)(A) ................................................................................8

LR 7-1 .................................................................................................................1

**OTHER AUTHORITIES**

Jeff Manning, Unsealed NIKE documents reveal widespread complaints of harassment,
    pay disparities, THE OREGONIAN, Jan. 18, 2023 (last visited on Mar. 29, 2024) ....................8

## LR 7-1 CERTIFICATION

Counsel for NIKE, Inc. ("NIKE") certifies that it made a good faith effort to confer with counsel for Markowitz Herbold PC ("Markowitz") and Advance Local Media LLC, *d/b/a Oregonian Media Group* (the "Oregonian").  Markowitz and the Oregonian oppose this motion.

## MOTION TO COMPEL DISCOVERY RESPONSES

NIKE respectfully moves this Court for an order pursuant to Fed. R. Civ. P. 26 and 45 compelling (i) Markowitz to comply with NIKE's Subpoena dated February 2, 2024, and (ii) the Oregonian to comply with NIKE's Interrogatories and First Set of Requests for Production, both dated February 2, 2024, including furnishing a privilege log.

## I.    INTRODUCTION

On February 28, 2024, the Magistrate Judge here found that "plaintiffs' counsel violated the protective order" in this case by "fail[ing] to guard confidential materials" in counsel's possession.  ECF No. 431 at 8.  The violation—an unauthorized disclosure of confidential documents in violation of **two court orders**—appears to have been aided and abetted by the Oregonian.  Plaintiffs' counsel and the Oregonian argued that this unauthorized disclosure was "inadvertent," *e.g.*, ECF Nos. 410, 414, and 442, but when served with discovery relating to the circumstances of the disclosure, both have stonewalled.[1]  Even worse, Plaintiffs' counsel assert privilege over (1) their communications with the Oregonian relating to the disclosure, (2) internal communications between counsel and employees at Markowitz about compiling the confidential documents for dissemination, and (3) communications relating to why Plaintiffs and the Oregonian waited nearly a week to notify NIKE of the unauthorized disclosure.

---

[1] If true, it should have been an easy task for Plaintiffs' counsel or the Oregonian to confirm that there are no other documents that have been improperly disclosed and there is no responsive information to produce in response to the discovery requests.  They did no such thing.

Page 1    -    NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY
              REQUESTS

None of these communications would seem to be privileged, which presumably explains why, even after their unfounded privilege assertion, Plaintiffs' counsel **refused** to produce a privilege log detailing the basis of that claim consistent with Fed. R. Civ. P. 45(e)(2).  In short, the cover-up might be as egregious as Plaintiffs' misconduct.

NIKE intends to seek, and the current record supports, severe sanctions to remedy these violations of court orders and discovery misconduct.  But NIKE files the instant motion to reserve its right to supplement the record on sanctions, if necessary, because the Court should not countenance the ongoing disregard for its processes and orders by Plaintiffs' counsel and the Oregonian.  NIKE is entitled to the requested information to understand the full nature and extent of the breach of court orders and the potential intrusion into the privacy of NIKE's current and former employees.  *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 11778, at *22 (N.D. Cal. Jan. 29, 2014) (authorizing document production and depositions after a breach of the protective order and awarding sanctions).

I.    **RELEVANT FACTUAL BACKGROUND**

From the outset, Plaintiffs' counsel, in conjunction with the Oregonian, have fought to make the confidential "Starfish" documents a focal point despite their lack of relevance to the pay and promotions claims.  ECF Nos. 1 ¶ 54.  The Court ordered NIKE to produce these documents to Plaintiffs, Dkt. No. 111 at 8, which contain informal accusations of harassment that have not been substantiated and which identify complainants, witnesses, and alleged subjects (the "Documents"), *see, e.g.,* ECF Nos. 425, 436.  The Documents were produced to Plaintiffs under the Protective Order and designated as "**Highly Confidential – Attorneys' Eyes Only**."  The Protective Order also limited the use of such Documents to this litigation.  ECF No. 82 at 2-3.  The opposite happened, though, when Plaintiffs' counsel leaked those Documents to *a reporter* for the Oregonian.  Plaintiffs' counsel conveniently asserted that the leak was

"inadvertent," ECF No. 411 at ¶ 14, even though counsel has stated that protective orders "hide" information counsel believes should be public.  ECF No. 437-4 at 5.

The Documents also were shielded from disclosure pursuant to a Ninth Circuit stay order (the "Stay Order"), entered in this Court at ECF No. 408.  That Stay Order followed a flurry of activity in both courts concerning whether the Documents should be unsealed.  *See, e.g.,* ECF Nos. 397, 404, 406.  Ultimately, the Ninth Circuit ruled that the Documents should remain sealed pending NIKE's appeal.  ECF No. 408.   Plaintiffs' counsel was aware of these orders and did not follow them.  The Oregonian also knew the rules.  It intervened in the District Court to unseal the confidential Documents, ECF No. 205; it also intervened in the Ninth Circuit and was notified of the Ninth Circuit Stay Order.  ECF No. 408.  It also flouted the orders.

Despite the issuance of a stay, Plaintiffs' counsel, Laura Salerno Owens of Markowitz Herbold, P.C., met with Matthew Kish, a reporter from the Oregonian, and previewed confidential Documents—***which should not have been shown to the Oregonian***—using an iPhone and an iPad.  ECF No. 416, ¶ 3.  While the facts have not been fully tested, NIKE is aware of the following:

- Salerno Owens states that she met with Kish on January 19, 2024 to discuss his inquiry into the allegations of a NIKE employee.  ECF Nos. 411, ¶ 2 & 416 ¶ 2.

- Aware of the Ninth Circuit Stay Order, which was entered just hours earlier, and during an ice storm that knocked out power and made driving treacherous, Salerno Owens and Kish met at a coffee shop to discuss the Documents.  ECF Nos. 407, 426, ¶ 5, 426-1 at 2-3.

- During the meeting, at 1:58 p.m., Salerno Owens emailed a prepared comment to Kish.  ECF No. 411, ¶ 5; ECF No. 416, ¶ 3.  Within the span of four minutes, and despite the email having no reference to the Starfish records, ECF No. 411-1, Kish allegedly read Salerno

Page 3   -   NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY
          REQUESTS

ER-0095

Owens' comment, "noticed [that she] referenced [the Documents]" and "asked [ ] which [Project Starfish complaint] supported the comment[.]"  ECF No. 411, ¶ 6.

- Within those same four minutes, Salerno Owens typed an index with page numbers and allegations, which she emailed to Kish at 2:02 p.m.  ECF Nos. 411, ¶ 7, 411-2.

- Kish purportedly told her that the index did not contain ECF references to the public record.  ECF No. 411, ¶ 8.  Eight minutes later, at 2:10 p.m., Salerno Owens forwarded a PDF containing the Documents.  *Id*., ¶ 9 and 411-6.

- Salerno Owens purportedly realized that she sent confidential materials and texted Kish at 3:41 p.m. ECF No. 411 ¶ 13.

- Rather than immediately notify NIKE and the Court, Salerno Owens says that she tried to convince Kish to return the documents.  ECF No. 411, ¶¶ 13-19.  Kish declined.  ECF No. 416, ¶¶ 4, 7.  Only after she realized that her breach would be published by the Oregonian, did Plaintiffs inform NIKE and the Court, *six days after* the disclosure.  ECF No. 426, ¶ 4.

Once notified, NIKE informally requested basic information relating to the circumstances of the disclosure.  ECF No. 426 ¶¶ 7-11.  That was ignored.  *See id*.  NIKE then served narrowly tailored sets of discovery on Plaintiffs' counsel (Rule 45 Subpoena) and the Oregonian (RFPs and Interrogatories).  Declaration of Daniel Prince ("Prince Decl.") Exs. A-C.  The purpose of the discovery was to uncover facts regarding the disclosure, including, for example, (1) Plaintiffs' communications with the Oregonian relating to the disclosure, (2) internal communications about compiling the confidential Documents for dissemination, and (3) communications relating to why Plaintiffs and the Oregonian waited nearly a week to notify NIKE of the unauthorized disclosure.

Plaintiffs and the Oregonian refused to meaningfully respond.  Plaintiffs served

boilerplate objections, claiming that the information sought was "irrelevant" and "privileged." Prince Decl. Ex. D.[2]  And when asked to provide a privilege log, Plaintiffs refused.  *See id.* Ex. I.  The Oregonian claimed to be immune from discovery.  *See id.* Ex. J.  After extensive correspondence, this motion followed.  *See id.* Exs. D-L.

## II.    ARGUMENT

### A.    Legal Standard

Fed. R. Civ. P. 45 allows a party to serve a subpoena on any person for the production of documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Pursuant to Rule 26(b)(1), parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), or "discovery of any matter relevant to the subject matter involved in the action."  *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Or. 2015).

### B.    NIKE's Discovery Is Directly Relevant To Issues In This Case And Compliance By Plaintiffs' Counsel And The Oregonian Is Mandatory.

NIKE served discovery on Plaintiffs' counsel and the Oregonian related to the unauthorized disclosure of confidential Documents, including how it occurred, whether it was "inadvertent," the full extent of the disclosure, and why it took six days for Plaintiffs to notify NIKE.  To date, Plaintiffs have produced seven pages of materials, including three screenshots of text messages and call logs between Salerno Owens and Kish (dated January 19, 22, and 24, 2024).  Prince Decl. Ex. H at 5-11.  Plaintiffs have not confirmed whether additional responsive documents exist.[3]  The Oregonian has produced nothing.

---

[2] Plaintiffs' counsel did not provide objections to each individual RFP until their March 15, 2024 letter.  Prince Decl. Ex. H.  While these objections lacked merit, they also were untimely.  Fed. R. Civ. P. 45(d)(2)(B); *Berrey v. Plaintiff Inv. Funding LLC*, 2014 WL 6908525, at *24 (D. Ariz. Dec. 9, 2014) (additional objections served after the deadline were untimely).

[3] Due to their prior working relationship, ECF No. 436 n. 7, and their representations to the Court, NIKE believes that, at minimum, more communications between Salerno Owens and Kish exist regarding the complaints and employee allegations.  *Compare* ECF No. 411 ¶ 2 ("Kish had

Page 5    -    NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY REQUESTS

Plaintiffs' counsel objects that the requests are not "relevant to the claims and defenses asserted in the above entitled case."[4]  ECF No. 437-1.  The Oregonian **did not even assert objections**, but rather provided a one-sentence letter claiming it is excused from discovery.[5] Neither are proper objections.  *See* [Makaneole v. SolarWorld Indus. Am., Inc.*, 2016 WL 7856433, at *3 (D. Or. Sept. 2, 2016)](#) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.") (citation omitted); [Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)](#) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."). And neither party is excused from a fulsome production.

*First*, NIKE's discovery seeks documents related to the breach of court orders, including any use or dissemination of the Documents.  The Court has the authority to order discovery on "any matter relevant to the subject matter involved in the action." [St. Jude, 305 F.R.D. at 637](#). Plaintiffs have harped on these (irrelevant) Documents since the case was filed; they were produced pursuant to the Protective Order; the Protective Order precluded disclosure; the Stay Order precluded disclosure; the Documents were briefed during class certification; and even post-certification, Plaintiffs continue to seek discovery regarding the same.  ECF Nos. 82, 89, 111, 146, 407, 408, 432, 443.  To argue that NIKE is barred from discovery into Plaintiffs'

---

previously informed me that he had received a copy of a declaration") *with* Prince Decl. Ex. H at 5-11.  Documents also likely exist related to Markowitz's preparation of the PDF to give to the Oregonian, ECF No. 411 ¶ 4, and their decision to finally notify NIKE.  ECF No. 426 ¶ 4.

[4] Markowitz also objected based on undue burden, without specifying how collecting documents surrounding the disclosure (which occurred recently) would impose any burden.  Prince Decl. Ex. D.  That is an improper objection and makes no sense.  [Brown v. Sperber-Porter, 2017 WL 11482463, at *3 (D. Ariz. Dec. 8, 2017)](#) (conclusory assertions of undue burden are insufficient).

[5] The Oregonian's assertion, based on the Magistrate's recommendations filed on February 28, 2024, ECF No. 341, is unfounded.  The recommendations pertain to NIKE's request to obtain discovery "prior to the ruling on the Motion to Vacate."  ECF No. 429 at 3.  Moreover, the recommendations are non-final, to which NIKE has filed objections.  ECF No. 436.

Page 6    -    NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY
                REQUESTS

unauthorized disclosure of the **same Documents** is nonsensical.  The information requested is relevant.  It should be produced.

*Second*, there is no dispute that Plaintiffs breached the Protective Order and the Ninth Circuit Stay Order.  *See, e.g.,* ECF No. 431.  The Oregonian, an intervenor, now possesses confidential discovery materials related to non-party individuals that will publish.  The fate of that confidential material is currently being litigated.  As a direct result of Plaintiffs' breach, NIKE has prepared and filed seven briefs in this Court and the Ninth Circuit.  ECF Nos. 425, 429, 436; Prince Decl. ¶ 15.

To date, NIKE and the Court have been forced to take the Oregonian and Plaintiffs' version of the facts at face value, but there is information that NIKE does not know.  What NIKE does know is that Plaintiffs' counsel breached the orders and commented on the confidential Documents numerous times before.[6]  Each of these facts call into question the veracity of the "inadvertent" characterization, but at a minimum, warrants further examination of the facts beyond the curated version of events offered.

NIKE is entitled to know whether Plaintiffs and the Oregonian conspired to breach court orders, whether Plaintiffs have further disseminated the Documents, and facts relating to the delay in notice to NIKE and the Court.  Plaintiffs' counsel and the Oregonian are hiding the circumstances surrounding their violation of Court orders.  This threatens the sanctity of protective orders and their effectiveness in securing fair and efficient litigation through discovery.  Courts have the power to ensure that protective orders are not freely disregarded.

---

[6] Plaintiffs' counsel commented that the Documents "help strengthen [Plaintiffs'] case." *See* Jeff Manning, Unsealed NIKE documents reveal widespread complaints of harassment, pay disparities, THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited on Mar. 29, 2024).

Page 7    -    NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY REQUESTS

For example, in *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Apple and Nokia suspected that Samsung used discovery in violation of the protective order.  2014 U.S. Dist. LEXIS 11778, at *22.  Because Samsung offered scant explanation regarding the disclosure (as is the case here), the court authorized "substantial document production and depositions."  *Id.* at *23.  Likewise, in *In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007), a retained expert conspired with the press to disseminate discovery in violation of a protective order.  *Id.* at 406.  The court ordered the expert to produce documents and to submit to a deposition.  *Id.*

Plaintiffs' counsel and the Oregonian cannot violate Court orders, claim that the violation was inadvertent, and then refuse to comply with discovery that would test or verify that characterization.  The requested information must be produced, and given the obstruction by Plaintiffs' counsel, NIKE reserves the right to depose Salerno Owens to supplement the record, if necessary, in connection with any sanctions motion.

### C.    The Requested Communications Are Not Privileged.

Plaintiffs' counsel has asserted privilege or work product over almost every responsive document in its possession (although they notably do not elaborate on how many such documents may exist).  This objection should be rejected.  NIKE seeks:  (1) communications between Plaintiffs' counsel and the Oregonian (or other media outlets) regarding the confidential Documents; (2) communications between Salerno Owens and her team related to the compilation of the PDF that was provided to the Oregonian; and (3) communications relating to why the parties waited nearly a week to notify NIKE of the disclosure.  None of this information would appear to be privileged, and if there is a claim of privilege, it should have been logged.[7]

---

[7] Rule 45 requires parties to "describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim."  Fed. R. Civ. P. 45(e)(2)(A).  Courts require non-parties to prepare a privilege log.  *Relevant Grp., LLC v. Nourmand*, 2021 WL 9696765, at *4

Page 8    -    NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY
              REQUESTS

Plaintiffs refused to produce a log, and their objections on this basis should be deemed waived. *See, e.g.*, Fed. R. Civ. P. 26(b)(5) Advisory Committee Notes ("To withhold materials without such notice [in the form of a log] is contrary to the rule, **subjects the party to sanctions** . . . and **may be viewed as a waiver of the privilege** or protection.") (emphasis added); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005) (affirming finding of waiver by party who failed to provide privilege log because, *inter alia*, the party was a "sophisticated corporate litigant" and a "repeat player in [similar] lawsuits and regulatory action involving the [same issues] of the underlying lawsuit.").

**First**, NIKE seeks documents between Plaintiffs' counsel and the Oregonian relating to counsel's disclosure of the Documents to the Oregonian. NIKE has not requested information relating to any request for, or transmission of, legal advice. Nor has NIKE requested attorney work product. *See* Prince Decl. Ex. A, RFP Nos. 2 (communications between Plaintiffs' counsel and the Media Intervenors regarding the Starfish documents), 6 (communications between Plaintiffs' counsel and the Media Intervenors regarding employee allegations), 3 (documents provided by Plaintiffs' counsel to the Media Intervenors), 7 (documents relating to articles by the Media Intervenors), and 11 (documents shown by Salerno Owens to Kish).

Plaintiffs' counsel does not represent the Oregonian or the Media Intervenors. Privilege or work product does not attach to communications between a law firm and the third party press. *See, e.g.*, *Andrade-Tafolla v. United States*, 2022 WL 807658, at *6 (D. Or. Mar. 17, 2022) (privilege cannot apply to third party communication with media outlets); *BofI Fed. Bank v. Erhart*, 2016 WL 1644726, at *4 (S.D. Cal. Apr. 26, 2016) (ordering production of communications with the New York Times because communications with a third party are not

_____

(C.D. Cal. July 26, 2021) (Rule 45's privilege log requirement is well established).

Page 9    -    NIKE'S MOTION TO COMPEL COMPLIANCE RE: DISCOVERY REQUESTS

ER-0101

work product).  Put simply, "a media campaign is not a litigation strategy."  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013) (citation omitted).

　　**Second**, internal correspondence between Salerno Owens and her team related to when and how the PDF packet of the confidential Documents was assembled for the unauthorized transmission to the Oregonian is not privileged.  Nor is it work product; it would not have been prepared in anticipation of litigation.  It was, instead, prepared to provide to the media.  *See, e.g., United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996); *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)).

　　**Third**, communications between Plaintiffs and the Oregonian relating to the disclosure, including when to advise NIKE and/or the Court of the same, do not implicate privilege or work product.  Nor did Plaintiffs furnish a log to evaluate their specious claims of privilege.  *See Burlington*, 408 F.3d at 1149-50; Fed. R. Civ. P. 45(e)(2).[8]

**III.    CONCLUSION**

　　NIKE files the instant motion to reserve its right to supplement the record on its forthcoming sanctions motion, if necessary, relating to the unauthorized disclosure of the Documents by and between Plaintiffs' counsel and the Oregonian.  Thus, the foregoing reasons, NIKE respectfully requests that the Court issue an order compelling (i) Markowitz to comply with NIKE's Subpoena dated February 2, 2024 and (ii) the Oregonian to comply with NIKE's Interrogatories and First Set of Requests for Production, both dated February 2, 2024.

　Date: March 29, 2024

　　　　　　　　　　　　　　　　　　*/S/ Daniel Prince*
　　　　　　　　　　　　　　　　　　DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
　　　　　　　　　　　　　　　　　　danielprince@paulhastings.com
　　　　　　　　　　　　　　　　　　FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
　　　　　　　　　　　　　　　　　　feliciadavis@paulhastings.com

---

[8] Plaintiffs' claim that a privilege log would disclose privileged information lacks merit.  *See* Fed. R. Civ. P. 45(e)(2)(A) (requiring description sufficient to "assess the claim.").

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendants. | |

## I.    PRELIMINARY STATEMENT

The prior restraint against Advance Local Media LLC, d.b.a., Oregonian Media Group ("The Oregonian") continues to wreak irreparable constitutional injury. Defendant Nike and Plaintiffs (collectively, the "Parties") have sought to extend the unconstitutional prior restraint by obfuscating the factual record and relevant legal analysis. Specifically, since The Oregonian first moved this Court to lift the prior restraint imposed by Magistrate Judge Russo's initial order on

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

January 26, 2024, (ECF 412), Defendant Nike ("Nike") has misrepresented the facts and the law and offered only speculation to support its specious arguments. However, the Parties cannot avoid the inevitable conclusions that 1) non-party, media-intervenor The Oregonian has a First Amendment right to publish the information that it obtained without itself violating the law, and 2) any prior restraint on publication amounts to "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

After considering extensive briefing from the Parties and The Oregonian, the Magistrate issued an order ("Magistrate's Order") (ECF 431), supported by detailed findings of fact and law, including well-established Supreme Court precedent, upholding The Oregonian's First Amendment right to publish information contained in the Documents[1] that its reporter obtained through the newsgathering process. Now that the Magistrate has put this matter to rest, The Oregonian respectfully requests that this Court expeditiously affirm the Magistrate's Order and deny Nike's request for a stay pending appeal. The prior restraint has been violating The Oregonian's rights to publish—and thus the public's rights to know—for nearly two months. Every second that the prior restraint remains in place it is causing additional irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). It must be immediately stopped.

///

///

---

[1] The Oregonian attributes the same meaning to the "Documents" as it has in its prior filings.

Page 2 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

## II.    <u>BACKGROUND</u>

An accurate recitation of the key facts can be found in the Magistrate's Order. The Oregonian will not belabor these points, which have also been laid out in The Oregonian's prior filings. Instead, The Oregonian will address specific facts that Nike attempts to misconstrue. First, Nike erroneously conflates Plaintiffs' counsel Laura Salerno Owens' ("Ms. Salerno Owens") actions and duties with those of The Oregonian. The two are separate. Nike contends that Ms. Salerno Owens' inadvertent disclosure of the Documents was a "breach" by both her and The Oregonian, but The Oregonian played no part in Ms. Salerno Owens' mistake. It simply came into possession of the Documents (albeit inadvertently) through the newsgathering process. Moreover, Nike's contention that The Oregonian did not inform Nike about the disclosure is irrelevant. The Oregonian, unlike Ms. Salerno Owens, never had a duty to inform Nike of what happened. Next, Nike's contention that Ms. Salerno Owens and The Oregonian's business reporter, Matthew Kish ("Mr. Kish"), met for the purpose of "previewing" the Documents or otherwise acted in concert causing the inadvertent disclosure is patently false and contradicted by Ms. Salerno Owens' and Mr. Kish's sworn and mutually corroborated declarations. *See* ECF 411 and 416, respectively.

Instead, the truth, while less salacious, is straightforward: Mr. Kish met with Ms. Salerno Owens to obtain comment regarding sexual harassment allegations that had been raised by a former employee at Nike who Mr. Kish understood not to be a plaintiff in the underlying *Cahill v. Nike* litigation. *See id.* Mr. Kish has been covering the topic of sexual harassment at Nike for years, and simply sought comment from Ms. Salerno Owens. Ms. Salerno Owens made a mistake by inadvertently emailing the Documents to Mr. Kish. The Oregonian, acting pursuant to its First

Page 3 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

ER-0106

Amendment rights, did not return the Documents after learning of the inadvertent disclosure and certainly did not violate any court order.

### III.    ARGUMENT

**A.    The Magistrate's Order Correctly Applied the Relevant First Amendment Legal Standards and Found that The Oregonian is Not a Party to the Lawsuit or to the Protective Order.**

Nike argues that the Court should be "looking at the breach before the speech." *Id.* ECF 436, pp. 9-11. While catchy, this is not the law. How information gets into the hands of the news media is irrelevant under the Supreme Court's prior restraint analysis. *See, e.g., New York Times Co. v. United States*, 403 U.S. 713 (1971) ("Pentagon Papers"). Moreover, The Magistrate's Order *did* consider how the Documents were disseminated to The Oregonian (ECF 431, pp. 3-7), and after considering the facts and the law, it correctly found that the First Amendment protects The Oregonian's right to publication.

Nike fails to distinguish—or even address—any of the Supreme Court's relevant holdings on the prior restraint doctrine, including the high Court's decision in the Pentagon Papers case. Even with national security implications at stake, the Supreme Court made no inquiry into how the *New York Times* and *Washington Post* obtained classified documents. *Id* at 713-14. Nor did the Court suggest that discovery or evidentiary hearings were needed to determine how the information was leaked. Instead, the Court declined to enjoin the newspapers from publication and aptly summarized that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity" placing the "heavy burden of showing justification for the imposition of such a restraint" on the party requesting a prior restraint. *Id.*. (Quotations and citations omitted). The Parties do not meet this heavy burden.

Page 4 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

**i.**    ***The Magistrate's Order Correctly Did Not Impute Ms. Salerno Owens' Violation to The Oregonian.***

Nike contends on several occasions that The Oregonian "should not" be in possession of the Documents.[2] ECF 436, p. 8. Whether The Oregonian "should" be in possession of the Documents is irrelevant under the prior restraint analysis. Indeed, the Pentagon Papers "should not" have been in possession of the reporters at the *New York Times* and the *Washington Post*, but that was irrelevant to the Supreme Court's First Amendment analysis. *See New York Times Co,* 403 U.S. at 713-14. *See also Bartnicki v. Vopper,* 532 U.S. 514, 535, 121 S. Ct. 1753, 1765, 149 (2001) (holding that whether a news outlet "knew or should have known" that information it disseminated was obtained illegally by another was irrelevant under the First Amendment analysis).

Moreover, Nike's concerns about the "privacy rights of third-party complainants [and] witnesses" (ECF 436, p. 11) does not trump The Oregonian's First Amendment right to publication. Whatever remedy is available to Nike, it cannot be a prior restraint on The Oregonian. Even in the context of post-publication punishment for speech—a lesser constitutional bar than a prior restraint—the Supreme Court has been clear that the publication or dissemination of lawfully obtained newsgathering materials regarding a matter of public significance enjoys First Amendment protection absent a showing that there is a state interest of the "highest order." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979).

---

[2] Nike's argument that The Oregonian "should not" be in possession of the Documents also contradicts its position that The Oregonian is subjected to the Protective Order (ECF 82), which is addressed in the next section.

Page 5 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

Nike side-steps the relevant First Amendment analysis and instead argues that the Court "is not powerless to protect itself, its process, and its orders" and that by upholding the Magistrate's Order "protective orders and the integrity of court processes should give future litigants little comfort. The lesson will be that such orders are hollow." ECF 436, p. 9. Nike's parade of horribles does not meet its heavy burden of justifying the imposition of a prior restraint nor does it establish a "state interest of the highest order." In contriving its world-without-protective-orders scenario, Nike flatly ignores at least one remedy for addressing the disclosure of protected documents: "whether any sanction may be available." ECF 431, p. 9.

Nike cites *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010), and *In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007), to support its position that prior restraint does not apply in this case. Such reliance is misplaced. In those cases, the courts found that the plaintiffs' expert had conspired to set up a sham proceeding to issue subpoenas and disseminate documents that were "procured solely by use of the court's discovery process." Notably, the courts in both cases found that the confidential documents "'reveal[ed] trade secrets, confidential preliminary research, development ideas, commercial information, product planning, and employee training techniques.'" *Id.* at 196 (quoting *In re Zyprexa Injunction*, 474 F. Supp. 2d at 404). Unlike the case at bar, based on the admissions of the parties, there was evidence to support that there was a conspiracy to disseminate the documents. *Id.* at 405.

In both *Eli Lilly* and *In re Zyprexa Injunction*, there was a clear meeting of the minds between conspirators to get around the protective order. *Eli Lilly*, 617 F.3d at 192. In the instant case, despite Nike's conclusory allegations, there is no conspiracy nor even a whiff of a "meeting of the minds." As indicated previously by both Ms. Salerno Owens and Mr. Kish, there was an

Page 6 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

ER-0109

accidental disclosure of documents solely on the part of Ms. Salerno Owens in a situation unrelated to the litigation itself. *See* ECF 411 and 416. Mr. Kish and The Oregonian did not conspire to get around the Protective Order, and very clearly did not establish a sham proceeding to effectuate any kind of conspiracy.

> ii.      **The Magistrate's Order Correctly Found that The Oregonian is not a Party to the Lawsuit, and Did Not Obtain the Documents Through the Court Process.**

When a party to litigation uses discovery to obtain information that is not publicly available from another party, it does not have a First Amendment right to publish it. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) (holding that the party-defendant *Seattle Times* newspaper did not have a First Amendment right to publish information that it obtained through compelled discovery subject to a protective order). But a news media outlet "may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Id.* at 33-34.

Nike attempts to invoke *Seattle Times* by arguing that "but for" discovery, the Documents never would have come into The Oregonian's possession. ECF 436, p. 31. Nike blatantly distorts the holding in *Seattle Times* by arguing that information gleaned through discovery loses First Amendment protection. Rather, when a party to a lawsuit uses compelled discovery subject to a protective order to obtain information, that party does not have a First Amendment right to publish that information. *Seattle Times*, 467 U.S. at 37.

As the Magistrate's Order correctly found, Mr. Kish approached Ms. Salerno Owens as a source, and he obtained the Documents through the newsgathering process, not as participant in the litigation. Accordingly, *Seattle Times* may be relevant to whether Ms. Salerno Owens has a First Amendment right to disseminate information she compelled through discovery, but *Seattle*

Page 7 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

*Times* does not curtail The Oregonian's First Amendment rights to publish the Documents it received inadvertently.

The Magistrate also correctly found that The Oregonian is not a party to the lawsuit. Nike's contention to the contrary is unavailing. Nike ignores that this Court's order explicitly stated The Oregonian was admitted as a *nonparty* and for a *limited purpose*. ECF 275. And, Nike fails to offer any substantive rationale for how The Oregonian is a party to the lawsuit. Nike points to no facts— because there are none—that support the claim that The Oregonian somehow acted inconsistent within its limited, nonparty status (e.g., by engaging in discovery, arguing evidentiary motions, submitting pleadings, etc.). Instead, Nike summarily asserts that The Oregonian is a party. The Magistrate's Order correctly finds otherwise.

### iii.    *The Magistrate's Order Correctly Found that The Oregonian Is Not Subject to the Protective Order*

Next, the Magistrate's Order correctly found that The Oregonian is not subject to the Protective Order in the underlying litigation. Nike does not and cannot refute the very simple proposition that The Oregonian cannot be bound to a stipulated order that it did not stipulate to. Nike also ignores the fact that it and Plaintiffs never moved the Court to amend the Protective Order to include The Oregonian when it intervened in the case years after the order was agreed to by the Parties. Moreover, Nike fails to address the fact that, to this day, The Oregonian does not have access to the records sealed under the Protective Order precisely because The Oregonian is not a party to that order. Nike's argument that The Oregonian "should not" be in possession of the Documents completely undermines its position that The Oregonian is subject to the Protective Order because, if it were subject to the Protective Order, it would have unfettered access to the sealed records, including the Documents.

Page 8 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

Instead, Nike asserts that actions taken by the Media Intervenors'[3] counsel two years ago support the contention that The Oregonian is subject to the Protective Order. ECF 436, p. 21. In April 2022, a clerical error by the Court designated then-counsel for the Media Intervenors, Ellen Osoinach ("Ms. Osoinach"), a "case participant." ECF 431, pp. 3-4. This designation allowed Ms. Osoinach full access to the case record, including documents filed under seal. Ms. Osoinach did not realize the mistake until June 3, 2022. Immediately after realizing the Court's mistake, Ms. Osoinach contacted the courtroom deputy, and they corrected the problem. Nike contends that Ms. Osoinach's actions—reporting the clerical error to the Court—prove that The Oregonian considered itself a party subject to the Protective Order. *Id.*

Nike confuses Ms. Osoinach's actions then with The Oregonian's actions now. First, Ms. Osoinach was an attorney for Media Intervenors and, unlike Mr. Kish, was not a reporter engaged in the news gathering process when she came across the sealed documents. As an officer of the court, Ms. Osoinach has obligations to the Court that Mr. Kish does not. Second, the fact that Ms. Osoinach notified the Court that she had obtained access to sealed documents is consistent with the fact The Oregonian (and the other Media Intervenors) were not a party to the Protective Order because otherwise, Ms. Osoinach should have had access to sealed records and her accessing them would not have been a mistake.

**B.** **This Court Should Review the Magistrate's Order Under the Clearly Erroneous and Contrary to Law Standard of Review**

Federal Rule of Civil Procedure 72(a) mandates the clearly erroneous and contrary to law standard of review for non-dispositive matters. Non-dispositive matters are those "pretrial

---

[3] Three years after the *Cahill, et al v. Nike* litigation began, this Court permitted The Oregonian, along with other media groups (collectively, the Media Intervenors) to intervene as a non-party for the limited purpose of challenging sealed judicial records and uncovering redactions. (ECF 275).

Page 9 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

matters not dispositive of a claim or defense of a party." *Maisonville v. F2 Am., Inc.*, 902 F2d 746, 747 (9th Cir 1990) (quoting FRCP 72(a)); *Mitchell v. Valenzuela*, 791 F3d 1166, 1170 (9th Cir 2015).

Nike relies on *Mitchell* to argue that a request for injunctive relief is a dispositive matter. ECF 436, p. 16. Nike misconstrues *Mitchell*. The Ninth Circuit in *Mitchell* found that the type of relief sought was dispositive because it was tantamount to a dismissal of the underlying claims and the party seeking relief would not be able to return to federal court to assert those claims. *Id.* at 1177. Nike also relies on *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) but that case is not applicable because it considered a preliminary injunction on the commercial use of a disputed trademark where the underling claims related to disputing a trademark—the injunctive relief sought was inextricably linked to underlying claims. 202 F.3d at 1204. Here, Plaintiffs motioned the Court to order The Oregonian to return and destroy the Documents that Ms. Salerno Owens inadvertently disclosed, and Nike joined Plaintiffs in that motion. The motion had absolutely nothing to do with the underlying claims or any defenses that Nike raised in connection with those claims. The matter before the Magistrate was squarely within the Ninth Circuit's construction of non-dispositive motion under FRCP 72(A). But even if de novo review applied, clear constitutional principles and the overwhelming weight of authoritative case law support the Magistrate's Order.

C.  **The Magistrate's Order Did Not Err by Denying Discovery and Oral Argument and Any Further Stay Would be Inappropriate.**

Neither discovery nor a stay are proper here. Nike's request for oral argument should be denied. Despite Nike's contention to the contrary, this Court is not without authority to remedy violations of its orders. But such remedy cannot include a violation of The Oregonian's First

Page 10 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S AND PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024 ORDER

Amendment rights. Once this Court restores The Oregonian's First Amendment rights, it can address Ms. Salerno Owens' violation of the Protective Order.  But that should not involve The Oregonian, because it took no part in Ms. Salerno Owens' disclosure.

The Oregonian continues to suffer ongoing and irreparable constitutional harm. Maintaining and extending an unconstitutional prohibition through meaningless discovery is not a permissible option when Nike's only basis for it is rooted in speculation—Nike has asserted no facts that call the sworn declarations from Ms. Salerno Owens and Mr. Kish into question. If the Court were to stay a ruling in The Oregonian's favor; it would have the same effect as issuing a further prior restraint. Additionally, the filings in this case have provided the Court with an extensive record and the First Amendment issues before the Court are crystal clear. Oral argument and/or a stay are unnecessary and would only further delay and result in further unconstitutional harm. Nike's request for oral argument should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

## IV.  <u>CONCLUSION</u>

For all the reasons cited above, The Oregonian respectfully requests that this Court immediately affirm the Magistrate's Order denying Plaintiffs' motion requesting return of inadvertently disclosed materials (ECF 410), deny Nike's request for an injunction (ECF 436), deny Nike's request for an order to show cause (ECF 436), deny Nike's request for discovery (ECF 436), deny Nike's request for oral argument (ECF 436), and deny Nike's request for a stay of any kind (ECF 436).

Dated this 22nd day of March, 2024.

BARRAN LIEBMAN LLP

By *s/Edwin A. Harnden*
    Edwin A. Harnden, OSB No. 721129
    eharnden@barran.com
    Bruce T. Garrett, OSB No. 213430
    bgarrett@barran.com

Attorneys for Non-Party Advance Local Media
LLC d/b/a Oregonian Media Group (The
Oregonian)

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone: (503) 221-0309
Facsimile: (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>    Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DECLARATION OF DANIEL PRINCE IN SUPPORT OF NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FEBRUARY 28, 2024 FINDINGS & RECOMMENDATION (ECF NO. 431) PURSUANT TO FED. R. CIV. P. 72(b), OR IN THE ALTERNATIVE, MOTION TO STAY PENDING APPEAL** |

Page 1 –  PRINCE DECLARATION ISO NIKE'S OBJECTIONS TO THE MAGISTRATE'S
          FEBRUARY 28, 2024 FINDINGS & RECOMMENDATIONS

## DECLARATION OF DANIEL PRINCE

I, Daniel Prince, hereby declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California, and am admitted *pro hac vice* to the District Court of Oregon. I am a partner with the law firm of Paul Hastings LLP, counsel of record for NIKE, Inc. ("NIKE") in the above-captioned matter.  I have personal knowledge of the facts herein, or know of such facts by my review of the files maintained by Paul Hastings LLP in the normal course of its business, and if called upon to do so, could and would competently testify thereto.

2.      I submit this Declaration in Support of NIKE's Objections to the Magistrate Judge's February 28, 2024 Findings & Recommendation (ECF No. 431) pursuant to Fed. R. Civ. P. 72(b), or in the Alternative, Motion To Stay Pending Appeal.

3.      Attached hereto as **Exhibit A** is a true and correct copy of a letter addressed to me from Mr. David J. Elkanich of Buchalter LLP ("Buchalter"), counsel for Markowitz Herbold PC, containing Markowitz's objections to NIKE's Subpoena, dated February 16, 2024.

4.      Attached hereto as **Exhibit B** is a true and correct copy of a letter addressed to me from Mr. Elkanich of Buchalter regarding NIKE's Subpoena to Markowitz, dated February 28, 2024.

5.      Attached hereto as **Exhibit C** is a true and correct copy of a letter addressed to me from Mr. Edwin A. Harnden of Barran Liebman LLP, counsel for Advance Local Media LLC, d/b/a the Oregonian Media Group ("the Oregonian"), regarding NIKE's discovery requests (requests for production and interrogatories), dated March 1, 2024.

6.      Attached hereto as **Exhibit D** is a true and correct copy of an article by Elizabeth Hayes' for the Portland Business Journal, entitled "Holding Court: Meet the employment law

Page 2 –   PRINCE DECLARATION ISO NIKE'S OBJECTIONS TO THE MAGISTRATE'S
             FEBRUARY 28, 2024 FINDINGS & RECOMMENDATIONS

attorney taking on Nike," dated February 23, 2023, and publicly available at

https://www.bizjournals.com/portland/news/2023/02/23/salerno-owens-markowitz-nike.html.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on this 13th day of March, 2024, at Los Angeles, California.


Date: March 13, 2024                        */S/ Daniel Prince*_____
                                            DANIEL PRINCE

# EXHIBIT A

# Buchalter

805 SW Broadway
Suite 1500
Portland, OR 97205
503.226.1191 Phone
503.226.0079 Fax

File Number: M6473-0004
503.226.8646 Direct
delkanich@buchalter.com

February 16, 2024

**VIA E-MAIL (DANIELPRINCE@PAULHASTINGS.COM)**

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071

> Re:    Objections to Defendant Nike's Subpoena to Markowitz Herbold P.C.
> *Kelly Cahill, et. al. v. Nike, Inc.*
> U.S. District Court of Oregon, Case No. 3:18-cv-01477-JR

Dear Mr. Prince:

Markowitz Herbold P.C. ("Markowitz") is in possession of the two subpoenas issued by Defendant Nike, Inc. ("Nike"), one on February 2, 2024, and one on February 13, 2024. Other than the date signed, the two subpoenas appear to request the same information. If that is not correct, please let me know right away.

First, Markowitz already has provided documents to the Court and to Nike, which would be responsive to Nike's Rule 45 Subpoena to Produce Documents, Information, or Objects (the "Subpoena"). *See* Ms. Salerno Owens' Declaration in Support of Plaintiffs' Motion to Request Return of Inadvertently Disclosed Materials [ECF 411 (January 25, 20024)]; Elkanich Email to Felicia Davis (January 31, 2024) (producing 154-page .pdf). If you have lost or do not have access to those documents, please let me know.

Second, to the extent Nike's Subpoena seeks additional documents above and beyond the documents already provided, Markowitz responds and objects in whole to the Subpoena because it is premature, seeks irrelevant information, and seeks to impose obligations on non-parties beyond those permitted by applicable law, the Federal Rules of Civil Procedure, or the Local Rules for the U.S. District Court for the District of Oregon. *See* Fed. R. Civ. P. 45(d)(2)(B). In particular:

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

BN 80982954v3

Exhibit A, Page 5
ER-0120

# Buchalter

Mr. Daniel Prince
February 16, 2024
Page 2

- The Subpoena seeks irrelevant information.  None of the additional documents requested by the Subpoena are relevant to the claims and defenses asserted in the above-entitled case.  Moreover, Nike has not demonstrated any particularized relevance or need for the requested documents, whether in the Subpoena or in briefing it has filed relating to Ms. Salerno Owens' inadvertent disclosure.  The Subpoena would result in an undue burden on Markowitz, a non-party in this proceeding.

- The Subpoena seeks information protected from disclosure by Rule of Professional Conduct (RPC) 1.6(a) [the duty of confidentiality], the attorney-client privilege, and/or the attorney work product doctrine.  Moreover, to the extent that the Subpoena requests information from "All Counsel" or "other Counsel," such requests are objected to for violating the common interest privilege.

There are no non-objectionable requests in Nike's Subpoena that Markowitz has responsive documents to produce at this time, other than the documents already filed, or produced to Nike. Markowitz reserves the right to amend or supplement any objection or response to Nike's Subpoena as allowed under the applicable Rules of Civil Procedure.

Sincerely,
BUCHALTER
A Professional Corporation

*David J. Elkanich*

David J. Elkanich

DJE:sr
cc:    Felicia A. Davis  (*feliciaadavis@paulhastings.com*)
       Laura E. Rosenbaum (*laura.rosenbaum@stoel.com*)
       John A. Berg (*jberg@littler.com*)
       Paul E. Cirner (*pcirner@littler.com*)
       Edwin A. Harnden (*eharnden@barran.com*)
       Bruce T. Garrett (*bgarrett@barran.com*)
       Laura L. Ho (*lho@gbdhlegal.com*)
       Barry Goldstein (*bgoldstein@gbdhlegal.com*)
       James Kan (*jkan@gbdhlegal.com*)
       Byron R. Goldstein (*brgoldstein@gbdhlegal.com*)
       Mengfei Sun (*msun@gbdhlegal.com*)
       Craig Ackermann (*cja@ackermanntilajef.com*)
       India Lin Bodien (*india@indialinbodienlaw.com*)

# EXHIBIT B

# Buchalter

805 SW Broadway
Suite 1500
Portland, OR 97205
503.226.1191 Phone
503.226.0079 Fax

File Number: M6473-0004
503.226.8646 Direct
delkanich@buchalter.com

February 28, 2024

**VIA E-MAIL (DANIELPRINCE@PAULHASTINGS.COM)**

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

> Re:  *Cahill, et al. v. Nike, Inc.*
> Case No.  3:18-cv-01477-JR
> Response to Nike, Inc.'s February 22, 2024 Letter

Dear Mr. Prince,

We are in receipt of your February 22, 2024 letter.  I write on behalf of my client, Markowitz Herbold P.C. ("Markowitz"), in response to your letter regarding Markowitz's objections to Nike's Subpoena.

Contrary to your allegations, Markowitz did not make generic, boilerplate objections but rather listed objections that applied to each and every item of discovery requested.  None of Nike's third-party subpoena requests contain requests relevant to the underlying claims or defenses at issue in the litigation.  Nor was this relevance stated in your February 22, 2024 letter.  Ninth Circuit courts do not require opposing counsel to be subject to discovery requests, especially where relevance appears hinged upon pure speculation.  *See, e.g., In re Allergan, Inc*, No. 14CV02004DOCKES, 2016 WL 5922717, at *8 (C.D. Cal. Sept. 23, 2016) (court noting that where the possible relevance "is entirely speculative at this juncture," there was sufficient undue burden to not require opposing counsel to produce documents in response to a third party subpoena.)  Unless Nike can demonstrate that its requested discovery of non-party opposing counsel is somehow relevant to the claims or defenses actually being litigated in this case, the requested discovery is simply beyond the scope of Fed. R. Civ. P. 26.

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

BN 81132117v5

Exhibit B, Page 8
ER-0123

# Buchalter

Mr. Daniel Prince
Re:  *Cahill, et al. v. Nike, Inc.*
February 28, 2024
Page 2

As noted by the Supreme Court in *Hickman v. Taylor*, limitations are placed in the Rules of Civil Procedure to prevent discovery being requested:  "in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry.  And as Fed. R. Civ. P. 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."  *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947).  Not only are Nike's requests irrelevant to the claims and defenses at issue in this litigation, such requests seemingly impinge on protected attorney work product and privileged client confidential information.

As set forth under *Hickman* and subsequent case law, even ordinary, fact-based work product is subject to be produced only after a showing of "substantial need for the information and that the information cannot be otherwise obtained without undue hardship."  *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019).  Markowitz already has provided sufficient documents for Nike, the Media Intervenors, and the Court to fully understand how the inadvertent disclosure occurred.  Markowitz will not permit open-ended discovery into its attorney work product and client confidential information, such as communications with its clients and with co-counsel, where there has been no demonstrated relevance or need for such information.

Additionally, Oregon Rule of Professional Conduct (RPC) 1.6 provides that a "lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation" or the disclosure is permitted under certain enumerated exceptions.  Plaintiffs have not given Markowitz consent to provide any additional client confidential information, including communications amongst plaintiffs' co-counsel and between plaintiffs' counsel and third parties, nor would such disclosure be otherwise permitted by the rule.

As a result, Markowitz is ethically prohibited from providing additional client confidential information in response to any specific request.  Moreover, to the extent your requests either explicitly seek communications with Markowitz's risk management partners, or otherwise seek communications with Markowitz' own lawyers, such communications are protected by the attorney-client privilege and not subject to disclosure.

# Buchalter

Mr. Daniel Prince
Re:  *Cahill, et al. v. Nike, Inc.*
February 28, 2024
Page 3


     For each of those reasons and those provided in Markowitz's Objections to Defendant Nike's Subpoena, Markowitz maintains its objections and has no further documents to produce in response to Nike's Subpoena at this time.

                           Sincerely,
                           BUCHALTER
                           A Professional Corporation

                           David J. Elkanich

DJE:sr

# EXHIBIT C



Edwin A. Harnden
(503) 276-2101
eharnden@barran.com

March 1, 2024

**VIA EMAIL**
Danielprince@paulhastings.com

Mr. Daniel Prince
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

Re:      Defendant Nike's Requests for Discovery to Advance Local Media LLC, d/b/a The
         Oregonian Media Group ("The Oregonian")

Pursuant to Judge Russo's Order, ECF 431, from February 28, 2024 (ECF 431), Nike's discovery
requests (requests for production of documents and interrogatories) directed to The Oregonian are
irrelevant and do not require a response.

                         Very truly yours,

                         BARRAN LIEBMAN LLP

                         Edwin A. Harnden

EAH:tt

601 SW Second Avenue ▪ Suite 2300 ▪ Portland, Oregon 97204-3159 ▪ ph: (503) 228-0500 ▪ fax: (503) 274-1212

# EXHIBIT D

www.bizjournals.com /portland/news/2023/02/23/salerno-owens-markowitz-nike.html

# Holding Court: Meet the employment law attorney taking on Nike

Elizabeth Hayes ⋮ 2/23/2023



© Jerome Hart Photography 2013

*This story is part of a series profiling women of impact in Oregon law.* *You can read them all here.*

## LAURA SALERNO OWENS

**Shareholder, firm president, Markowitz Herbold PC**

**Specialty: employment law, including trade secrets, wage and hour disputes, discrimination, sexual harassment, whistleblower claims and noncompete agreements**

**Hometown: San Fernando Valley of Los Angeles**

**Education: BA in history, UCLA; JD, University of Oregon School of Law**

**Favorite class in law school: Serving as a mediator in small claims court: "One case was over broken lawnmower and which neighbor had to pay for it. It was really about a longstanding dispute, not just**

about the lawnmower."

**Favorite famous lawyer or "fixer": Olivia Pope from "Scandal": "She's always wearing white and dinking red wine, which is very bold. People helicopter in with unsolvable problems, and she finds a way to solve them and looks amazing doing it."**

**Hobbies: coaching the Jefferson High School mock trial team, Lego-building with her kids, ages 7 and 5**

---

When Laura Salerno Owens graduated from college, she set forth on a career as an event planner.

"I didn't know what I wanted to do, but I definitely didn't want to become a lawyer," Salerno Owens said of her younger self.

Then she read something that opened her eyes. Now with 16 years of practice under her belt, Salerno Owens has built a track record of successful litigation and advocacy for clients enmeshed in high-stakes business disputes.

---

*Want more Portland business news? Sign up for the PBJ's email newsletters.*

---

Notably, she has taken on Nike Inc. on behalf of dozens of employees, including women who are seeking class-action status in a sexual harassment equal pay and gender discrimination lawsuit against the sneaker giant.

We asked her about her career path and whether she's ever intimidated by legal adversaries.

**What made you want to become a lawyer?** I read book saying one of the highest indicators of happiness at work is autonomy, being able to choose who you work with and what you do. As a lawyer, you can always hang up your own shingle and choose your own clients. I always had a natural tendency to like to argue and win. I'm a very competitive person by nature.

**Did you play sports growing up?** Girls' soccer was very popular. I was the goalkeeper and an all-city softball player and the catcher. You're seeing a theme. I like to be the one who sees the whole field, tells everyone what to do, like being president of a private law firm. I do like to be the boss.

**Did you consider returning to L.A. after law school?** I always thought I'd go back because that's where my family is, but I was convinced to stay in Oregon because of the incredible legal community here. People are so collegial, and I've had so many great mentors. (U.S. District Judge) Ann Aiken was a role model and demonstrated to me the type of life you can have in Oregon as a lawyer. In L.A., I couldn't be a mother and be in private practice.

**What made you want to go into private practice?** Private law firms, in my mind, were not the space for me. I thought they were for people who want to make a bunch of money or who grew up in the

country club circuit, and I was raised by my single mom in L.A., so that was not my world. There was an on-campus interview program, so I had an opportunity to work for a private firm. I thought I would do it for a year and never left. My first firm was Preston Gates & Ellis (now K&L Gates). I was there over five years, but I discovered I have a passion for employment law and had an opportunity to work for Baran Liebman, a boutique that only does employment law. I wanted to build my own client base. I knew I wanted to be rainmaker, so I wouldn't be assigned cases by anyone else. I was there for two years when I was approached by Dave Markowitz and he gave me the hard sell — "If you come here, you can start the employment law department." I couldn't give up that chance to be the boss, so I joined in 2014, and soon thereafter, I got pregnant. While I was on maternity leave, they made me an equity partner.

What is your role as president of the firm? My role, externally, is to be out in the community representing the firm, but internally, it's like a chief vision officer, reminding people of the focus of the firm and strategic decisions we're making, like hiring, do we require people to come into the office or not, cultural questions. I'm the first woman to hold this role and I think that matters — it imprints on some of the considerations of what we aspire to be.

How do you have time for all that and your caseload? You have to be good at time management. I can aways make time for things I'm passionate about, and the things I'm not passionate about, I have no time for. If you saw my kitchen, it's not that clean.

Is it intimidating to take on a big corporation like Nike? I find it exhilarating, the same feeling you get in your body when you're an athlete before a big game. It's that feeling of I'm ready for this, I've been training for this and bring it on.

Do you love going to trial, battling in the courtroom? Trial work is the frosting on the cake: It may not be the biggest part of the cake, but it's the sweetest. Unfortunately, we're not in trials as much as we used to be for a variety of reasons. It's less frequent across our industry. But when you do get a chance to be in court, there's nothing like it.

What is a career highlight? I would say my first solo jury trial, when I was eight months pregnant. I was representing a company being sued by an employee, and it was memorable not because it was the biggest case I'd handled, but it was an interesting intersection of times in my life. At first, I was concerned — will the jury look at me differently? What am I going to wear? —I'm as big as a house. In the end, it was a great experience.

What was your toughest case? With some of the Nike cases, I've had so many women come and tell me what has happened to them, and they have strong claims, but they're too scared to bring a case publicly because they're worried that they'll be retaliated against and blacklisted in the community. In some ways, Portland is wonderful because it's a small world, but in other ways, it can be inhibiting. That feels really difficult because I want to advocate for them, I know they have rights, but at same time, it would be selfish of me to say go ahead and have your career damaged, so we can

bring this great lawsuit. When the case ends, I go onto the next case, but my client has to live with results for the rest of their life.

Which case do you feel has had the most impact? A particular point of pride in the current lawsuit, the fact the records were unsealed is so important because of the vindication of so many women of what they'd experienced in that company. A lot of individuals were too scared to bring claims, for fear of the truth not being told or swept under the rug. Companies use protective orders to hide the experience women have had and make them feel isolated. Me-too means it's not just you, you're not alone. That, to me, feels like an outsize impact.

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, Oregon  97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>    Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DEFENDANT NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FEBRUARY 28, 2024 FINDINGS & RECOMMENDATION (ECF NO. 431) PURSUANT TO FED. R. CIV. P. 72(b), OR, IN THE ALTERNATIVE, MOTION TO STAY PENDING APPEAL**<br><br><br>**ORAL ARGUMENT AND EXPEDITED HEARING REQUESTED** |

ER-0133

## TABLE OF CONTENTS

Page

LR 7-1 CERTIFICATION ................................................................................................1

I.      PRELIMINARY STATEMENT .........................................................................1

II.     RELEVANT BACKGROUND ...........................................................................4

III.    ARGUMENT ......................................................................................................8

        A.      Standard Of Review ................................................................................9

                1.      The District Court Reviews *De Novo* Recommendations Denying
                        Injunctive Relief Under Federal Rule Of Civil Procedure, Rule
                        72(b). ............................................................................................9

                2.      *De Novo* Review Is Also Appropriate Under Rule 72(a). .........11

        B.      A Clawback Order Is Within The Court's Authority And Necessary Here. .........12

                1.      A Clawback Order Remedies The Oregonian's Participation In
                        Breaches Of Court Orders. ..........................................................13

                2.      The Court Has The Inherent Authority To Remedy The
                        Oregonian's Perpetuation Of Plaintiffs' Breaches Of Court Orders. ........17

        C.      The First Amendment Does Not Bar An Injunction Against The
                Oregonian. .............................................................................................21

                1.      The Oregonian Received The Alleged Complaints From The
                        Court's Processes. .......................................................................21

        D.      The Recommendations Wrongly Deny NIKE Discovery Into Plaintiffs'
                Disclosure. ............................................................................................25

        E.      Preservation Of The Status Quo Pending Appeal Is Necessary Here If
                NIKE's Objections Are Overruled. .......................................................27

                1.      There Will Be Irreparable Injury Without A Stay Pending Appeal. .........28

                2.      At Minimum, A Stay Is Necessary Given NIKE Has Raised
                        Serious Legal Questions. ............................................................29

                3.      The Balance Of Hardships Favors NIKE And Its Employees. ..................30

                4.      Public Interest Favors A Stay Pending Appeal. ..........................30

                5.      The Court Should Hold Oral Argument. ......................................32

IV.     CONCLUSION .................................................................................................33

## TABLE OF AUTHORITIES

Page(s)

CASES

*Al Otro Lado v. Wolf,*
952 F.3d 999 (9th Cir. 2020) ...........................................................................28

*Allen v. Meyer,*
755 F.3d 866 (9th Cir. 2014) ...........................................................................10

*Ball v. Skillz Inc.,*
No. 2:20-cv-00888-JAD-BNW, 2020 WL 10180904 (D. Nev. Nov. 16, 2020), *aff'd,*
*Roe v. Skillz, Inc.,*
858 F. App'x 240 (9th Cir. 2021) ....................................................................29

*Bartnicki v. Vopper,*
532 U.S. 514 (2001)...................................................................................25, 26

*Branzburg v. Hayes,*
408 U.S. 665 (1972)..........................................................................................22

*Chavis v. Whitcomb,*
305 F. Supp. 1359 (S.D. Ind. 1969) ................................................................15

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.,*
No. 21-mc-80091-JST, 2024 WL 393492 (N.D. Cal. Feb. 1, 2024) ...........29, 31

*Denham v. Deeds,*
954 F.2d 1501 (9th Cir. 1992) .........................................................................27

*DKD Elec. Co., Inc. v. Allied Tube & Conduit, Inc.,*
No. CIV 97-1026 BB/LFG, 1998 WL 36030900 (D.N.M. Mar. 19, 1998)...........16

*Doe #1 v. Trump,*
944 F.3d 1222 (9th Cir. 2019) ...........................................................................8

*Eli Lilly & Co. v. Gottstein,*
617 F.3d 186 (2d Cir. 2010)............................................................3, 18, 20, 25

*Engebretson v. Mahoney,*
724 F.3d 1034 (9th Cir. 2013) .........................................................................32

*Feldman v. Ariz. Sec'y of State's Off.,*
843 F.3d 366 (9th Cir. 2016) ...........................................................................28

*Flores v. Barr,*
977 F.3d 742 (9th Cir. 2020), *aff'd,*
3 F.4th 1145 (9th Cir. 2021) ............................................................................30

*Galbreath v. Metro. Tr. Co. of Cal.,*
134 F.2d 569 (10th Cir.1943) ..........................................................................15

ER-0135

*Gartner, Inc. v. Hackett Grp., Inc.*,
   No. 3:23-CV-688 (SRU), 2023 WL 7335943 (D. Conn. Nov. 7, 2023), *appeal filed*
   (2d Cir. Nov. 22, 2023)..............................................................................................10

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ................................................................................10

*Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*,
   860 F.3d 1244 (9th Cir. 2017) .........................................................................24, 25

*GS Holistic, LLC v. Natts Smoke II Inc.*,
   No. CV 22-06840 PSG (AGR), 2023 WL 5017994 (C.D. Cal. July 12, 2023).......................10

*Hartley Pen Co. v. Lindy Pen Co.*,
   16 F.R.D. 141 (S.D. Cal. 1954) ..............................................................................16

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) ................................................................................29

*In re DMCA Subpoena to Reddit, Inc.*,
   441 F. Supp. 3d 875 (N.D. Cal. 2020) ......................................................................9

*In re Special Proc.*,
   291 F. Supp. 2d 44 (D.R.I. 2003), *aff'd*,
   373 F.3d 37 (1st Cir. 2004).....................................................................................32

*In re Zyprexa Injunction*,
   474 F. Supp. 2d 385 (E.D.N.Y. 2007) ............................................................ *passim*

*Ingram v. Pac. Gas & Elec. Co.*,
   No. 12-cv-02777-JST, 2013 WL 6174487 (N.D. Cal. Nov. 25, 2013)....................12

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ..................................................................................29

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994)................................................................................................23

*Memmott v. OneWest Bank, FSB*,
   No. 10-3042-CL, 2011 WL 1559298 (D. Or. Apr. 25, 2011)..................................32

*Mitchell v. Valenzuela*,
   791 F.3d 1166 (9th Cir. 2015) ..................................................................................9

*Nken v. Holder*,
   556 U.S. 418 (2009)..........................................................................................27, 28

*OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*,
   No. 23-CV-1131-BAS-DDL, 2023 WL 8473762 (S.D. Cal. Dec. 7, 2023)...........22

*Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*,
   365 F. Supp. 3d 1129 (D. Or. 2019) ...................................................................11, 12

*Quint v. Vail Resorts, Inc.*,
   89 F.4th 803 (10th Cir. 2023) ..................................................................................9

*Redapt Inc. v. Parker,*
No. 2:20-cv-00862-JRC, 2020 WL 3128859 (W.D. Wash. June 11, 2020) .......................... 20

*Reynaga v. Cammisa,*
971 F.2d 414 (9th Cir. 1992) .......................................................................................... 9

*Rice v. Cayetano,*
941 F. Supp. 1529 (D. Haw. 1996) ............................................................................... 27

*Roe v. United States,*
428 F. App'x 60 (2d Cir. 2011) ..................................................................................... 23

*Salcido v. Ditomas,*
No. 22-15294, 2022 WL 3584903 (9th Cir. Mar. 18, 2022) .......................................... 11

*Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City,*
303 F.3d 959 (9th Cir. 2002) ........................................................................................ 31

*Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs,*
472 F.3d 1097 (9th Cir. 2006) ...................................................................................... 27

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984) ............................................................................................... 23, 24

*Sweet v. City of Mesa,*
No. CV-17-00152-PHX-GMS, 2022 WL 912561
(D. Ariz. Mar. 29, 2022) ............................................................................................. 27

*Tallacus v. Sebelius,*
No. 3:11-CV-833-AC, 2012 WL 1340362 (D. Or. Apr. 18, 2012) ................................. 32

*United States v. Brown,*
250 F.3d 907 (5th Cir. 2001) ................................................................................. 21, 25

*United States v. Reyna-Tapia,*
328 F.3d 1114 (9th Cir. 2003) (*en banc*) .................................................................... 10

*United States v. United Fruit Co.,*
410 F.2d 553 (5th Cir. 1969) ....................................................................................... 12

*Valdez v. City & Cnty. of Denver,*
878 F.2d 1285 (10th Cir. 1989) .................................................................................... 32

*Vinluan-Jularbal v. Redbubble, Inc.,*
No. 2:21-cv-00573-JAM-JDP, 2021 WL 4286539
(E.D. Cal. Sept. 21, 2021) ........................................................................................... 10

*Wachner v. Aramark Educ. Servs., Inc.,*
No. CV 02-528-BR, 2003 WL 23538037 (D. Or. Dec. 12, 2003) .................................. 16

*Walker v. City of Birmingham,*
388 U.S. 307 (1967) .................................................................................................... 30

*Wayside Church v. Van Buren Cnty.,*
No. 1:14-CV-1274, 2023 WL 9064862 (W.D. Mich. Jan. 3, 2023) ............................... 16

*Weeks v. Union Pac. R.R. Co.*,
  No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123 (E.D. Cal. May 4, 2017) ..........................11

*Widjaja v. YUM! Brands, Inc.*,
  No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) ...................15

*Zemel v. Rusk*,
  381 U.S. 1 (1965) .................................................................................................3, 22, 26

STATUTES

28 U.S.C. § 636(b)(1)(A) .................................................................................................9, 11

RULES

FED. R. CIV. P. 72 ..................................................................................................................8

FED. R. CIV. P. 72(a) ...................................................................................................9, 11, 12

FED. R. CIV. P. 72(b) ...........................................................................................9, 11, 30, 33

TREATISES

Wright & Miller, *7C Fed. Prac. & Proc. Civ.* § 1920 (3d ed.) ....................................15

67A C.J.S. Parties § 126 (March 2024) ...........................................................................16

12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure* §
  3068.2 (3d ed. Apr. 2023 update) ................................................................................9

12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure: Civil*
  § 3069 (3d ed. 2018) .....................................................................................................12

Commission on Revision of the Federal Court Appellate System Structure and Internal
  Procedures:  Recommendations for Change, 67 F.R.D. 195 (1975) .......................32

CONSTITUTIONAL PROVISIONS

U.S. CONST., amend I ........................................................................................... *passim*

ARTICLES

Chris Rouch, Kish joins the Oregonian to cover banks and apparel companies, TALKING
  BIZ NEWS, Sept. 25, 2023, https://talkingbiznews.com/media-news/kish-joins-the-
  oregonian-to-cover-banks-and-apparel-companies/ (last visited March 13, 2024) ...............19

Jeff Manning, Class-action lawsuit on Nike:  'where women are devalued and
  demeaned', THE OREGONIAN, Aug. 10, 2018,
  https://www.oregonlive.com/business/2018/08/class-action_lawsuit_on_nike_w.html
  (last visited March 13, 2024) .....................................................................................19

Jeff Manning, Unsealed Nike documents reveal widespread complaints of harassment,
  pay disparities, THE OREGONIAN, Jan. 18, 2023,
  https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-
  widespread-complaints-of-harassment-pay-disparities.html (last visited on March 13,
  2024) ...............................................................................................................................19

Matthew Kish, Deposition shakes up Nike pay discrimination lawsuit; Nike wants it barred, BUSINESS INSIDER, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html (last visited March 13, 2024)...................19

Matthew Kish, Nike executives subjects of sex discrimination, harassment complaints, plaintiffs claim, THE OREGONIAN, Nov. 14, 2023, https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-harassment-complaints-plaintiffs-claim.html (last visited March 13, 2024) ........................................................................................................19

Matthew Kish, Nike says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited March 13, 2024)........................................................................................................19

Matthew Kish, The Oregonian/OregonLive wins decision overturning order in Nike documents case - oregonlivecom, THE OREGONIAN, Jan. 30, 2024, https://www.oregonlive.com/business/2024/01/federal-judge-orders-review-of-ruling-in-dispute-over-nike-documents-after-the-oregonianoregonlive-appeals.html(last visited March 13, 2024) .................................................................................7

**OTHER AUTHORITIES**

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 56 Syracuse L. Rev. 157 (2007)............10

## LR 7-1 CERTIFICATION

Counsel for NIKE certifies that it made a good faith effort to confer with counsel for Advance Local Media LLC, *d/b/a Oregonian Media Group* (the "Oregonian"), Markowitz Herbold PC ("Markowitz"), and Media Organizations Insider, Inc., *d/b/a Business Insider*, American Business Journals, Inc., *d/b/a Portland Business Journal*[1] (collectively, the "Media Intervenors") on March 12, 2024 by email and phone regarding the issues presented in this request. Counsel for the Oregonian indicated that the Oregonian objects to NIKE's request. Counsel for Markowitz and the Media Intervenors did not respond prior to filing.

## I.    PRELIMINARY STATEMENT

This Court is ***not*** powerless to protect itself, its processes, and its orders. The Magistrate's report and recommendations (the "Recommendations") suggest otherwise. Exercising *de novo* review, this Court should:

(1)    Order the Oregonian to return the confidential documents it should not possess.

(2)    Confirm an injunction that bars the Oregonian from using, relying on, or disseminating those documents (or the information they contain).

(3)    Confirm that both Plaintiffs' counsel and the Oregonian are subject to discovery regarding their violation of the protective order and stay orders.

(4)    Issue an order to show cause regarding an appropriate sanction or contempt.

The circumstances of these objections are troubling. This Court and the Ninth Circuit Court of Appeals' orders have been violated by Plaintiffs' counsel with the aid of an intervenor. As a result, the Oregonian possesses confidential discovery documents (unverified complaints) (the "Alleged Complaints") that were to remain confidential pending NIKE's appeal, and if

---

[1] Although the Oregonian remains a Media Intervenor, the Oregonian and Markowitz retained separate counsel after the "inadvertent" disclosure occurred. Dkt. Nos. 409, 413.

Page 1 –  NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

successful, confidential thereafter.   While Plaintiffs' counsel claims the dissemination was inadvertent—a fact unknown, given that requested discovery has been denied—the circumstances of any such disclosure were far from an accident.

Two parties—Plaintiffs (through their lawyer) and the Oregonian (a party through intervention)—purposefully met to discuss unverified and salacious claims made against NIKE employees.   They met *after* this Court had stayed its decision to unredact/unseal the Alleged Complaints so that NIKE could petition the Ninth Circuit for an emergency stay pending appeal, and *after* the Ninth Circuit agreed that the Alleged Complaints should remain redacted/sealed during the pendency of the appeal.   In other words, the identities of complainants, witnesses, and subjects in the Alleged Complaints remained confidential because they were redacted.   The Oregonian could not obtain the redacted information from the Court's files, so Plaintiffs' counsel and the Oregonian's reporter met at a coffee shop to preview these Court records using two different devices, suggesting that they *knowingly* breached the protective order and stay orders issued by this Court and the Ninth Circuit.

If this does not make the Court incredulous, then protective orders and the integrity of court processes should give future litigants little comfort.   The lesson will be that such orders are hollow. The Court should respond and respond robustly.   It should want to know every detail of how its and the Ninth Circuit's orders were violated; it should want that information to be subject to cross examination.   The violations should be cured and a sanction or contempt (if appropriate) should be issued.   This is not a time for timidity.

The Magistrate recognized that "plaintiffs' counsel violated the protective order in place in this case," but then took *no action*.   Dkt. No. 431 at 8.   Why?   Because the Oregonian argued that this was a question of prior restraint on speech and a First Amendment issue.   *Id.*   The

Page 2 –   NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

Magistrate's Recommendations err as a matter of law. There is an antecedent question that comes first. It is a question of whether there is an absolute right to gather information and by any means. The law has already answered that question with an emphatic "***No.***" As Judge Weinstein has explained (quoting the Supreme Court): "'The right to speak and publish does not carry with it the unrestrained right to gather information.'" *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007) (quoting *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965)), *aff'd sub nom. Eli Lilly & Co. v. Gottstein, 617 F.3d 186 (2d Cir. 2010)*. In other words, how information is gathered—particularly when, as here, it implicates orders of the Court—is ***not*** a prior restraint question.

*In re Zyprexa Injunction* and *Eli Lilly*, and a number of other authorities, were before the Magistrate, but are unaddressed in her Recommendations. But they show and confirm that the Court should be looking at the ***breach*** before it looks at the ***speech***. It should be thinking about the integrity of Court orders ***before*** any tacit acquiescence in the violation of those orders. No First Amendment right is chilled or impaired when the Court polices the breach of the very systems—the Court's orders—that are the guardians of rights.

While there are additional legal errors shown below, the Magistrate's Recommendations erred, at bottom, because they got the sequence of the questions wrong. They also erred because they accepted the facts without testing. NIKE has served document requests on both the Oregonian and Plaintiffs' counsel, but they have refused to respond thus far. If this Court has any doubt that NIKE is right—and it shouldn't—it should hold off on ruling until the full factual record of this admitted breach is before the Court. It should authorize discovery, including depositions.

Lastly, it appears likely that whomever loses before this Court on these issues will appeal. If this Court is not convinced that NIKE is correct (and it should be), NIKE asks that the Court do as it did before and preserve the status quo (meaning the bar on use or dissemination remains in

place) pending appeal.  NIKE would ask that the status quo be preserved for the entirety of the appeal, but at a minimum, for fourteen days (14) so NIKE may petition the Ninth Circuit for interim relief.  NIKE also asks that the Court hold oral argument on these objections.

## II.    **RELEVANT BACKGROUND**

Plaintiffs have staked their case on the Alleged Complaints, even though none relate to their allegations regarding pay and promotions.  Dkt. No. 1 ¶ 54.  Following motions to compel and a Court order, the Alleged Complaints were produced to Plaintiffs under the terms of the protective order.  Dkt. Nos. 82, 111.  Media Intervenors then intervened in this action to unseal information in the Alleged Complaints pursuant to the protective order.  Dkt. No. 205.  For almost two years, the Media Intervenors have fought for unfettered access to the names of non-party individuals identified in the Alleged Complaints, who have ***no connection*** to the named Plaintiffs' claims.  *E.g.,* Dkt. Nos. 205, 343, and 383.  NIKE has opposed such attempts to intrude upon the privacy rights of third-party complainants, witnesses, and subjects of these unsubstantiated allegations.  *E.g.*, Dkt. Nos. 219, 345, 376, and 406.

On October 11, 2023, the Magistrate entered findings and recommendations granting the Media Intervenors' request to unseal the non-party names.  Dkt. No. 363.  NIKE filed objections, but this Court adopted the Magistrate's findings and granted NIKE a temporary 7-day stay to seek a stay of the unsealing order from the Ninth Circuit pending appeal.  Dkt. No. 404.

Shortly thereafter, NIKE sought and obtained a temporary stay from the Ninth Circuit, which went into effect on January 11, 2024 and remained in effect until the Ninth Circuit could rule on NIKE's motion to stay pending appeal.  Dkt. No. 407.  The Media Intervenors requested to be added as parties to the appeal and were added as appellees in the same order that granted NIKE's motion to stay this Court's order pending resolution of NIKE's appeal, which was entered by the Ninth Circuit on January 19, 2024 (the "Stay Order").  Dkt. No. 408.

Page 4 –   NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS &
RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

Plaintiffs' counsel violated that order within hours of its entry **with the complicity** of the Oregonian. Ms. Laura Salerno Owens of Markowitz met with Matthew Kish, a business reporter for the Oregonian, to discuss purportedly unconnected allegations raised by a "current or former NIKE employee." Dkt. No. 416 ¶ 2. According to the Oregonian, Ms. Salerno Owens provided a comment and sent three emails to Mr. Kish from two different devices during their meeting—one of which included unredacted copies of the Alleged Complaints. *Id*. ¶ 3. Specifically, Ms. Salerno Owens forwarded a PDF—over half of which contained material (1) that NIKE never publicly filed and only produced subject to the protective order, or (2) that was subject to the Ninth Circuit's Stay Order. Dkt. No. 411 ¶ 9, 411-6.

Ms. Salerno Owens now claims that this disclosure of protected material was "inadvertent," but the circumstances surrounding the disclosure raise questions that have yet to be answered. Plaintiffs chose not to notify NIKE regarding the blatant violation of the protective order and Stay Order until six days later, on January 25, 2024, after it was clear that Plaintiffs could not alleviate the issue on their own. Dkt. No. 426 ¶¶ 3-4; Dkt. No. 416 ¶ 7; Dkt. No. 411 ¶ 19. NIKE has been kept largely in the dark regarding this issue, due to the Oregonian and Markowitz's refusal to provide basic information regarding the purported inadvertent disclosure in response to subpoenas and document requests. To date, neither Markowitz nor the Oregonian have responded to NIKE's discovery relating to the disclosure. Dkt. No. 426 ¶¶ 7-11; Declaration of Daniel Prince ("Prince Decl.") Exs. A-C.

What is clear is that Ms. Salerno Owens met with Mr. Kish on January 19, 2024 to discuss allegations from a NIKE employee raised by Mr. Kish. Dkt. No. 411 ¶ 2. At that time, Ms. Salerno Owens was aware, **at minimum**, that a temporary stay was in effect preventing discussion and disclosure of the redacted/sealed names to the Oregonian. Dkt. No. 407. And her law firm was

apprised of the full Stay Order, which was entered hours before Ms. Salerno Owens breached it. Dkt. No. 426 ¶ 5; Dkt. No. 426-1 at 2-3.  Nevertheless, Ms. Salerno Owens met with Mr. Kish (who, as an employee of the Oregonian, was also subject to the stay order) at a coffee shop to discuss the very documents subject to the nondisclosure order.  And during that meeting, Ms. Salerno Owens forwarded an unredacted PDF to Mr. Kish revealing the names of persons whose identities were supposed to be protected by multiple court orders.  *Id*. ¶ 9.

Rather than immediately notify NIKE regarding the disclosure, Ms. Salerno Owens tried to convince Mr. Kish to return the documents.  Dkt. No. 411 ¶¶ 13-19.  Mr. Kish refused.  Dkt. No. 416 ¶ 7.  Only after, when Ms. Salerno Owens realized that she could not solve the breach, did Plaintiffs inform NIKE.[2]  Dkt. No. 426 ¶ 4.  That same day, Markowitz filed a motion to request return of "inadvertently" disclosed materials.  Dkt. No. 410.  Reserving its rights, NIKE joined the request to secure relief from this Court.  Dkt. No. 426 ¶ 6.  The Magistrate issued recommendations, styled as an order, on that motion on January 26, 2024, noting that the Oregonian is an intervenor in this action for the very purpose of unsealing the documents it has in its possession and is a party to the appeal in which the Stay Order was issued.  Dkt. No. 412.

The recommendations required the Oregonian to:  (1) return the documents by January 31, 2024; (2) agree not to disseminate that information; and (3) destroy any copies in its possession. *Id*.  On January 29, 2024, the Oregonian filed a motion to vacate the Magistrate's order ("Motion to Vacate").  Dkt. No. 414.  On January 30, 2024, this Court granted the Motion to Vacate, but ordered the *status quo* remain in effect until the issues were resolved.  Dkt. No. 417.  The Magistrate then directed the parties to respond to the arguments made in the Motion to Vacate. Dkt. No. 418.  All the while, the same reporter that met with Ms. Salerno Owens to procure the

---

[2] Counsel for the Oregonian made no attempt to notify NIKE about the "inadvertent" disclosure.

disclosure in violation of court orders published articles in the Oregonian decrying the Court's order as unconstitutional.[3]

On February 6, 2024, Plaintiffs and NIKE filed their respective responses to the Oregonian's Motion to Vacate. Dkt. No. 421. NIKE argued, *inter alia*, that the Oregonian is a party litigant that is subject to this Court's orders and inherent authority, and that the Oregonian's unlawful acquisition of the Alleged Complaints nullifies any argument based on First Amendment concerns. Dkt. No. 425. NIKE also requested that the Court issue an order to show cause as to why Markowitz and the Oregonian should not be sanctioned for their breaches. *Id.*

On February 13, 2024, the Oregonian filed its Reply Brief in support of the Motion to Vacate, submitting an improper declaration on reply. Dkt. No. 427; Dkt. No. 428. On February 14, 2024, NIKE filed an (1) objection based on this violation, (2) a renewed request for discovery, (3) a renewed request for oral argument, and (4) a protective request for confirmation that the January 30, 2024 order preserves the status quo until resolution of Federal Rule of Civil Procedure, Rule 72 objections submitted to this Court. Dkt. No. 429.

On February 28, 2024, the Magistrate issued Recommendations again styled as an order. The Magistrate recognized that which was patently obvious (and indeed admitted): "[P]laintiff's counsel violated the protective order in place in this case[.]" *Id.* Notwithstanding the violation, the Magistrate concluded that the Oregonian had no obligation to return the documents at issue because the Oregonian's limited intervention meant it "has not violated any orders to which it is bound" and the Court lacked authority to "restrain the Oregonian from publishing any information

---

[3] *See, e.g.*, Matthew Kish, *The Oregonian/OregonLive wins decision overturning order in Nike documents case - oregonlivecom*, THE OREGONIAN, Jan. 30, 2024, https://www.oregonlive.com/business/2024/01/federal-judge-orders-review-of-ruling-in-dispute-over-nike-documents-after-the-oregonianoregonlive-appeals.html (last visited March 13, 2024).

Page 7 –  NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

ER-0146

contained in the documents or compel their return" because such an order would be an impermissible prior restraint in violation of the First Amendment.    Dkt. No. 431.    The Recommendations also denied NIKE's request for discovery, Dkt. No. 429, but granted NIKE's request for a temporary stay, preserving the status quo pending a decision by this Court regarding any objections to the Recommendations, Dkt. No. 431.  The Recommendations also denied parties request for oral argument.  *Id.*

III.    <u>**ARGUMENT**</u>

In exercising *de novo* review, this Court should set aside the Magistrate's Recommendations because they:  (1) wrongly found that the Court has no authority to remedy the breaches of clear court orders; (2) wrongly conclude that issuing an injunction ordering the Oregonian to return and destroy the materials it received violates the First Amendment; and (3) inappropriately deny NIKE discovery examining the circumstances of the breaches.  Instead, the Court should confirm that the Oregonian *is* ordered to return the Alleged Complaints, that the Oregonian *is* barred from using, relying on, or disseminating those documents (or the information they contain), and order discovery into the circumstances of this breach.  It should also issue an order to show cause why an appropriate sanction should not issue and, if so, as to whom.

Should the Court overrule these objections, NIKE requests that the Court issue a stay pending the resolution of NIKE's appeal because irreparable harm to non-party individuals would occur absent one.  *See* Dkt. No. 408.  At minimum, the Court should issue an administrative stay of fourteen (14) days to allow NIKE to request a stay directly from the Ninth Circuit.  *See* Dkt. No. 407; *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019).

A.    **Standard Of Review**

1.    **The District Court Reviews *De Novo* Recommendations Denying
Injunctive Relief Under Federal Rule Of Civil Procedure, Rule 72(b).**

This Court should exercise *de novo* review of the Magistrate's Recommendations, though

styled as an "Order." Section 636(b)(1)(A) of Title 28 of the United States Code precludes a

Magistrate Judge from issuing ultimate rulings on motions, such as here, that seek injunctive relief.

28 U.S.C. § 636(b)(1)(A). When a Magistrate Judge issues an "Order" on an issue, like injunctive

relief, and a party objects, it "will be governed by the procedures and *de novo* review of Rule

72(b)." 12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure* §

3068.2 (3d ed. Apr. 2023 update); *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 809 (10th Cir. 2023)

("The district court therefore erred by construing the R&R, which considered a motion seeking

injunctive relief, as addressing a nondispositive matter under Rule 72(a) and by applying the

clearly-erroneous-or-contrary-to-law review standard."). The analysis follows a simple sequential

logic.

*First*, a Magistrate Judge's authority is "set by statute," *In re DMCA Subpoena to Reddit,

Inc.*, 441 F. Supp. 3d 875, 881 (N.D. Cal. 2020), and "is limited," *Reynaga v. Cammisa*, 971 F.2d

414, 416 (9th Cir. 1992).

*Second*, the authority of a Magistrate Judge—and derivatively the standard of review upon

objection—is controlled by the type of relief sought in the motion. If the motion "effectively

denie[s]" a request for an injunction even though it is styled as something else, it is subject to *de

novo* review. *Id.*; *cf. Mitchell v. Valenzuela*, 791 F.3d 1166, 1170 (9th Cir. 2015) ("the dispositive

question for us is whether the motion to stay and abey at issue here *was effectively dispositive* of a

claim or defense or of the ultimate relief sought") (emphasis added). If a party objects to an "order"

that addresses something that in essence seeks a form of injunctive relief, then *de novo* review is

compulsory: "The statute makes it clear that the district judge *must* review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (bold emphasis added).

*Third*, courts from around the country (including within the Ninth Circuit) recognize that when a party asks that documents be returned or destroyed, they are seeking a form of injunctive relief. *See, e.g., Gartner, Inc. v. Hackett Grp., Inc.*, No. 3:23-CV-688 (SRU), 2023 WL 7335943, at *1 (D. Conn. Nov. 7, 2023), *appeal filed* (2d Cir. Nov. 22, 2023) ("I find that a preliminary injunction requiring the defendants to return or destroy all confidential and trade-secret documents belonging to Gartner that were allegedly obtained by improper means is appropriate pending the determination of the merits of Gartner's trade secrets claims."); *GS Holistic, LLC v. Natts Smoke II Inc.*, No. CV 22-06840 PSG (AGR), 2023 WL 5017994, at *1 (C.D. Cal. July 12, 2023) ("Plaintiff also seeks injunctive relief for Defendants to be enjoined from infringing on Plaintiff's Marks and for Defendants to destroy all products that infringe on the Marks."). And, of course, a bar on use is a prohibitory injunction. *See, e.g., GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210-11 (9th Cir. 2000) (explaining prohibitory injunction); *Vinluan-Jularbal v. Redbubble, Inc.*, No. 2:21-cv-00573-JAM-JDP, 2021 WL 4286539, at *4 (E.D. Cal. Sept. 21, 2021) (injunction is "prohibitory in that it would prohibit Redbubble from continuing to use" the marks). Even the Oregonian tacitly admits that what is at issue is injunctive relief. Dkt. No. 427 at 3 (*citing* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 56 Syracuse L. Rev. 157 (2007)).

*Fourth*, the Magistrate Judge's styling of the "order" does not matter. If a case makes it to the Ninth Circuit and the Ninth Circuit agrees injunctive relief was sought, it will vacate the "order" and remand for the District Court to exercise *de novo* review. *Allen v. Meyer*, 755 F.3d 866, 869 (9th Cir. 2014) ("On remand, the district court may address the officers' motion to dismiss

in the first instance, or, alternatively, may construe the magistrate judge's order as a report and recommendation and afford the parties reasonable time to file objections."); *Salcido v. Ditomas*, No. 22-15294, 2022 WL 3584903, at *1 (9th Cir. Mar. 18, 2022) ("On remand, the district judge may treat the magistrate judge's December 27, 2021 order as a report and recommendation.").

Here, NIKE is seeking curative injunctive relief, and this Court must exercise *de novo* review of the whole record when considering NIKE's objections.

### 2.    *De Novo* Review Is Also Appropriate Under Rule 72(a).

Even if this Court finds that Rule 72(b) does not control, *de novo* review is appropriate under Rule 72(a), which governs this Court's review of non-dispositive rulings by a magistrate judge. Fed. R. Civ. P. 72(a). The Rule provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A).

Under Rule 72(a), the "contrary to law" standard—which applies to a magistrate judge's finding of law—calls for "independent plenary review." *Weeks v. Union Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123, at *5 (E.D. Cal. May 4, 2017) (sustaining objections to a magistrate judge's order under Rule 72(a) after conducting an independent, plenary review); *see also Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1141-42 (D. Or. 2019) (reversing magistrate judge's order as contrary to law under Rule 72(a) after conducting plenary review). As this Court observed in undertaking plenary review of a decision by a magistrate judge:

> [I]t is also important to avoid the conclusion that district judges are absolutely powerless to alter magistrate-judge resolution of nondispositive matters unless they fall into the clearly erroneous category. . . . Moreover, even for those courts that adhere to a strict application of the 'clearly erroneous' standard, it is limited to factual findings; even the Third Circuit recognized that the phrase 'contrary to law' indicates plenary review as to matters of law. . . . The latter is the situation that we have here.

Page 11 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

*Id.* (quoting 12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure: Civil* § 3069 (3d ed. 2018)) (quotation marks and citations omitted). *De novo* or plenary review still applies to issues involving mixed questions of law and fact. *See, e.g., Ingram v. Pac. Gas & Elec. Co.*, No. 12-cv-02777-JST, 2013 WL 6174487, at *2 (N.D. Cal. Nov. 25, 2013) (observing that under Rule 72(a), "[m]ixed questions of fact and law are reviewed *de novo*") (citation omitted).

Here, NIKE's objections to the Recommendations concern four legal questions, which NIKE addresses in the order of appearance in the Recommendations.

(1)    Whether the Court has the authority to issue a clawback injunction against the Oregonian—a party to the litigation which received documents it should not have received. This is a purely legal question.

(2)    Whether the Court has the inherent authority to issue such an order even without finding that the Oregonian is a litigant subject to the protective order. This is a purely legal question.

(3)    Whether such a clawback injunction violates the First Amendment as a prior restraint or is incident to the Court's power to police its orders. This is a purely legal question.

(4)    Whether discovery can be directed to the Oregonian about the circumstances surrounding this disclosure. This question admittedly implicates both law and fact, but the facts are unknown and untested, which is the point of the request.

Thus, the Recommendations are subject to *de novo* review by this Court.

**B.    A Clawback Order Is Within The Court's Authority And Necessary Here.**

This Court has full authority to order the clawback of the Alleged Complaints. Such a clawback is necessary to remedy Plaintiffs' breaches of multiple court orders and the Oregonian's assistance thereof. Dkt. No. 82 ¶ 17; *United States v. United Fruit Co.*, 410 F.2d 553, 554 (5th

Page 12 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

Cir. 1969) (trial court "did not abuse its discretion in enforcing [a protective] order").

The Magistrate reached two alternative holdings. The Magistrate's first proposed holding is that the Court lacks power to grant injunctive relief to return and bar use of the Alleged Complaints because (the Magistrate believed) the Oregonian is not a "party" and such orders can only issue as to the "parties." Dkt. 431 at 7-8. The Magistrate erred legally as to both assumptions. An intervenor *is* a party, and even if not, the Court could still grant the relief. The Magistrate's second proposed (and tethered) holding—that the relief requested is barred as a prior restraint— also errs as a matter of law. Dkt. 431 at 8-9. The antecedent legal question here is about the *gathering* of the information, not the reporting, and that is entirely within this Court's ability to police (even if that inferentially implicates speech).

### 1.    A Clawback Order Remedies The Oregonian's Participation In Breaches Of Court Orders.

The Recommendations err in accepting the Oregonian's own self-serving characterization of its role in this matter and holding that "the Oregonian is not a party to this action for purposes of the protective order." Dkt. No. 431 at 7. Based on this limitation, the Recommendations held that the protective order cannot apply to the Oregonian because it prohibits "*part[ies]*" from using confidential discovery information for "any business, commercial, or competitive purpose." *Id.* at 8. But the protective order does not define or qualify "party," as the Recommendations do. Instead, the protective order refers to the parties to the litigation. Dkt. No. 82. The Oregonian is a party. It chose to be one. And it did so for the very purpose of gaining access to documents that it was prevented from accessing due to the operative protective order in this litigation. Dkt. No. 205 at 4-5, 9 (acknowledging that intervention is used to "challenge protective orders"), 11.

While the Oregonian argues it is not a party to the case, its actions show otherwise. In fact, as the Recommendations note, before the Court ruled on the motion to intervene, the Oregonian

"was mistakenly granted access via ECF/PACER to—and as a result, on June 3, 2022, obtained—unredacted copies of three theretofore non-public documents filed by the plaintiffs in this case." Dkt. No. 255 at 2. The Oregonian "disclosed a piece of non-public information contained in one of them . . . to a reporter for [the Oregonian]." *Id.*

After "realizing" that "they were not the publicly filed versions of those documents,"—despite the bold-faced font stating, "**FILED UNDER SEAL**"—the Oregonian's attorney "promptly took appropriate steps, including notifying the Court on June 6, 2022, that she had access via ECF/PACER to unredacted, non-public documents on the docket in this case." Dkt. No. 255 at 2; *see* Dkt. Nos. 146 at 1, 240 at 1, 241 at 1 (Documents the Oregonian "mistakenly" accessed all stating **"FILED UNDER SEAL"** on the first page).

Evidently, the Oregonian considered itself a party subject to the Court's protective order; otherwise it would have done nothing in response to "mistakenly" being granted access to non-public records. The Oregonian cannot, on one hand, acknowledge the application of the Court's protective order and then, on the other hand, disavow any obligation to comply with the same.[4]

Moreover, by seeking to unseal the Alleged Complaints and other documents under the protective order, the Oregonian not only became a ***litigant*** or a ***party*** subject to Court orders, but also tied itself to the protective order. Indeed, the Oregonian's ***sole goal*** in intervening in this litigation was to publish information that was prohibited from being publicized under the

---

[4] The Recommendations err by failing to make this connection. Nor has the Oregonian been held to account for why it waited three days to inform the Court that it "mistakenly" accessed other non-public documents. Nor has the Court held the Oregonian's attorney to account for distributing non-public records directly to the Oregonian. As an officer of the Court, the Oregonian's counsel should know better. Rather than inquire into how the Oregonian's attorney thought the records were public despite them being clearly marked **"FILED UNDER SEAL**," it was simply deemed an honest mistake, leaving NIKE with no ability to protect its confidential records.

Page 14 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

protective order—*i.e.*, to **modify** the treatment of documents under the protective order.[5] **To hold that the Oregonian can challenge the protective order while avoiding the very restrictions it challenges (namely, the ability to access and publicly disseminate documents) would produce an absurd result.**

On a broader level, the Oregonian's actions of intervening in this matter confirm its decision to step into the jurisdiction of this Court and avail itself of the judicial processes to obtain confidential documents to its benefit. By doing so, the Oregonian "join[ed the litigation] subject to the proceedings that have occurred prior to his intervention[.]" Wright & Miller, 7C *Fed. Prac. & Proc. Civ.* § 1920 (3d ed.). Contrary to what is offered in the Recommendations, it is irrelevant that "[i]ntervention was granted well after the Court entered the stipulated protective order[.]" Dkt. No. 431 at 7. Rather, it is well established that "one who intervenes in a suit in equity thereby becomes a party to the suit, **and is bound by all prior orders** and adjudications of fact and law as though he had been a party from the commencement of the suit." *Galbreath v. Metro. Tr. Co. of Cal.*, 134 F.2d 569, 570 (10th Cir.1943) (emphasis added); *see also Widjaja v. YUM! Brands, Inc.*, No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040, at *3, 8 (E.D. Cal. Oct. 22, 2009) (intervenors, which intervened for the "limited purpose of striking the class action allegations or for stay of overlapping claims," were "treated as if the intervenor[s] were an original party and has equal standing with the original parties"); *Chavis v. Whitcomb*, 305 F. Supp. 1359, 1363 (S.D. Ind. 1969) ("It is a general principle that intervening defendants enter the case as they find it, **bound**

---

[5] Plaintiffs' counsel agrees. *See* Dkt. No. 434 at 2 ("The Oregonian intervened in this matter to seek discovery of documents subject to the same Protective Order.") & 3 ("The Oregonian inserted itself into this case as an intervening party, and after having been granted leave to intervene, the Oregonian successfully moved the Court to unseal documents (ECF 273), and to peel back redactions of other previously-sealed documents. (ECF 363.) The Court should therefore be permitted to find that The Oregonian, as an intervening party, should be held to the obligations of the Protective Order.").

*by all orders and proceedings* prior to the date of intervention.") (emphasis added).[6]  The limits on the Oregonian's participation in the proceeding does not absolve it of the duty to adhere to court orders—particularly so when the whole point of its intervention was the order in question.

Thus, the protective order's restrictions apply to the Oregonian.  But perhaps more importantly, with the potential benefits of becoming a litigant to modify the protective order also comes the burdens placed on litigants and the Court's power to enforce its orders and safeguard its litigants.  "The Court has inherent authority to enforce its orders[,]" *Wachner v. Aramark Educ. Servs., Inc.*, No. CV 02-528-BR, 2003 WL 23538037, at *3 (D. Or. Dec. 12, 2003), a power that "carries with it the equal power to punish for a disobedience," *In re Zyprexa Injunction,* 474 F. Supp. 2d at 417-18 (citation omitted).  The Oregonian was not supposed to have the Alleged Complaints.  It only does so because "plaintiffs' counsel violated the protective order," *with the active participation of the Oregonian*.  Dkt. No. 431 at 8.

Whether or not the Oregonian is subject to the protective order itself matters not when determining whether a court may take actions to enforce its orders and remedy their breach. *In re*

---

[6] NIKE advised the Magistrate of this law in its papers.  *See* Dkt. 425 at 12-13.  Yet, the law was not referenced in the Recommendations.  It is hornbook law that "[a]fter intervention, the intervener generally is subject to, or governed by, the rules of practice which apply to other parties." 67A C.J.S. Parties § 126 (March 2024).  Meaning, the Oregonian is subject to the Court's rules and orders.  Having intervened—and having intervened regarding the protective order—the Oregonian certainly *was* a party at least with respect to the confidential materials it sought.  *DKD Elec. Co., Inc. v. Allied Tube & Conduit, Inc*., No. CIV 97-1026 BB/LFG, 1998 WL 36030900, at *2 (D.N.M. Mar. 19, 1998)* ("Following federal procedure, the generally recognized rule is that once intervention is granted, the intervenor becomes a party. . . .").  "[O]nce intervention has been granted the intervener becomes a 'party', within the meaning of the Rules[.]"  *Hartley Pen Co. v. Lindy Pen Co*., 16 F.R.D. 141, 153 (S.D. Cal. 1954).  While of course, "courts may use their inherent discretion to place appropriate conditions or restrictions on an intervening party, *but there is no denying that an intervenor becomes a party to the case*." *Wayside Church v. Van Buren Cnty*., No. 1:14-CV-1274, 2023 WL 9064862, at *1 (W.D. Mich. Jan. 3, 2023)* (emphasis added; collecting authority).  None of the authority cited in the Recommendations at page 7 is to the contrary.

Page 16 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

*Zyprexa Injunction,* 474 F. Supp. 2d at 417-18 ("It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process") (citation omitted).   An order was violated and the Oregonian is now a litigant subject to the Court's authority.   ***To hold that the Court cannot remedy a clear breach of Court orders would render it powerless against litigants conspiring to achieve the disclosure of confidential documents subject to a protective order.*** This cannot be the result.   It would create a loophole to protective orders that would render them meaningless in the face of the press intervening to gain access to such documents.

Finally, the Recommendations ignore that, in the Ninth Circuit appeal, the Oregonian is an "appellee"—*i.e.,* "part[y] to this appeal" (not an intervenor).   Dkt. No. 408.   The Ninth Circuit Stay Order, which prohibited the unsealing and dissemination of non-party names identified in the Alleged Complaints, undoubtedly applies to the Oregonian as a party to the appeal.   *Id.*   At least *some* of the documents that were disclosed to the Oregonian contained information subject to the Stay Order.   Dkt. Nos. 411 ¶ 9, 411-6.   The Recommendations do not discuss the impact of the Stay Order or Mr. Kish and Ms. Salerno Owens' clear violation of that order, which was thereafter entered in this Court.   *Id.*; Dkt. No. 408.   This breach presents separate grounds by which the Court may issue an injunction requiring the return of the Alleged Complaints.   The Court should use its inherent authority to protect the judicial process from such violations.

   2.   **The Court Has The Inherent Authority To Remedy The Oregonian's Perpetuation Of Plaintiffs' Breaches Of Court Orders.**

While the Oregonian is a party subject to the Court's orders (as explained above)—and that adds to the weight of the error—party status is not a condition precedent to an injunctive clawback order and bar.   Even ***without*** party status, the Court's inherent authority to enforce its orders, including protective orders, reaches beyond parties to the litigation to ***even non-parties*** who

improperly obtained the materials from a party to the litigation—*i.e.*, "third parties who aid and abet the violation of their protective orders." *Eli Lilly*, 617 F.3d at 195.

The Second Circuit held as much in *Eli Lilly*.  NIKE cited to *Eli Lilly* in its papers before the Magistrate.  Dkt. No. 425 at 7, 14.  Yet, the Recommendations neither mention nor distinguish *Eli Lilly's* analysis of the Court's power.  This Court should not repeat that error because *Eli Lilly* confirms that this Court has power to reach the Oregonian even if the Oregonian had no party status at all.

In *Eli Lilly*, the plaintiff's expert witness received documents pursuant to a protective order from company Eli Lilly.  *Eli Lilly*, 617 F.3d at 189.  The expert hoped to distribute them to the media.  *Id.*  Not wanting to violate the protective order overtly, the expert instead conspired with third parties to construct a "lawful" and "independent" means of publicizing the documents.  *Id.* at 193.  The expert reached out to a reporter, who put him in touch with an attorney, who, in turn, intervened in an unrelated case and subpoenaed the expert to produce the confidential documents. *Id.* at 189.  The Court held that injunctive relief requiring a return of the documents was a "perfectly appropriate device to foreclose further dissemination of the confidential documents produced under the protective order."  *Id.* at 196.  The Second Circuit reasoned:

> If courts cannot bind third parties who aid and abet the violation of their protective orders, then any party, agent, attorney or expert who comes into possession of material he wanted to use against the producing party could simply disseminate the information quickly, then deal with the damages issue after the fact.  We understand the threat of a sizable damages award may deter this action in some cases, but [the] proposed rule would eviscerate [the] courts' ability to manage discovery and, hence, litigation.

*Id.* at 195.

The same principles apply here.  Many of the details surrounding this supposed "inadvertent disclosure" are unknown (and must still be discovered).  But the little information that is known—at best—confirms a breach; at worst, it suggests coordinated impropriety.  Both

Page 18 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

Plaintiffs' counsel and the Oregonian knew the Alleged Complaints were not to be distributed to the Oregonian pending the Ninth Circuit appeal.  Dkt. Nos. 411 ¶ 13, 407.  Ms. Salerno Owens was aware of such fact because she receives this Court's ECF notifications, Dkt. Nos. 426 ¶ 5, 426-2, but still she shared the Alleged Complaints in person via two different devices.  Dkt. No. 416 ¶ 3.  These actions alone suggesting a conscious and collaborative effort between parties, but also:

- Ms. Salerno Owens has stoked publicity surrounding this litigation as a pressure tactic and appears to have an ongoing, working relationship with the Oregonian and Mr. Kish;[7]

- Ms. Salerno Owens has previously denounced the protective order in this matter as "hid[ing] the experience women have had" in an article published in the Portland Business Journal;[8]

---

[7] *See, e.g.*, Matthew Kish, Nike executives subjects of sex discrimination, harassment complaints, plaintiffs claim, THE OREGONIAN, Nov. 14, 2023, https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-harassment-complaints-plaintiffs-claim.html (last visited March 13, 2024); Jeff Manning, Unsealed Nike documents reveal widespread complaints of harassment, pay disparities, THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited on March 13, 2024); Jeff Manning, Class-action lawsuit on Nike: 'where women are devalued and demeaned', THE OREGONIAN, Aug. 10, 2018, https://www.oregonlive.com/business/2018/08/class-action_lawsuit_on_nike_w.html (last visited March 13, 2024); Matthew Kish, Nike says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited March 13, 2024); Matthew Kish, Deposition shakes up Nike pay discrimination lawsuit; Nike wants it barred, BUSINESS INSIDER, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html (last visited March 13, 2024).

[8] Prince Decl. Ex. D; Chris Rouch, Kish joins the Oregonian to cover banks and apparel companies, TALKING BIZ NEWS, Sept. 25, 2023  https://talkingbiznews.com/media-news/kish-joins-the-oregonian-to-cover-banks-and-apparel-companies/ (last visited March 13, 2024).

Page 19 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

- Ms. Salerno Owens apparently asked her team, prior to meeting Mr. Kish, to compile the PDF that she would later send to Mr. Kish (*see* Dkt. No. 411 ¶ 4);

- Purportedly, neither Ms. Salerno Owens nor her team noticed the PDF contained significantly more pages of Alleged Complaints than what is available publicly (*compare* Dkt. No. 411 ¶ 9 *with* Dkt. Nos. 284-6 (Ex. 50), 285-1 (Ex. 52), 290 (Ex. 9)); and

- Both Plaintiffs' counsel and the Oregonian kept the news of their breach from NIKE and two different courts (this one and the Ninth Circuit) for six days.

Much like *Eli Lilly*, the Oregonian, at a minimum, acted in concert with Plaintiffs in breaching the Court's protective order and the Ninth Circuit's Stay Order. Whether or not these violations were intentional is yet to be clear, but at the very least, the record reflects that the Oregonian knew the Plaintiffs violated both of these orders by giving them the Alleged Complaints. The Court has the power to issue injunctive relief to clawback the Alleged Complaints so that the Plaintiffs and "other persons who may be in active concert or participating with [them]" (including the Oregonian) are prevented from benefiting from their breach of these court orders. *See Redapt Inc. v. Parker*, No. 2:20-cv-00862-JRC, 2020 WL 3128859, at *1, 6 (W.D. Wash. June 11, 2020) (granting an order barring the use of stolen confidential information "binding on any such person who has or may have access to the information, devices, or materials that are the subject of this order and who received actual notice of this Order").

In the decision the Second Circuit *affirmed* in *Eli Lilly*, venerated Judge Jack Weintsetin held that "[t]he necessity of enjoining dissemination and requiring return of the sealed documents ***is not limited to those*** who were bound by the terms of [the Protective Order.]" *In re Zyprexa Injunction*, 474 F. Supp. 2d at 427 (emphasis added). Instead, "[t]he power to enjoin extends to

persons and organizations whose activities present a risk of irreparable harm to petitioner that can not be alleviated by means other than injunction." *Id.* So too here. The Magistrate erred in her legal conclusion otherwise.

### C.    The First Amendment Does Not Bar An Injunction Against The Oregonian.

The Magistrate's Recommendations also erred in its alternative proposed holding that the First Amendment's prior restraint doctrine governs. It does not. Because the Oregonian received these documents from sources in this litigation—*i.e.*, Plaintiffs' counsel who received them from discovery—constitutional concerns do not bar the Court from remedying the breaches or prohibiting the exploitation of court processes. In a decision NIKE cited in its papers, but which the Magistrate's Recommendations fail to address, the Fifth Circuit held that "the right to gather news, much like other first amendment rights, is not absolute. . . ." *United States v. Brown*, 250 F.3d 907, 914 (5th Cir. 2001). "[A] trial court may refuse to allow the media to inspect documents not a matter of public record, including jurors' names and addresses; *such orders are distinct from prior restraints.*" *Id.* at 914-15 (emphasis added). "To the extent [such] orders warned the media not to publish information illegally gleaned from confidential court files, it was justified." *Id.* In other words, when the Court polices it rules, its files, its orders, and says that breaches of them are enforceable, "*such orders are distinct from prior restraints.*" *Id.* (emphasis added).

### 1.    The Oregonian Received The Alleged Complaints From The Court's Processes.

The Recommendations err in framing the question of whether the Court may issue an injunction ordering the return (and preventing the dissemination of) the Alleged Complaints as a prior restraint on speech. Dkt. No. 431 at 8-9 (". . . before the Court can restrain the Oregonian . . ."). But the question here is not about "prior restraint." This is a derivative question that only arises after a conclusion that such doctrine can apply in the first place. The start of this analysis

lies in whether the Oregonian properly obtained these documents and whether it has an unrestrained right to secure protected documents through its reporters. Because the Recommendations improperly framed the question—and skipped this important step—they reached the wrong conclusion, holding that only an "exceptional case" could allow a clawback order.

From a Constitutional perspective, the first question that the Court must address is not whether speech may be restrained, but rather whether the Oregonian had the right to acquire these documents in any manner it sees fit—here, from counsel to a party to this litigation in violation of two court orders. The focus is on gathering, not publication, because an injunction clawing back the Alleged Complaints would come only *as a consequence* of an antecedent violation using the Court's inherent powers to protect itself and the parties before it. The Supreme Court has made clear that "[t]he right to speak and publish *does not carry with it the unrestrained right to gather information*." *Zemel*, 381 U.S. at 16-17 (emphasis added). "It has generally been held that the First Amendment *does not guarantee the press* a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) (emphasis added). The Supreme Court in *Branzburg* explained:

> Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, [judicial] conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations. Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal.

*Id*. at 684-85.

The Magistrate's Recommendations do not address *In re Zyprexa Injunction* despite NIKE raising it in its briefing—and despite other courts within this Circuit recognizing its importance, *see, e.g.*, *OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*, No. 23-CV-1131-BAS-DDL, 2023

Page 22 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

WL 8473762, at *3 (S.D. Cal. Dec. 7, 2023) (citing *In re Zyprexa Injunction* (474 F. Supp. 2d at 406) for proposition that "in some circumstances, compelling deposition testimony and production of documents may be reasonable sanctions for violating a protective order"), and still others recognizing its import on the integrity of court processes, *see, e.g.,* *Roe v. United States*, 428 F. App'x 60, 66 (2d Cir. 2011) (citing *In re Zyprexa Injunction* (474 F. Supp. 2d at 417) as good law for requiring the return of sealed documents pursuant to the court's "inherent authority to enforce [its] orders"). *In re Zyprexa Injunction* explains this concept that the question of "prior restraint" is derivative from the right to news-gather inquiry.  It understood the question was the Court's power to protect its own protective orders.  *See generally* *In re Zyprexa Injunction*, 474 F. Supp. 2d at 422-24.  In addressing the First Amendment, the *In re Zyprexa Injunction* court concluded that an order to return documents obtained in breach of a protective order did not infringe on "*expression*" because the *acquisition* was unlawful:  "Injunctions 'issued not because of the content of petitioners' expression . . . but because of . . . prior unlawful conduct' are content neutral." *In re Zyprexa Injunction*, 474 F. Supp. 2d at 420 (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764-65 (1994)).

Indeed, this policing of the ***acquiring*** of information has already been ***endorsed*** by the Supreme Court.  In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the Supreme Court addressed whether a litigant could seek a protective order that prohibited the petitioner from disseminating information gathered through discovery.  The Court emphasized that its conclusion rested on where information was sourced from—a party "may disseminate the identical information covered by the protective order as long as the information is gained ***through means independent of the court's processes***." *Id.* at 33-34 (emphasis added).  Thus, "continued court control over the discovered information does not raise the same specter of government censorship

that such control might suggest in other situations."  *Id*. at 32.

What the Oregonian received here are not only publicly-filed documents sealed by the Stay Order, but **documents that have never been filed—period.**  The Court was and is allowed to prevent the Oregonian's access to these documents, as confidential discovery materials, without infringing on free speech concerns.  Its continued control over this access—and remedy of the **breach** of that control—is likewise not an impingement on the First Amendment under *Seattle Times*.

The Ninth Circuit has confirmed this.  In *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017), the Ninth Circuit explained that the law **permitted** a District Court order barring the press from using **litigation** documents, so long as it did not bar the press from using "independent sources" to gather the information.  *Id*. at 1257-58.  The Ninth Circuit clarified:  "By independent source, we mean what the district court implied: Ground Zero may discuss and distribute the documents in question **so long as it acquires the documents from a source not involved in this litigation[.]**"  *Id*. at 1258 (emphasis added).

Plaintiffs' counsel is undoubtedly a "source [ ] involved in this litigation."  *Id.*  The Oregonian would never have had the Alleged Complaints **but for** this litigation.  NIKE produced the documents to Plaintiffs pursuant to the protective order and upon a motion to compel.  The Alleged Complaints have been subject to hundreds of pages of briefing—briefing in which the Oregonian itself participated.  Plaintiffs then gave those produced (but not publicly filed) documents to the Oregonian.  In short, the Oregonian only gained access to the Alleged Complaints because they were produced in this litigation.  There could be no more precise definition of a "litigation source."

By failing to acknowledge *Ground Zero*, the Recommendations misinterpreted *Seattle*

*Times* to hold that "the Oregonian's possession of these documents did not involve any Court process emanating from this case." Dkt. No. 431 at 8. As *Ground Zero* holds, however, non-public discovery from a litigant is a litigation source.

Even Plaintiffs' counsel agrees that the Oregonian's acquisition of these materials was through this litigation. Dkt. No. 421 at 2 ("Stated another way, absent normal discovery process, the Oregonian would have never obtained these documents[.]"). If the Oregonian were right, the press could freely induce litigants to release confidential documents produced in discovery—an outcome that will teach litigants that they cannot trust that protective orders will be honored or enforced. This absurd result can be avoided by policing the parties and the protective and stay orders here. This Court has full authority to do so without a "prior restraint" worry, as *Brown*, *In re Zyprexa Injunction*, and *Eli Lilly* teach.

### D.    The Recommendations Wrongly Deny NIKE Discovery Into Plaintiffs' Disclosure.

The Recommendations also err in denying NIKE's request for discovery. The Recommendations decline NIKE's request based on the mistaken proposition that the Oregonian was non-complicit in the breach, indicating NIKE's request was "irrelevant to the Oregonian's First Amendment rights." Dkt. No. 431 at 9. As explained above, the Oregonian had an extensive role in this litigation prior to coming into possession of the Alleged Complaints. The Recommendations permitted no discovery and held no argument. *See also* Prince Decl., ¶ Ex. C (in its March 1, 2024 letter, the Oregonian resisted discovery citing the Magistrate's Recommendations, and stating that the NIKE's discovery is "irrelevant and do[es] not require a response."). But as the law recognizes, if the source documents are not returned in circumstances such as these, ***factual*** issues appear.

While *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) says a "***stranger's*** illegal conduct

does not suffice to remove the First Amendment shield from speech about a matter of public concern," *id.* (emphasis added), the Oregonian and Plaintiff's counsel ***were no strangers***.  ***They agreed to meet the day the Ninth Circuit's Stay Order was issued.***  They had met *before*.[9]  They were looking and sorting through documents tied to this litigation (using an iPad and mobile devices, to evade the protective order's safeguards).  Dkt. No. 416 ¶ 3.  They both had knowledge of the Court's orders.  Both knew that the protected Alleged Complaints should not have been shared.  Dkt. No. 426 ¶ 5, Dkt. No. 426-1 at 2-3.

As Judge Weinstein held in *In re Zyprexa Injunction*, *Bartnicki* is inapplicable in circumstances like this one:  "Affirmatively inducing the stealing of documents is treated differently from passively accepting stolen documents of public importance for dissemination." *In re Zyprexa Injunction*, 474 F. Supp. 2d at 396.  In *In re Zyprexa Injunction*, a reporter knew of a protective order and yet facilitated the sharing of protected materials.  Faced with future publications by others, the Court *enjoined* the use of the documents and then held a "full evidentiary hearing." *Id.* at 408.  Witnesses were called, and importantly, cross-examined. *Id.* at 408.  Discovery was *permitted*. *Id.* at 406.

Contrary to the Recommendations' conclusion here that NIKE's "request for discovery into the circumstances of the disclosure are irrelevant to the Oregonian's First Amendment Rights[,]" Dkt. 431 at 9, the sought after discovery was to test whether the Oregonian had any First Amendment rights *at all*.  Again, as Judge Weinstein explained, "[n]onparties who are prohibited from accessing confidential documents by CMO-3 cannot claim an infringement on their freedom of speech:  'The right to speak and publish does not carry with it the unrestrained right to gather information.'" *In re Zyprexa Injunction*, 474 F. Supp. 2d at 423 (quoting *Zemel*, 381 U.S. at 16–

---

[9] *See, supra* n.7.

17).  Instead, the question turns on the facts—and here the facts have been left untested and accepted at face value.  The Recommendations endorse the Oregonian's view that they were "engaged in the newsgathering process," Dkt. No. 431 at 6, but as discussed above, information gathering *does not* share the same First Amendment protections—leading either to the conclusion that NIKE should prevail (because of the orders alone) or that the Oregonian's factual claims should be tested and not just accepted.[10]  Cross-examination—either through discovery or an evidentiary hearing—is "necessary to truthful factfinding[.]"  *Denham v. Deeds*, 954 F.2d 1501, 1503 (9th Cir. 1992).  This error should be remedied.

## E.      Preservation Of The Status Quo Pending Appeal Is Necessary Here If NIKE's Objections Are Overruled.

If the Court adopts the Magistrate's Recommendations, the Court should preserve the status quo and at least bar any use until after the Ninth Circuit rules on any appeal, or at a minimum, for fourteen (14) days so that NIKE may ask the Ninth Circuit for an injunction pending appeal.  *See, e.g.*, *Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2022 WL 912561, at *3 (D. Ariz. Mar. 29, 2022) (the *Nken*[11] factors apply "when the parties seek to stay the *effect* of a court's order") (emphasis in original); *Rice v. Cayetano*, 941 F. Supp. 1529, 1553 (D. Haw. 1996) (denying a motion for preliminary injunction, but "stay[ing] the effect of its order . . . to allow the plaintiffs an opportunity to appeal th[e] order").  As borne out by the Ninth Circuit's earlier order preserving the status quo pending appeal, *see* Dkt. No. 408, this Court and the Ninth Circuit both understand the importance of preserving appellate rights—and forestalling actions until legal rights can be determined.  *See, e.g.*, *Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097,

---

[10] Since the Magistrate issued her Recommendations, both the Plaintiffs and the Oregonian have refused to respond to discovery about what happened, hiding the circumstances of an admitted breach.  *See* Prince Decl., Exs. A-C.

[11] *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

1100 (9th Cir. 2006) ("In deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties.") (citations and quotation marks omitted).

The injunction analysis pending appeal is comparable to an appellate stay and in turn comparable to a preliminary injunction analysis. *See, e.g.*, *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) ("The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction."); *Nken*, 556 U.S. at 434 ("There is substantial overlap between these and the [stay] factors governing preliminary injunctions[.]").  NIKE satisfies the four factors considered in deciding whether to stay the effect of any order:  "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006-07 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434-435).  In considering the stay request, this Court applies a "sliding scale" approach such that "a stronger showing of one element may offset a weaker showing of another."  *Id.* at 1007.

## 1.    There Will Be Irreparable Injury Without A Stay Pending Appeal.

Non-parties to this suit will be irreparably harmed absent a stay pending an appeal of the Recommendations.  As the Oregonian has made clear, it does not intend to comply with this Court's protective order or the Ninth Circuit's Stay Order.  It will immediately publicize the Alleged Complaints protected by the stay—which the Ninth Circuit has already confirmed will cause irreparable harm, Dkt. No. 408—***and*** the remaining contents of the Alleged Complaints, much of which has never been filed in this action.  Thus, the necessary result from the absence of a stay is not that individuals may log onto PACER to view documents used in support of the

Page 28 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

parties' claims and defenses; it is that the broader public will have immediate access to confidential

discovery materials never filed in this case via the Oregonian's (and likely others') publication.

"[T]he wrongful disclosure of sensitive information is inherently irreparable." *CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*, No. 21-mc-80091-JST, 2024 WL 393492, at *3 (N.D. Cal. Feb. 1, 2024) (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010)). Publication of the Alleged Complaints will bring embarrassment, emotional damage, and reputational harm to individuals named within them—*e.g.*, loss of professional opportunities, personal humiliation and ridicule, impacted personal and professional relationships and networks, etc. Once publicized, the information within them can never be fully clawed back. *See Ball v. Skillz Inc.*, No. 2:20-cv-00888-JAD-BNW, 2020 WL 10180904, at *2 (D. Nev. Nov. 16, 2020), *aff'd, Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir. 2021) (finding irreparable injury absent stay because of inability to claw back revealed information from public record).

This irreparable harm also frustrates multiple appeals. "An appeal after disclosure" cannot vindicate the "irreparable harm a party likely will suffer if [documents are] erroneously . . . disclose[d]." *Hernandez*, 604 F.3d at 1101 (citation omitted). Any appeal of this issue, as well as the unsealing of the individuals' names already on appeal, may be mooted by the Oregonian's publication.

### 2.    At Minimum, A Stay Is Necessary Given NIKE Has Raised Serious Legal Questions.

NIKE's likelihood of success on appeal also weighs in NIKE's favor. At this stage, NIKE need only establish that success is a "reasonable probability," a *fair prospect*," or that "serious legal questions are raised." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-968 (9th Cir. 2011) (citations omitted, emphasis in original). The Ninth Circuit has maintained that none of these standards "demand a showing that success is more likely than not." *Id.* at 968. Here, NIKE has

shown a "reasonable probability" and "fair prospect" necessary to "articulate the minimum quantum of likely success necessary to justify a stay." *Id.* at 967 (citation omitted). As mentioned above, NIKE has satisfied this standard because *de novo* review of the Recommendations indicate they should be vacated under Federal Rule of Civil Procedure, Rule 72(b), for the reasons set forth above. This issue was wrongly framed as an issue of constitutional concerns, rather than one of judicial integrity. NIKE's demonstrated "fair prospect" on appeal is further amplified given the palpable risk of irreparable harm. *See Flores v. Barr*, 977 F.3d 742, 746 (9th Cir. 2020), *aff'd*, 3 F.4th 1145 (9th Cir. 2021); *see also* Dkt. No. 407 (based on the stay factors, the Ninth Circuit already granted NIKE a stay pending appeal).

### 3.    The Balance Of Hardships Favors NIKE And Its Employees.

A stay would not injure any interested party. The Oregonian was never supposed to obtain these documents. It has no property rights or any constitutional rights to the Alleged Complaints. Nor does the Oregonian's impatience warrant disregarding the judicial process. Although "[o]ne may sympathize with the petitioners' impatient commitment to their cause . . . respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Walker v. City of Birmingham*, 388 U.S. 307, 321 (1967). If the Oregonian can convince the Ninth Circuit that it has a right to publish the Alleged Complaints, it will have lawful access in due course. And if the Oregonian is not ultimately entitled to these documents, the Oregonian will suffer no harm. In fact, returning the documents is the ***only way to ensure that no one is harmed***.

### 4.    Public Interest Favors A Stay Pending Appeal.

NIKE's position protects various significant public interests. First, granting a stay would preserve the integrity of the judicial system, by preserving NIKE's right to appeal not one, but two orders. And because the merits of NIKE's appeals impact public interests in their own right—

Page 30 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

namely, non-party privacy concerns and the Court's authority to remedy violation of orders—the public interest doubly favors a stay. If denied a stay, resolution of this issue would be mooted far in advance of being heard by the Ninth Circuit. *CPC. Pat. Techs.*, 2024 WL 393492, at *4 (a "stay is warranted to preserve the status quo while appellate proceedings are pending" so as not to "risk [ ] mootness while Apple exercises its right to appeal").

By contrast, minimal harm would befall the public interest if the status quo is preserved pending appeal. Again, the documents that the Oregonian wishes to publish are not relevant to claims of the named Plaintiffs here. Dkt. No. 343 at 13 ("The presumptive press and public right to judicial records flows from the rationale that the public is entitled to learn about the judicial process itself, including the bases behind judicial decisions that often exert far-reaching effects on society").

Second, the Court should consider the significant public interest inherent in encouraging employees to raise workplace concerns without risk that their names will be splashed across the news wires without their consent. The chilling effect such precedent could have on workplace confidential reporting infringes on that significant public interest.

Third, adoption of the Recommendations would also discourage litigants from producing discovery in the future, compromising faith in the free exchange of information across federal litigation and encouraging withholding crucial documents due to their sensitivity.

In response, the Oregonian will likely seek to cloak themselves in the First Amendment and claim the public interest breaks in its favor. And, while NIKE acknowledges there is law recognizing the general (and strong) public interest in the First Amendment, *see, e.g., Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002), to agree with those arguments is to miss that the question here is on the ***gathering*** of information and the

Page 31 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS &
RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

protection of Court processes.  The public's interest in the press does "not trump the strong federal interest in enforcing court orders[.]"  *In re Special Proc.*, 291 F. Supp. 2d 44, 56-57 (D.R.I. 2003), *aff'd*, 373 F.3d 37 (1st Cir. 2004).  To the contrary, respect and adherence to court orders is at the zenith of public interest:  "The public interest demands strict adherence to judicial decrees." *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989).  Albeit in a different context, the Ninth Circuit has described "the public interest in the enforcement of court orders" as "*essential* to the effective functioning of our judicial process[.]"  *Engebretson v. Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013) (emphasis added; citations omitted).  That essential respect for court orders was breached here.  It is—at a minimum—in the public interest to know whether that may be cured **before** the consequential legal questions presented here are mooted.

## 5.    The Court Should Hold Oral Argument.

The issues at stake here are admittedly weighty.  Courts in this District have held argument on objections to a Magistrate's ruling in the past, *see, e.g., Tallacus v. Sebelius,* No. 3:11-CV-833-AC, 2012 WL 1340362, at *1 (D. Or. Apr. 18, 2012) (noting oral argument); *Memmott v. OneWest Bank, FSB*, No. 10-3042-CL, 2011 WL 1559298, at *1 (D. Or. Apr. 25, 2011) ("I presided over oral arguments regarding the objections."), and argument here would allow the Court to press all counsel on the facts and test the legal arguments presented.

As Justice Brennan once explained:  "I have had too many occasions when my judgment of a decision has turned on what happened in oral argument, not to be terribly concerned for myself were I to be denied oral argument."  *Accord* Commission on Revision of the Federal Court Appellate System Structure and Internal Procedures:  Recommendations for Change, 67 F.R.D. 195, 254 (1975) (quoting the late Justice Brennan).  So too here.  The integrity of court orders and the integrity of the judicial process is challenged by a (false) appeal to the First Amendment. Surely the gravity of those questions warrants argument.

Page 32 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

IV.     **CONCLUSION**

For the reasons outlined above, and pursuant to Federal Rule of Civil Procedure, Rule 72(b), NIKE respectfully requests that the Recommendations are set aside, and that the Court issue an order containing an injunction that requires the Oregonian to (1) return the Alleged Complaints, (2) refuse to disseminate them, and (3) destroy the copies it currently possesses. NIKE further requests that the Court confirm that both Plaintiffs' counsel and the Oregonian are subject to discovery regarding their violation of the protective order and stay orders.

In the event the Court overrules these objections, NIKE requests that the Court preserve the status quo and stay the effect of any order denying the injunction pending the resolution of NIKE's appeal of that order to prevent irreparable harm to non-party individuals. Alternatively, NIKE would ask that the status quo be preserved for fourteen days (14) so that it may seek interim relief from the Ninth Circuit.

Date:  March 13, 2024

*/S/ Daniel Prince*
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, Oregon 97201
Telephone: (503) 221-0309
Facsimile: (503) 242-2457

**David J. Elkanich**, OSB No. 992558
Email: delkanich@buchalter.com
**David A. Bernstein**, OSB No. 235633
Email: dbernstein@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR  97205
Telephone: 503.226.1191
Fax: 503.226.0079

*Attorneys for Non-Party Markowitz Herbold PC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>                    Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024, ORDER [ECF 431]** |

## I.    INTRODUCTION

Plaintiffs' counsel Markowitz Herbold P.C. ("Markowitz"), by and through their independent counsel, objects to the Magistrate Judge's February 28, 2024 Order (ECF 431) under Fed. R. Civ. P. 72(b)(2) as the Order is contrary to law.

Plaintiffs' counsel inadvertently disclosed documents to an Oregonian reporter that had been designed by Defendant as either confidential or attorneys' eyes only and which, at that point, were subject to a Stipulated Protective Order ("Protective Order").  Plaintiffs' counsel, who had

Page 1    PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S
          FEBRUARY 28, 2024, ORDER [ECF 431]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

possession of those documents only as a result of this litigation, immediately notified The Oregonian reporter of the inadvertent disclosure and promptly raised this issue with the Court. It would therefore be impermissible for The Oregonian to retain the inadvertently disclosed documents, taking undue and unfair advantage of counsel's accident—especially since The Oregonian intervened in this matter to seek discovery of documents subject to the same Protective Order.

Magistrate Judge Russo correctly issued a January 26, 2024 Order requiring The Oregonian to return the inadvertently disclosed confidential material, to not disseminate those materials, and to destroy any copies in its possession by January 31, 2024 (ECF 417). For reasons discussed further below, as well as those outlined in Plaintiffs' Motion to Request Return of Inadvertently Disclosed Materials ("Plaintiffs' Motion", ECF 410 (redacted), ECF 422 (unredacted)), and Plaintiffs' Response in Opposition to Emergency Motion to Vacate the Magistrate Judge's Order of 1/26/2024 (ECF 421 ("Plaintiffs' Response")), Plaintiffs' counsel respectfully requests that the Court set aside the subsequent February 28, 2024 Order under Rule 72(a), and order The Oregonian to return and destroy the inadvertently disclosed documents at issue in this matter.

## II.    DISCUSSION

### A.    Standard of Review.

Under Fed. R. Civ. P. 72(a), "When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide... [a] party may serve and file objections to the order within 14 days after being served with a copy... The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." For the reasons discussed, the Magistrate Judge's Order of February 28, 2024 contains clearly erroneous findings that are also contrary to law.

Page 2    PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S
FEBRUARY 28, 2024, ORDER [ECF 431]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

**B.     The Court Is Empowered to Hold Intervenor-Party The Oregonian Subject to the Protective Order.**

Despite The Oregonian's suggestion that these documents were obtained solely by "independent journalistic means," The Oregonian inserted itself into this case as an intervening party, and after having been granted leave to intervene, The Oregonian successfully moved the Court to unseal documents (ECF 273), and to peel back redactions of other previously-sealed documents. (ECF 363.)  The Court should therefore be permitted to find that The Oregonian, as an intervening party, should be held to the obligations of the Protective Order.

The Oregonian may not have been an original signatory to the Protective Order, but it nonetheless became subject to each of the applicable orders entered in this matter when it began proceeding, through normal litigation means, to obtain certain documents that were themselves subject to the Protective Order.  Similarly, in *Marshall v. Planz*, another federal district court found it was entitled to enforce, assert, or modify the provisions of a protective order in place to govern the behavior of non-parties in litigation where those non-parties requested information protected by the protective order.  *Marshall v. Planz,* 347 F. Supp. 2d 1198, 1200–03 (M.D. Ala. 2004).

As noted by Defendant in its Response in Opposition to Emergency Motion to Vacate the Magistrate Judge's Order of 1/26/2024 (ECF 425), "one who intervenes in a suit in equity thereby becomes a party to the suit, and is bound by all prior orders and adjudications of fact and law as though he had been a party from the commencement of the suit." *Galbreath v. Metropolitan Trust Co. of Cal*., 134 F.2d 569, 570 (10th Cir.1943).  Accordingly, the February 28, 2024 Order was incorrect and issued a finding contrary to law when it held that The Oregonian was not a party or litigant to this litigation.

/ / /

/ / /

Page 3    PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 28, 2024, ORDER [ECF 431]

BN 80754432

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

ER-0175

**C.    The Court May Order the Return of Inadvertently Disclosed Documents without Implicating First Amendment Concerns.**

The February 28, 2024 Order incorrectly found that the First Amendment was implicated on the grounds that The Oregonian obtained the inadvertently disclosed documents not involving "any Court process emanating from this case." (ECF 431 at 8.) That simply is not the case. As explained in Plaintiffs' Motion and Response, Plaintiffs' counsel was only in possession of the inadvertently disclosed documents as a result of Defendants' response to discovery requests made in the regular course of this litigation and in conjunction with the applicable Protective Order. (See ECF 422 (unredacted motion), 421 (response)). Absent the normal discovery processes in this matter, Plaintiffs' counsel could not have ever made an inadvertent disclosure of the documents at issue, nor could The Oregonian have obtained those documents from Plaintiffs' counsel.

The Oregonian may not have been a direct party to those discovery processes, but that is irrelevant because The Oregonian has involved itself formally in this case through intervention. As Defendant properly noted that the Ninth Circuit has found that when a court discusses independent journalistic means of gathering information, it means "documents [acquired] from a source not involved in this litigation." *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017); *see also* ECF 425 at 18. Since The Oregonian received these documents inadvertently from a party's counsel in this matter, who only had them as a result of normal discovery processes, The Oregonian cannot, as a matter of law, claim that its access to the inadvertently disclosed documents were a result of "independent journalistic means."

As discussed at length in *Seattle Times Co. v. Rhinehart*, and again by both Plaintiffs and Defendant in the many briefings, First Amendment concerns are not implicated when a court seeks to limit a newspaper's ability to disseminate information learned through litigation. *See generally Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984); *see also*

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

ER-0176

*Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 77–78 (E.D.N.Y. 2012) ("[T]he Court is restricting information which came into certain individuals' possession only as a direct result of the court's processes."). Accordingly, because The Oregonian necessarily became a party when it intervened, and because it only obtained the inadvertently disclosed documents as a result of this litigation, any orders restricting the flow of information governed by the applicable Protective Order in this case may be issued without concerning whether such an order amounts to prior restraint.

## CONCLUSION

As stated above, Magistrate Judge Russo's Order of February 28, 2024 is premised on erroneous findings and is contrary to the law. For those reasons, Markowitz requests that the Order be set aside and grant Plaintiffs' Motion (ECF 410).

DATED this 13th day of March, 2024.

BUCHALTER
A Professional Corporation

By  s/ *David J. Elkanich*
    David J. Elkanich, OSB No. 992558
    Email: delkanich@buchalter.com
    David A. Bernstein, OSB No. 235633
    Email: dbernstein@buchalter.com
    Telephone: 503.226.1191

    Attorneys for Non-Party Markowitz Herbold PC

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

ER-0177

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S (1) ORAL ARGUMENT REQUEST; (2) EMERGENCY MOTION FOR A TEMPORARY ADMINISTRATIVE STAY; (3) REQUEST FOR DISCOVERY; AND (4) OBJECTION** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendants. | |

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## REQUEST TO DENY NIKE'S REQUEST FOR ORAL ARGUMENT, TEMPORARY ADMINISTRATIVE STAY, AND DISCOVERY

The issues before the Court require an expeditious review to protect the Constitutional rights of The Oregonian, and thus, the public, because every second that the status quo remains in place it is causing additional irreparable harm in the form of an on-going First Amendment violation. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

This matter has been fully briefed and per the order of Magistrate Judge Russo is now under advisement by the Court. Nothing addressed in oral argument or learned through discovery will change the Constitutional analysis being considered by the Court.  Discovery requests directed at The Oregonian is also clearly inappropriate because it would be seeking protected and privileged newsgathering information.   Oral argument and other delays should therefore be denied as untimely and inappropriate.

Nike's request for a further administrative stay is inappropriate and unnecessary because The Oregonian previously agreed to maintain the status quo while the Magistrate Judge reconsiders the issue.   The District Court ordered same. On January 29, 2024, The Oregonian filed an emergency order seeking to vacate Order 412, which required The Oregonian to return and destroy documents that it lawfully has in its possession, and to not disseminate their contents therein. See ECF 414.  In its emergency motion to vacate, The Oregonian agreed in advance regarding the U.S. District Court for the District of Oregon's review to "preserv[e] the status quo and [] not disseminate the contents of the Documents until this Court makes a determination on the prior restraint issue." On January 30, 2024, the District Court granted The Oregonian's motion.

/ / /

Page 2 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S (1) ORAL ARGUMENT REQUEST; (2) EMERGENCY MOTION FOR A TEMPORARY ADMINISTRATIVE STAY; (3) REQUEST FOR DISCOVERY; AND (4) OBJECTION

The Oregonian respectfully requests that the Court deny Nike's request for oral argument, and its duplicative request for a temporary stay.

Dated this 15th day of February, 2024.

BARRAN LIEBMAN LLP

By *s/ Edwin A. Harnden*
    Edwin A. Harnden, OSB No. 721129
    eharnden@barran.com
    Bruce T. Garrett, OSB No. 213430
    bgarrett@barran.com
Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

Page 3 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S (1) ORAL ARGUMENT REQUEST; (2) EMERGENCY MOTION FOR A TEMPORARY ADMINISTRATIVE STAY; (3) REQUEST FOR DISCOVERY; AND (4) OBJECTION

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

ER-0180

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477-JR |
| Plaintiffs, | **DEFENDANT NIKE, INC.'S (1) ORAL ARGUMENT REQUEST, (2) EMERGENCY MOTION FOR A TEMPORARY ADMINISTRATIVE STAY; (3) REQUEST FOR DISCOVERY; AND (4) OBJECTION** |
| vs. | |
| NIKE, INC., an Oregon Corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

ER-0181

## LR 7-1 CERTIFICATION

Counsel for NIKE certifies that it made a good faith effort to confer with counsel for Advance Local Media LLC, *d/b/a Oregonian Media Group* (the "Oregonian"), Markowitz Herbold PC, and Media Organizations Insider, Inc. *d/b/a Business Insider*, American Business Journals, Inc., *d/b/a Portland Business Journal*, and the Oregonian (collectively, the "Media Intervenors") on February 14, 2024, by email regarding the issues presented in this request. Counsel for the Oregonian indicated that the Oregonian objects to NIKE's request. Counsel for Markowitz Herbold and the Media Intervenors did not respond prior to filing,

## REQUEST FOR ORAL ARGUMENT, TEMPORARY ADMINISTRATIVE STAY, AND DISCOVERY

On February 13, 2024, the Oregonian filed its Reply Brief in support of the Motion to Vacate, ECF No. 427. Inconsistent with the rules for reply briefing, the Oregonian offered a new declaration. *See, e.g.,* ECF No. 428 (Declaration of Matthew Kish ("Kish Decl.")), ¶¶ 1-2. NIKE objects. As set forth below, the Reply Brief supports:[1]

(1)     NIKE's Objection;

(2)     NIKE's renewed request for discovery into the circumstances of the disclosure here, including that such discovery occur prior to the Court's ruling on the Motion to Vacate;

(3)     NIKE's renewed request for oral argument, particularly upon a more detailed factual record, and

(4)     NIKE's protective request for confirmation that the January 30, 2024 order precludes the publication and/or dissemination of any information that Plaintiffs provided to the

---

[1] All capitalized terms herein are given their meaning assigned to them in NIKE's Response in Opposition to Emergency Motion to Vacate the Magistrate Judge's Order, or in the Alternative Stay Proceedings Prior to January 31, 2024. ECF No. 425.

Page 1 –   REQUEST FOR ORAL ARGUMENT, TEMPORARY STAY, AND DISCOVERY

Media Intervenors in violation of Court orders "until the issues set out in the Motion to Vacate are resolved," which includes the resolution of any Fed. R. Civ. P. 72 objections submitted to the District Court.  ECF No. 417.  While NIKE has every confidence it should and shall prevail, should Your Honor disagree, NIKE should be afforded its appellate rights as both this District and the Ninth Circuit have already recognized.

NIKE briefly addresses each item below.

**First**, as stated in its Opposition, NIKE has served discovery and awaits documents and information from the Markowitz law firm and from the Oregonian.[2]  ECF No. 425 at 10 n.3. The Kish declaration also demonstrates why discovery is necessary prior to the ruling on the Motion to Vacate.  In fact, the declaration introduced new evidence on reply, specifically with respect to claimed "standard journalistic practices."  ECF No. 428 (Kish Decl., ¶ 2).  NIKE should have the ability to determine the truth of the protective order breach, so that the record is not limited to self-serving and untested declarations.

While introducing new evidence on reply is inappropriate in the ordinary course—*see, e.g.*, Martin for C.M. v. Hermiston Sch. Dist. 8R, 499 F. Supp. 3d 813, 827 (D. Or. 2020) ("The Court declines to consider Defendant Bruck's declaration because Defendants submitted it for the first time in their reply, could have filed it with their motion, and did not have a chance to respond."); In re ConAgra Foods, Inc., 302 F.R.D. 537, 560 n.87 (C.D. Cal. 2014) ("In general, a court will not consider evidence submitted for the first time in reply without giving the opposing party an opportunity to respond." (citing Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996))—it is particularly problematic when the opposing party has been denied discovery.

---

[2] NIKE has served document demands and interrogatories.  Once those are responded to and documents produced, NIKE will move promptly to scheduling limited depositions.  NIKE anticipates that with the Court's blessing and prompting, this discovery could be completed within 45 days.

Page 2 –   REQUEST FOR ORAL ARGUMENT, TEMPORARY STAY, AND DISCOVERY

NIKE objects.

Even beyond the sequencing objection (*i.e.,* no new evidence on reply), Mr. Kish offers his opinion without qualifying himself as an expert, laying any foundation for his testimony, and asserting a conclusion which is facially self-serving.[3] The declaration is inappropriate under normal evidence rules, too. Fed. R. Evid. 702.

That said, the Oregonian's offering of a reply declaration confirms *its* own belief that *it* has an evidentiary burden to prove certain facts. While NIKE disagrees that anything beyond the Protective Order, the Stay Order, and the Oregonian's own intervention is needed to validate the approach Your Honor has already taken (*e.g.,* requiring the return and destruction of the documents, barring any reliance or dissemination of the information contained therein), if the Court has any doubt (it should not) about its prior Order and reasoning, then discovery should be permitted so that any conclusory (and self-serving) factual claims can be tested on a full record.[4] The Oregonian's requested departure is premised on _factual_ claims—if entertained at all—that is the subject of discovery.

---

[3] "[T]he burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert and admissibility must be shown by a preponderance of the evidence." *Est. of Thomason ex rel. Perez v. Cnty. of Klamath*, 2004 WL 1598802, at *1 (D. Or. July 16, 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592 n. 10 (1993)); *Cameron v. Lowes Home Centers Inc.*, 2019 WL 2617032, at *2 (D. Ariz. June 26, 2019) ("When the report of an expert witness offers no foundation for one of his conclusions, a court may properly exclude that portion of the opinion under Rule 702, *Daubert*, and *Kumho Tire*.") (citing *Provident Life & Accident Ins. Co. v. Fleischer*, 18 Fed. App'x 554, 556 (9th Cir. 2001)).

[4] The Oregonian argues that "[t]he facts clearly establish that the only one who is in violation of this Court's orders is Ms. Salerno Owens." ECF No. 427. But the facts are not yet fully developed. NIKE maintains that in these circumstances, where an intervenor has received documents both in violation of a Ninth Circuit stay and this Court's Protective Order, the Oregonian's position should be rejected outright. ECF No. 425 at 13-16 (this Court may enforce the Protective Order against intervenors who intervened with the sole purpose of modifying the Protective Order) & 16-20 (the First Amendment does not protect acquisitions in violation of court orders).

Page 3 –  REQUEST FOR ORAL ARGUMENT, TEMPORARY STAY, AND DISCOVERY

*Second*, the new evidence and new arguments asserted in reply (including new authority and the abandonment of authority), makes this case an especially appropriate one for argument. NIKE renews its request for oral argument on the Motion to Vacate. NIKE notes that the Oregonian has also requested oral argument. ECF No. 414.

*Third*, given the serious nature of these issues and the very real threat of the Oregonian publishing nonpublic discovery material it received as a result of a party's breach of the Protective Order, NIKE seeks to confirm that which it understands the District Court has already ordered in its referral on the Motion to Vacate, namely that the "status quo [shall] remain in effect"—that is, no dissemination or disclosure of the materials Plaintiffs provided to the Oregonian in violation of court orders—"until the issues set out in the Motion to Vacate are resolved." ECF No. 417. NIKE believes this language means that no (further) disclosure or dissemination of materials should occur here until the Motion to Vacate has been resolved, including the resolution of any objections pursuant to Fed. R. Civ. P. 72. *Zargarian v. BMW of N. Am., LLC*, 2019 WL 6111734, at *1 (C.D. Cal. Oct. 15, 2019) (noting a party's right to Rule 72 objections and granting a stay).

For the avoidance of doubt, and to avoid another improper disclosure, NIKE respectfully requests that Court specifically and expressly confirm that the current stay preserves the status quo until (1) any objections under Fed. R. Civ. P. 72 are filed and resolved by the District Court, and (2) until such time that a stay pending appeal can be sought from the Ninth Circuit. *See* 5 U.S.C. § 705; Fed. R. Civ. P. 62(d); *Alvarez v. LaRose*, 2020 WL 5632659, at *2 (S.D. Cal. Sept. 21, 2020) (granting in part a motion to stay where immediate enforcement of a magistrate judge's order "might preclude the district court's ability to review respondents' anticipated Rule 72 objection, which would effectively deprive Respondents of their right to reconsideration of

the discovery order by the district judge"); *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir.

2019) ("A temporary stay in this context (sometimes referred to as an administrative stay) is

only intended to preserve the status quo until the substantive motion for a stay pending appeal

can be considered on the merits[.]"); *Rauda v.Jennings*, 2021 WL 2413006, at *6 (N.D. Cal.

June 14, 2021) (continuing an administrative stay to provide defendant an opportunity to seek

further relief from the Ninth Circuit).

      A temporary administrative bar on use is warranted and necessary for all of the reasons

stated in NIKE's Response to the Oregonian's Motion to Vacate (ECF No. 425), its Renewed

Request for Oral Argument (ECF No. 396), and its Motion to Stay Pending Appeal (ECF No.

397 (which was ultimately granted on appeal, ECF No. 408)).  Should a use bar not be entered,

the Oregonian *will* immediately publish the confidential Alleged Complaints, destroying the

status quo and resulting in irreparable harm to non-party's privacy interests (*i.e.,* once the

information is published, the damage will be done and NIKE will have no recourse).  *See Ball v.

Skillz Inc.*, 2020 WL 10180904, at *2 (D. Nev. Nov. 16, 2020) (finding irreparable injury absent

stay because of inability to claw back plaintiff's anonymity from public record); *see also Align

Tech., Inc. v. SmileDirectClub, LLC*, 2023 WL 2347431, at *1 (N.D. Cal. Mar. 3, 2023)

("'[When] the information is publicly filed, what once may have been [confidential] no longer

will be'") (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3536800, at *1 (N.D. Cal. Aug.

15, 2012)).[5]

---

[5] This is especially necessary, as NIKE would appeal any adverse ruling.  A stay is thus essential
because any appeal would be mooted by the Oregonian's clear intention to publish the Alleged
Complaints at the earliest possible opportunity.  *See* ECF Nos. 414, 427, & 425 at 15 n. 6
(collecting articles published by the Oregonian regarding this litigation); *see also Al Otro Lado*,
945 F.3d at 1224.

An order to maintain the status quo is already in effect and the Oregonian is not irreparably injured by simply having to wait until this matter is truly, fully, and fairly resolved. Therefore, if the Court does not rule in favor of NIKE, NIKE requests that the Court confirm that the current administrative injunction during NIKE's submission of Rule 72 objections and the District Court's consideration of the same.

Again, this confirmatory request is stated purely protectively. As NIKE has already explained, Your Honor's earlier Order requiring the return, destruction, and bar on use was entirely appropriate and lawful. But given the unfortunate position NIKE finds itself in based on other parties' breaches, it seeks confirmation out of an abundance of caution.

Date: February 14, 2024

*/S/ Daniel Prince*
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone: (503) 221-0309
Facsimile: (503) 242-2457

DocuSign Envelope ID: 7E84D0EB-B6A8-45E4-9829-63604DBB58AA

Case 3.18-cv-01477-JR    Document 428    Filed 02/13/24    Page 1 of 2

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **SUPPLEMENTAL DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendants. | |

I, Matthew Kish, declare as follows:

1.      Prior to my meeting with Ms. Salerno Owens on January 19, 2024, pursuant to standard journalistic practices, I spoke with a person who I understood not to be a Plaintiff in the *Cahill v. Nike* lawsuit, but who was making her own previously unknown allegation of sexual harassment at Nike. I referenced this person in my first declaration as "a current or former employee of Nike."

Page 1 - SUPPLEMENTAL DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

4881-8830-8102

ER-0188

DocuSign Envelope ID: 7E84D0EB-B6A8-45E4-9839-63694DBB58AA

Case 3.18-cv-01477-JR    Document 428    Filed 02/13/24    Page 2 of 2

2.      On January 17, 2024, pursuant to standard journalistic practices, I contacted Ms. Laura Salerno Owens because I wanted comment from an attorney representing individuals making similar allegations in the *Cahill v. Nike* lawsuit. Ms. Salerno Owens agreed to meet me on January 19, 2024.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

DATED: _____
2/13/2024 | 10:41 AM PST



DocuSigned by:

0FF7000BA284463...

_____          _____
Matthew Kish

Page 2 - SUPPLEMENTAL DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

4881-8830-8102

ER-0189

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

KELLY CAHILL, et al,

        Plaintiffs,

  v.

NIKE, INC., an Oregon Corporation,

        Defendants.

**3:18-cv-01477-JR**

**REPLY IN SUPPORT OF
ADVANCE LOCAL MEDIA LLC,
D/B/A OREGONIAN MEDIA
GROUP'S (THE OREGONIAN)
EMERGENCY MOTION TO
VACATE THE MAGISTRATE
JUDGE'S ORDER, OR IN THE
ALTERNATIVE, STAY
PROCEEDINGS PRIOR TO
JANUARY 31, 2024, FRCP 72**

Page 1 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

## I.    <u>INTRODUCTION</u>

Advance Local Media LLC, d.b.a., Oregonian Media Group (hereinafter, "The Oregonian"), respectfully requests that the Court expeditiously vacate its order (ECF No. 412) and deny Plaintiffs' motion (ECF No. 410), in accordance with established and clear Supreme Court precedent, so that The Oregonian does not continue to suffer irreparable harm from an on-going First Amendment violation.

**A.    Legal Standard**

The legal issues before this Court are summarized by a longstanding First Amendment proposition: absent "exceptional" circumstances a court cannot restrain news reporting before it occurs and any prior restraint on publication—even for minimal periods of time—presents an immediate irreparable injury. Absent an "interest of the highest order," a news outlet has a First Amendment right to publish news regarding a matter of public significance when the reporting is derived from a source that the news outlet obtained without itself violating the law.

A prior restraint on publication—that is, the judicial suppression of speech before it occurs—is "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 2803, 49 L.Ed.2d 683, 697 (1976). Restraining speech before it occurs is permissible only in "exceptional" circumstances, such as publishing the movement of troops during wartime; it is the "essence of censorship." *Near v. Minnesota*, 283 U.S. 697, 716, 51 S. Ct. 625, 631, 75 L. Ed 1357, 1367 (1931). An order requiring a news outlet to return or destroy documents prior to publication is also a prior restraint because possessing newsgathering materials is preparatory to speech, and it is protected no less than speech itself. *See Citizens United v. FEC*, 558 U.S. 310, 336, 130 S. Ct. 876, 896, 175 L.Ed.2d 753, 780

Page 2 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

(2010) ("Laws enacted to control or suppress speech may operate at different points in the speech process."). Since the inception of the First Amendment, the Supreme Court has never upheld a prior restraint. *See Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1092 (C.D. Cal. 2012) (*citing* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157 (2007)).

Every second that a prior restraint remains in place inflicts a continuing constitutional injury because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976). Post publication punishment, which demands less constitutional scrutiny than a prior restraint, is unconstitutional "if a newspaper lawfully obtains [and publishes] truthful information about a matter of public significance . . . absent a need to further a state interest of the highest order." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103, 99 S. Ct. 2667, 2671, 61 L.Ed.2d 399, 405 (1979).

Because there is a "heavy presumption" against the constitutional validity of a prior restraint, Defendant Nike ("Nike") and Plaintiffs (collectively, "Respondents") bear a near-impossible burden of justifying the restraint. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 2141, 29 L.Ed.2d 822, 825 (1971).

## B.    Background

The background to the dispute before the Court is reflected in The Oregonian's original motion. When Matthew Kish, business reporter for The Oregonian, contacted Ms. Laura Salerno Owens on January 17, 2024, he was engaging in the newsgathering process. Supplemental Declaration of Matthew Kish. As part of his ordinary newsgathering activities, Mr. Kish sought comment from Ms. Salerno Owens regarding a separate allegation of sexual harassment at Nike

Page 3 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

ER-0192

by an alleged victim who he understood not to be a plaintiff in *Cahill v. Nike* (the "Lawsuit") *Id.* Mr. Kish's newsgathering had absolutely nothing to do with The Oregonian's role as an intervenor in the Lawsuit; he set up the meeting with Ms. Salerno Owens prior to the Ninth Circuit's stay order regarding the unsealing of judicially sealed records in the Lawsuit. During their meeting, Ms. Salerno Owens sent Mr. Kish an email that included certain sealed documents (hereinafter, the "Documents") from the Lawsuit. Declaration of Matthew Kish. Only after that meeting did Mr. Kish review the Documents, and after that Ms. Salerno Owens reached out to him saying that she had provided the Documents inadvertently.

Three years after the Lawsuit began, this Court permitted The Oregonian, along with other media groups (collectively, the Media Intervenors) to intervene as a non-party for the limited purpose of challenging sealed judicial records and uncovering redactions. (ECF No. 275.) The Oregonian's limited intervention as a non-party media intervenor never transformed it into a party in the Lawsuit. The Oregonian was also never a signatory or a party to the Protective Order stipulated by Respondents. (ECF No. 82.)

The Oregonian's involvement in the Lawsuit has always been exceedingly narrow. By seeking access to records that it believes should be public, The Oregonian did not shed its First Amendment right to gather news and report on matters of public significance. The legal issues pending before the Ninth Circuit—whether judicial records in the Lawsuit should be unsealed— are separate and distinct from the issue before this Court, which is whether the Court can impose a prior restraint on The Oregonian by prohibiting it from possessing and publishing information that it lawfully received as part of the newsgathering process. According to the Supreme Court's First Amendment jurisprudence, it cannot.

Page 4 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

ER-0193

## II.   <u>ARGUMENT</u>

### A.   Nike and Plaintiffs Have Failed to Meet Their Heavy Burden to Support Imposition of a Prior Restraint on The Oregonian

Nike contends that the issues before the Court do not implicate the First Amendment and that the Court's order prohibiting The Oregonian from disseminating the information contained in the Documents is *not* a prior restraint. (ECF No. 425 at 6.) Nike is wrong. By definition, a prior restraint is a "*judicial order[]* forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. U.S.*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) (emphasis added). Clawing back documents from a newsroom is tantamount to restricting future communications based on them. "It defies common sense to disaggregate" the newsgathering process—including possessing, reviewing, and analyzing lawfully received documents—from the actual publication. S*ee Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018). ("[The] process is itself expressive and is 'inextricably intertwined' with the resulting . . . speech [which is] entitled to First Amendment protection as purely expressive activity.").

Having established that the issue before the Court is a prior restraint, the inquiry then turns to whether Respondents have met their "heavy burden" of demonstrating the necessity for the imposition of a prior restraint—they have not. *See N.Y. Times Co., supra,* 403 U.S. at 713 (holding that the government failed to meet its heavy burden of demonstrating that the *New York Times* should be enjoined from publishing content from the "Pentagon Papers" which contained leaked confidential matters impacting national security).

/ / /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Nike asserts several reasons why the Court should leave in place its prior restraint on The Oregonian, all of which are contrary to well-established Supreme Court precedent. First, Nike contends that the publication of the Documents "will impact the privacy interests and livelihood of non-parties with no connection to the remaining Plaintiffs' claims." (ECF No. 425 at 20.) Yet, time and time again, the Supreme Court has affirmed that the news media's right to publish lawfully obtained information supersedes the privacy rights of individuals, even in sensitive situations. *See, e.g., Cox Broadcasting Corp.* v. *Cohn*, 420 U.S. 469 (1975) (holding that a civil damages award entered against a television station for broadcasting the name of a rape-murder victim was unconstitutional); *Oklahoma Publishing Co. v. County District Court*, 430 U.S. 308 (1977) (holding that the court's pretrial order enjoining the media from publishing the name or photograph of an 11-year-old boy in connection with a juvenile proceeding was unconstitutional); *Daily Mail Pub. Co.*, *supra*, at U.S. 103 (holding that the indictment of two newspapers for violating a state statute forbidding newspapers to publish the name of any youth charged as a juvenile offender was unconstitutional); *Fla. Star v. B. J. F.*, 491 U.S. 524, 530, 109 S. Ct. 2603, 2607, 105 L.Ed.2d 443, 453 (1989) (holding that civil damages imposed on a newspaper for publishing the name of a rape victim were unconstitutional).

Even in the *Cox, Oklahoma Publishing, Daily Mail, and Fla. Star* decisions—where the underlying privacy concerns were substantially greater than the concerns proffered by Nike—the press in those cases were not restrained from speaking, and they were not ordered to return or destroy the underling documents that they used in support of their reporting. Indeed, the tetralogy of cases demonstrate that if the First Amendment protects the press from post-publication punishment of lawfully received documents, then, *a fortiori*, it protects the press from "the most

Page 6 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

serious and least tolerable" infringement of First Amendment rights—pre-publication restraint. *Neb. Press Ass'n, supra,* 427 U.S. at 559.

Next, Nike asserts that "the Oregonian's reporter knew that the newspaper should *not* have access to the files at issue, and [t]he First Amendment does not entitle The Oregonian to keep and publish documents that it should have never received but for a breach of the court's orders." (ECF No. 425 at 7; emphasis in original.) The Supreme Court has said otherwise. Even in situations where the information in question was unlawfully obtained by a third party and passed along to the press, the press still has a constitutional right to publish that information. *See Bartnicki v. Vopper*, 532 U.S. 514, 535, 121 S. Ct. 1753, 1765, 149 L.Ed.2d 787, 806 (2001) (Another's "illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern.").

Nike also contends that "publication may moot [Nike's] appeal and deprive it of its opportunity to seek review of this important issue." (ECF No. 425 at 21.) The legal issues before this Court and the Ninth Circuit are separate. As an initial matter, the Ninth Circuit is considering whether the entirety of the judicially sealed records in the Lawsuit should be unsealed, and the Documents are likely a smaller subset of the sealed records. (Because The Oregonian is not a party to the Protective Order, it cannot access the judicially sealed records, and it does not know the extent of any overlap between the Documents and the judicially sealed records.) Separately, Nike provides no case law to support an argument that its interest in its appeal before the Ninth Circuit is an "exceptional" circumstance or that it serves an "interest of the highest order." Indeed, the Ninth Circuit has held that the press' First Amendment rights are stronger in civil cases, such

/ / /

Page 7 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

as this one, as compared to criminal proceedings where there are competing constitutional issues at play. *See Mark v. Shoen,* 48 F.3d 412, 416 (9th Cir. 1995).

Respondents repeatedly emphasize that the Documents were subject to a Protective Order in the Lawsuit, and that the Court has inherent power to enforce its orders—facts that no one is questioning. Respondents' scattershot arguments should not distract this Court from the fact that unsolicited documents sent to a reporter do not fall within any recognized exception to the relevant First Amendment doctrines that control this case simply because they so happen to be subject to discovery in Respondents' active litigation. Moreover, the fact that The Oregonian intervened and took the initiative to have the Court unseal certain judicially sealed records is irrelevant. If the Documents had been disclosed to numerous news outlets, it defies logic that The Oregonian would be the only one restrained from speaking simply because it stepped forward on behalf of the public to modify the Protective Order. Indeed, the fact that the Pentagon Papers included national security secrets and got to the press via an *unlawful breach* had no bearing on the newspaper's First Amendment right to retain or publish them. *N.Y. Times Co., supra,* 403 U.S. at 713.

Respondents here have not met their nearly impossible burden to justify their request that The Oregonian be restrained from speaking. Their claimed interests are not "exceptional" circumstances, and they do not further "an interest of the highest order" that should supersede The Oregonian's most fundamental and important rights of free speech and a free press.

**B.    The Oregonian is a Non-Party to the Lawsuit, Not a Party to the Protective Order, and It Received the Documents Through the Newsgathering Process Outside of the Court Process**

Having failed to sufficiently address the relevant constitutional considerations before this Court, Respondents obfuscate the record, make numerous mistakes of fact and law, and build

Page 8 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

faulty arguments on those mistakes. For example, Nike asserts more than a dozen times that The Oregonian is a "party" to the Lawsuit.[1] *See generally* ECF No. 425. This Court's order granting the Media Intervenors' motion to intervene explicitly states the opposite:

> Findings & Recommendation: [] The *non-party* media organizations' Motion to Intervene 205 should be granted to the extent they request intervention for the *limited purpose* of challenging the parties' stipulated redactions in regard to the briefing surrounding plaintiffs' Motion for Class Certification and denied in all other respects with leave to renew.

ECF No. 273 (emphasis added) (adopted by Judge Hernandez in ECF No. 275).[2] Nike further asserts that The Oregonian is a "litigant" in the lawsuit. Nike is wrong again. A litigant is "a person who is engaged in a lawsuit as a *party*."[3] The Law Dictionary (2024) (emphasis added). For several reasons, Nike's incorrect usage of the terms "party" and "litigant" is not trivial. Nike incorrectly invokes the Protective Order and cherry-picked lines from case law in an attempt to curtail the First Amendment rights of The Oregonian.

As an initial matter, Nike relies on, without discussing in sufficient detail, the Supreme Court's decision in *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984), which places certain limits on the rights of party-litigants who themselves obtain information through pre-trial discovery or

---

[1] Nike also asserts that The Oregonian is a "party" to the appeal before the Ninth Circuit. Along with the other Media Intervenors, The Oregonian is petitioning the Ninth Circuit to uphold this Court's order unsealing judicial records from the Lawsuit. (ECF No. 403.) However, as discussed in detail above, the legal issues before this Court and the Ninth Circuit are completely separate.
[2] *See also* ECF 205, 206, 218-220, 229, 237, 261-262, 275, 327, 345, 347, 383, and 399, which reference the Media Intervenors, including The Oregonian, as a non-party. Plaintiffs now also claim that The Oregonian was a "party" to the lawsuit. However, Ms. Salerno Owens' meeting with Mr. Kish without his attorney present and her failure to serve The Oregonian with a copy of her motion to return inadvertently disclosed documents (ECF 410) indicate that until very recently she believed otherwise.
[3] A limited intervention under Rule 24(b) does not de facto transform a non-party into a full-fledged intervenor party. *Abreu v. Pfizer, Inc.*, 2022 U.S. Dist. LEXIS 19796, 2022 WL 2341427, at *12 (S.D. Fla. Feb. 3, 2022). ("Defendant's attempt to limit intervention to only those seeking to intervene as a full-fledged party is not supported by the law.")

Page 9 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

ER-0198

otherwise use the court process to garner special access to documents. This case warrants a detailed discussion because it is unlike the case at bar, and it actually supports The Oregonian's position.

In *Seattle Times,* a religious group filed a defamation action against the Seattle Times newspaper—a party-defendant in the action. The trial court granted discovery and issued a protective order prohibiting the defendant newspapers from "publishing, disseminating, or using the information [obtained through discovery] in any way except where necessary to prepare for and try the case." *Id.*, at 27. The newspaper appealed the order, and the issue before the Supreme Court was "whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process." *Id.*, at 22. The court held that the protective order did not offend the First Amendment because it was entered on a showing of good cause as required by Fed. R. Civ. P. 26(c), was limited to the context of pretrial civil discovery, and did not restrict the dissemination of the information if gained from "other sources,"[4] such as news gathering. S*ee id.*

The case at bar is not controlled by *Seattle Times* for several reasons. Unlike the Seattle Times newspaper, The Oregonian (1) is not a party to the underlying lawsuit; (2) did not use the court process, including discovery, to obtain the Documents; (3) is not a party to the operative

/ / /

---

[4] *See also Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983) (a court "generally has no such power to prohibit dissemination of . . . information [that] has been gathered independently of judicial processes"); *Grove Fresh Distribs. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995) ("Prohibiting the disclosure of information gained through means independent of the court's processes would raise the specter of prior restraint."); *Schlicksup v. Caterpillar, Inc.*, 2011 U.S. Dist. LEXIS 169149, at *5-6 (C.D. Ill. Jan. 19, 2011) ("*Seattle Times* implicitly recognized that the newspapers were free to publish the exact same information, harassing though it might be, provided that the newspapers obtained the information through means other than the discovery process").

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

ER-0199

Protective Order; and (4) received the documents from an inadvertent disclosure during the newsgathering process—i.e., from "other sources."

Next, Nike states that The Oregonian is a party to the Protective Order (ECF No. 425 at 6-8). That is simply not true. The Protective Order is a stipulated agreement between the Respondents. The Oregonian never joined it, was never served, and would never have agreed to it. In fact, the Protective Order went into effect three years before The Oregonian intervened. *See* ECF No. 82. If The Oregonian were a party to the Protective Order, it would be able to access sealed records, but it cannot. (Volpert Declaration, ECF No. 415.) Nike's admission that "the Oregonian never should have seen" sealed records, including the Documents, does not comport with its contention that The Oregonian is a party to the stipulated Protective Order, which grants access to sealed records to the parties to that order. It is common practice to amend protective orders, and it is revealing that Respondents never moved the Court to have the Protective Order be extended to the Media Intervenors. *See Reagan v. Okmulgee Cnty. Crim. Just. Auth.*, 2023 U.S. Dist. LEXIS 207336 (E.D. Ok. Nov. 20, 2023) (recognizing the need for a supplemental protective order after an intervenor joined the underlying lawsuit).

Moreover, Nike's contention that The Oregonian was bound by an order that was entered three years before the Media Intervenors intervened is wrong. *See, e.g., Univ. of Kan. Ctr. for Research, Inc. v. United States*, Civil Action No. 08-2565-JAR-DJW, 2010 U.S. Dist. LEXIS 12893, at *42 (D. Kan. Feb. 12, 2010) (striking a provision of a Protective Order that attempted to bind future parties and intervenors, and holding that new parties must be given the opportunity to review and stipulate to a joint order); *Overmyer v. Acumed LLC*, 2018 U.S. Dist. LEXIS 144257 at *4 (N.D. Ind. Aug. 24, 2018) (requiring a new Protective Order be entered into after new parties

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

joined the lawsuit). The idea that a non-party subsequently added to a lawsuit would automatically be subject to all prior orders, as Nike suggests, does not comport with the basic functions of courts, which is to carefully consider the interests, rights, and obligations of the lawsuit participants and the public through the course of litigation.

Lastly, Nike contends that "The Oregonian has invoked litigation tools and now seeks to ignore litigation rules." However, the only litigation "tools"—if they can be called that—that The Oregonian has "invoked" in the Lawsuit was the briefing that the Media Intervenors filed in support of its intervention into the Lawsuit (for a limited purpose) to make public sealed judicial records.[5] The Oregonian's involvement in the Lawsuit has always been exceedingly narrow; it has not filed a pleading, drafted or responded to a request for production,[6] admission, or interrogatories, or participated in a deposition, or taken part in any evidentiary issue before the Court.

Nike also relies on *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017), by proffering a statement from that decision without discussing the broader factual and legal analysis by the Court. Nike also fails to mention the outcome of that case, which actually supports The Oregonian's position. In *Ground Zero,* the issue before the court was whether a party-litigant who obtains information from public filings that are *later* sealed may be prohibited from further dissemination of that information. *Id*. at 1258. The District Court's order in *Ground Zero* prohibited dissemination of the Documents that were "filed in error that Ground Zero acquired *exclusively through this litigation* . . .". The Ninth Circuit was not convinced that

---

[5] *See, e.g.*, ECF 205, 229, 255, and 261-262.
[6] Only after The Oregonian filed its emergency motion to vacate (ECF 414), did Nike serve The Oregonian with Requests for Production and Interrogatories relating to the disclosure by Ms. Salerno Owens.

Page 12 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

the District Court's orders comported with the First Amendment, and it remanded the case to the District Court. *Id.* at 1263 (emphasis added). On remand, the District Court held that there was not a "compelling reason to impose restriction on Ground Zero's use or possession of the inadvertently disclosed documents," even though the documents at issue contained unclassified controlled nuclear material and critical infrastructure security information. *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of the Navy*, No. C12-5537RB, 2020 U.S. Dist. LEXIS 158061, at *5 (W.D. Wash. Aug. 31, 2020).

In sum, there is no legal or factual basis to support the claim that The Oregonian is a "party" to the Lawsuit or the Protective Order, therefore its First Amendment rights cannot be curtailed by the application of *Seattle Times, Ground Zero*, or their progeny.

**C.    This Court's Remedy Concerning the Disclosure of the Documents Should Not Include an Infringement of The Oregonian's First Amendment Rights.**

As explained in detail above, The Oregonian has not violated any of this Court's orders (or any other court's orders) and its actions with respect to the Documents since the disclosure are wholly protected by the First Amendment. The facts clearly establish that the only one who is in violation of this Court's orders is Ms. Salerno Owens. But her actions are not imputed to The Oregonian because "[another's] conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Bartnicki v. Vopper*, 532 U.S. 514, 535, 121 S. Ct. 1753, 1765, 149 L.Ed.2d 787, 806 (2001). The Oregonian received the Documents through lawful newsgathering—not through litigation. Its First Amendment right to publish the Documents is consistent with more than 50 years of Supreme Court precedent.

/ / /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

ER-0202

Nike contends that Mr. Kish violated the Court's orders because he "knew he should not be in possession" and "have access" to the documents. (ECF No. 425 at 6.) But Mr. Kish did not violate the law to obtain the Documents. His knowledge about the source or sensitive content of the Documents is irrelevant to the inquiry. Indeed, the reporter at the *New York Times* surely knew that he "should not have been in possession" or "have access" to the Pentagon Papers that addressed matters of national security, yet his possession of those papers and the publication of their contents was protected by the First Amendment. *N.Y. Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 2141, 29 L.Ed.2d 822, 825 (1971).[7] So too here.

Nike goes to great lengths to cast doubt on the underlying facts as set out in Ms. Salerno Owens' Declarations. (ECF No. 425 at 13-16.) However, Nike's pure speculation about what is "unknown" and the "suggest[ion] of impropriety" is not sufficient to undermine the First Amendment rights of The Oregonian. Nike's implication that Ms. Salerno Owens may have been less than completely truthful or forthcoming in her sworn declaration is put forward without any factual basis. Its request for discovery based on such speculation should be rejected out of hand. Such an unwarranted intrusion into privileged newsgathering activities and additional delay would only extend and compound the irreparable harm flowing from the ongoing prior restraint.

Ms. Salerno Owens' disclosure of the Documents did not extinguish Mr. Kish's (or The Oregonian's) First Amendment right to publish information that he received while acting lawfully. *See Smith*, *supra*, 443 U.S. 97 at 103. Whatever redress regarding the disclosure of the Documents

/ / /

---

[7] The *N.Y. Times* was not restricted from publication, and it was not required to return and destroy the documents. *See id.*

Page 14 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

that this Court finds appropriate, it should not include a prior restraint or other unconstitutional imposition on The Oregonian's First Amendment rights.

### III.    CONCLUSION

The Oregonian innocently received newsworthy documents. Respondents' interest in preventing The Oregonian from publishing the Documents does not overcome the fundamental press freedom enshrined in the First Amendment. Accordingly, The Oregonian respectfully requests that this Court immediately vacate its order requiring The Oregonian to return and destroy the Documents and not disseminate their contents (ECF No. 412), and deny Plaintiffs' motion requesting return of the Documents (EFC No. 410).


Dated this 13th day of February, 2024.

BARRAN LIEBMAN LLP

By  *s/Bruce T. Garrett*_____
     Edwin A. Harnden, OSB No. 721129
     eharnden@barran.com
     Bruce T. Garrett, OSB No. 213430
     bgarrett@barran.com
     Attorneys for Non-Party Advance Local Media
     LLC d/b/a Oregonian Media Group (The
     Oregonian)


Page 15 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL et al., | Case No. 3:18-cv-01477-JR |
| Plaintiffs, | **DECLARATION OF DANIEL PRINCE IN SUPPORT OF DEFENDANT NIKE, INC.'S RESPONSE TO ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) ARGUMENTS IN SUPPPORT OF ITS EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72** |
| vs. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

ER-0205

## DECLARATION OF DANIEL PRINCE

I, Daniel Prince, hereby declare as follows:

1.        I am an attorney duly licensed to practice law in the State of California, and am admitted *pro hac vice* to the District Court of Oregon.  I am a partner with the law firm of Paul Hastings LLP, counsel of record for NIKE, Inc. ("NIKE") in the above-captioned matter.  I have personal knowledge of the facts herein, or know of such facts by my review of the files maintained by Paul Hastings LLP in the normal course of its business, and if called upon to do so, could and would competently testify thereto.

2.        I submit this Declaration in Support of NIKE's Opposition to Advance Local Media LLC, *d/b/a Oregonian Media Group's* ("the Oregonian") Emergency Motion to Vacate the Magistrate Judge's Order, or in the Alternative, Stay Proceedings prior to January 31, 2024, FRCP 72.

3.        On January 25, 2024, I received an email from Laura Salerno Owens of Markowitz Herbold PC, counsel for Plaintiffs Kelly Cahill, Lindsay Elizabeth, Heather Hender and Sara Johnston ("Plaintiffs") entitled "Notice of Inadvertent Disclosure and Remedial Steps." In this email, Ms. Salerno Owens informed me that, six days earlier on January 19, 2024, in connection with emailing a comment to the Oregonian on allegations purportedly unrelated to the litigation, she "inadvertently" disclosed a packet of documents to Matthew Kish, a reporter with the Oregonian, including documents that have not been "filed in this case and/or are not publicly available."  Specifically, Ms. Salerno Owens provided to Mr. Kish unredacted versions of the documents that were subject to the Ninth Circuit's stay of this Court's order requiring the unredaction/unsealing of documents.  Dkt. No. 363.  She also provided discovery materials (which have never been filed in this case, and which were not part of the class certification

briefing) that were produced subject to the Protective Order in this matter, and thus should not have been disclosed to third parties.

    4.    In the email notice, Ms. Salerno Owens explained that she had attempted to convince the Oregonian to return the documents, but was unsuccessful. Plaintiffs' counsel only notified us of the breach of various court orders after the Oregonian refused to return the documents that counsel had disclosed six days prior. NIKE was unaware of the violations of court orders prior to Plaintiffs' email on January 25, 2024.

    5.    At the time of the purportedly inadvertent disclosure on January 19, 2024, the Ninth Circuit had already issued its order staying disclosure of these documents pending appeal. Several lawyers from Markowitz Herbold appear on the Notice of Docket Activity that was issued at 11:27 AM PST—almost three hours prior to Ms. Salerno Owens' disclosure of confidential materials. *See* Dkt. No. 411 ¶ 9. A true and correct copy of the Notice of Docket Activity of the Ninth Circuit's stay order is attached hereto as **Exhibit A**. Prior to the stay order, on January 11, 2024, the Ninth Circuit had issued a temporary stay in response to an emergency motion that NIKE filed in the appellate court. This Court entered the Ninth Circuit's temporary stay order on the same day and issued an ECF notification, which was sent to Ms. Salerno Owens, at 4:00 PM PST on January 11, 2024. A true and correct copy of the Notice of Electronic Filing of the Ninth Circuit's temporary stay order is attached hereto as **Exhibit B.** The temporary stay order remained in effect until the Ninth Circuit entered the stay pending appeal on January 19, 2024. Dkt. No. 407.

    6.    The same day that Ms. Salerno Owens notified NIKE regarding her breach of the Protective Order and the Ninth Circuit's stay order, Markowitz Herbold filed a Motion for Return of Inadvertently Disclosed Documents in this Court. Because NIKE wished to expedite

Page 2 –    DECLARATION OF DANIEL PRINCE IN SUPPORT OF DEFENDANT NIKE,
                 INC.'S OPPOSITION TO THE OREGONIAN'S MOTION TO VACATE

the issue and prevent further irreparable harm, including potentially mooting its appeal, NIKE joined in the motion.

7.      Also on January 25, 2024, I emailed the Buchalter Law Firm, which is representing Markowitz Herbold in connection with the disclosure, requesting certain materials be immediately provided, including the packet of documents at issue and all documents, communications, and facts relating to Ms. Salerno Owens' disclosure of any confidential discovery materials to the Oregonian or any other news publication. Counsel did not comply with my request.

8.      On January 26, 2024, I emailed Buchalter again to request the documents, including the documents that were disclosed to the Oregonian (which I had requested on January 25). Buchalter still did not provide the documents (or even respond).

9.      On January 30, 2024, my colleague, Felicia A. Davis, emailed all counsel of record for Plaintiffs (with the exception of Markowitz Herbold, which is now represented by Buchalter) and Buchalter (on behalf of Markowitz Herbold) to again request the documents at issue.

10.     On January 31, 2024, Buchalter, after three separate emails, provided *some* of the information that we requested—namely, the packet of documents that Ms. Salerno Owens disclosed to the Oregonian on January 19, 2024. Counsel still did not provide the other documents that NIKE requested relating to Ms. Salerno Owens' discussions with or disclosure of confidential documents to the Oregonian (or others).

11.     Because NIKE still has not been provided with the facts and documents supporting Plaintiffs' claimed inadvertent disclosure, NIKE served a Rule 45 subpoena to Markowitz Herbold for the production of documents. That production is due by March 4, 2024.

Page 3 –    DECLARATION OF DANIEL PRINCE IN SUPPORT OF DEFENDANT NIKE,
            INC.'S OPPOSITION TO THE OREGONIAN'S MOTION TO VACATE

NIKE also served document requests and interrogatories to the Oregonian, which responses are due on the same date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of February, 2024, at Los Angeles, California.

Date: February 6, 2024                    */S/ Daniel Prince*_____
                                          DANIEL PRINCE

Page 4 –    DECLARATION OF DANIEL PRINCE IN SUPPORT OF DEFENDANT NIKE,
            INC.'S OPPOSITION TO THE OREGONIAN'S MOTION TO VACATE

ER-0209

# EXHIBIT A

| | |
|---|---|
| **From:** | ACMS@ca9.fedcourts.us |
| **To:** | Davis, Felicia A. |
| **Subject:** | [EXT] Cahill, et al. v. NIKE, Inc. 24-165 - 012 - Order - Resolving Multiple Motions |
| **Date:** | Friday, January 19, 2024 11:32:42 AM |

---

**--- External Email ---**

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### United States Court of Appeals for the Ninth Circuit

### Notice of Docket Activity

The following transaction was entered on 01/19/2024 11:27:06 AM PST and filed on 01/19/2024

**Case Name:** Cahill, et al. v. NIKE, Inc.

**Case Number:** 24-165

**Docket Text:**

**ORDER FILED.** Richard A. PAEZ, Jacqueline H. NGUYEN The motion to correct the docket to be added as parties to this appeal and for leave to file an opposition to appellant's motion for a stay pending appeal (Docket Entry No. 7) is granted. The Clerk will amend the caption to add as appellees: Insider Inc., d/b/a Business Insider; Advance Local Media LLC d/b/a Oregonian Media; and American City Business Journals, Inc. d/b/a Portland Business Journal. The Clerk will file the opposition (Docket Entry No. 7.2).
The motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records (Docket Entry No. 3) is granted. See Nken v. Holder, 556 U.S. 418, 434 (2009) (defining standard for stay pending appeal).
The existing briefing schedule remains in effect. [Entered: 01/19/2024 11:30 AM]

**Document:** Order

**Notice will be electronically mailed to:**

Clerk USDC Portland ; ORDml_Appeals@ord.uscourts.gov
Felicia Davis ; feliciadavis@paulhastings.com, francinesheldon@paulhastings.com
Mr. Harry B. Wilson : Attorney; docket@markowitzherbold.com, joannastalheim@markowitzherbold.com, sarahdubrule@markowitzherbold.com, michellerobles@markowitzherbold.com, sarapomerening@markowitzherbold.com, HarryWilson@MarkowitzHerbold.com
Laura E. Rosenbaum : Attorney; docketclerk@stoel.com, mallory.freeman@stoel.com,

laura.rosenbaum@stoel.com
Ms. KatieLynn Boyd Townsend : Attorney; ktownsend@rcfp.org, ecf@rcfp.org
Mr. Brian Walter Denlinger ; brian.w.denlinger@gmail.com, bd@ackermanntilajef.com
Mr. Barry L. Goldstein Esquire; bgoldstein@gdblegal.com
Byron Goldstein : Attorney; efile@gbdhlegal.com, brgoldstein@gbdhlegal.com
Craig Justin Ackermann Esquire: Attorney; all@ackermanntilajef.com
Mr. David Benjamin Markowitz : Attorney; docket@markowitzherbold.com,
tamihall@markowitzherbold.com, davidmarkowitz@markowitzherbold.com
India Bodien : Attorney; jordan@indialinbodienlaw.com, india@indialinbodienlaw.com
Mr. James Kan Esquire; efile@gbdhlegal.com, jkan@gbdhlegal.com
Laura L. Ho : efile@gdblegal.com, lho@gdblegal.com
Mr. Daniel Prince : Attorney; danielprince@paulhastings.com, lisavermeulen@paulhastings.com

**Case participants listed below will not receive this electronic notice:**

# EXHIBIT B

ER-0213

| From: | info@ord.uscourts.gov |
|---|---|
| To: | nobody@ord.uscourts.gov |
| Subject: | [EXT] Activity in Case 3:18-cv-01477-JR Cahill et al v. Nike, Inc. USCA Order |
| Date: | Thursday, January 11, 2024 4:09:39 PM |

--- External Email ---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Oregon

## Notice of Electronic Filing

The following transaction was entered on 1/11/2024 at 4:00 PM PST and filed on 1/11/2024
**Case Name:**         Cahill et al v. Nike, Inc.
**Case Number:**       3:18-cv-01477-JR
**Filer:**
**Document Number:** 407

**Docket Text:**
Order from USCA for the 9th Circuit, USCA # 24-165 re Notice of Appeal, [406]. The court has received appellant's motion for a stay pending appeal at Docket Entry No. 3. The request for a temporary stay is granted. See Doe #1 v. Trump, 944 F.3d 1222, 1223 (9th Cir. 2019). The district court's January 5, 2024 order granting the motion to unseal judicial records is temporarily stayed pending resolution of the motion for a stay pending appeal. Any responses to the motion are due January 16, 2024, by 12:00 p.m. Pacific Time. The optional reply is due January 17, 2024, by 12:00 p.m. Pacific Time. (ecp)

**3:18-cv-01477-JR Notice has been electronically mailed to:**

Barry Goldstein     bgoldstein@gbdhlegal.com

Brian Walter Denlinger     brian.w.denlinger@gmail.com

Byron Goldstein     brgoldstein@gbdhlegal.com, efile@gbdhlegal.com

Chad A. Naso     chadnaso@markowitzherbold.com, 2609173420@filings.docketbird.com, Docket@MarkowitzHerbold.com, joannastalheim@markowitzherbold.com, SarahDubrule@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com

Craig J. Ackermann     cja@ackermanntilajef.com, ak@ackermanntilajef.com, bd@ackermanntilajef.com, jb@ackermanntilajef.com

Daniel Prince     danielprince@paulhastings.com, alyssatapper@paulhastings.com, ecf-ord-6705547519524864@inbound.docketalarm.com, francinesheldon@paulhastings.com, lisavermeulen@paulhastings.com, maggiehall@paulhastings.com

David B. Markowitz     davidmarkowitz@markowitzherbold.com, 6951279420@filings.docketbird.com, docket@markowitzherbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com, tamihall@markowitzherbold.com

Felicia A. Davis     feliciadavis@paulhastings.com, arlenefigueroa@paulhastings.com, deisycastro@paulhastings.com, ecf-ord-6374354248433664@inbound.docketalarm.com, lindseyjackson@paulhastings.com

Harry B. Wilson     harrywilson@markowitzherbold.com, 2591600420@filings.docketbird.com, docket@markowitzherbold.com, joannastalheim@markowitzherbold.com, SarahDubrule@MarkowitzHerbold.com, sarapomerening@markowitzherbold.com

India Lin Bodien     india@indialinbodienlaw.com, jb@ackermanntilajef.com

James P. Kan     jkan@gbdhlegal.com

Katharine L. Fisher     kfisher@gbdhlegal.com

Kathryn P. Roberts     KathrynRoberts@MarkowitzHerbold.com, 9717759420@filings.docketbird.com, Docket@MarkowitzHerbold.com, JeniInirio@MarkowitzHerbold.com, SarahDubrule@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com

Laura E. Rosenbaum     laura.rosenbaum@stoel.com, docketclerk@stoel.com, marilyn.schoos@stoel.com

Laura L. Ho     lho@gbdhlegal.com, efile@gbdhlegal.com, sgrimes@gbdhlegal.com

Laura R. Salerno Owens     LauraSalerno@MarkowitzHerbold.com, 8359710420@filings.docketbird.com, AbigailAdams@MarkowitzHerbold.com, Docket@MarkowitzHerbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com

Mengfei Sun     msun@gbdhlegal.com, dvaldez@gbdhlegal.com

Nicole Lueddeke     nicolelueddeke@paulhastings.com

Case 3:18-cv-01477-JR    Document 426-2    Filed 02/06/24    Page 4 of 4

Zachary P. Hutton    zachhutton@paulhastings.com

**3:18-cv-01477-JR Notice will <u>not</u> be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Not Available
**Electronic document Stamp:**
[STAMP ordStamp_ID=875559790 [Date=1/11/2024] [FileNumber=8443316-0] [
58030b97d8050832b4939c6537761e78f7211ec654e6f89721abc50b05e87b35eaf613
91a87e1ee1285ac0108983cc38b22ad02cb86a90d58d98a916a609739c]]

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al, | Case No.:  3:18-cv-01477-JR |
| Plaintiffs, | |
| v. | **DEFENDANT NIKE, INC.'S RESPONSE TO ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) ARGUMENTS IN SUPPORT OF ITS EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72** |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |
| | **ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    RELEVANT BACKGROUND ................................................................. 3

III.   ARGUMENT ........................................................................................... 7

     A.    The Court Should Re-Instate The Magistrate's Order Because the
          Oregonian Is Subject To This Court's And The Ninth Circuit's Orders .............. 7

     B.    The Court's Order Does Not Violate The First Amendment ............................. 11

     C.    The Non-Party Individuals Would Suffer Irreparable Harm Should the
          Oregonian Not Be Ordered To Return the Alleged Complaints ......................... 15

     D.    The Court Should Issue An Order To Show Cause .............................................. 17

IV.    CONCLUSION ...................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*CBS v. Davis*,
  510 U.S. 1315 (1994) ................................................................................14

*Chavis v. Whitcomb*,
  305 F. Supp. 1359 (S.D. Ind. 1969) ...........................................................8

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991) ............................................................................ 13-14

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
  793 F. Supp. 2d 311 (D.D.C. 2011) ...........................................................15

*Culinary Foods v. Raychem Corp.*,
  151 F.R.D. 297 (N.D. Ill. 1993) ................................................................13

*Eli Lilly & Co. v. Gottstein*,
  617 F.3d 186 (2d Cir. 2010) ...................................................................2, 9

*Galbreath v. Metropolitan Trust Co. of Cal.*,
  134 F.2d 569 (10th Cir.1943) .....................................................................8

*Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*,
  860 F.3d 1244 (9th Cir. 2017) .................................................... 2-3, 12, 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 171321 (N.D. Cal. Oct. 14, 2017) ........... 15-16

*In re Zyprexa Injunction*,
  474 F. Supp. 2d 385 (E.D.N.Y. 2007) .................................................7, 15

*N.Y. Times Co. v. United States*,
  403 U.S. 713 (1971) ..................................................................................14

*Near v. Minnesota ex rel. Olson*,
  283 U.S. 697 (1931) ..................................................................................14

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971) ..................................................................................14

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) .......................................................................14

Page iii   -   NIKE'S OPPOSITION TO THE OREGONIAN'S EMERGENCY MOTION TO
              VACATE

*Ramsey v. NYP Holdings, Inc.,*
    No. 00 Civ.3478(VM)(MHD), 2002 WL 1402055 (S.D.N.Y. June 27, 2002)........................7

*Redapt Inc. v. Parker,*
    No. 2:20-cv-00862-JRC, 2020 WL 3128859 (W.D. Wash. June 11, 2020)...........................11

*Robert Ito Farm, Inc. v. Cnty. of Maui,*
    842 F.3d 681 (9th Cir. 2016) .............................................................................................8

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984) ................................................................................................... *passim*

*Smith v. Daily Mail Publ'g Co.,*
    443 U.S. 97 (1979)............................................................................................................14

*State ex rel. Sports Mgmt. News v. Nachtigal,*
    324 Or. 80 (1996).............................................................................................................15

*The Fla. Star v. BJF,*
    491 U.S. 524 (1989).........................................................................................................14

*United States v. Brown,*
    250 F.3d 907 (9th Cir. 2001) ...........................................................................................11

*United States v. United Fruit Co.,*
    410 F.2d 553 (5th Cir. 1969) .............................................................................................8

*Wachner v. Aramark Educ. Servs., Inc.,*
    No. CV 02-528-BR, 2003 WL 23538037 (D. Or. Dec. 12, 2003)...........................................7

*Walker v. City of Birmingham,*
    388 U.S. 307 (1967).........................................................................................................16

*Widjaja v. YUM! Brands, Inc.,*
    No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009)......................8

**RULES**

FED. R. CIV. P. 26(b)(1)..........................................................................................................14

**TREATISES**

Wright & Miller, *7C Fed. Prac. & Proc. Civ.* § 1920 (3d ed.)......................................................8

**CONSTITUTIONAL PROVISIONS**

U.S. CONST., amend. I ..................................................................................................... *passim*

Page iv    -    NIKE'S OPPOSITION TO THE OREGONIAN'S EMERGENCY MOTION TO
                VACATE

**OTHER AUTHORITIES**

Jeff Manning, *Class-action lawsuit on Nike: 'where women are devalued and demeaned'*,
    The Oregonian, August 10, 2018,
    https://www.oregonlive.com/business/2018/08/class-action_lawsuit_on_nike_w.html
    (last visited February 6, 2024) ...............................................................................10

Matthew Kish, *Deposition shakes up Nike pay discrimination lawsuit; Nike wants it
    barred*, Business Insider, Oct. 5, 2023,
    https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-
    discrimination-lawsuit-nike-wants-it-barred.html (last visited February 6, 2024) .................10

Matthew Kish, *Nike says it has made changes to improve its work culture. But employees
    are still making new discrimination complaints amid an ongoing lawsuit, lawyer says*,
    Business Insider, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-
    continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited
    February 6, 2024) ...............................................................................................10

Sara Germano and Joann S. Lublin, *Inside Nike, a Boys-Club Culture and Flawed HR*,
    The Wall Street Journal, last updated Mar. 31, 2018,
    https://www.wsj.com/articles/inside-nike-a-boys-club-culture-and-flawed-hr-
    1522509975 (last visited February 6, 2024) ...........................................................10

Shoshy Ciment, *Judge Sides With Nike in Recent Development Gender Discrimination
    Suit*, FOOTWEAR NEWS, March 22, 2023,
    https://footwearnews.com/business/legal-news/judge-nike-discrimination-suit-
    development-1203374861/ (last visited February 6, 2024) ......................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

A review of the facts surrounding this motion would leave both journalism and legal ethics professors sobbing in their soup.  The Oregonian, a party to this case, possesses confidential discovery that it was prohibited from accessing by the Protective Order here and a Ninth Circuit stay order.[1]  What's more, the Oregonian's reporter knew that the newspaper should ***not*** have access to the files at issue, much like Plaintiffs' counsel knew that she should ***not*** have shared those same documents with the reporter.  Yet, counsel and the reporter decided to meet in-person so that counsel could use her iPad to preview documents for the reporter that she should have known should ***not*** have been previewed, including documents that were not part of the record on class certification.  Counsel then used her iPhone to email the reporter copies of the documents they had been reviewing in secret.  All of this violates ***two court orders***.  Yet, the Oregonian now argues its violations have no remedy, insisting that this case is about a prior restraint on speech.  It is not.  The issue is whether the Court has authority to enforce orders— ***two of them***—that are binding on the parties and their counsel.  The answer must be "yes."

The Oregonian attempts to invoke judicial processes while at the same time defying judicial orders.  On the one hand, the Oregonian willingly availed itself of this Court's powers to challenge the sealing/redaction of the documents at issue and vindicate their claim of First Amendment rights.  Once it obtained documents in violation of ***two court orders*** (and the Oregonian was aware of both), however, the Oregonian changed its tune.  It now contends that the Protective Order's provisions regarding access or use are optional and can be ignored.  The Oregonian cannot invoke the equity of the court while shielding itself from the enforcement of

---

[1] The stay order was issued as an ECF notice from the Ninth Circuit, and that order also was circulated to the counsel in the district court action, via ECF, on the same day.

the very order that it sought to modify.  The Court has the inherent authority to enforce (and punish) violators of its orders, including those who knowingly participate in such violation.  *See Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010).

The First Amendment also does not entitle the Oregonian to keep and publish documents that it should have never received but for a breach of court orders.  Indeed, the Oregonian attempts to argue that its acquisition of these documents was independent from the litigation and lawful.  The facts tell a different story.  The Plaintiffs filed this litigation in 2018, referring to a group of unverified complaints (though unrelated to any claims in the case) (the "Alleged Complaints"); the Court ordered NIKE to produce the Alleged Complaints after Plaintiffs moved to compel the same; NIKE produced those documents with limited redactions (*i.e.,* names of witnesses, subjects, and complainants); the Media Intervenors sought relief under the Protective Order to unredact/unseal certain names identified in the Alleged Complaints; and, the redaction/sealing issues have been the subject of extensive briefing in the District Court, an appeal to the Ninth Circuit, and a stay order. [2]  This issue has touched every facet of the litigation and under these facts, the First Amendment does ***not*** safeguard the press from enforcement of a protective order.  *See Seattle Times Co. v. Rinehart*, 467 U.S. 20, 33-34 (1984) (a party "may disseminate the identical information covered by the protective order as long as the information *is gained through means independent of the court's processes*.") (emphasis added); *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244, 1258 (9th Cir. 2017) ("By independent source, we mean what the district court implied:  Ground Zero may discuss and distribute the documents in question *so long as it acquires the documents from a source not*

---

[2] The Media Intervenors are Media Organizations Insider Inc. *d/b/a Business Insider*, Advance Local Media LLC *d/b/a Oregonian Media Group*, and American Business Journals, Inc., *d/b/a Portland Business Journal*.

Page 2    -    NIKE'S OPP. TO THE OREGONIAN'S EMERGENCY MOTION

*involved in this litigation*[.]") (emphasis added). Put simply, there is no "coffee meeting" exception for litigants exchanging documents in violation of court orders.

Allowing the Oregonian to keep and publish the documents threatens NIKE's appeal, casts doubt on this Court's powers to enforce its orders, and rewards the Oregonian for acquiring the very documents it was prohibited from accessing. This is not the law and cannot be the outcome. Accordingly, NIKE respectfully requests that the Court reinstate its order requiring return of the documents, preventing dissemination, and destroying all copies. At minimum, the Court should preserve the status quo until NIKE can conduct discovery into the disclosure and supplement its briefing with the Court.

## II.    **RELEVANT BACKGROUND**

Since this litigation was filed, though irrelevant to their actual legal claims, Plaintiffs have built their case around the Alleged Complaints. Dkt. No. 1 ¶ 54. Those documents were produced to Plaintiffs (upon a Court order, following extensive briefing) under the Protective Order, and the Media Intervenors intervened in this action with the specific purpose of unsealing those records. Dkt. No. 111; Dkt. No. 205. Since April 2022, the Media Intervenors have been fighting to gain unfettered access to non-party individuals' names connected to unverified complaints that were submitted in connection with—though unrelated to the merits of— Plaintiffs' class certification motion. *Id*. NIKE has vigorously opposed such attempts to intrude upon the inherent privacy rights of third party complainants, witnesses, and subjects of sensitive, unsubstantiated allegations. *E.g.*, Dkt. Nos. 345, 376, 406. This Court entered a temporary 7-day stay on January 5, 2024 to allow NIKE to seek a stay of the Court's October 11, 2023 order to unseal the records. Dkt. No. 363; Dkt. No. 404. Shortly thereafter, NIKE sought and obtained a temporary stay from the Ninth Circuit, which went into effect on January 11, 2024 and remained in effect until the Ninth Circuit could rule on NIKE's motion to stay pending appeal.

Dkt. No. 407.  On January 19, 2024, the Ninth Circuit Court of Appeals stayed this Court's order

pending NIKE's appeal of that order (the "Stay Order").  Dkt. No. 408.  The Stay Order was

entered and recognized in this case on the same day.  *Id*.

      ***Hours after the Stay Order was entered***, Plaintiffs' counsel, Ms. Laura Salerno Owens of

Markowitz Herbold PC, met with Matthew Kish, a business reporter for the Oregonian at a

coffee shop to discuss allegations raised by a current or former NIKE employee, purportedly

unconnected to this litigation.  Dkt. No. 416 ¶ 2.   Even before the entry of the full Stay Order, an

interim stay was in place and known.  Dkt. No. 407.   According to the Oregonian, Ms. Salerno

Owens provided a comment and sent three emails to Mr. Kish from two different devices during

their meeting—one of which included the Alleged Complaints.  *Id*. ¶ 3.  Specifically, Ms.

Salerno Owens forwarded a PDF—over half of which contained material that (1) NIKE

produced to Plaintiffs subject to the Protective Order and has not been filed in this case or (2) is

subject to the Ninth Circuit's Stay Order.  Dkt. No. 411 ¶ 9.  Ms. Salerno Owens now claims that

this disclosure of protected material was "inadvertent".  *Id*. ¶ 14.

      The circumstances surrounding this disclosure raise questions that have thus far been

unanswered.  As an initial matter, Plaintiffs chose not to notify NIKE regarding the blatant

violation of the Protective Order and Stay Order ***until six days later***, on January 25, 2024, after it

was clear that Plaintiffs could not alleviate the issue on their own.  Declaration of Daniel Prince

("Prince Decl.") ¶¶ 3-4; Dkt. No. 416 ¶ 7; Dkt. No. 411 ¶ 19.  NIKE has been kept largely in the

dark regarding this serious issue concerning its own protected material and, despite numerous

requests to Plaintiffs' counsel, has received very little information regarding this purported

"inadvertent" disclosure.  Prince Decl. ¶¶ 7-11.  NIKE's knowledge is, thus, currently limited to

the facts set forth in Markowitz Herbold's and the Oregonian's filings.[3]

Ms. Salerno Owens met with Mr. Kish on January 19, 2024 to discuss allegations raised by Mr. Kish. Dkt. No. 411 ¶ 2. Again, at this time, Ms. Salerno Owens, at minimum, knew that a temporary stay was in effect, Dkt. No. 407, and several lawyers in her firm had been notified of the full Stay Order. Prince Decl. ¶ 5, Exs. A & B. Nevertheless, Ms. Salerno Owens appeared eager to provide a comment to the reporter. Dkt. No. 411 ¶ 5. At 1:58 p.m., while still at the coffee shop, Ms. Salerno Owens emailed a comment to Mr. Kish. Dkt. No. 411 ¶ 5; Dkt. No. 416 ¶ 3. Ms. Salerno Owens claims that Mr. Kish "noticed [she] referenced the [the Alleged Complaints]" and "asked [ ] which [Alleged Complaints] supported the comment." Dkt. No. 411 ¶ 6. However, nowhere in the email referenced by Ms. Salerno Owens does she reference the Alleged Complaints. Dkt. No. 411-1. Within *four minutes* of the email providing the comment, Mr. Kish purportedly read the email, deduced that it referred to the Alleged Complaints, and requested Ms. Salerno Owens to identify the specific Alleged Complaints; Ms. Salerno Owens, in turn, had enough time to type an index with page numbers and allegations, which she emailed to Mr. Kish at 2:02 p.m. Dkt. Nos. 411 ¶ 7, 411-2. Thereafter, Mr. Kish purportedly told Ms. Salerno Owens that the index did not reference ECF numbers to the public record. Dkt. No. 411 ¶ 8. Eight minutes later, at 2:10 p.m., Ms. Salerno Owens forwarded the PDF (containing significantly more pages than what has been filed in this case). *Id*. ¶ 9.

At some point, Ms. Salerno Owens realized that she and Mr. Kish had gone too far. Rather than immediately notify NIKE, Ms. Salerno Owens tried to convince Mr. Kish to return the documents. Dkt. No. 411 ¶¶ 13-19. Mr. Kish refused. Dkt. No. 416 ¶¶ 4, 7. It was only

---

[3] NIKE has propounded discovery requests on the Oregonian and Markowitz Herbold concerning these events. Prince Decl. ¶ 11.

days later, when Ms. Salerno Owens realized she could not solve their breach, that Plaintiffs informed NIKE.  Prince Decl. ¶ 4.

The same day that Plaintiffs notified NIKE of their violation, Markowitz Herbold filed a Motion to Request Return of Inadvertently Disclosed Materials.  Dkt. No. 410.  Reserving its rights, NIKE emailed the Court joining the request to secure relief from this Court.  Prince Decl. ¶ 6.  Despite the fact that the motion directly affected the Oregonian, Markowitz Herbold apparently did not serve the Oregonian with the motion, or otherwise notify the Oregonian of its filing.  Dkt. No. 414 at 10.  The Magistrate granted the motion on January 26, 2024, noting that the Oregonian is an intervenor in this action for the purposes of obtaining disclosure of the very documents in its possession and is a party to the appeal in which the Stay Order was issued.  Dkt. No. 412.  The order required the Oregonian to (1) return the documents by January 31, 2024; (2) agree not to disseminate that information; and (3) destroy any copies in its possession.  *Id*.  On January 29, 2024, the Oregonian filed its Motion to Vacate the order.  Dkt. No. 414.  On January 30, 2024, this Court granted the Motion to Vacate and vacated its order, but ordered the status quo remain in effect until the issues set forth in the motion were resolved.  Dkt. No. 417.  The Magistrate then directed the parties to respond to the arguments made in the Motion to Vacate.  Dkt. No. 418.  The Oregonian published "unbiased" articles decrying the Court's order as unconstitutional, unsurprisingly written by the very reporter that knew he should not be in possession of the documents at issue but took them anyway and refuses to return the same.[4]

---

[4] *See, e.g.,* Matthew Kish, *The Oregonian/OregonLive wins decision overturning order in Nike documents ease - oregonlivecom,* THE OREGONIAN, Jan. 30, 2024, https://www.oregonlive.com/business/2024/01/federal-judge-orders-review-of-ruling-in-dispute-over-nike-documents-after-the-oregonianoregonlive-appeals.html.

### III.    ARGUMENT

#### A.    The Court Should Re-Instate The Magistrate's Order Because the Oregonian Is Subject To This Court's And The Ninth Circuit's Orders

The Oregonian approached this Court dressed *as a **litigant***.  It sought and was granted the right to intervene to contest the Protective Order.  It invoked the authority of the Court and made itself subject to that same authority.  Indeed, it ***is a party to the appeal*** about these very documents.  The Oregonian's position that its powers of the press trump any obligation it may assume as a litigant is wrong.  The press does not get to pick and choose what Court rules it follows.  "[W]hen a member of the press is a litigant, he has no right to demand that the court processes triggered by his conduct will be made available to him for journalistic endeavors irrespective of the legitimate privacy interests of his adversary."  *Ramsey v. NYP Holdings, Inc.*, No. 00 Civ.3478(VM)(MHD), 2002 WL 1402055, at *13, n.11 (S.D.N.Y. June 27, 2002). Despite the Oregonian's protestations otherwise, there is no "coffee meeting" exemption to protective orders, when two litigants exchange documents (in violation of court orders).

Having, instead, made itself subject to the Court's jurisdiction, the Oregonian is subject to the Court's orders.  And, "[t]he Court has inherent authority to enforce [those] orders[,]" *Wachner v. Aramark Educ. Servs., Inc.*, No. CV 02-528-BR, 2003 WL 23538037, at *3 (D. Or. Dec. 12, 2003), a power that "carries with it the equal power to punish for a disobedience[.]"  *In re Zyprexa Injunction,* 474 F. Supp. 2d 385, 417-18 (E.D.N.Y. 2007) (citation omitted).  As a litigant before the Court, the Oregonian knew (and was told) the documents it received were documents *it was not supposed to have under the Court's orders.*

The Oregonian argues that the Protective Order does not apply.  Dkt. No. 414 at 5.  Not so.  By intervening in this action, the Oregonian bound itself to this Court's orders and authority. As an intervenor, the Oregonian "join[ed the litigation] subject to the proceedings that have

occurred prior to his intervention[.]"  Wright & Miller, *7C Fed. Prac. & Proc. Civ.* § 1920 (3d

ed.).  "[O]ne who intervenes in a suit in equity thereby becomes a party to the suit, *and is bound*

*by all prior orders* and adjudications of fact and law as though he had been a party from the

commencement of the suit."  *Galbreath v. Metropolitan Trust Co. of Cal*., 134 F.2d 569, 570

(10th Cir.1943) (emphasis added); *see also Widjaja v. YUM! Brands, Inc*., No. CV-F-09-1074

OWW/DLB, 2009 WL 3462040, at *3, 8 (E.D. Cal. Oct. 22, 2009) (intervenors, which

intervened for the "limited purpose of striking the class action allegations or for stay of

overlapping claims" were "treated as if the intervenor[s] were an original party and has equal

standing with the original parties").  This is hardly new law.  "It is a general principle that

intervening defendants enter the case as they find it, *bound by all orders and proceedings* prior

to the date of intervention."  *Chavis v. Whitcomb*, 305 F. Supp. 1359, 1363 (S.D. Ind. 1969)

(emphasis added).[5]

Pursuant to the Protective Order, the Oregonian was prohibited (1) from seeing the

documents in the first place, Dkt. No. 82 ¶¶ 7-8, and (2) using the Alleged Complaints for a

commercial or business purpose.  Dkt. No. 82 ¶ 2.  This is exactly what the Oregonian intends to

do.  *See* Dkt. No. 414.  A clawback order is, thus, necessary and within this Court's inherent

authority.  Dkt. No. 82 ¶ 17; *United States v. United Fruit Co.,* 410 F.2d 553, 554 (5th Cir. 1969)

(trial court "did not abuse its discretion in enforcing [a protective] order").

Here, the Plaintiffs and the Oregonian are doubly bound.  As a party to the appeal, the

Ninth Circuit's Stay Order undoubtedly binds the Oregonian.  Tellingly, the Oregonian does not

---

[5] The Oregonian's invocation of *Robert Ito Farm, Inc. v. Cnty. of Maui*, 842 F.3d 681, 687 (9th Cir. 2016) misses the mark.  That case is about the power of Magistrate Judges and *prospective* intervenors.  Here, by contrast, The Oregonian *has* intervened.  Dkt. No. 205.  And, *Maui* says nothing by way of displacing the settled law that says an intervenor is bound by prior orders.

address its obligations under the Stay Order, only mentioning in a footnote that the Alleged Complaints "include at least some of the sealed documents subject to the [Stay Order.]" Dkt. No. 414 at 2. ***But in the same order that confirmed the Oregonian was a party to the appeal, the Ninth Circuit entered an order staying production of the Alleged Complaints pending appeal.*** Dkt. No. 408. The Oregonian ignores all of that, wrongly suggesting that this Court and the Ninth Circuit are powerless to remedy a breach of their orders.

Indeed, the Court's power extends even beyond litigants, including the authority to issue orders barring dissemination and require return of confidential documents from parties who improperly obtained the materials from a party to the litigation—*i.e.*, "third parties who aid and abet the violation of their protective orders." *Eli Lilly*, 617 F.3d at 195.

*Eli Lilly* is instructive. There, the plaintiff's expert witness received documents pursuant to a protective order from Eli Lilly. *Eli Lilly*, 617 F.3d at 189. The expert hoped to distribute them to the media. *Id.* Not wanting to violate the protective order overtly, the expert instead conspired with third parties to construct a "lawful" and "independent" means of publicizing the documents. *Id.* at 193. The expert reached out to a reporter, who put him in touch with an attorney, who, in turn, intervened in an unrelated case and subpoenaed the expert to produce the confidential documents. *Id.* at 189. The Court held that an order to return the documents was a "perfectly appropriate device to foreclose further dissemination of the confidential documents produced under the protective order." *Id.* at 196. The Second Circuit reasoned:

> If courts cannot bind third parties who aid and abet the violation of their protective orders, then any party, agent, attorney or expert who comes into possession of material he wanted to use against the producing party could simply disseminate the information quickly, then deal with the damages issue after the fact. We understand the threat of a sizable damages award may deter this action in some cases, but [the] proposed rule would eviscerate [the] courts' ability to manage discovery and, hence, litigation.

*Id.* at 195.

So too here.  While much is still unknown and must be discovered, the little information that is known confirms a breach and suggests impropriety.  At minimum, both Plaintiffs' counsel and the Oregonian knew the Alleged Complaints were *not* supposed to be distributed to the Oregonian pending the Ninth Circuit appeal.  Dkt. No. 411 ¶ 13; Dkt. No. 407.  Yet, those Alleged Complaints were shared in person via two *different* devices (an iPhone and an iPad), which suggests that there was conscious and *active* searching for and sharing of the information (in violation of Court orders).  Dkt. No. 411-2; Dkt. No. 416 ¶ 3.  It was shared the same day, and importantly, *after* the Ninth Circuit said it could not be, and Ms. Salerno Owens was aware of such fact because she receives this Court's ECF notifications.  Dkt. No. 407; Dkt. No. 408; Dkt. No. 411 ¶ 2.  Add to that the following:

- Ms. Salerno Owens is at the forefront of the publicity surrounding this litigation and appears to have a working relationship with the Oregonian and Mr. Kish;[6]

- Ms. Salerno Owens apparently asked her team *prior to meeting Mr. Kish* to compile the PDF that she would later send to Mr. Kish (*see* Dkt. No. 411 ¶ 4);

---

[6] *See, e.g.*, Matthew Kish, *Nike executives subjects of sex discrimination, harassment complaints, plaintiffs claim*, THE OREGONIAN, Nov. 14, 2023, https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-harassment-complaints-plaintiffs-claim.html (last visited February 6, 2024); Jeff Manning, *Unsealed Nike documents reveal widespread complaints of harassment, pay disparities,* THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited on February 6, 2024); Jeff Manning, *Class-action lawsuit on Nike: 'where women are devalued and demeaned'*, THE OREGONIAN, Aug. 10, 2018, https://www.oregonlive.com/business/2018/08/class-action_lawsuit_on_nike_w.html (last visited February 6, 2024); Matthew Kish, *Nike says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says*, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9; Matthew Kish, *Deposition shakes up Nike pay discrimination lawsuit; Nike wants it barred*, BUSINESS INSIDER, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html  (last visited February 6, 2024).

- The PDF contained significantly more pages than what is available publicly, but purportedly did not sound alarm bells (*compare* Dkt. No. 411 ¶ 9 *with* Dkt. No. 284-6 (Ex. 50), 285-1 (Ex. 52), 290 (Ex. 9)); and

- Both Plaintiffs' counsel and the Oregonian then kept the news of their breach from NIKE and *two different* Courts (this one and the Ninth Circuit) for *six* days.

Whether there was an *intentional* violation of court orders *may* not be clear (yet), but what is clear is that the Oregonian knew that obtaining the Alleged Complaints constituted a breach of Court orders. In the face of that breach, this Court may issue equitable orders against the breaching party and all "other persons who may be in active concert or participating with [them]." *See Redapt Inc. v. Parker,* No. 2:20-cv-00862-JRC, 2020 WL 3128859, at *1, 6 (W.D. Wash. June 11, 2020) (granting an order barring the use of stolen confidential information "binding on any such person who has or may have access to the information, devices, or materials that are the subject of this order and who received actual notice of this Order").

**B.    The Court's Order Does Not Violate The First Amendment**

The First Amendment does not stand as a bar to the Court remedying breaches of its orders. The Oregonian invokes the First Amendment in its refusal to return the Alleged Complaints. But this resistance is grounded in a fundamental misinterpretation of the law and a **mischaracterization** of its acquisition of the Alleged Complaints.

"While the news media are entitled to receive, investigate and report on all *public* proceedings involved in a trial, the right to gather news, much like other first amendment rights, is not absolute." *United States v. Brown,* 250 F.3d 907, 914-15 (5th Cir. 2001) (emphasis in original). The First Amendment does not "guarantee journalists access to sources of information not available to the public generally." *Id.* at 914 (citation omitted). This Court may refuse to

allow the press to inspect non-public documents, including individuals' identities; "such orders are distinct from prior restraints." *Id.* Thus, the Oregonian's argument that there must be a showing that the clawback serves a governmental interest of a "highest order" is incorrect. Dkt. No. 414 at 6. Courts have considerable discretion to constrain litigants from disseminating information obtained through litigation and apply "relaxed First Amendment scrutiny" when determining whether restrictions intrude upon free speech. *Ground Zero Ctr.*, 860 F.3d at 1258. Consistent with these principles, this Court has authority to remedy the Oregonian's misconduct.

The Oregonian's invocation of *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) is unfounded. While the *Seattle Times* Court addressed whether a litigant could seek a protective order that prohibited the petitioner from disseminating information gathered through discovery, the focus of its analysis was on this latter part—*i.e.*, whether the information was obtained through court processes. The Court held that a party "may disseminate the identical information covered by the protective order as long as the information *is gained through means independent of the court's processes*." *Id.* at 33-34 (emphasis added).

The Oregonian argues that its acquisition of the Alleged Complaints was lawful and outside of court processes. Dkt. No. 414 at 7. But even in the face of sparse and incomplete evidence, it is apparent that the acquisition was intertwined with this Court's processes. Simply because the Oregonian did not propound the Requests for Production ("RFPs") that resulted in these documents does not then mean that its acquisition was independent. This litigation touched every aspect of the Oregonian's receipt of the documents. NIKE produced the documents to Plaintiffs in response to RFPs and upon a motion to compel. The documents were subject to the Protective Order, and these Alleged Complaints have been the subject of hundreds of pages of briefing in this Court (and the Ninth Circuit). Plaintiffs then gave those documents to the

Oregonian, an intervenor.  To allow the Oregonian to keep and publish confidential records in violation of clear court orders would create a loophole to judicial processes that are enacted to safeguard the integrity of discovery and litigation as a whole.  *Seattle Times*, 467 U.S. at 32.  The Oregonian asks this court to create the "coffee meeting" exception, wherein litigants are free to ignore protective orders under the shield provided by a coffee shop.  This absurd result is not and cannot be the law.[7]  The Ninth Circuit has said so.

In *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017), the Ninth Circuit explained that the law *permitted* a District Court from barring the press from using *litigation* documents, so long as it did not bar the press from using "independent sources" to gather the information.  *Id.* at 1257-58.  The Ninth Circuit clarified what this meant:  "By independent source, we mean what the district court implied:  Ground Zero may discuss and distribute the documents in question *so long as it acquires the documents from a source not involved in this litigation*[.]"  *Id.* at 1258 (emphasis added).

The Ninth Circuit, in other words, has already interpreted *Seattle Times* as affording this Court authority to curtail use of litigation documents.  *Id.*  And, courts likewise recognize that as between parties involved in litigation, solicitation and discovery are effectively the same thing:  "Where [a party] has solicited information from other parties who are subject to protective orders, we believe that [party's] solicitation is part of this case's pretrial discovery" and thus can be prohibited under a protective order.  *Culinary Foods v. Raychem Corp.*, 151 F.R.D. 297, 302-03 (N.D. Ill. 1993).[8]

---

[7] Even Plaintiffs' counsel agrees that the Oregonian's acquisition of these materials was through this litigation.  Dkt. No. 421 ("Stated another way, absent normal discovery process, the Oregonian would have never obtained these documents[.]").

[8] The other authority the Oregonian cites is inapposite because, there, the press received information outside of litigation and unconnected to a protective order.  In *Cohen v. Cowles*

Page 13    -    NIKE'S OPP. TO THE OREGONIAN'S EMERGENCY MOTION

The limits on the "independent source" rule make sense. Parties to litigation are generally subject to protective orders, which as the *Seattle Times* court explained, are crucial— and therefore, must be enforced—because of the liberality of pretrial discovery permitted by Rule 26(b)(1) and the corresponding potential for abuse. What the Oregonian received here was not only publicly-filed documents sealed by the Stay Order, but also ***documents that have never been filed—period***. The Oregonian does not have the right to (nor would it have had access to) this information (or even known of its existence) had NIKE not produced it to Plaintiffs, who in turn gave it to Mr. Kish. *See e.g.*, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 782 (3d Cir. 1994) ("[W]hen a court enters an order of protection over documents exchanged during discovery, and these documents have not been filed with the court, such documents are not, by reason of the protective order alone, deemed judicial records to which the right of access attaches."). Receipt of discovery materials from a party subject to a protective order certainly does not fall within the category of "traditionally public source[s]" safeguarded from enforcement orders. *Seattle Times*, 467 U.S. at 33-35.

---

*Media Co.*, 501 U.S. 663 (1991), Cowles Media, received information from Cohen prior to, and completely disconnected from, any litigation. *Id.* at 663. In *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979), the newspaper defendants were sued for publishing the name of a minor, which they acquired through independent means unrelated to any litigation. *Id.* at 103; *The Fla. Star v. BJF*, 491 U.S. 524, 524 (1989) (newspaper was sued for publishing the name of a rape victim, which it obtained after entering into the police's pressroom); *see also Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 707 (1931) (the newspaper challenged a pre-existing law that prohibited them from printing its newspaper based on claims that it was malicious, lewd, and defamatory); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (government sought injunction against the newspaper for publication of the contents of a classified study obtained independently from litigation); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 415 (1971) (an organization sought review of an injunction to stop distribution of pamphlets, unconnected to any litigation); *CBS v. Davis*, 510 U.S. 1315, 1315 (1994) (broadcaster and news program sought review of a preliminary injunction prohibiting them from broadcasting footage obtained via undercover footage, not from a party to a litigation). Those cases are not this one. The Oregonian has invoked litigation tools and now seeks to ignore litigation rules.

This is why a clawback order would not violate First Amendment rights.  It invokes the Court's inherent authority to enforce orders and remedy unlawful acquisition of documents; it does **not** limit a type of speech.  *In re Zyprexa Injunction,* 474 F. Supp. 2d at 423 (enjoining individuals who had received documents covered in violation of a protective order from further dissemination of the documents); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz,* 793 F. Supp. 2d 311, 330 (D.D.C. 2011) ("[T]he protections afforded by the First Amendment, far reaching as they may be, do not place the unlawful acquisition of information beyond the reach of judicial review.").  Nothing in the order would prevent the Oregonian from publishing a certain topic or expressing an opinion.  Rather, it would only seek to unravel a potentially damaging violation of important court protections.[9]  *Id.*

### C.    The Non-Party Individuals Would Suffer Irreparable Harm Should the Oregonian Not Be Ordered To Return the Alleged Complaints

As the Oregonian has made clear, it has no intention of complying with the Protective Order or the Stay Order.  It will immediately publicize not only the individuals protected by the stay—which the Ninth Circuit has already confirmed will suffer irreparable harm, Dkt. No. 408—but also contents of the Alleged Complaints that have never been filed in this action because they are irrelevant.  Publication of this information will impact the privacy interests and livelihood of non-parties with no connection to the remaining Plaintiffs' claims.  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC),

---

[9] For this reason, the Oregonian's reliance on *State ex rel. Sports Mgmt. News v. Nachtigal*, 324 Or. 80, 90 (1996) is misplaced.  There, the court was tasked with determining whether an Oregon statute, which required court approval to disclose an alleged trade secret, violated the Oregon Constitution. *Id.*  Because the statute focused on the content of the speech, the statute would be invalid on its face unless it fit into "some historical exception."  *Id.* at 89.  There was no indication that the acquisition of the trade secret information was unlawful because the source of the leak was unknown. *Id.*; Dkt. No. 414 at 9.  Here, of course, an order to return documents is not focused on the content of any publication, and the source of the leak is not unknown.

2017 U.S. Dist. LEXIS 171321 (N.D. Cal. Oct. 14, 2017) ("disclosure of the non-party

employees' names . . . would infringe on those individuals' privacy rights").  Once the

information is published, the damage will be done, and the non-parties will have no recourse.

Even more fundamentally, publication may moot NIKE's appeal and deprive it of its

opportunity to seek review of this important issue.  Whether purposeful or not, the Oregonian's

conduct in concert with Plaintiffs' counsel has threatened NIKE's legal rights and undermines

the efficacy of court orders.  Allowing the Oregonian to profit from documents to which it

should not have had access pursuant to Court orders, under the guise of First Amendment

concerns, would serve to reward them for their unlawful acquisition.  This is not what the First

Amendment protects.  Holding otherwise sets a dangerous precedent.

On the other hand, the harm imposed on the Oregonian if it was ordered to return the

documents would be minimal, at best.  The Oregonian was supposed to be barred from obtaining

these documents in the first place.  It has no property rights in the Alleged Complaints, and it

would suffer no injury to its constitutional rights.  *See supra* Section III.B.  Nor is the

Oregonian's impatience in waiting for the outcome on appeal a harm that warrants disregarding

the judicial process (particularly where, as here, the Media Intervenors—including the

Oregonian—filed their initial motion relating to unsealing in April 2022).  "One may sympathize

with the petitioners' impatient commitment to their cause.  But respect for judicial process is a

small price to pay for the civilizing hand of law, which alone can give abiding meaning to

constitutional freedom."  *Walker v. City of Birmingham,* 388 U.S. 307, 321 (1967).  If the

Oregonian can convince the Ninth Circuit that it has a right to access the unredacted documents,

it will have lawful access in due course.  And if the Oregonian is not ultimately entitled to these

documents (which NIKE believes will be established on appeal), the Oregonian will suffer no

harm.  In fact, returning the documents is the only way to ensure that *no one* is harmed.[10]

**D.    The Court Should Issue An Order To Show Cause**

Plaintiffs' counsel has admitted that there has been a breach.  Yet, the circumstances surrounding that breach between lawyer and reporter are not fully known and Plaintiffs and the Oregonian have been coy regarding the real story.  (*E.g.*, Why were they meeting that day?  How many times had they met before?  Why was the lawyer volunteering information from her files?  Why was the PDF prepared ***prior*** to the meeting?  Why was information sent on two different devices?  What did they specifically talk about?  Who else has the reporter shared the protected information with?)  These are questions that NIKE ***and the Court*** have every reason to ask in the face of the admitted breach.  If the Court is any way inclined to consider allowing this breach to benefit the Oregonian, NIKE asks that this Court allow it limited discovery before it does so.  NIKE has served discovery and believes that the process should be completed within 45 days (including depositions).  Once completed, NIKE can supplement its briefing in this Court.

To be clear, the Court has every ability to order the clawback now, as argued above.  And what's more, the breach needs to be redressed.  NIKE suggests that an OSC issue as to both Plaintiffs' counsel (Ms. Salerno Owens and her firm) and the Oregonian explaining why some form of sanction should not issue.

**IV.    CONCLUSION**

For the foregoing reasons, NIKE respectfully requests that this Court reinstate the Order to Return Documents and require the Oregonian to (1) return the documents immediately; (2) agree not to disseminate or publish that information in any way; and (3) destroy any copies or derivatives in its possession.  NIKE also asks that an OSC issue as discussed above.

---

[10] NIKE does not address the Oregonian's due process argument or its request for a stay, as those issues are now moot given its Motion to Vacate and the corresponding Court order.

Date:  February 6, 2024              */S/ Daniel Prince*

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

Attorneys for Defendant NIKE, INC.

**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA  94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477-JR |
| Plaintiffs, | **DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | **[FILED UNDER SEAL]** |

**Page 1 –   DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

ER-0240

I, Laura Salerno Owens, declare as follows:

1.  I am a shareholder with Markowitz Herbold PC, attorneys of record for plaintiffs. I have personal knowledge of the facts set forth herein. I make this declaration in support of Plaintiffs' Motion to Request Return of Inadvertently Disclosed Materials.

2.  On Friday, January 19, 2024, I met in-person with Matthew Kish, a reporter for the Oregonian, at his request. Mr. Kish had previously informed me that he had received a copy of a declaration that ███████ made in connection with this lawsuit (plaintiffs' counsel did not provide the declaration to him). The declaration contained allegations ████████████████ ████████ that ████████ claimed she experienced while working at Nike. At the time of the alleged incidents, ██████████████████████████. Mr. Kish had asked if plaintiffs would like to provide a comment on the allegations in ████████ declaration.

3.  ████████████████████████████████████████████████████ ██████████████████████████████████████ Therefore, I decided to limit my comments to the information in the publicly available records in this case, specifically ████████████ unsealed pursuant to the Court's October 11, 2023 order (ECF 363).

4.  To that end, I asked my team to compile a PDF of ██████████████. I had intended to only have copies of the ████████ that were available in the public record pursuant to the Court's October 11, 2023 order (ECF 363).

5.  In my January 19, 2024, meeting with Mr. Kish, I stated that I would provide a limited comment on ████████ declaration. I emailed him the comment at 1:58 p.m. with the subject line, "Quote." A true and accurate copy of that email is attached hereto as Exhibit 1.

**Page 2 –   DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

6.      Mr. Kish reviewed the comment and noticed I referenced ███████████ He asked me which ██████ supported the comment.

7.      I then emailed Mr. Kish an index referencing where in the documents the allegations were found that supported the comment.  I emailed him that index at 2:02 p.m. in an email with the subject line, "Citations to public record."  A true and accurate copy of that email is attached hereto as Exhibit 2.

8.      Mr. Kish then told me that the index referenced page numbers that were not ECF numbers.  I explained to him that we had a packet of the publicly available ███████████ and the index was referencing those pages in the packet.  Because the docket in this case is very complex, with the same document being filed in various places in various forms, for ease of reference, I emailed to Mr. Kish the packet of what I believed at the time were the publicly available documents.

9.      ████████████████████████████████████████████████
████████████████████████████████████████████████
██████████  I emailed him that information at 2:10 p.m. in an email with the subject line, "Public record documents."  A true and accurate copy of that email is attached hereto as Exhibit 3.  To prevent any further disclosure of the contents of the ███████████, we have not included that document with this filing.  However, we can make it available to the Court upon request.

10.      When I sent Exhibit 3, I understood that the attachment was made up of ███████████ that the Court had ordered unsealed, and that they contained ███████████████████ ██████████████████  I never intended to send Mr. Kish any documents he could not otherwise access through PACER.

**Page 3 –      DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

ER-0242

11.     After I sent the email marked as Exhibit 3, Mr. Kish told me that he opened the PDF. He did not review the documents, but he commented that the number of documents seemed like more than he had previously seen. That immediately worried me, and I told him I would look into it.

12.     I had another meeting with a client from 2:30 p.m. to 3:30 p.m. On my way to that meeting, I called a staff member at my firm, explained my concern, and asked them to please look into the issue immediately while I was in my other meeting.

13.     Shortly after the conclusion of my 3:30 p.m. meeting, I realized my mistake: ██ ██████████ were documents plaintiffs received from Nike in discovery, not only publicly available documents. I immediately texted Mr. Kish at 3:41 p.m. and asked him to call me back as soon as he could. I also called him at 4:30 p.m., but he did not answer the call. I sent him another text message at 4:50 p.m. asking for him to call me that day.

14.     Mr. Kish called me at 5:08 p.m. I told him during that call that I made an inadvertent disclosure, that he had documents that (I then believed) were not publicly available, and that I needed him to return the documents immediately and destroy the documents in his possession. He said that it was after hours and that he had to talk to his editor. He then called me at 5:40 p.m. and said that he would get back to me on Monday, January 22, 2024, regarding what they are going to do. He assured me no story would be coming out over the weekend or on Monday about these inadvertently disclosed documents.

15.     I then immediately contacted my firm's risk management partners to alert them to this issue, and they in turn contacted outside ethics counsel. ████████████████ I then began to work on ascertaining the scope of the disclosure to determine which of the documents

**Page 4 – DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

were in fact publicly available.  To ensure the firm complied with our ethical obligations, we consulted with outside ethics counsel throughout the process.

16.     On Monday, January 22, 2024, Mr. Kish called me at 11:44 a.m. and at 5:56 p.m. In both calls he told me that the Oregonian had not decided yet what it was going to do with the documents.  He again assured me that the Oregonian was not intending on running a story or distributing the documents in any way.  I reiterated my demand that he return the documents.  I asked if my ethics counsel could speak with the Oregonian or their counsel to convince them to return the documents.  He said possibly, but not that evening.

17.     The next morning, on Tuesday, January 23, 2024 at 9:14 a.m., I sent Mr. Kish an email reiterating the demands I had made during our conversations to return the documents and instructing him not to share or disseminate the documents.  A true and accurate copy of that email is attached as Exhibit 4 to this declaration.

18.     On Wednesday, January 24, 2024, I called Mr. Kish at 11:51 a.m.  I received his voicemail and left him a message telling him I was calling to inquire about the status of the Oregonian's decision and to call me back.  He returned my call at 12:29 p.m. while I was in a meeting, and left me a voicemail stating that he was returning my call.  I then called him at 1:15 p.m. and we spoke.  He told me the Oregonian still had not decided whether they were going to return and destroy the documents.  I reiterated my demand that they do so, and told him that we might have to take action soon if the Oregonian continued to hold these documents.  I once again asked if our lawyers could communicate with one another on this issue.  He said he would pass along that request.

19.     On Thursday, January 25, 2024, Mr. Kish sent me an email at 2:47 p.m. responding to my email from January 23, 2024.  He informed me that the Oregonian does not intend to return

**Page 5 –     DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

the inadvertently disclosed documents, and that they would give me notice before publication.  A true and accurate copy of that email is attached as Exhibit 5 to this declaration.

20.    Since Friday, January 19, 2024, I have worked diligently with my paralegal and with outside ethics counsel to ascertain the scope of the disclosure.  To the best of our ability, here is the scope of disclosure:



**Page 6 –    DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

ER-0245

ii. ███████████████████████████

█████████████████████████████████████

██████████████████████

21. ████████████████████████████████

███████████████████████████████

██████



**Page 7 –** **DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

ER-0246

22. 

23.

24.     There are mitigating circumstances that explain how I made this mistake.  This inadvertent disclosure occurred on a Friday afternoon at the end of a uniquely difficult week in Portland, Oregon.  Starting on Friday, January 12, 2024, Portland was hit with a series of snow, wind, and ice storms.  During the week, I lost power multiple times, and my children's school was closed for the entire week.  By the time I met with Mr. Kish, I was coming off a week of juggling sleeping at friends' houses who had heat and power; dealing with stir-crazy kids who could not go outside because of the ice and dangers from snow, wind, downed powerlines, and downed trees;

**Page 8 – DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

and trying to work remotely from friends' houses on my laptop (because my office building was closed due to a pipe burst in our building, flooding and disabling our elevators). These circumstances contributed to my mistake and my reliance that the packet was what I thought it was—publicly available documents with proper redactions.

25.    Attached are true and correct copies of the following exhibits:

| Ex. No. | Document Description | Date |
|---------|---------------------|------|
| 1 | Email with subject line: "Quote" | January 19, 2024 |
| 2 | Email with subject line: "Citations to public record" | January 19, 2024 |
| 3 | Email with subject line: "Public record documents" | January 19, 2024 |
| 4 | Email with subject line: "Inadvertent Disclosure" | January 23, 2024 |
| 5 | Email with subject line: "Re: Inadvertent Disclosure" | January 25, 2024 |
| 6 | ███████████████ | January 25, 2024 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed January 25, 2024, at Portland, Oregon.

s/ *Laura Salerno Owens*
Laura Salerno Owens, OSB # 076230

2090457.4

**Page 9 –    DECLARATION OF LAURA SALERNO OWENS IN SUPPORT OF PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**

**From:** Laura Salerno Owens <laurasalerno@markowitzherbold.com>
**Sent:** Friday, January 19, 2024 1:58 PM
**To:** Matthew Kish <MKish@oregonian.com>
**Subject:** Quote



1

**Exhibit 1 to Salerno Owens Decl.**
**Page 1 of 1**
ER-0249

**From:** Laura Salerno Owens <laurasalerno@markowitzherbold.com>
**Sent:** Friday, January 19, 2024 2:02 PM
**To:** Matthew Kish <MKish@oregonian.com>
**Subject:** Citations to public record



Sent from my iPhone

1

Exhibit 2 to Salerno Owens Decl.
Page 1 of 1
ER-0250

**From:** Laura Salerno Owens
**Sent:** Friday, January 19, 2024 2:10 PM
**To:** 'Matthew Kish' <MKish@oregonian.com>
**Subject:** Public record documents
**Attachments:** ███████████



Exhibit 3 to Salerno Owens Decl.
Page 1 of 1
ER-0251

**From:** Laura Salerno Owens
**Sent:** Tuesday, January 23, 2024 9:14 AM
**To:** 'Matthew Kish' <MKish@oregonian.com>
**Subject:** Inadvertent disclosure

Matt,

This email is to follow up on our conversations from Friday (1/19) and yesterday (1/22). I am writing to confirm that on Friday and yesterday I advised you that I inadvertently emailed you documents; I have asked that the documents be returned and deleted; I do not believe you or the Oregonian have a legal right to the documents; and I am instructing you not to disclose or disseminate the documents to anyone else.

Please confirm as soon as you can that the Oregonian will do the right thing and will return documents that were clearly provided in error and not intended to be shared. I appreciate you letting me know that the Oregonian is not going to take further action to disseminate this information at this time, and please confirm that you will give us adequate notice if this changes. I'm happy to speak with you further, or to connect you or the Oregonian's lawyer with our ethics counsel.

Regards,
Laura

**Laura Salerno Owens** | Lawyer
**Markowitz Herbold PC**
1455 SW Broadway, Suite 1900 | Portland, OR 97201
**T** (503) 295-3085| Web

1

Exhibit 4 to Salerno Owens Decl.
Page 1 of 1
ER-0252

**From:** Matthew Kish <MKish@oregonian.com>
**Sent:** Thursday, January 25, 2024 2:47 PM
**To:** Laura Salerno Owens <laurasalerno@markowitzherbold.com>
**Subject:** Re: Inadvertent disclosure

Hi Laura,
This is in response to your Jan. 23 email. The Oregonian does not intend to return any newsgathering materials we possess, and we make no representations about any reporting or publishing we may do in the future. We do intend to give you notice before publication.

Thank you,
Matt



Matthew Kish (he/him/his)
Business reporter
The Oregonian/OregonLive
Desk: 503-221-4386
Mobile: 503-453-4435
@matthewkish
oregonlive.com/business


**From:** Laura Salerno Owens <laurasalerno@markowitzherbold.com>
**Date:** Tuesday, January 23, 2024 at 9:14 AM
**To:** Matthew Kish <MKish@oregonian.com>
**Subject:** Inadvertent disclosure

Matt,

This email is to follow up on our conversations from Friday (1/19) and yesterday (1/22). I am writing to confirm that on Friday and yesterday I advised you that I inadvertently emailed you documents; I have asked that the documents be returned and deleted; I do not believe you or the Oregonian have a legal right to the documents; and I am instructing you not to disclose or disseminate the documents to anyone else.

Please confirm as soon as you can that the Oregonian will do the right thing and will return documents that were clearly provided in error and not intended to be shared. I appreciate you letting me know that the Oregonian is not going to take further action to disseminate this information at this time, and please confirm that you will give us adequate notice if this changes. I'm happy to speak with you further, or to connect you or the Oregonian's lawyer with our ethics counsel.

Regards,
Laura

1

Exhibit 5 to Salerno Owens Decl.
Page 1 of 2
ER-0253

**Laura Salerno Owens** | Lawyer
**Markowitz Herbold PC**
1455 SW Broadway, Suite 1900 | Portland, OR  97201
**T** (503) 295-3085| <u>Web</u>

2

Exhibit 5 to Salerno Owens Decl.
Page 2 of 2



Exhibit 6 to Salerno Owens Decl.
Page 1 of 5



Exhibit 6 to Salerno Owens Decl.
Page 2 of 5

ER-0256



Exhibit 6 to Salerno Owens Decl.
Page 3 of 5



Exhibit 6 to Salerno Owens Decl.
Page 4 of 5



Exhibit 6 to Salerno Owens Decl.
Page 5 of 5

**David J. Elkanich**, OSB No. 992558
Email: delkanich@buchalter.com
**David A. Bernstein**, OSB No. 235633
Email: dbernstein@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone: 503.226.1191
Fax: 503.226.0079

   *Attorneys for Non-Party Markowitz Herbold PC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NIKE, Inc., an Oregon Corporation,<br><br>                    Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS**<br><br>**[FILED UNDER SEAL]**<br><br>EXPEDITED HEARING REQUESTED |

## LR 7-1 CERTIFICATION

As reflected in the Declaration of Plaintiffs' Counsel, Ms. Laura Salerno Owens, Plaintiffs'

counsel has had numerous conversations with The Oregonian in attempts to resolve this issue prior

to bringing this motion. Those have been unsuccessful, necessitating the instant motion. (Salerno

Owens Dec. at ¶¶ 14-19.) Prior to filing the instant motion, Plaintiffs' counsel informed Defendant

of the underlying issue by email. Given the urgency in bringing this motion, akin to seeking relief

under a temporary restraining order, Plaintiffs' counsel brings this motion before they have spoken

telephonically with Defendant's counsel.

Page 1      PLAINTIFFS' MOTION TO REQUEST RETURN OF
            INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

## I.    INTRODUCTION

Plaintiffs' counsel, by and through their independent counsel, move the Court for an Order requiring that party-Intervenor Advance Local Media, LLC d/b/a Oregonian Media Group ("Intervenor" or "The Oregonian") return certain documents that were inadvertently disclosed to The Oregonian by email on January 19, 2024, by Plaintiffs' counsel.[1]  (*See* Declaration of Plaintiffs' Counsel Ms. Laura Salerno Owens "Salerno Owens Dec.".)  Several of the documents produced were designated "Attorneys' Eyes' Only" or "Confidential" under the Court's Stipulated Protective Order, and several would be protected by the Ninth Circuit's stay Order.  The Oregonian, as Intervenor, has subjected itself to the jurisdiction of this Court and the Ninth Circuit, and should be bound by the applicable orders established in this matter.  It would therefore be impermissible for The Oregonian to retain the inadvertently disclosed documents, taking undue and unfair advantage of counsel's accident.

As discussed in her Declaration, filed concurrently under seal, Ms. Salerno Owens intended to send The Oregonian a select few requested documents that previously had been publicly filed with this Court.  (Salerno Owens Dec. at ¶¶ 3-9.)  As a result of mere inadvertence, The Oregonian received a larger set of documents that included documents produced by Defendant Nike, Inc., which had been marked and maintained as "Attorneys' Eyes Only" or "Confidential," and which had not previously been filed on the public docket.  (Salerno Owens Dec. at ¶ 13.)  Ms. Salerno Owens discovered the mistake the same day, within a couple hours, and immediately requested that The Oregonian return the documents.  Today, The Oregonian confirmed that it did not intend

---

[1] The undersigned counsel have entered a limited appearance on behalf of Markowitz Herbold PC. Although the undersigned counsel do not represent Plaintiffs, this motion is brought by Plaintiffs' counsel, Markowitz Herbold PC, to ensure Plaintiffs' interests are protected.  As a result, this motion is styled "Plaintiffs' Motion to Request Return of Inadvertently Disclosed Materials."

Page 2      PLAINTIFFS' MOTION TO REQUEST RETURN OF
            INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80620960v4

ER-0261

to return the inadvertently disclosed documents, and therefore Plaintiffs' counsel seeks immediate Court intervention to mitigate any harm from this accident.  (Salerno Owens Dec. at ¶ 19.)

The inadvertently disclosed documents, most of which have already been publicly filed on the docket in some form, are ████████████████████████████████ ████████████████  Although Ms. Salerno Owens had intended to provide a redacted copy ████████████ as had been produced in the public record, instead, she produced additional pages that the Defendant had marked "Confidential" and "Attorneys' Eyes Only".  (Salerno Owens Dec. at ¶ 13.) ███████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

As part of this litigation, The Oregonian intentionally availed itself of the Court's jurisdiction, and asked it for relief.  It cannot now act as though it is not bound by the same authority—this is especially so while The Oregonian is actively on appeal seeking to uphold the Court's prior ruling in its favor.  The Oregonian should be required to ensure the redacted documents remain redacted from public view until the Ninth Circuit has had time to address the merits of the appeal.

/ / /

/ / /

/ / /

Page 3        PLAINTIFFS' MOTION TO REQUEST RETURN OF
              INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

## II.    DISCUSSION

### A.    The Court May Order the Return of Any Inadvertently Disclosed Documents.

Under the terms of the operative Stipulated Protective Order in place, "[u]se of any information or documents labeled 'Confidential' or 'Attorneys' Eyes Only' and subject to this Stipulated Protective Order, including all information derived therefrom, shall be restricted solely to the litigation of this case and shall not be used by any party *for any business, commercial, or competitive purpose*."  (Stipulated Protective Order, ¶ 2, ECF 82 (emphasis added).)

As specified in ¶ 12 of the Stipulated Protective Order,

> The inadvertent failure to designate a document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only" prior to disclosure shall not operate as a waiver of the party's right to later designate the document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only."  **The receiving party or its counsel shall not disclose such documents or materials if that party or counsel know or reasonably should know that a claim of confidentiality would be made by the producing party.**  Pursuant to Fed. R. Civ. P. 26(b)(5), promptly after receiving notice from the producing party of a claim of confidentiality, **the receiving party** or its counsel shall inform the producing party of all pertinent facts relating to the prior disclosure of the newly-designated documents or materials, and **shall make reasonable efforts to retrieve such documents and materials and to prevent further disclosure.**

(ECF 82 (emphasis added).)

Fed. R. Civ. P. 26(b)(5)(B) provides a similar prohibition on a party that received any materials subject to a claim of "protection as trial-preparation material" until such issues may be resolved by the appropriate court.  As noted under the Rule, the receiving party of inadvertently disclosed materials "must not use or disclose the information" and "[m]ust take reasonable steps to retrieve the information" if inadvertently disclosed.  Fed. R. Civ. P. 26(b)(5)(B); *see also* Fed. R. Evid. 502(b).[2]  These Rules illustrate the strong policy in federal courts for not allowing attorney

---

[2] Similarly, Fed. R. Evid. 502(b) provides that an "inadvertent disclosure" of privileged documents will not act as a waiver of privilege or protection where the disclosure is inadvertent; there were

Page 4    PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80620960v4

ER-0263

mistakes to obstruct an otherwise orderly litigation, and to prevent one side from having an unfair advantage that would not exist absent a simple mistaken disclosure.

Accordingly, both the Stipulated Protective Order and the Rules provide the Court with ample authority to order the return and deletion of any copies of inadvertently disclosed documents. *See, e.g., Arnett v. Bank of Am.*, N.A., No. 3:11-CV-01372-SI, 2013 WL 12321485, at *1 (D. Or. Mar. 29, 2013); and *U.S. Home Corp. v. Settlers Crossing, LLC,* No. CIV.A. DKC 08-1863, 2012 WL 3025111, at *2 (D. Md. July 23, 2012) (Court granting "claw back" for "inadvertently disclosed materials").

Indeed, this District has said: "Courts have 'broad latitude' to issue a protective order to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden.'" *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.,* 377 F. Supp. 3d 1197, 1202 (D. Or. 2019) (quoting *deBarros v. Walmart Stores, Inc.*, 857 F. Supp. 2d 1109, 1113 (D. Or. 2012)).

In this case, the Court is empowered under the Stipulated Protective Agreement (ECF 82) to mandate the return of any inadvertently disclosed documents received by the intervening party, The Oregonian, to prohibit any dissemination of those documents by The Oregonian, and to order destruction of any copies in The Oregonian's possession.

Previously in this case, to prevent the "inadvertent disclosure" of sealed materials, this Court required specific filing and appearance rules for the intervening media parties' counsel because of a quirk in the ECF system that had allowed the intervening parties access to sealed filings. (*See* ECF 327 ("certain parameters must be utilized due to a known ECF issue that will

---

steps taken to protect the documents; and after inadvertent disclosure, the disclosing party "promptly took reasonable steps to rectify the error" including following Fed. R. Civ. P. 26(b)(5)(B).

Page 5    PLAINTIFFS' MOTION TO REQUEST RETURN OF
         INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

allow all parties access to restricted documents. To avoid inadvertent disclosure of restricted filings, the e-mail addresses for pro hac attorney Zycheman and local counsel Timothy Volpert will be added to the party records for non-party media organizations.").)

As a result, the Court has already demonstrated its willingness to take steps to prevent accidental disclosure of information marked with confidentiality protection. As in *Pegatron*, this alone is reason to enforce the Stipulated Protective Order and require The Oregonian to return the inadvertently disclosed documents. Accordingly, Plaintiffs' motion should be granted.

**B.    The Oregonian Should Be Required To Comport with The Orders Set Forth in This Case, And Return The Documents Pursuant to The Stipulated Protective Order.**

The Oregonian is not in this dispute merely as a random recipient of inadvertently disclosed confidential materials. Rather, The Oregonian inserted itself directly into this case and has availed itself of the applicable court rules and orders several times. (*See, e.g.,* ECF 205.) Since they have been granted leave to intervene, The Oregonian successfully moved the Court to unseal documents (ECF 273), and to peel back redactions of other previously-sealed documents. (ECF 363.) While that decision to remove redactions is under appeal in the Ninth Circuit by Defendant, the Ninth Circuit has stayed the Court's order, preserving the *status quo* for a time and keeping the names redacted. The Oregonian and other intervening media organization parties are currently opposing Defendant's appeal of that Order.

Given the stay, it would be manifestly unjust to allow The Oregonian to obtain from an attorney's inadvertent mistake ███████████████████████████████████████

████████████████    Furthermore, The Oregonian clearly understands and has thus far abided under the governing Stipulated Protective Order at place in this case. The Oregonian understands

PLAINTIFFS' MOTION TO REQUEST RETURN OF INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80620960v4

how to seek Court approval to obtain any confidential documents it desires, and it has done so in this case.

As a result, the Court should require The Oregonian to abide by the claw-back provisions of the Stipulated Protective Order and return the inadvertently disclosed documents to Plaintiffs. Such steps are necessary if the Court wishes to maintain the current status quo and allow normal procedure to control.

**C.    Plaintiffs' Inadvertent Disclosure Will Not Materially Harm Defendant.**

While Plaintiffs ask the Court to strictly enforce the Stipulated Protective Order to claw back and correct for Plaintiffs' inadvertent disclosure of Defendant's "Attorneys' Eyes Only" and "Confidential" documents it accidentally emailed to the Oregonian, Plaintiffs nonetheless note that Defendant has not and likely will not be damaged from this inadvertent disclosure.

On September 30, 2022, Magistrate Judge Russo issued a ruling which, in the first instance, allowed The Oregonian to intervene in this lawsuit.  (ECF 273.)  As Judge Russo noted, "[t]he Court…recognizes the distinct perspective the [intervening] media organizations offer to this litigation, along with their well-established common law and First Amendment rights to challenge the sealing of judicial records."  (*Id*. at 13.)  As a result, Judge Russo allowed the intervening parties, including The Oregonian, to seek to unseal previously-sealed exhibits submitted along with the parties' briefings on class certification. (*Id*.)  Then, on November 13, 2022, without objections, Judge Hernandez adopted the findings and recommendation in Judge Russo's September 2022 order.  (ECF 275.)

As part of the controversy surrounding the extent to which documents could be sealed and, if unsealed, how much of a document could be redacted, the parties had several conferrals in an attempt to resolve this issue.  (*See, e.g.,* ECF 273 at 2-4 and n.2.)  The parties then stipulated to

Page 7          PLAINTIFFS' MOTION TO REQUEST RETURN OF
                INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80620960v4

ER-0266

the unsealing of several documents that had been submitted as exhibits to the class certification briefings, in some cases with certain names redacted.  (*See* ECF 213 ("Nike only seeks to redact these individuals' names, not the allegations surrounding them"); *see also* ECF 284, 285, 290, 291 for unsealed versions of those exhibits.)

Following the conclusion of that extensive class certification briefing, the Court returned to the intervening media organizations' requests to further unseal portions of the record, namely un-redacting certain names from exhibits to class certification briefings.  (*See* ECF 363.)  Plaintiffs supported the motion, and Defendant maintained that it did "not object to unredacting contents of the complaints in this document but maintain[ed] that redactions of the names of individuals listed as complainants, witnesses, and subjects of the complaints must remain."  (*Id*. at 2, n. 1.)  The Court sided with the intervening parties and disagreed with Defendant, noting that "Defendant largely relies on generalized assertions of purported compelling reasons to redact the names… However, the proponent of redactions must provide concrete examples rather than broad conclusory allegations of harm."  (*Id*. at 5.)  The Court concluded:

> To the extent the individuals identified in the complaints are third parties, the public has an interest and right to access the documents that bear on plaintiffs' claims even if those documents identify non-parties to the litigation… The identity of Nike employees engaged in the very behavior plaintiffs assert resulted in discrimination certainly bear on plaintiffs' claims.  The identity of complainants and witnesses similarly relate to issues going to the merits and credibility of plaintiffs' claims.  Accordingly, the intervenors' motion to unseal judicial records is granted.

(*Id*. at 5-6 (internal citations omitted).)  On January 5, 2024, Judge Hernandez adopted this Order and its holding.  (ECF 403.)

While Plaintiffs and their counsel are aware that this decision is under a current appeal to the Ninth Circuit, this Court's preference has been one of unequivocal full and open disclosure

PLAINTIFFS' MOTION TO REQUEST RETURN OF
INADVERTENTLY DISCLOSED MATERIALS

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

because the Court believes they benefit the public interest. The documents that were inadvertently disclosed to The Oregonian on January 19, 2024 ███████████████████

███████████████████████████████████████████████████████

██████ As a result, there is minimal harm to Defendant by this inadvertent disclosure.

## III.  CONCLUSION

Accordingly, Plaintiffs request that the Court immediately enter an order requiring The Oregonian to return the inadvertently disclosed documents that Ms. Salerno Owens inadvertently sent to it on January 19, 2024, to further promise not to disseminate that information in any way, and to destroy any copies in its possession. Such remedial steps are necessary under ¶¶ 2 and 12 of the Stipulated Protective Order (ECF 82), as well as Fed. R. Civ. P. 26(b)(5)(B) and Fed. R. Evid 502(b).

While Plaintiffs do this to limit any further violations of the Stipulated Protective Order, Plaintiffs also note that ████████████████████████████████████████ ████████████████ this Court previously unsealed and un-redacted for The Oregonian's benefit.

DATED this 25th day of January, 2024.

BUCHALTER
A Professional Corporation


By  s/ David J. Elkanich
    David J. Elkanich, OSB No. 992558
    Email: delkanich@buchalter.com
    David A. Bernstein, OSB No. 235633
    Email: dbernstein@buchalter.com
    Telephone: 503.226.1191

    Attorneys for Non-Party Markowitz Herbold
    PC


Page 9      PLAINTIFFS' MOTION TO REQUEST RETURN OF
            INADVERTENTLY DISCLOSED MATERIALS

BN 80620960v4

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

ER-0268

**David J. Elkanich**, OSB No. 992558
Email: delkanich@buchalter.com
**David A. Bernstein**, OSB No. 235633
Email: dbernstein@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR  97205
Telephone: 503.226.1191
Fax: 503.226.0079

*Attorneys for Non-Party Markowitz Herbold PC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>NIKE, Inc., an Oregon Corporation,<br><br>            Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72** |

I.      **INTRODUCTION**

        Plaintiffs' counsel, by and through their independent counsel, respond in opposition to the

instant motion and in support of the Magistrate's January 26, 2024 Order ("Magistrate's Order")

requiring the intervening party, The Oregonian ("The Oregonian"), to return and destroy certain

inadvertently disclosed documents that it had received.  (ECF 412.)

Page 1    PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
          EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

The Oregonian complains that the Magistrate's Order impermissibly finds that The Oregonian should be bound to the Stipulated Protective Order[1] in this case. Yet, this argument is premised on a mischaracterization of The Oregonian's role in this case and the circumstances in which this situation arose. Contrary to The Oregonian's claims, the inadvertently disclosed materials were not obtained by The Oregonian through a "newsgathering process, independent of Court proceedings." (The Oregonian's Mot. to Vacate Magistrate's Order ("Oregonian's Mot."), ECF 414 at 4.) In fact, the only reason that this issue ever arose is because Plaintiffs obtained certain documents in response to their discovery requests that Defendant had designated with confidentiality markings pursuant to the Stipulated Protective Order.

In response to an inquiry by The Oregonian regarding certain portions of discovery that had been previously filed publicly as an exhibit in the above-titled litigation, Plaintiffs' counsel made the inadvertent disclosure to The Oregonian of other discovery materials, which had been provided to Plaintiffs by Defendants solely as a result of discovery in the instant case, and which had been designated as either "confidential" or "attorneys' eyes only" pursuant to the Stipulated Protective Order. Stated another way, absent the normal discovery process, the Oregonian would have never obtained a copy of these documents, and further, Plaintiffs' counsel would not, and could not, have ever made any inadvertent disclosures because she would not have had the materials.

Furthermore, as explained in Plaintiffs' motion to request return of inadvertently disclosed materials (Pls.' Mot. to Request Return of Inadvertently Disclosed materials, ECF 410 ("Pls.' Mot.")), Plaintiffs' counsel's intent when she made the inadvertent disclosure was to submit these

---

[1] ECF 82.

Page 2   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

publicly-filed discovery documents after The Oregonian specifically inquired about them.  (*Id.* at 2-3.)

## II.   DISCUSSION

### A.   Judge Russo was empowered to order the return and destruction of the inadvertently disclosed documents subject to the Stipulated Protective Order.

As discussed in Plaintiffs' Motion requesting the Court order a claw-back of the inadvertently disclosed documents (ECF 410 at 3-4), ¶ 12 of the Stipulated Protective Order specifies that anyone who receives inadvertently disclosed documents or materials that the recipient knows or should know is subject to a claim of confidentiality shall be returned, with reasonable steps taken by the receiving party to prevent further disclosure.  (ECF 82 at ¶ 12.) Furthermore, as discussed in Plaintiffs' Motion and relied upon in the Magistrate's Order, Fed. R. 26(b)(5)(B) and Fed. R. Evid. 502(b) provide mechanisms under which inadvertently disclosed discovery materials may be obtained back without causing further harm or being deemed a waiver of any applicable privileges.  (*See, e.g.,* ECF 412 (citing same Rules).)

While this situation is admittedly unique, courts throughout the country have exercised their inherent authority to enforce protective orders to prevent dissemination of confidential information.

> Courts have the inherent authority to enforce their orders.  "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order." … The power is a necessary prerequisite to the administration of justice; without it, courts would be ill-equipped to ensure the rule of law in a democratic society.
>
> "It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process."

Page 3   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

*In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417–18 (E.D.N.Y. 2007), *judgment entered sub*

*nom. In re Zyprexa Litig*., No. 07-CV-0504, 2007 WL 669797 (E.D.N.Y. Mar. 1, 2007), and *aff'd*

*sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (internal citations omitted).

In *In re Zyprexa*, the court continued: "[r]ecovering stolen documents obtained in violation

of a court discovery order when needed to protect a party to a litigation is well within the equitable

power of a federal district court." 474 F. Supp. 2d at 419–20; *see also Marshall v. Planz*, 347 F.

Supp. 2d 1198, 1200–01 (M.D. Ala. 2004) (enforcing a protective order in a settled case over

nonparties). In *Marshall v. Planz*, the Middle District of Alabama court highlighted the importance

of the court's inherent powers, while emphasizing that participants in litigation "cannot have it

both ways" by seeking to take advantage of court process and abiding by a protective order when

it suits them, while ignoring a protective order when it does not suit them. *Marshall,* 347 F. Supp.

2d at 1200–01. The *Marshall* court noted it needed flexibility to administer its protective orders

even where nonparties were involved. *Id.*

As noted by the courts in *In re Zyprexa* and *Marshall*, a court has inherent authority to

correct violations of a protective order in addition to the processes permitted under the Fed. R.

Civ. P. 26(b)(5)(B). These cases demonstrate the fundamental notion that a court must possess

power to enforce its protective orders in order to ensure an orderly discovery process. While an

inadvertent disclosure is not a typical part of discovery, it is part of it nonetheless. Fed. R. 26 itself

is titled "General Provisions Governing Discovery," and specifically Rule 26(b) is sub-titled

"Discovery Scope and Limits."

The Oregonian, as intervening party, seems to ask that the Court ignore all of this and act

as though these inadvertently disclosed documents would have been obtained by it even if there

was no litigation. That simply is not the case. As noted above, The Oregonian *only* received these

Page 4   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
         EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

ER-0272

inadvertently produced documents as a result of the discovery process: Defendant produced these documents to Plaintiffs (and not The Oregonian), and Defendant designed these documents as "confidential" or "attorneys' eyes only" subject to a Stipulated Protective Order that was entered by the Court. The Oregonians' suggestion that these documents were obtained through the normal investigative process is misleading at best and should be rejected by this Court.

> **B.** **As the Magistrate's Order only restricts the dissemination of information from a party that obtained it through discovery, it was appropriately asserted against The Oregonian who is a party to this litigation following its intervention.**

The Oregonian's reliance on *Seattle Times Co. v. Rhinehart* is useful. (*See* Oregonian's Mot. at 7.) While *Seattle Times* concerned a suit in which a person sued a newspaper for defamation and the newspaper was a defendant from the outset of that case, the Supreme Court's reasoning discussed in that opinion is instructive here. Discovery rules "are a matter of legislative grace," and accordingly are subject to "continued court control" without raising significant censorship concerns under the First Amendment. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 21, 104 S. Ct. 2199, 2209, 81 L. Ed. 2d 17 (1984) (internal citations omitted). Accordingly, the Supreme Court found it completely appropriate for a court to be empowered to limit the dissemination of discovery materials through enforcement of a protective order. *Id.* at 32-36. As a result, as discussed above, The Oregonian should be subject to those Rules as it has actively engaged in participating in this litigation through the Civil Rules in this current litigation prior to the inadvertent disclosure.

The Oregonian overemphasizes the differences between it and the media litigant in *Seattle Times*. Indeed, courts that have addressed the question of whether a party, who seeks to intervene,

Page 5   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
          EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

is a "party" for purposes of legal proceedings, have routinely found that they are such a party.[2]

*See, e.g., Moses v. City of Perry, Michigan*, 90 F.4th 501, 505 (6th Cir. 2024) ("'[W]hen the term [to intervene] is used in reference to legal proceedings, it covers the right of one to interpose in, or become a party to, a proceeding already instituted.'… So a nonparty does not become a party until the district court grants the motion to intervene.") (quoting *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009)).

As the Sixth Circuit noted in *Moses*, as soon as the motion to intervene has been granted, the intervenor is effectively a party to the suit with the same rights as the original parties. *Id.* The fact that The Oregonian labels itself "non-party" does not change this. *See also Schlumberger Techs., Inc. v. Tri-Cnty. Metro. Transp. Dist. of Oregon (Tri-Met)*, 149 Or. App. 316, 321, 942 P.2d 862, 865 (1997) ("[O]nce a motion for intervention is allowed, the intervenor is as much a party to the proceeding as are the original parties and is subject to the same rights and liabilities as if it had been an original party…").[3]

---

[2] Citing only an unexplained reference to *Robert Ito Farm, Inc. v. Cnty. of Maui,* The Oregonian appears to suggest that there is authority to find that it is not a party to this suit. *Robert Ito Farm, Inc.,* 842 F.3d 681, 686 (9th Cir. 2016). But that case concerns the very narrow question of whether a magistrate judge must receive the consent from a *prospective* intervenor in litigation prior to being permitted to enter a judgment into a case. These are not procedurally similar, but even if they were, as discussed in *Moses*, this analysis changes when that prospective intervenor has its motion granted and becomes a party to the litigation.

[3] It should make no difference that The Oregonian, in its own words, intervened "for the limited purpose of vindicating the rights of the press," rather than to assert a claim against Plaintiffs or Defendant. (ECF 205 at 2.) The Oregonian moved under Fed. R. Civ. P. 24(a) and (b), just as the intervenors in the referenced cases. The cases do not make any distinction regarding the basis for the intervention (e.g., to assert claims or to purportedly vindicate the right of the press) and an intervenor is to be treated as though it was an original party to the suit. *See, e.g., Schneider v. Dumbarton Developers, Inc*., 767 F.2d 1007, 1017 (D.C.Cir.1985) ("[W]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.")

Page 6    PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
         EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

This is particularly true in the specific and unique circumstances of this case, where The Oregonian is engaged in an active appeal regarding the appropriate confidentiality of documents that were produced by Defendant through the discovery process. As noted above, The Oregonian wants to act as though it obtained the inadvertently disclosed documents as if an unrelated, anonymous source provided them—but that is not true. The Oregonian only received them through a process specifically contemplated under the "General Rules of Discovery."

> **C.    Because the Magistrate's Order only restricts the dissemination of information disclosed through discovery, it does not implicate prior restraint or require an exacting First Amendment scrutiny.**

In *Seattle Times*, the Supreme Court stated:

> [I]t is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny…[S]uch a protective order prevents a party from disseminating only that information obtained through use of the discovery process…
>
> In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.

*Seattle Times Co. v. Rhinehart*, 467 U.S. at 32-33; *see also Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 77–78 (E.D.N.Y. 2012) ("[T]he Court is restricting information which came into certain individuals' possession only as a direct result of the court's processes.").

As seen in *Seattle Times* and *Dorsett*, where a court only seeks to bar dissemination of information learned and disclosed through discovery, prior restraint concerns are not implicated.[4] The Oregonian has not met its burden showing any potential First Amendment right is outweighed

---

[4] For these reasons, The Oregonian's reliance on *State ex rel. Sports Mgmt. News v. Nachtigal,* is misplaced. There, a trade publication received the allegedly proprietary information from an unknown leak rather than through the discovery process.

Page 7    PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

by the strong policies supporting adherence to Court orders and procedures guiding discovery in litigation. The inadvertently disclosed information is part and parcel of the discovery, and the Court appropriately enforced the Stipulated Protective Order in a way that does not offend prior restraint per *Seattle Times*. The Court need not analyze whether this fits into The Oregonian's cited examples of where prior restraint exceptions have been found because prior restraint is not at issue.

## III.    CONCLUSION

For the above reasons, Plaintiffs' counsel requests that the Court maintain the Magistrate's Order and enforce its original Order requiring The Oregonian to return the inadvertently disclosed documents and destroy any copies still in its possession.

The Oregonian has failed to prove that it is not a party subject to the Stipulated Protective Order, especially given its high level of involvement in this matter. As noted, parties that have been permitted to intervene are deemed "parties" for the purposes of that litigation. As a result, the claw-back provision of the Stipulated Protective Order, as well as the applicable Civil Rules, apply to this inadvertent disclosure, and the Court's original Order of January 26, 2024 was the appropriate remedy for this occurrence.

DATED this 6th day of February, 2024.

BUCHALTER
A Professional Corporation

By    s/ *David J. Elkanich*
David J. Elkanich, OSB No. 992558
Email: delkanich@buchalter.com
David A. Bernstein, OSB No. 235633
Email: dbernstein@buchalter.com
Telephone: 503.226.1191

Attorneys for Non-Party Markowitz Herbold PC

Page 8    PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

ER-0276

**From:** info@ord.uscourts.gov <info@ord.uscourts.gov>
**Sent:** Tuesday, January 30, 2024 3:21 PM
**To:** nobody@ord.uscourts.gov
**Subject:** [EXT] Activity in Case 3:18-cv-01477-JR Cahill et al v. Nike, Inc. Scheduling Order

--- External Email ---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

## District of Oregon

### Notice of Electronic Filing

The following transaction was entered on 1/30/2024 at 3:21 PM PST and filed on 1/30/2024
**Case Name:** Cahill et al v. Nike, Inc.
**Case Number:** [3:18-cv-01477-JR](#)
**Filer:**
**Document Number:** 418(No document attached)

**Docket Text:**
ORDER issued by Magistrate Judge Jolie A. Russo: In light of the District Court Order vacating Order [412], the parties are directed to respond to arguments made in Movant Advance Local Media, LLC's Emergency Motion to Vacate [414]. Any responses by Plaintiffs or Defendant are due by 2/6/2024. Any replies to Plaintiffs'/Defendant's responses by Movant Advance Local Media, LLC are due by 2/13/2024. Plaintiffs' Motion to Request Return of Inadvertently Disclosed Materials [410] will be taken under advisement as of 2/12/2024. Oral argument will be considered in due course once all briefing is

1

received. Should the Court deem the motion appropriate for disposition with oral argument upon review of the briefings, the motion will be scheduled accordingly. (gm)

**3:18-cv-01477-JR Notice has been electronically mailed to:**

Edwin A. Harnden    eharnden@barran.com, jaufmuth@barran.com

David B. Markowitz    davidmarkowitz@markowitzherbold.com, 6951279420@filings.docketbird.com, docket@markowitzherbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com, tamihall@markowitzherbold.com

David J. Elkanich    delkanich@buchalter.com, rturenne@buchalter.com, scrawford@buchalter.com, srainey@buchalter.com

Laura R. Salerno Owens    LauraSalerno@MarkowitzHerbold.com, 8359710420@filings.docketbird.com, AbigailAdams@MarkowitzHerbold.com, Docket@MarkowitzHerbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com

Laura E. Rosenbaum    laura.rosenbaum@stoel.com, docketclerk@stoel.com, marilyn.schoos@stoel.com

Felicia A. Davis    feliciadavis@paulhastings.com, arlenefigueroa@paulhastings.com, deisycastro@paulhastings.com, ecf-ord-6374354248433664@inbound.docketalarm.com, lindseyjackson@paulhastings.com

Harry B. Wilson    harrywilson@markowitzherbold.com, 2591600420@filings.docketbird.com, SarahDubrule@MarkowitzHerbold.com, docket@markowitzherbold.com, joannastalheim@markowitzherbold.com, sarapomerening@markowitzherbold.com

Kathryn P. Roberts    KathrynRoberts@MarkowitzHerbold.com, 9717759420@filings.docketbird.com, Docket@MarkowitzHerbold.com, JeniInirio@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com, SarahDubrule@MarkowitzHerbold.com

Chad A. Naso    chadnaso@markowitzherbold.com, 2609173420@filings.docketbird.com, Docket@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com, SarahDubrule@MarkowitzHerbold.com, joannastalheim@markowitzherbold.com

Katharine L. Fisher    kfisher@gbdhlegal.com

Laura L. Ho    lho@gbdhlegal.com, efile@gbdhlegal.com, sgrimes@gbdhlegal.com

Byron Goldstein    brgoldstein@gbdhlegal.com, efile@gbdhlegal.com

India Lin Bodien    india@indialinbodienlaw.com, jb@ackermanntilajef.com

Craig J. Ackermann    cja@ackermanntilajef.com, ak@ackermanntilajef.com, bd@ackermanntilajef.com, jb@ackermanntilajef.com

Daniel Prince    danielprince@paulhastings.com, alyssatapper@paulhastings.com, ecf-ord-6705547519524864@inbound.docketalarm.com, francinesheldon@paulhastings.com, lisavermeulen@paulhastings.com, maggiehall@paulhastings.com

ER-0278

Zachary P. Hutton    zachhutton@paulhastings.com

Barry Goldstein    bgoldstein@gbdhlegal.com

James P. Kan    jkan@gbdhlegal.com

Mengfei Sun    msun@gbdhlegal.com, dvaldez@gbdhlegal.com

Brian Walter Denlinger    brian.w.denlinger@gmail.com

Nicole Lueddeke    nicolelueddeke@paulhastings.com

Bruce T. Garrett    bgarrett@barran.com, jaufmuth@barran.com

David Aaron Bernstein    dbernstein@buchalter.com, docket@buchalter.com, mlavine@buchalter.com, rturenne@buchalter.com, scrawford@buchalter.com, srainey@buchalter.com

**3:18-cv-01477-JR Notice will <u>not</u> be electronically mailed to:**

**From:** info@ord.uscourts.gov <info@ord.uscourts.gov>
**Sent:** Tuesday, January 30, 2024 11:46 AM
**To:** nobody@ord.uscourts.gov
**Subject:** [EXT] Activity in Case 3:18-cv-01477-JR Cahill et al v. Nike, Inc. Order on motion to Vacate

---

**--- External Email ---**

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Oregon**

## Notice of Electronic Filing

The following transaction was entered on 1/30/2024 at 11:45 AM PST and filed on 1/30/2024
**Case Name:**          Cahill et al v. Nike, Inc.
**Case Number:**      [3:18-cv-01477-JR](3:18-cv-01477-JR)
**Filer:**
**Document Number:** 417(No document attached)

**Docket Text:**
**ORDER:** The Court GRANTS Advance Local Media LLC's Emergency Motion to Vacate the Magistrate Judge's Order, or in the Alternative, Stay Proceedings Prior to January 31, 2024, ECF 414, and VACATES the Magistrate Judge's Order [412]. The Court, however, pursuant to the agreement of Advance Local Media, ORDERS that the status quo remain in effect until the issues set out in the Motion to Vacate are resolved. The Court REFERS the matter back to the Magistrate Judge

1

for renewed review and to consider arguments asserted by Advance Local Media in its Motion to Vacate. Ordered by Judge Marco A. Hernandez. (jp)

**3:18-cv-01477-JR Notice has been electronically mailed to:**

Edwin A. Harnden    eharnden@barran.com, jaufmuth@barran.com

David B. Markowitz    davidmarkowitz@markowitzherbold.com, 6951279420@filings.docketbird.com, docket@markowitzherbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com, tamihall@markowitzherbold.com

David J. Elkanich    delkanich@buchalter.com, rturenne@buchalter.com, scrawford@buchalter.com, srainey@buchalter.com

Laura R. Salerno Owens    LauraSalerno@MarkowitzHerbold.com, 8359710420@filings.docketbird.com, AbigailAdams@MarkowitzHerbold.com, Docket@MarkowitzHerbold.com, sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com

Laura E. Rosenbaum    laura.rosenbaum@stoel.com, docketclerk@stoel.com, marilyn.schoos@stoel.com

Felicia A. Davis    feliciadavis@paulhastings.com, arlenefigueroa@paulhastings.com, deisycastro@paulhastings.com, ecf-ord-6374354248433664@inbound.docketalarm.com, lindseyjackson@paulhastings.com

Harry B. Wilson    harrywilson@markowitzherbold.com, 2591600420@filings.docketbird.com, SarahDubrule@MarkowitzHerbold.com, docket@markowitzherbold.com, joannastalheim@markowitzherbold.com, sarapomerening@markowitzherbold.com

Kathryn P. Roberts    KathrynRoberts@MarkowitzHerbold.com, 9717759420@filings.docketbird.com, Docket@MarkowitzHerbold.com, JeniInirio@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com, SarahDubrule@MarkowitzHerbold.com

Chad A. Naso    chadnaso@markowitzherbold.com, 2609173420@filings.docketbird.com, Docket@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com, SarahDubrule@MarkowitzHerbold.com, joannastalheim@markowitzherbold.com

Katharine L. Fisher    kfisher@gbdhlegal.com

Laura L. Ho    lho@gbdhlegal.com, efile@gbdhlegal.com, sgrimes@gbdhlegal.com

Byron Goldstein    brgoldstein@gbdhlegal.com, efile@gbdhlegal.com

India Lin Bodien    india@indialinbodienlaw.com, jb@ackermanntilajef.com

Craig J. Ackermann    cja@ackermanntilajef.com, ak@ackermanntilajef.com, bd@ackermanntilajef.com, jb@ackermanntilajef.com

Daniel Prince    danielprince@paulhastings.com, alyssatapper@paulhastings.com, ecf-ord-6705547519524864@inbound.docketalarm.com, francinesheldon@paulhastings.com, lisavermeulen@paulhastings.com, maggiehall@paulhastings.com

Zachary P. Hutton    zachhutton@paulhastings.com

Barry Goldstein    bgoldstein@gbdhlegal.com

James P. Kan    jkan@gbdhlegal.com

Mengfei Sun    msun@gbdhlegal.com, dvaldez@gbdhlegal.com

Brian Walter Denlinger    brian.w.denlinger@gmail.com

Nicole Lueddeke    nicolelueddeke@paulhastings.com

Bruce T. Garrett    bgarrett@barran.com, jaufmuth@barran.com

David Aaron Bernstein    dbernstein@buchalter.com, docket@buchalter.com, mlavine@buchalter.com, rturenne@buchalter.com, scrawford@buchalter.com, srainey@buchalter.com

**3:18-cv-01477-JR Notice will <u>not</u> be electronically mailed to:**

DocuSign Envelope ID: 69C7DB45-8334-443A-B84C-1FA0973D1B00

Case 3:18-cv-01477-JR    Document 416    Filed 01/29/24    Page 1 of 3

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The
Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024 [FRCP CITATION]** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendants. | |

I, Matthew Kish, declare as follows:

1.    I am a business reporter for The Oregonian.

2.    On January 19, 2024, I met in-person with one of the Plaintiffs' attorneys in the
above captioned case, Laura Salerno Owens, to discuss sexual harassment allegations that were
being raised by either a current or former employee at Nike, Inc. I understand that this employee
is not one of the Plaintiffs in this case.

Page 1 - DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A
OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE
MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO
JANUARY 31, 2024 [FRCP CITATION]

4881-8830-8102

ER-0283

3.      During my conversation with Ms. Salerno Owens, she sent me three emails from her phone and iPad. The third email included an attachment entitled "Starfish Surveys" (the "Documents").

4.      When I returned to The Oregonian office, I opened the Documents on my computer and read through them carefully. The files looked different than what appeared in the public record.

5.      In the hours following our meeting, Ms. Salerno Owens sent me multiple text messages. I then called Ms. Salerno Owens and she informed me that she had inadvertently sent me documents which she believed were subject to a Protective Order.

6.      On January 23, 2024, Ms. Salerno Owens sent me an email stating that she had inadvertently emailed me the documents, asked me to return them, and instructed me not to disclose or disseminate those documents to anyone else. She stated the documents were "clearly provided in error and not intended to be shared." She asked me to confirm that The Oregonian would not take further action to disseminate the information in the documents and confirm that The Oregonian would provide her adequate notice if they planned to do otherwise.

7.      On January 25, 2024, I replied to Ms. Salerno Owens' email and stated, among other things, that The Oregonian did not intend to return any documents that it obtained during the newsgathering process.

/ / /

/ / /

/ / /

/ / /

/ / /

Page 2 - DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024 [FRCP CITATION]

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

4881-8830-8102

ER-0284

DocuSign Envelope ID: 69C7DB45-8334-443A-B84C-1EA0973D1B00

Case 3:18-cv-01477-JR    Document 416    Filed 01/29/24    Page 3 of 3

I hereby declare that the above statement is true to the best of my knowledge and belief,

and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

DATED this 29th day of January, 2024.

DocuSigned by:

*Matthew Kish*

0FF7000BA284463...

Matthew Kish

Page 3 - DECLARATION OF MATTHEW KISH IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A
OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE
MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO
JANUARY 31, 2024 [FRCP CITATION]

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

4881-8830-8102

ER-0285

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **DECLARATION OF TIMOTHY R. VOLPERT IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendants. | |

_____

I, Timothy R. Volpert, declare as follows:

1.      I am one of the attorneys representing non-party intervenor Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian).

/ / /

Page 1 - DECLARATION OF TIMOTHY R. VOLPERT IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024 [FRCP CITATION]

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

4881-8830-8102

ER-0286

2.      On January 25, 2024, one of the Plaintiffs' attorneys in the above captioned matter, Laura Salerno Owens, emailed me and the other counsel of record stating that she had inadvertently sent documents (the "Documents") to a reporter at The Oregonian that had not been filed in the case and/or are not publicly available (i.e., subject to a Protective Order).

3.      Later that day, I became aware that Ms. Salerno Owens filed a Motion to Request Return of Inadvertently Disclosed Documents, along with a supporting declaration (the "Motion").

4.      Ms. Salerno Owens did not serve me with a copy of the Motion.

5.      To date, I have been unable to access the Motion on the Public Access to Court Electronic Records ("PACER") system because these documents were filed in accordance with a Protective Order.

6.      On January 26, 2024, I became aware that Magistrate Judge Jolie A. Russo entered an Order, requiring The Oregonian to return and destroy the Documents by January 31, 2024, and to not disseminate the contents of the documents. I did not have an opportunity to submit briefing prior to the Magistrate's Order, and I am not aware of whether the Magistrate held a hearing prior to issuing the Order.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

DATED this 29th day of January, 2024.

*s/Timothy R. Volpert*_____
Timothy R. Volpert, OSB No. 814074

Page 2 - DECLARATION OF TIMOTHY R. VOLPERT IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024 [FRCP CITATION]

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

4881-8830-8102

**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **ADVANCE LOCAL MEDIA LLC,** |
| | **D/B/A OREGONIAN MEDIA** |
| v. | **GROUP'S (THE OREGONIAN)** |
| | **EMERGENCY MOTION TO** |
| NIKE, INC., an Oregon Corporation, | **VACATE THE MAGISTRATE** |
| | **JUDGE'S ORDER, OR IN THE** |
| Defendants. | **ALTERNATIVE, STAY** |
| | **PROCEEDINGS PRIOR TO** |
| | **JANUARY 31, 2024, FRCP 72** |
| | |
| | ***(ORAL ARGUMENT / EXPEDITED*** |
| | ***HEARING REQUESTED)*** |

_____

I.    **PRELIMINARY STATEMENT**

Advance Local Media LLC, d.b.a., Oregonian Media Group (hereinafter, The Oregonian),[1]

respectfully requests that the District Court expeditiously vacate the order signed by Magistrate

---

[1] The Oregonian is one of several media groups that the Court permitted to join this litigation as a non-party intervenor. The issues before the Court in this Emergency Motion relate only to The Oregonian.

Page 1 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

Judge Jolie A. Russo on January 26, 2024 (the "Magistrate's Order"). Because The Oregonian was

not served with the motion or supporting declaration that was the impetus for the Magistrate's

Order, otherwise been able to access these documents, was not afforded the opportunity to be heard

on the motion, and because the Magistrate's Order is a clearly unconstitutional prior restraint that

presents an on-going violation of the First Amendment to the United States Constitution—

including an order to return and destroy records in The Oregonian's possession by January 31,

2024—it is requesting emergency review by this Court. In the alternative, if the District Court is

unable to make a ruling before the Magistrate's January 31, 2024, deadline, The Oregonian

requests that the Magistrate's Order be stayed until this request for relief is adjudged.[2]  Immediate

action is necessary by this Court to protect the constitutional rights of the Oregonian, and thus, the

public, because every second that the Magistrate's Order remains in place it is causing additional

irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ("The

loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

irreparable injury.").

## II.    BACKGROUND

On January 19, 2024, Matthew Kish, a business reporter for The Oregonian, met with Laura

Salerno Owens, one of the attorneys for Plaintiffs in the above captioned matter. Mr. Kish and

Ms. Salerno Owens met at a coffee shop to discuss workplace sexual harassment allegations that

---

[2] This Court is no stranger to the *Cahill et. al. v. Nike, Inc.,* litigation and for the purpose of this Emergency Motion, the Oregonian will forgo a lengthy recitation of the procedural history. On January 5, 2024, this Court granted the media intervenors' motion to Unseal Judicial Records. EFC 403. On January 9, 2024, the Ninth Circuit Court of Appeals granted Defendant Nike, Inc.'s motion for a stay pending appeal. The Documents referred to in this motion include at least some of the sealed documents subject to the Court's Order on January 5, 2024, but since The Oregonian does not have access to all of the sealed records, it is not aware if there are additional sealed records that were not disclosed.

Page 2 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

were raised by an individual not named in the instant lawsuit. Declaration of Matthew Kish. Ms. Salerno Owens sent Mr. Kish three emails from her phone during that meeting. The third email included a PDF document entitled "Starfish Surveys" (hereinafter, the "Documents"). *Id.* Upon returning to The Oregonian's office, Mr. Kish opened the files and suspected that that they were not part of the public record in the instant litigation. A few hours later, Ms. Salerno Owens called Mr. Kish and informed him that she had inadvertently sent him the Documents, which were subject to a Protective Order. *Id.*

On January 23, 2024, Ms. Salerno Owens sent Mr. Kish a follow-up email reiterating that she had inadvertently emailed him the Documents and asked The Oregonian to return and delete the Documents, not to disclose or disseminate them, and give "adequate notice" if The Oregonian did not oblige. *Id.*

On January 25, 2024, Mr. Kish responded to Ms. Salerno Owens' email, stating, *inter alia*, that The Oregonian did not intend to return any newsgathering materials it had in its possession. Later that day, Ms. Salerno Owens filed a Motion to Request Return of Inadvertently Disclosed Documents along with a declaration and requested oral argument and an expedited hearing. Declarations of Timothy R. Volpert.

Ms. Salerno Owens did not serve The Oregonian or any of the other non-party media intervenors with a copy of her motion or declaration. *Id.* The Oregonian has been able to read the caption of Ms. Salerno Owens' motion and declaration in the Public Access to Court Electronic Records ("PACER") system but unable to download them because these documents were filed in accordance with a Protective Order, to which The Oregonian is not a party, and they cannot be

/ / /

Page 3 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

electronically retrieved by a non-party. *Id.* The day following Ms. Salerno Owens' motion, without giving notice to The Oregonian, the Magistrate entered the following order:

> The Court is aware that certain documents marked "Confidential" and "Attorneys' Eyes Only" have been inadvertently disclosed by plaintiff's counsel to the Oregonian via e-mail dated January 19, 2024 and that the Oregonian refuses to return the documents. The Oregonian (as party-intervenor Oregonian Media Group) inserted itself as a party-intervenor in this case for the purpose of obtaining disclosure of these and other documents. This Court granted disclosure of the documents at issue on January 5, 2024 which had previously been subject to a protective order. However, the Ninth Circuit stayed the Order pending appeal and the Oregonian is a party to that appeal. Accordingly, the operative protective order requires parties to this litigation to not disclose such inadvertently disclosed documents. Therefore, plaintiff's motion requesting return of inadvertently disclosed documents and requesting expedited consideration, to which defendant joins, is Granted. In order to assure non-disclosure, the Oregonian is Ordered as follows: return the inadvertently disclosed documents by January 31, 2024; agree not to disseminate that information in any way; and to destroy any copies in its possession.

(Citations omitted.) The Magistrate's Order contains clearly erroneous statements of fact and law, and it should be vacated for two primary reasons: (1) The Oregonian is not a "party-intervenor"— it is a non-party intervenor, not subject to the terms of the Protective Order, and The Oregonian lawfully obtained the Documents through the newsgathering process, independent of Court proceedings (i.e., it did not engage in discovery); and  (2) the Magistrate's Order that The Oregonian return and destroy the Documents, and not disseminate their contents, "in any way," is an unconstitutional prior restraint in violation of the First Amendment.

### III.    ARGUMENT

**A.   The Court Should Immediately Vacate the Magistrate's Order Because It Is Factually and Legally Erroneous and It Causes Irreparable Harm Through an On-Going Constitutional Violation.**

Federal Rule of Civil Procedure 72(a) allows a party 14 days to object to a magistrate judge's non-dispositive order, and the district judge may modify or set aside any part of the order that is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). "A finding is clearly

Page 4 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

erroneous if it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048, 1058 (9th Cir. 2016) (citation and quotation marks omitted).

The Court "will evaluate the Magistrate Judge's factual findings to determine if any are clearly erroneous" and "will evaluate the Magistrate Judge's legal conclusions to determine if any are contrary to law, which involves a *de novo* review of those issues." *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1133 (D. Or. 2019); *see also id.* at 1141-42. *Natkin v. Am. Osteopathic Ass'n*, No. 3:16-cv-1494-SI, 2023 U.S. Dist. LEXIS 84517, at *7 (D. Or. May 15, 2023). For the reasons set forth below, the Magistrate's Order is clearly both legally and factually erroneous and it should be immediately vacated.

The Magistrate's Order states that The Oregonian is a "party-intervenor." The Oregonian objects to this finding as clearly erroneous because the record indicates otherwise. First, The Oregonian is one of several non-party media intervenors who intervened for the limited purpose of moving to unseal judicial records that the press and public have a right to access. Accordingly, as a non-party intervenor, The Oregonian is not subject to the terms of the operative protective order referenced in the Magistrate's Order, which the Documents are subject to. The Magistrate's Order directing The Oregonian to destroy and return the inadvertently disclosed documents should be vacated as it is clearly erroneous and contrary to law. Second, The Magistrate's Order presents an unconstitutional prior restraint of a publication, outlined in detail below, which is clearly contrary to nearly a century of settled law. This prior restraint is in violation of the First Amendment Freedom of the Press. For this reason alone, the Order should be vacated. Lastly, the Magistrate's Order directs The Oregonian to take certain actions and it never had an opportunity

Page 5 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500    FAX (503) 274-1212

ER-0292

to be heard, a quintessential due process violation, and contrary to this nation's commitment to an ordered scheme of liberty. *See Duncan v. Louisiana*, 391 U.S. 145, 147-48 (1968).

      i.    **The Oregonian Is a Non-Party Intervenor and It Lawfully Obtained the Documents Through the Newsgathering Process Independent From Any Court Proceeding (i.e., Discovery).**

      The publication or dissemination of lawfully obtained newsgathering materials regarding a matter of public significance enjoys First Amendment protection absent a showing from the government that there is a state interest of the "highest order." *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979) (granting First Amendment protection to a newspaper who lawfully obtained the name of a rape victim and published it). The Supreme Court has held repeatedly that prohibiting the sensitive and private disclosure of information pertaining to private individuals does not amount to a state interest of the highest order, and the government cannot preclude publication of this lawfully obtained information. *See id.; see also The Fla. Star v. BJF*, 491 U.S. 524 (1989) (holding that the State's asserted interest in protecting the anonymity of a juvenile offender did not supersede the newspaper's First Amendment right to publish the juvenile's name, which was obtained through lawful means). That a news media outlet cannot be punished—or even worse, as in this case, restrained—from publishing lawfully obtained information is "unexceptionable." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669, 111 S. Ct. 2513, 2518, 115 L. Ed. 2d 586, 596 (1991).

      The exception to when a news media organization does not have First Amendment protection for publishing lawfully obtained information is exceedingly rare. In limited situations where a news media outlet is a ***party*** to litigation and it receives information obtained ***through the court process***—i.e., information gleaned through a Request for Production or other discovery

Page 6 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

mechanisms—and this information is non-public, the Court may preclude, by terms of a jointly entered Protective Order, the news media outlet from disseminating this information. *Seattle Times Co. v. Rhinehart*. 467 U.S. 20 (1984) ("A litigant has no First Amendment right of access to information made available only for the purposes of trying his suit.").

The exception does not apply here. First, The Oregonian is a non-party intervenor, and it was granted that status for a limited purpose—it is not a "litigant" as the *Seattle Times* Court used that term. *See Robert Ito Farm, Inc. v. Cty. of Maui*, 842 F.3d 681, 688 (9th Cir. 2016).  Second, The Oregonian is not subject to the Protective Order in the *Cahill et. al. v. Nike, Inc.*, litigation. Third, The Oregonian received the Documents through inadvertent disclosure, and it did not use the court process to—discovery—to obtain these documents.

> **ii.**   **The Magistrate's Order Requiring That The Oregonian Return and Destroy the Documents and Not Disseminate the Contents therein Amounts to an Unconstitutional Prior Restraint in Violation of the First Amendment to the United States Constitution.**

A prior restraint is the judicial suppression of information prior to that information being communicated or disseminated.[3]  *Alexander v. United States*, 509 U.S. 544, 546, 113 S. Ct. 2766, 2769, 125 L. Ed. 2d 441, 447 (1993). The Magistrate's Order fits squarely within this definition because "in order to assure non-disclosure," it instructed The Oregonian to not "disseminate [the Documents] in any way."

/ / /

---

[3] A prior restraint stands opposed from a punishment imposed by the government after the speech takes place. The latter concern is not at issue here. Carter, T. B., Franklin, M. A., Sanders, A. K., & Wright, J. B. (n.d.). Carter, Franklin, Sanders and Wright's The First Amendment and the Fourth Estate: The Law of Mass Media, 13th. Retrieved from https://platform.virdocs.com/read/1948952/14/#/4/2/340,/1:0,/1:0.

Page 7 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

For nearly a century, the Supreme Court has viewed prior restraints with great skepticism. In the context of suppressing the dissemination of information by a news media outlet, prior restraints are particularly troubling. *See, e.g., Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 ("Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights" and "free[zing] any lawful speech before it occurs is uniquely dangerous."). Indeed, a prior restraint is only permissible in "exceptional cases" because it is the "essence of censorship." *Near v. Minnesota*, 283 U.S. 697, 716, 51 S. Ct. 625, 631, 75 L. Ed 1357, 1367 (1931). An "exceptional" example includes the publication of wartime secrets, such as the location of troops. *Id. See also NY Times Co. v. United States*, 403 U.S. 713 (1971) (holding that the government's interest in protecting then-classified documents was subordinate to *The New York Times* and *Washington Post's* right to publish the same, lawfully obtained documents).

Determining the circumstances in which a prior restraint can withstand constitutional scrutiny when applied to the dissemination of lawfully obtained information that was gathered outside of the court process is essentially an academic question. *Columbia Broad. Sys., Inc. v. United States Dist. Court for Cent. Dist.*, 729 F.2d 1174, 1183 (9th Cir. 1983) ("[U]nder our constitutional system prior restraints, *if permissible at all*, are permissible only in the most extraordinary of circumstances.") (emphasis added). Even when national security or competing constitutional interests are in play, such as the right of a criminal defendant to receive a fair trial versus the right of a news media outlet to publish certain facts, Courts will "impose[] this most extraordinary remedy only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v. Davis*, 510 U.S. 1315

/ / /

Page 8 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

(1994). Importantly, there is a "heavy presumption" against the constitutional validity of prior restraints." *NY Times Co.*, 403 U.S. at 723.

As noted in the *Daily Mail Publishing Co. and BJF* decisions, the privacy concerns of an individual—including concerns about privacy within one's own home—are not sufficient to justify a prior restraint imposed by a court when the underlying speech is lawful. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20, 91 S. Ct. 1575, 1578, 29 L. Ed. 2d 1, 6 (1971).

The case at bar is not an exceptional one, it does not call for an extraordinary remedy, and there are no allegations or facts to support that the Magistrate's Order can overcome the heavy presumption of invalidity. The Documents contain no national security implications, there is no risk of bodily harm or safety to any individual, and there are no competing constitutional rights at play—The Oregonian is the only one whose constitutional rights are on the line.

For its part, the Oregon Supreme Court has held that prior restraints violate the Oregon Constitution's guarantee that no law shall be passed with restrictions on the right to speak, write, or print freely on any subject. *State ex rel. Sports Mgmt. News v. Nachtigal*, 324 Or. 80, 90 (1996). In *Sports Mgmt News,* Adidas America attempted to have a court enjoin a trade publication from publishing alleged proprietary information that it claimed was known only by a handful of employees at its company. The source of the leak was unknown. Adidas America made a *prima facie* showing that the information in question met Oregon's statutory requirements to qualify as a trade secret. *Id.* at 86. The circuit court issued an order requiring the publication to get approval from the court prior to publishing the alleged trade secrets. The Oregon Supreme Court, emphasizing that there was no allegation that the publisher had violated any criminal or civil law

/ / /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

to possess the alleged trade secrets, reversed the lower court's order. *Id.* at 90. ("[A] court [cannot] compel silence from one who desires to speak.").

### iii.  The Magistrate's Order Did Not Adhere to the Constitutional Requirements of Due Process.

The Magistrate Judge's Order is in violation of Due Process requirements, namely, notice and the opportunity to be heard before the deprivation of a right. The Supreme Court has held that an "elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . with due regard for the practicalities and peculiarities of the case." *Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Put simply, Due Process requires that notice is provided, along with a meaningful opportunity to be heard, before a party's rights are affected. Here, The Oregonian was not served with a copy of the motion that led to the Magistrate's Order and it is still unaware of the arguments that the Magistrate considered prior to signing the order that deprived it of its constitutional rights.

### B.  If the Court Cannot Make a Ruling by the Magistrate's January 31, 2024, Deadline, It Should Stay the Portions of the Magistrate's Order Requiring the Destruction and Return of the Documents.

As discussed above, the Magistrate Judge's Order is an unconstitutional prior restraint that should be vacated, and it imposes an immediate, final, and irreparable injury on The Oregonian and the public as a whole. The Magistrate's Order requires the destruction of the Documents that The Oregonian lawfully obtained outside of the court process (i.e., not through discovery). Without a stay of the Magistrate's Order, The Oregonian would be compelled to return or destroy the

Page 10 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

Documents and even if this Court later vacated the Magistrate's Order after January 31, 2024, The Oregonian would have no mechanism for retrieving the Documents. That a newspaper would be required to destroy documents that are lawfully in its newsroom would present a profound chilling effect on the general public and news media outlets everywhere.

It is within the discretion of the District Court to grant a motion to stay. "[T]he decision to grant a stay, like the decision to grant an evidentiary hearing, is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 568 U.S. 57, 74, 133 S. Ct. 696, 184 L. Ed. 2d 528 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)). When deciding whether a stay should be ordered, courts look to four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Harley-Davidson Credit Corp. v. Turudic*, No. 3:11-cv-01317-HZ, 2012 U.S. Dist. LEXIS 158975, at *3 (D. Or. Nov. 6, 2012) (quoting *Golden Gate Rest. Ass'n v. City and Cnty. of S.F.*, 512 F.3d 1112, 1115 (9th Cir. 2008)).

Among the four factors, the likelihood that the applicant will succeed on the merits and whether the applicant will be irreparably injured absent a stay "are the most critical." *United States v. Yetisen*, No. 3:18-cv-00570-HZ, 2023 U.S. Dist. LEXIS 212087, at *2-3 (D. Or. Nov. 28, 2023) (citing *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009)). "The court uses a 'sliding scale' approach under which the factors of a stay are balanced, so that 'a stronger showing of one [factor] may offset a weaker showing of another.'" *Id.* (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020)).

Page 11 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

ER-0298

1. **The Magistrate's Order Will Not Survive Review Because It Is an Unconstitutional Prior Restraint, Violates Due Process, and The Oregonian Was Never a "Party" to the Protective Order.**

As explained in detail above, the Magistrate's Order contradicts a longstanding body of law by the United States Supreme Court that strongly disfavors prior restraints. Moreover, it erroneously states that The Oregonian is a party to the litigation and that it is subject to the Protective Order. Lastly, The Oregonian suffered a Due Process violation because it is subjected to the Magistrate's Order without having the opportunity to read the arguments against it or have an opportunity to be heard.

2. **The Return and Destruction of the Lawfully Obtained Documents Will Prejudice and Irreparably Harm The Oregonian Because These Actions Cannot Be Undone**.

To satisfy the second factor for a stay, the applicant "must demonstrate more than 'some possibility of irreparable injury,' instead showing that 'the irreparable injury is likely to occur during the period before the appeal is decided.'" *United States v. Yetisen*, No. 3:18-cv-00570-HZ, 2023 U.S. Dist. LEXIS 212087, at *5 (D. Or. Nov. 28, 2023). The Oregonian will be irreparably harmed if the Magistrate's Order to destroy and return the Documents is not stayed because of the nature of the Order requiring destruction and return of all materials is final. Once something is destroyed, it permanently ceases to exist. Additionally, the deadline for destruction rapidly approaches (January 31, 2024).

As explained above, the Documents were lawfully obtained by The Oregonian outside the confines of the discovery process. If the Documents are returned and destroyed, The Oregonian will have been deprived of materials acquired via lawful newsgathering, and its constitutional right to report on the news will have been abrogated by a prior restraint on publication.

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

The deprivation of a constitutional right constitutes irreparable injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)). "This is especially so in the First Amendment context... Plaintiff will suffer irreparable harm without an injunction because '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Total Real Estate Grp., Ltd. Liab. Co. v. Strode*, 588 F. Supp. 3d 1137, 1156-57 (D. Or. 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)).

**3.   A Stay of the Destruction Order Will Not Prejudice Plaintiff or Defendant.**

The third factor in determining if a stay is proper is whether other parties will be prejudiced by the stay. In the instant case, The Oregonian only requests a temporary preservation of the status quo and it will not disseminate the contents of the Documents until this Court makes a determination on the prior restraint issue.  No additional actions would be taken that would prejudice or irreparably harm other parties to the litigation—a stay would simply allow the process to unfold and give The Oregonian the right to be heard—which it has not yet had.

For these reasons, and with a lack of otherwise identifiable harm that could befall other parties to the litigation due to the delay in destruction of the Documents, the third factor militates in favor of the applicant.

/ / /

/ / /

/ / /

Page 13 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

### 4.   The First Amendment's Freedom of the Press is Paramount to the Public Interest.

The public interest weighs in favor of granting the stay. In analyzing this factor, courts have unequivocally stated that upholding constitutional rights is within the public interest. Because "all citizens have a stake in upholding the Constitution," the public has an interest when constitutional rights have been violated. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). See also, *Cal. Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482, 2022 U.S. App. LEXIS 6952, *27-28, 52 ELR 20036, 2022 WL 804104 ("it is always in the public interest to prevent the violation of a party's constitutional rights") (internal citations and punctuation omitted). Courts have specifically emphasized the importance of first amendment freedoms when analyzing the public interest. See *Cal. Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482, 2022 U.S. App. LEXIS 6952, *27-28, 52 ELR 20036, 2022 WL 804104 ("this court has consistently recognized the significant public interest in upholding First Amendment principles") (internal citations omitted); see also *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974, 2002 U.S. App. LEXIS 17648, *41-42, 2002 Cal. Daily Op. Service 7782, 2002 Daily Journal DAR 9819. Time and time again, the Ninth Circuit has shown that First Amendment principles are of supreme importance to the public interest, and this Court should not stray in its interpretation.

The public relies on free press to access information. See *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 831, 2020 U.S. App. LEXIS 32103, *25, 2020 WL 5988501 ("the free press is the guardian of the public interest" and "open government has been a hallmark of our democracy since our nation's founding") (internal punctuation and citations omitted). If the

///

Page 14 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Court Order is not stayed, and the documents are therefore destroyed, the public will not have access to documents that were lawfully acquired by journalists.

### IV.    CONCLUSION

For the reasons outlined above, The Oregonian respectfully requests that the Court immediately vacate the Magistrate Judge's Order, or, in the alternative, stay the Order prior to the Magistrate's January 31, 2024 deadline to return and destroy the Documents that are lawfully in The Oregonian's possession.

Dated this 29th day of January, 2024.

BARRAN LIEBMAN LLP

By _s/Bruce T. Garrett_
   Edwin A. Harnden, OSB No. 721129
   eharnden@barran.com
   Bruce T. Garrett, OSB No. 213430
   bgarrett@barran.com

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The Oregonian)

Page 15 - ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

| From: | info@ord.uscourts.gov |
| To: | nobody@ord.uscourts.gov |
| Subject: | [EXT] Activity in Case 3:18-cv-01477-JR Cahill et al v. Nike, Inc. Order on Motion - Miscellaneous |
| Date: | Friday, January 26, 2024 12:18:01 PM |

**--- External Email ---**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Oregon**

## Notice of Electronic Filing

The following transaction was entered on 1/26/2024 at 12:17 PM PST and filed on 1/26/2024
**Case Name:**          Cahill et al v. Nike, Inc.
**Case Number:**      3:18-cv-01477-JR
**Filer:**
**Document Number:** 412(No document attached)

**Docket Text:**
**ORDER** issued by Magistrate Judge Jolie A. Russo: The Court is aware that certain documents marked "Confidential" and "Attorneys' Eyes Only" have been inadvertently disclosed by plaintiff's counsel to the Oregonian via e-mail dated January 19, 2024 and that the Oregonian refuses to return the documents. The Oregonian (as party-intervenor Oregonian Media Group) inserted itself as a party-intervenor in this case for the purpose of obtaining disclosure of these and other documents. This Court granted disclosure of the documents at issue on January 5, 2024 (ECF [403]) which had previously been subject to a protective order. However, the Ninth Circuit stayed the Order pending appeal (ECF [408]) and the Oregonian is a party to that appeal. Accordingly, the operative protective order requires parties to this litigation to not disclose such inadvertently disclosed documents. (ECF [82]). Therefore, plaintiff's motion requesting return of inadvertently disclosed documents and requesting expedited consideration (ECF [410]), to which defendant joins, is Granted. In order to assure non-disclosure, the Oregonian is Ordered as follows: return the inadvertently disclosed documents by January 31, 2024; agree not to disseminate that information in any way; and to destroy any copies in its possession. *See* Fed. R. Civ. P. 26(b)(5) (B), Fed. R. Civ. P. 502(b). (gm)

**3:18-cv-01477-JR Notice has been electronically mailed to:**

David B. Markowitz      davidmarkowitz@markowitzherbold.com,
6951279420@filings.docketbird.com, docket@markowitzherbold.com,
sarahdubrule@markowitzherbold.com, sarapomerening@markowitzherbold.com,
tamihall@markowitzherbold.com

David J. Elkanich      delkanich@buchalter.com, rturenne@buchalter.com,
scrawford@buchalter.com, srainey@buchalter.com

Laura R. Salerno Owens      LauraSalerno@MarkowitzHerbold.com,
8359710420@filings.docketbird.com, AbigailAdams@MarkowitzHerbold.com,
Docket@MarkowitzHerbold.com, sarahdubrule@markowitzherbold.com,
sarapomerening@markowitzherbold.com

Laura E. Rosenbaum      laura.rosenbaum@stoel.com, docketclerk@stoel.com,
marilyn.schoos@stoel.com

Felicia A. Davis      feliciadavis@paulhastings.com, arlenefigueroa@paulhastings.com,
deisycastro@paulhastings.com, ecf-ord-6374354248433664@inbound.docketalarm.com,
lindseyjackson@paulhastings.com

Harry B. Wilson      harrywilson@markowitzherbold.com,
2591600420@filings.docketbird.com, SarahDubrule@MarkowitzHerbold.com,
docket@markowitzherbold.com, joannastalheim@markowitzherbold.com,
sarapomerening@markowitzherbold.com

Kathryn P. Roberts      KathrynRoberts@MarkowitzHerbold.com,
9717759420@filings.docketbird.com, Docket@MarkowitzHerbold.com,
JeniInirio@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com,
SarahDubrule@MarkowitzHerbold.com

Chad A. Naso      chadnaso@markowitzherbold.com, 2609173420@filings.docketbird.com,
Docket@MarkowitzHerbold.com, SaraPomerening@MarkowitzHerbold.com,
SarahDubrule@MarkowitzHerbold.com, joannastalheim@markowitzherbold.com

Katharine L. Fisher      kfisher@gbdhlegal.com

Laura L. Ho      lho@gbdhlegal.com, efile@gbdhlegal.com, sgrimes@gbdhlegal.com

Byron Goldstein      brgoldstein@gbdhlegal.com, efile@gbdhlegal.com

India Lin Bodien      india@indialinbodienlaw.com, jb@ackermanntilajef.com

Craig J. Ackermann      cja@ackermanntilajef.com, ak@ackermanntilajef.com,
bd@ackermanntilajef.com, jb@ackermanntilajef.com

Daniel Prince      danielprince@paulhastings.com, alyssatapper@paulhastings.com, ecf-ord-
6705547519524864@inbound.docketalarm.com, francinesheldon@paulhastings.com,
lisavermeulen@paulhastings.com, maggiehall@paulhastings.com

Zachary P. Hutton    zachhutton@paulhastings.com

Barry Goldstein    bgoldstein@gbdhlegal.com

James P. Kan    jkan@gbdhlegal.com

Mengfei Sun    msun@gbdhlegal.com, dvaldez@gbdhlegal.com

Brian Walter Denlinger    brian.w.denlinger@gmail.com

Nicole Lueddeke    nicolelueddeke@paulhastings.com

David Aaron Bernstein    dbernstein@buchalter.com, docket@buchalter.com, mlavine@buchalter.com, rturenne@buchalter.com, scrawford@buchalter.com, srainey@buchalter.com

**3:18-cv-01477-JR Notice will <u>not</u> be electronically mailed to:**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 19 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KELLY CAHILL, et al.; | No. 24-165 |
| Plaintiffs - Appellees, | D.C. No. 3:18-cv-01477-JR |
| and | District of Oregon, Portland |
| TRACEE CHENG;, et al.; | ORDER |
| Plaintiffs, | |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant - Appellant. | |

Before: PAEZ and NGUYEN, Circuit Judges.

The motion to correct the docket to be added as parties to this appeal and for leave to file an opposition to appellant's motion for a stay pending appeal (Docket Entry No. 7) is granted. The Clerk will amend the caption to add as appellees: Insider Inc., d/b/a Business Insider; Advance Local Media LLC d/b/a Oregonian Media; and American City Business Journals, Inc. d/b/a Portland Business Journal. The Clerk will file the opposition (Docket Entry No. 7.2).

The motion to stay the district court's January 5, 2024 order granting the motion to unseal judicial records (Docket Entry No. 3) is granted. *See Nken v.*

ER-0306

*Holder*, 556 U.S. 418, 434 (2009) (defining standard for stay pending appeal).

The existing briefing schedule remains in effect.

24-165

ER-0307

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 11 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KELLY CAHILL, et al.; | No. 24-165 |
| Plaintiffs - Appellees, | D.C. No. 3:18-cv-01477-JR District of Oregon, Portland |
| and | |
| TRACEE CHENG;, et al.; | ORDER |
| Plaintiffs, | |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant - Appellant. | |

Before: PAEZ and NGUYEN, Circuit Judges.

The court has received appellant's motion for a stay pending appeal at Docket Entry No. 3.

The request for a temporary stay is granted. *See Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019). The district court's January 5, 2024 order granting the motion to unseal judicial records is temporarily stayed pending resolution of the motion for a stay pending appeal.

Any responses to the motion are due January 16, 2024, by 12:00 p.m. Pacific Time. The optional reply is due January 17, 2024, by 12:00 p.m. Pacific Time.

ER-0308