No. 24-2199

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

KELLY CAHILL, et al.,

*Plaintiffs-Appellees,*

v.

INSIDER INC., et al.,

*Media Intervenors-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Oregon, Portland
No. 3:18-cv-01477
Hon. Marco A. Hernandez

_____

## APPELLEE ADVANCE LOCAL MEDIA LLC D/B/A OREGONIAN MEDIA GROUP'S ANSWERING BRIEF

_____

Edwin A. Harnden, OSB No. 721129
Melissa C. Oakley, OSB No. 212470
Joshua A. Waugh, OSB No. 234293
BARRAN LIEBMAN LLP
601 SW Second Avenue, Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

*Attorneys for Appellee Advance Local Media LLC, d/b/a Oregonian Media Group*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a), the undersigned, on behalf of Appellee Advance Local Media LLC, d/b/a Oregonian Media Group make the following disclosures related to their corporate identities. Appellee Advance Local Media LLC, d/b/a Oregonian Media Group states it has no parent corporations and no publicly held corporations owns 10 percent or more of its stock.

BARRAN LIEBMAN LLP

By *s/Edwin A. Harnden*
Edwin A. Harnden, OSB No. 721129
Melissa C. Oakley, OSB No. 212470
Joshua A. Waugh, OSB No. 234293

*Attorneys for Appellee Advance Local Media LLC, d/b/a Oregonian Media Group*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ....................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..............................4

STATEMENT OF THE CASE............................................................5

SUMMARY OF ARGUMENT ..........................................................9

STANDARD OF REVIEW ........................................................... 11

ARGUMENT ................................................................................ 12

    I. THE DISTRICT COURT'S ORDER LIFTING THE PRIOR
        RESTRAINT IS COMPELLED BY THE FIRST AMENDMENT
        ......................................................................................... 12
        A. The January Order Was a Prior Restraint .............................. 13
        B. Nike Has Not Met Its Burden to Justify a Prior Restraint...... 15
        C. The Oregonian is Not a Party ................................................ 17
        D. The Oregonian is Not Bound by the Stipulated Protective
            Order ................................................................................. 19
        E. The Oregonian Has Not Violated Any Court Orders ............. 21
        F. The Oregonian Received the Documents Outside of the Court
            Process ............................................................................. 22
    II. IRRELEVANT DISCOVERY AGAINST THE OREGONIAN WAS
         CORRECTLY DENIED ........................................................ 24
    III. THE DISTRICT COURT APPLIED THE CORRECT STANDARD
          OF REVIEW ....................................................................... 25

CONCLUSION.............................................................................. 27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abreu v. Pfizer, Inc.*, No. 21-62122-CIV-MORE, 2022 U.S. Dist. LEXIS 19796 (S.D. Fla. Feb. 3, 2022)................................................................. 18, 21

*Alexander v. United States*, 509 U.S. 544,  113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) ...................................................................................13

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ............................................23

*Beckman Indus. v. International Ins.,* 966 F.2d 470 (9th Cir. 1992)....................20

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349 (9th Cir. 2013)..............................................................20

*CBS, Inc. v. U.S. District Court,* 729 F.2d 1174 (9th Cir. 1984)...........................15

*Citizens United v. FEC*, 558 U.S. 310, 130 S. Ct. 876, 175 L.Ed.2d 753 (2010) ...............................................................14

*Cnty. of Orange v. Air California*, 799 F.2d 535 (9th Cir. 1986)........................12

*Connecticut Bank & Tr. Co. v. US Flag Vessel "Monterey"*, 1992 U.S. App. LEXIS 11586 (9th Cir. 1992) ...........................................24

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) .......................4

*Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) ....................................12

*Friant Water Auth. v. Jewell*, No. 14-cv-00765, 2014 U.S. Dist. LEXIS 148219, 2014 WL 5325352 (E.D. Cal. Oct. 17, 2014).......................................18

*Galbreath v. Metropolitan Trust Co.*, 134 F.2d 569 (10th Cir. 1943)...................20

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 2014 U.S. App. LEXIS 2492 (9th Cir. 2014) ..............................................................13

*Husain v. Olympic Airways*, 316 F.3d 829 (9th Cir. 2002) .....................................11

*In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007) .........................12

*Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949 (8th Cir. 1979) ....................22

*KL Group v. Case, Kay & Lynch*, 829 F.2d 909 (9th Cir. 1987) .............................3

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003) ..............................24

*Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012) ....................................................11

*Meador v. New Times*, 1994 U.S. App. LEXIS 26219 (9th Cir. 1994) ................16

*Mitchell v. Valenzuela*, 791 F.3d 1166 (9th Cir. 2015) .................................. 25, 26

*Morden v. Intermec Techs. Corp.*, 77 Fed. Appx. 424 (9th Cir. 2003) ................24

*Near v. Minnesota*, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed 1357 (1931) ..............15

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L.Ed.2d 683 (1976) .................................................................................................1, 16

*New York Times Co. v. United States*, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) ..................................................................... 15, 16, 23

*Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087 (C.D. Cal. 2012) ..................16

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) .......................................17

*Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002) ...........................................12

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ......................................22, 23

*Sec. & Exch. Comm'n v. Muroff*, No. 17-cv-00180, 2018 U.S. Dist. LEXIS 221745, 2018 WL 7108114 (D. Idaho Dec. 4, 2018) ........................................18

*Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir. 1986).......................12

*Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97 (1979)..............................................16

*Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065 (9th Cir. 2008) ..................3, 4

*United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413
   (9th Cir. 1994)..............................................................................................21

*Van Hoomissen v. Xerox Corp.*, 497 F.2d 180 (9th Cir. 1974) ...................... 12, 18

**Other Authorities**

28 U.S.C. § 1291 ..........................................................................................................3
28 U.S.C. § 1331 ..........................................................................................................3
28 U.S.C. § 636(b)(1)(A) ..................................................................................... 25, 26
28 USC § 1292 .............................................................................................................3
28 USC § 1292(a)(1) ....................................................................................................3
42 U.S.C. § 20006-5(f)(3) ............................................................................................3
128 U.S.C. § 1343 ........................................................................................................3
Black's Law Dictionary, *Prior Restraint*, BLACK'S LAW DICTIONARY
   (9th ed. 2009)................................................................................................13
Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev.
   157 (2007)......................................................................................................16

**Rules**

Fed. R. Civ. P. 72(a) ..................................................................................................26

## INTRODUCTION

In 2018, a group of female employees at Nike, Inc. ("Nike") headquarters surveyed their female peers, inquiring whether they had been the victim of sexual harassment and gender discrimination (the "Starfish Surveys"). 5-ER-882-901; 2-ER-283-85. Later that year, four former Nike employees filed the underlying action (the "Lawsuit") alleging gender discrimination against Nike. In January 2024, the Starfish Surveys and certain other documents filed under seal in the Lawsuit (collectively, the "Documents") were inadvertently emailed to journalist Mathew Kish ("Mr. Kish") by an attorney representing Plaintiffs-Appellees. Nike seeks a court order mandating the Documents' return and destruction and forbidding Appellee Advance Local Media LLC d/b/a Oregonian Media Group ("The Oregonian") from reporting on them.

The Supreme Court has consistently held that the judicial suppression of speech before it occurs is "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 2803, 49 L.Ed.2d 683, 697 (1976). Since Nike cannot convincingly argue for suppression of constitutionally protected press freedoms, it attempts to awkwardly rebrand this appeal as merely seeking to remedy a protective order violation. Nike's tortured arguments hinge on speculation and outright fiction contradicted by the factual record and findings below. Moreover, the Documents at the heart of this

appeal have been in the hands of The Oregonian since January and the subject of its investigative reporting in the months since the District Court rejected Plaintiffs-Appellees' sealed motion (the "Motion Seeking Press Restrictions") seeking the return and destruction of the Documents (5-ER-902-10)[1] and this Court denied them a stay.

The facts themselves are simple, and the law is clear. Nike and Plaintiffs-Appellees stipulated to a protective order to facilitate discovery in the Lawsuit (the "Stipulated Protective Order"). *See* 4-ER-727-37. Counsel for Plaintiffs-Appellees inadvertently sent documents subject to the Stipulated Protective Order to a reporter. The law does not allow the remedy for that attorney's mistake to curtail the press' First Amendment rights except in an "exceptional case" demonstrating a countervailing state interest of the "highest order." This is not such a case. Nike cannot meet the near-impossible burden to justify the prior restraint it seeks. For the reasons herein and discussed more fully below, the District Court's Order (the "Order") should be affirmed. 1-ER-2-4

---

[1] The Oregonian does not have access to Nike's Volume 5 of its Excerpts of Records (Dkt. No. 34.6) because it contains records sealed in this case under the Stipulated Protective Order to which The Oregonian is not a party. Thus, The Oregonian is unable to provide pincites for sealed documents contained in Volume 5; however, The Oregonian has indicated relevant page ranges.

# JURISDICTIONAL STATEMENT

The District Court has jurisdiction over the Lawsuit under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 20006-5(f)(3). Plaintiffs-Appellees assert claims arising under federal law, and the District Court has supplemental jurisdiction over those claims that arise under state law.

The jurisdiction of this Court is generally limited to "final decisions of the district courts." *Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065, 1067 (9th Cir. 2008) (citing 28 U.S.C. § 1291). There are exceptions to the final judgment rule under both 28 USC § 1292 and the collateral order doctrine, but neither of these narrow exceptions are applicable to the present case.

Under 28 USC § 1292, an interlocutory order "granting, continuing, modifying, refusing or dissolving" an injunction is subject to review by the appellate court. 28 USC § 1292(a)(1). Nike has attempted to rebrand this appeal as the denial of an injunction; however, this appeal concerns a request for a clawback order pursuant to a protective order that would amount to an unconstitutional prior restraint. Protective orders are discovery devices, and as such, this appeal concerns a discovery order. "The general rule is that discovery orders are interlocutory in nature and nonappealable under section 1291." *Truckstop.net, LLC*, 547 F.3d at 1067 (citing *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 n.5 (9th Cir. 1987)).

Moreover, Nike attempts to apply the collateral order doctrine to this case. However, the collateral order doctrine is a "'narrow' exception" and it "should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of the district court error at any stage of the litigation may be ventilated." *Truckstop.net, LLC*, 547 F.3d at 1070 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

The core question on appeal is whether the District Court's inherent power to enforce the parties' Stipulated Protective Order against a non-party newspaper is constrained by the First Amendment. Nike contends that the First Amendment is no bar to the District Court's exercise of power. However, the District Court correctly affirmed the Magistrate's analysis that the Court's power "must comply with the parameters of the First Amendment" in order to "restrain the Oregonian from publishing any information contained in the documents or compel their return" and could be exercised only in "an exceptional case justifying such prior restraint." 1-ER-12-13. The issues presented for review include:

1. Whether the District Court correctly affirmed the February Order holding that the District Court's authority to direct the conduct of The

Oregonian as a non-party case participant must comply with the parameters of the First Amendment.

2. Whether the District Court correctly affirmed the February Order holding that imposing a prior restraint on The Oregonian was not justified.

3. Whether the District Court correctly affirmed the February Order finding that The Oregonian was a non-party for the purpose of the Stipulated Protective Order.

4. Whether the District Court correctly affirmed the February Order finding that The Oregonian is not bound by the parties' Stipulated Protective Order.

5. Whether the District Court correctly affirmed the denial of Nike's request for irrelevant discovery.

6. Whether the District Court used the correct standard in reviewing the February Order.

## STATEMENT OF THE CASE

In 2022, more than four years after the *Cahill, et al. v. Nike* litigation began, the District Court permitted The Oregonian, along with two other media groups (collectively, the "Media Intervenors") to intervene as non-parties for the limited purpose of vindicating the public's right of access to certain sealed and redacted

records filed by the parties. Dkt. No. 34.1, p. 13; 4-ER-669-86; 4-ER-648-62. The Media Intervenors then renewed their motion to unseal judicial records. 3-ER-499-514. After lengthy briefing, the District Court granted the motion. AdvanceSER-12-14. Nike appealed, and on January 11, 2024, this Court temporarily stayed the District Court's unsealing order pending its resolution of Nike's appeal. Appeal No. 24-165, Dkt. No. 6.1. Thereafter, on January 19, 2024, this Court entered an indefinite stay (the "Stay Order"). Appeal No. 24-165, Dkt. No. 12.1. In accordance with the Stay Order, the judicial records that were ordered unsealed by the District Court have remained under seal. They are not currently available on the public docket in the Lawsuit and cannot be accessed by non-parties, including The Oregonian and other Media Intervenors.

On January 17, 2024, before the issuance of the Stay Order, The Oregonian reporter, Mr. Kish, arranged to meet Plaintiffs-Appellees' attorney Laura Salerno Owens ("Ms. Salerno Owens") to discuss a declaration he received detailing allegations of sexual harassment at Nike from a former Nike employee not named in the Lawsuit. 2-ER-241. On January 19, 2024, as part of his normal newsgathering process, Mr. Kish met Ms. Salerno Owens at a public coffee shop to seek her comment on these new allegations. 2-ER-283-84. Ms. Salerno Owens limited her comment to publicly available information. 2-ER-241. In support of her comment, Ms. Salerno Owens emailed Mr. Kish the Documents, which she believed were

publicly available. 2-ER-242. Mr. Kish opened the Documents and acknowledged their receipt, but he did not read the Documents during the meeting. Appeal No. 24-165, Dkt. No. 34.1, Exhibit A, p. 15. Hours later, Ms. Salerno Owens realized that some or all the Documents were not publicly available and that she had inadvertently disclosed documents that were subject to the Stipulated Protective Order (the "Disclosure"). *Id.* at p. 5; 2-ER-243.

That evening, and in the days following, Ms. Salerno Owens informed Mr. Kish that she had mistakenly sent him the Documents and demanded that he return them. 2-ER-243-245. The Oregonian declined to return the Documents. 2-ER-244-245. On January 25, 2024, Ms. Salerno Owens filed a sealed motion (the "Motion Seeking Press Restrictions") seeking the return and destruction of the Documents. 5-ER-902-10. Magistrate Judge Jolie Russo ("Magistrate Judge Russo") granted that motion, issuing the January Order without hearing from The Oregonian because the non-party The Oregonian had no access to the Motion Seeking Press Restrictions and had not been served with it. Appeal No. 24-165, Dkt. No. 34.1, Exhibit GG, pp. 487-95. Magistrate Judge Russo granted what must have appeared then to be an unopposed request. 2-ER-303. The Oregonian learned about the January Order after the fact. *See* 2-ER-287. Once it learned of the January Order, The Oregonian appeared and filed an emergency motion to vacate it. 2-ER-288-302.

Judge Marco Hernandez ("Judge Hernandez") vacated the January Order and referred the matter back to Magistrate Judge Russo. 2-ER-280-81.

This time, in a detailed ruling outlining the relevant law and facts, Magistrate Judge Russo denied the Motion Seeking Press Restrictions. 1-ER-5-14. In the February Order, Magistrate Judge Russo found that The Oregonian is not a party to the Lawsuit, is not subject to the Stipulated Protective Order, and did not violate any court orders. Magistrate Judge Russo also concluded that Ms. Salerno Owens' Disclosure could not be imputed to The Oregonian and that an order requiring The Oregonian to return and destroy the Documents and refrain from publishing their contents would be a prior restraint on speech violative of the First Amendment. Appeal No. 24-165, Dkt. No. 34.1, Exhibit A, pp. 17-20.

Nike and Ms. Salerno Owens' firm filed objections to the February Order. 2-ER-133-77. On April 8, 2024, Judge Hernandez affirmed the February Order. 1-ER-2-4. Nike filed notice of appeal and asked the District Court whether the February Order was stayed, and the District Court, agreeing with The Oregonian's First Amendment arguments, explicitly stated that no stay remained in effect. *See* AdvanceSER-9. Nike then moved this Court for emergency relief. Dkt. No. 4.1. This Court entered a temporary stay of the Order pending resolution of Nike's motion for an injunction pending appeal. Dkt. No. 6.1. Within a matter of days, this Court

denied Nike's request for emergency relief. Dkt. No. 14.1. Nike then filed a petition

for rehearing *en banc*, which was denied on May 23, 2024. Dkt. No. 23.1.

This appeal arises out of the District Court's April 8, 2024 Order affirming

the February Order. 1-ER-2-4.

## SUMMARY OF ARGUMENT

The inherent power of the federal court system must conform to the limits of

the First Amendment.

I.    When the government attempts to restrict speech or publication before it

      occurs, that action is by definition a prior restraint. Any party seeking to

      impose a prior restraint must carry an extraordinarily heavy burden to

      justify such censorship. The history of the First Amendment and its

      jurisprudence weigh heavily against prior restraints except in the most

      extraordinary circumstances. Extraordinary circumstances do not exist

      here. Nike's concern for the embarrassment and privacy of its employees

      and former employees does not justify a prior restraint on First

      Amendment rights. Further, Nike's contention that The Oregonian

      intervened as a full-fledged party is incorrect. The Oregonian also never

      stipulated to the Stipulated Protective Order. The District Court has

      repeatedly found that The Oregonian did nothing wrong. The First

      Amendment protects a news media outlet when reporting on the news,

without regard to how the information was obtained, specifically whereas here, the news media outlet lawfully obtained information. The January Order to restrain The Oregonian from publishing any information contained in the Documents and compel their return was an impermissible prior restraint, and the District Court was correct to vacate it.

II.     The District Court made findings that discovery would be irrelevant to The Oregonian's First Amendment rights. The court rejected Nike's speculation about the circumstance of the Disclosure. The court further found that discovery on Ms. Salerno Owens would also be irrelevant to the Lawsuit because "the Court cannot impute any violation of the protective order to Kish or to the Oregonian." 1-ER-12. Discovery is not justified simply because Nike speculates that wrongdoing occurred. District Courts have broad discretion to permit or deny discovery. This discretion may only be disturbed upon a showing of actual and substantial prejudice to the complaining litigant. Further, irrelevant discovery should be especially avoided given the burden and protections afforded constitutionally protected press activities.

III.    Nike distorts the issues for review and arbitrarily questions the Magistrate Judge's authority. Nike consented to the Magistrate Judge's authority when it joined the Motion Seeking Press Restrictions. 5-ER-902-10; 2-ER-

217-39. Nike cannot now challenge the Magistrate Judge's authority to decide the issue that Nike requested the Magistrate Judge decide. The District Court applied the correct standard of review.

## STANDARD OF REVIEW

The District Court's legal conclusions regarding the propriety of a prior restraint are reviewed *de novo*. *Leigh v. Salazar*, 677 F.3d 892, 896 (9th Cir. 2012) (conducting *de novo* review on the legal issues and reversing the denial of a preliminary injunction because the district court rubber stamped a restriction on press freedom and failed to conduct the proper First Amendment analysis). Whether the First Amendment limits the District Court's power to impose a prior restraint is a question of law, which must be reviewed *de novo*.

The District Court's factual determinations are reviewed for clear error. *Leigh*, 677 F.3d at 896. Clear error is the standard for reviewing Magistrate Judge Russo's findings that The Oregonian was not bound by the Stipulated Protective Order and did not violate it.

When the application of the law to the facts requires an inquiry that is 'essentially factual,' review is for clear error. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002). Magistrate Judge Russo's findings that the circumstances of this case were not so exceptional and did not justify prior restraint is essentially factual and therefore clear error is the proper standard of review.

District Courts have the power and discretion to grant, deny, or limit permissive intervention. *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974). "Permissive intervention is committed to the broad discretion of the district court and is therefore reviewed by this court for abuse of discretion." *Cnty. of Orange v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986). Abuse of discretion is the standard of review for Magistrate Judge Russo's finding that The Oregonian lacks the status of a full party.

"A district court order relating to discovery is reviewed for an abuse of discretion." *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 527 (9th Cir. 1986). Abuse of discretion is the standard of review for Magistrate Judge Russo's order denying Nike discovery.

Clearly erroneous or contrary to law is the standard of review for both "a magistrate's order in a pretrial matter" and a "district court's denial of a motion to reconsider a magistrate's pretrial order." *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).

## ARGUMENT

## I. THE DISTRICT COURT'S ORDER LIFTING THE PRIOR RESTRAINT IS COMPELLED BY THE FIRST AMENDMENT

Nike offers *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010), and *In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007), to support its position that the District Court had the power to issue "a clawback order and use ban against

The Oregonian," even if The Oregonian lacks party status. Dkt. No. 33.1, pp. 41-44. Here, whether the District Court has the inherent power to enforce its orders is not in dispute. Indeed, the District Court and Magistrate Judge Russo exercised that inherent power when they considered Nike's "clawback" request and correctly determined (1) that an order to "restrain the Oregonian from publishing any information contained in the documents or compel their return" would be a prior restraint and "must comply with the parameters of the First Amendment," (2) that such prior restraint was not justified here, (3) that The Oregonian was not a party, (4) that The Oregonian was not bound by the Stipulated Protective Order, and (5) that The Oregonian did not violate any court orders. 1-ER-11-13.

### A. The January Order Was a Prior Restraint.

Nike argues that the issue before this Court is not one of a prior restraint. Black's Law Dictionary defines a "prior restraint" as: "[a] governmental restriction on speech or publication before its actual expression." Black's Law Dictionary, *Prior Restraint*, BLACK'S LAW DICTIONARY (9th ed. 2009). This Court has stated: "A prior restraint is an administrative or judicial order that forbids certain communications issued before those communications occur." *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 2014 U.S. App. LEXIS 2492, at *38 (9th Cir. 2014) (citing *Alexander v. United States*, 509 U.S. 544, 549-50, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)).

14

The January Order required The Oregonian to "return the inadvertently disclosed documents by January 31, 2024; agree not to disseminate that information in any way; and to destroy any copies in its possession." Each part of the January Order independently meets the definition of a prior restraint. Clearly, part 2—the restriction on disseminating that information in any way—restrains publication before its actual expression. Further, parts 1 and 3 of the January Order, requiring The Oregonian to return and destroy documents prior to publication, are also prior restraints because possessing newsgathering materials is preparatory to speech, and protected no less than speech itself. *See Citizens United v. FEC*, 558 U.S. 310, 336, 130 S. Ct. 876, 896, 175 L.Ed.2d 753, 780 (2010) ("Laws enacted to control or suppress speech may operate at different points in the speech process.").

Nike painstakingly avoids any real First Amendment analysis, simply declaring that "The First Amendment is no bar." Dkt. No. 33.1, p. 26. That is incorrect. The First Amendment imposes a near-insurmountable bar to justify a prior restraint against publication—no less against a media intervenor. The First Amendment has been held time and time again to bar imposition of a prior restraint.

The District Court vacated the January Order—with its restrictions on possession and publication of the Documents—and referred the matter back to Magistrate Judge Russo. 2-ER-280-81. Magistrate Judge Russo correctly determined that the relief requested would be a prior restraint and "before the Court

can restrain The Oregonian from publishing any information contained in the documents or compel their return, it must determine that this is in an exceptional case justifying such prior restraint." 1-ER-12-13.

### B.    Nike Has Not Met Its Burden to Justify a Prior Restraint.

Restraining speech before it occurs is permissible only in "exceptional" circumstances. *Near v. Minnesota*, 283 U.S. 697, 716, 51 S. Ct. 625, 631, 75 L. Ed 1357, 1367 (1931) (limiting the availability of prior restraints to only the most extreme circumstances, such as revealing wartime troops movements); *see CBS, Inc. v. U.S. District Court,* 729 F.2d 1174, 1183 (9th Cir. 1984) ("[U]nder our constitutional system prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances"). The Supreme Court has refused to impose a prior restraint in cases that implicate national security concerns and stolen government documents. *A fortiori* where much less urgent concerns are proffered, such as embarrassment about allegations of workplace sexual harassment, a prior restraint plainly cannot issue.

Even with national security implications at stake, the Supreme Court made no inquiry into how the *New York Times* and *Washington Post* obtained classified documents, nor did the Court suggest that discovery or evidentiary hearings were needed to determine how the information was leaked. *New York Times Co. v. United States*, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) (per curiam). Instead,

the Court declined to enjoin the newspapers from publication and aptly summarized that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity" placing the "heavy burden of showing justification for the imposition of such a restraint" on the party requesting a prior restraint. *Id*. at 714 (quotations and citations omitted). Nike does not meet this heavy burden.

Ultimately, this Court and the Supreme Court have maintained that the burden to impose a prior restraint is, historically, near impossible to overcome. "Those seeking to obtain a prior restraint on publications carry a heavy burden of justifying the need to impose the restraint." *Meador v. New Times*, 1994 U.S. App. LEXIS 26219, at *8 (9th Cir. 1994) (citing *Neb. Press Ass'n,* 427 U.S. at 568). To carry that burden, a public interest of the "highest order" must be shown—something more than national security concerns. *Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 103 (1979); *New York Times,* 403 U.S. at 730 (holding that the government failed to show that publication of the Pentagon Papers will clearly result in direct, immediate, and irreparable harm to the nation). Since the inception of the First Amendment, the Supreme Court has never upheld a prior restraint. *See Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1092-1093 (C.D. Cal. 2012) (*citing* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 172-73 (2007)).

Nike identifies no exceptional circumstances here. Its stated concerns for the privacy and feelings of its employees and former employees do not justify restraint on First Amendment rights. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971) (holding that neither individual privacy interests nor the interest of an individual in being free from public criticism justify restricting the flow of information to the public). Magistrate Judge Russo correctly found that the circumstances of this case do not justify prior restraint, and the District Court was correct to affirm the February Order.

## C.     The Oregonian is Not a Party.

On April 8, 2022, three media organizations, including The Oregonian, filed their Motion to Intervene for the Limited Purpose of Moving to Unseal Judicial Records and to Oppose Defendant's Motion to Seal (4-ER-669-86).[2] The District Court granted the media organizations' motion "to the extent they request intervention for the limited purpose of challenging the parties' stipulated redactions

---

[2]     Nike alleges throughout its Opening Brief that The Oregonian intervened to modify the Stipulated Protective Order (Dkt. No. 33.1, pp., 11, 23, 28, 34, 38, and 39). There is zero support for this assertion in the record. The Oregonian has never stated that its intervention was for the purpose of modifying the Stipulated Protective Order, nor has The Oregonian filed a motion to modify the Stipulated Protective Order. Further, Magistrate Judge Russo found that The Oregonian "did not intervene to challenge or revise the protective order" 1-ER-11. Nike's assertion to the contrary is false.

in regard to the briefing surrounding plaintiffs' Motion for Class Certification and denied in all other respects with leave to renew." 4-ER-646-47.

Nike's contention that The Oregonian is an intervening party with full party status in the litigation is incorrect. Dkt. No. 33.1, p. 37. Intervention is not limited "to only those seeking to intervene as a full-fledged party … [i]ndeed, courts are able to permit intervention to address discrete issues within a case." *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV-MORE, 2022 U.S. Dist. LEXIS 19796, at *12 (S.D. Fla. Feb. 3, 2022) (citing *Friant Water Auth. v. Jewell*, No. 14-cv-00765, 2014 U.S. Dist. LEXIS 148219, 2014 WL 5325352, at *5 (E.D. Cal. Oct. 17, 2014) (granting intervention for the limited purpose of opposing a motion to transfer); *Sec. & Exch. Comm'n v. Muroff*, No. 17-cv-00180, 2018 U.S. Dist. LEXIS 221745, 2018 WL 7108114, at *5 (D. Idaho Dec. 4, 2018) (granting intervention for the limited purpose of opposing a motion to stay). Further, "[t]he district court's discretion, at least under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Van Hoomissen*, 497 F.2d at 181.

Here, the District Court's order granting intervention explicitly stated The Oregonian was admitted as a "non-party" and for a "limited purpose." 4-ER-646-47. The Oregonian has never acted inconsistent with its limited, non-party status (e.g., by engaging in discovery, arguing evidentiary motions, submitting pleadings, or

otherwise). Magistrate Judge Russo analyzed the facts and circumstances of The Oregonian's intervention in this case and correctly found that The Oregonian is not a party. 1-ER-11.

### D. The Oregonian is Not Bound by the Stipulated Protective Order.

Nike does not and cannot refute that The Oregonian cannot be bound to a stipulated order that it did not stipulate to.

Plaintiffs-Appellees and Nike agreed to the Stipulated Protective Order for the purpose of discovery. The Stipulated Protective Order states, "[t]he parties agree that good cause exists to protect the confidential nature of the information contained in documents, interrogatory responses, responses to requests for admission, or deposition testimony." 4-ER-728. In 2019, when the proposed stipulated protective order was filed, the only "parties" capable of agreeing were Plaintiffs-Appellees and Defendant-Appellant.

Later, in 2022, Nike opposed the media organizations' intervention arguing that "intervention would eviscerate the safeguards built into the Protective Order for Confidential and/or AEO information, and there is no way to 'unring the bell.'" AdvanceSER-28. Nike's concerns illustrate that Nike properly understood that The Oregonian, if allowed to intervene, would not automatically be subject to the parties' Stipulated Protective Order. Magistrate Judge Russo addressed Nike's concerns and decided that "the most prudent and efficient course of action is to grant the non-party

media organizations' motion to intervene but deny their request to unseal or access documents produced under the Protective Order." 4-ER-660-661.

To this day, The Oregonian still has no access to the records sealed in this case under the Stipulated Protective Order precisely because The Oregonian is not a party to that order. This includes access to Nike's Volume 5 of its Excerpts of Records filed *in this very appeal*. Magistrate Judge Russo correctly found that "the Oregonian never joined in the protective order agreement as demonstrated by the enforced lack of access to the sealed documents in the docket." 1-ER-12.

The Ninth Circuit has repeatedly held that "legitimate interests in privacy can be protected by putting the intervenors under the same restrictions as those contained in the original protective order." *Beckman Indus. v. International Ins.,* 966 F.2d 470, 475 (9th Cir. 1992); *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1354 (9th Cir. 2013) (stating that any prejudice caused by intervention to original parties due to their reliance on a protective order could be eliminated by a new protective order to include the intervenor). However, as Magistrate Judge Russo noted, "the parties did not seek to alter the protective order to bind the Oregonian to its parameters." 1-ER-11.[3]

---

[3]     To support its contention that The Oregonian is subject to the Protective Order, Nike points to a single quote from a 1943 case from a different circuit, *Galbreath v. Metropolitan Trust Co.*, 134 F.2d 569 (10th Cir. 1943). However, the intervention sought in *Galbreath* was entirely different than the intervention sought

The parties could have sought to place The Oregonian under the Stipulated Protective Order or enter a new protective order, but they did not, nor did The Oregonian stipulate to the parties' Stipulated Protective Order. As a result, The Oregonian has never been given court access to sealed records. Accordingly, Magistrate Judge Russo correctly found that The Oregonian was not subject to the Stipulated Protective Order.

### E.     The Oregonian Has Not Violated Any Court Orders.

Notwithstanding Nike's invocation of fiction writer John Grisham, Nike's narrative contradicts the record and has been repudiated by the District Court. "Given that the information sought by Nike does not relate to any of the claims and defenses in this case and instead seems to rest on Nike's speculation about the Oregonian aiding and abetting the disclosure of confidential information, Nike fails

---

in this case. Charles A. Galbreath sought to make substantive claims on funds that were already the subject of the litigation and held himself out as a full-fledged party to the case on the merits in his petition of intervention. In contrast, The Oregonian intervened specifically as a non-party media intervenor for the limited purpose of vindicating the public's right of access to certain sealed and redacted records. 4-ER-669-86. As discussed above, this type of limited intervention is permissible and common today. *See Abreu*, 2022 U.S. Dist. LEXIS 19796, at *12.

Nike's reliance on *United States v. Cal. Mobile Home Park Mgmt. Co.* is similarly misplaced. There, this Court held that "under the Fair Housing Act, a plaintiff is entitled to intervene as of right and to substitute herself for the United States on appeal." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994). The Oregonian permissively intervened, has not substituted itself for anyone, and does not invoke the Fair Housing Act.

to overcome that [reporter's] privilege." AdvanceSER-7. The District Court has consistently found The Oregonian did nothing wrong, *see* 1-ER-5-14; AdvanceSER-7, and that alone justifies its refusal to direct enforcement at The Oregonian. *See Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 955 (8th Cir. 1979) (finding the court could not compel a non-party to return documents covered by a protective order, when the non-party had not violated any court order). Nike's contention that The Oregonian engaged in "improper newsgathering" is baseless and flatly contradicted by the record. *See* 1-ER-11-13.

### F. The Oregonian Received the Documents Outside of the Court Process.

Nike's attempt to invoke *Seattle Times* blatantly distorts its holding: when a litigant compels discovery from another party to obtain information that is not publicly available, the litigant does not have a First Amendment right to publish that information. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) (holding that the party-defendant *Seattle Times* newspaper did not have a First Amendment right to publish information that it obtained through compelled discovery subject to a protective order). Nevertheless, a news media outlet "may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Id.* at 34. Whether the information was lawfully disclosed to the news media is irrelevant. *See, e.g., New*

*York Times*, 403 U.S. 713 (refusing to restrain newspapers from publishing the illegally leaked Pentagon Papers); *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) (holding that the First Amendment protects the broadcast of a wiretapped phone call unlawfully disclosed to a radio station).

Magistrate Judge Russo determined that "the Oregonian's possession of these documents did not involve any Court process emanating from this case." 1-ER-12. As Magistrate Judge Russo correctly found, Mr. Kish approached Ms. Salerno Owens as a source regarding information about someone who is not part of the Lawsuit, and he obtained the Documents through the newsgathering process, not as a participant in the Lawsuit. Accordingly, *Seattle Times* may be relevant to whether Ms. Salerno Owens has a First Amendment right to disseminate information she compelled through discovery, but *Seattle Times* does not curtail The Oregonian's First Amendment rights to publish information contained in the Documents it received outside of the court process.

Magistrate Judge Russo correctly ruled that "Ms. Salerno Owens' actions cannot be imputed to Mr. Kish or The Oregonian." *Id*. The Supreme Court has long held that even when the information in question was unlawfully gathered and unlawfully disclosed to the press, the press still has a constitutional right to publish that information. *See Bartnicki*, 532 U.S. at 535 (holding that whether a news outlet

knew or had reason to know that information it disseminated was obtained illegally by another was irrelevant under the First Amendment analysis).

## II.  IRRELEVANT DISCOVERY AGAINST THE OREGONIAN WAS CORRECTLY DENIED

Discovery is not proper here. Nike's request for discovery is rooted in pure speculation and wholly irrelevant to The Oregonian's First Amendment rights. Nike offers no facts that challenge the sworn declarations from Ms. Salerno Owens and Mr. Kish.

"A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (internal quotation marks and citation omitted). Nike cannot meet this standard. *See Connecticut Bank & Tr. Co. v. US Flag Vessel "Monterey"*, 1992 U.S. App. LEXIS 11586, *6 (9th Cir. 1992) (finding the district court did not abuse its discretion in denying a discovery request when the party "offered nothing more than speculation"); *Morden v. Intermec Techs. Corp.*, 77 Fed. Appx. 424, 427 (9th Cir. 2003) (finding the district court did not abuse its discretion in denying a discovery request when the party "did not provide any basis or factual support for her assertions that further discovery would lead to the facts she described in her affidavit.

Moreover, a review of the record leads to the conclusion that her affidavit is based on nothing more than wild speculation." (internal quotations omitted)).

The filings in this case provide an extensive record, and the First Amendment issues before the Court are crystal clear. The District Court correctly found that Nike's "request for discovery into the circumstances of the disclosure are irrelevant." 1-ER-13

## III. THE DISTRICT COURT APPLIED THE CORRECT STANDARD OF REVIEW

The District Court correctly reviewed the February Order under the "clearly erroneous" or "contrary to law" standard. 28 U.S.C. § 636(b)(1)(A). Nike is wrong to argue that "the authority of magistrate judges is a question of law subject to *de novo* review." Dkt. No. 33.1, p. 9 (citing *Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015)). Magistrate Judge Russo's authority to hear the Motion Seeking Press Restrictions is not seriously in dispute, and, of course, Nike raised no such objection before or after the January Order. Instead, Nike joined in the Motion Seeking Press Restrictions (5-ER-902-10) and then opposed its vacatur. 2-ER-217-39. Nike does not seriously challenge the *authority* of the Magistrate Judge to decide the Motion Seeking Press Restrictions, it challenges the outcome of the decision.

Further, despite Nike's attempt to rebrand the type of relief sought, the Motion Seeking Press Restrictions (5-ER-902-10) was not a request for injunctive relief but

rather a request for a clawback order under the Stipulated Protective Order. Nike's Response in Opposition of The Oregonian's Emergency Motion to Vacate specifically requests a "clawback order." 2-ER-229, 236. As the District Court correctly explained, the Motion Seeking Press Restriction seeks pretrial non-dispositive relief related to discovery. 1-ER-3-4.

A Magistrate Judge has clear power to "hear and determine any pretrial matter pending before the court…" 28 U.S.C.S. § 636(b)(1)(A). Federal Rule of Civil Procedure 72 requires the same outcome. "When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). Here, Magistrate Judge Russo did so. The proper standard of review for such an order from the Magistrate Judge, with objections, is "clearly erroneous" or "contrary to law." *Id.* The District Court's review of the Magistrate's Order under this standard was correct and proper.

Notwithstanding the procedural impropriety of attempting to after-the-fact rebrand the type of relief requested, Nike's 'injunctive relief' argument was first presented to the District Court, *see* 2-ER-133-72, and the District Court properly denied it. 1-ER-2-4. Unlike in *Mitchell* (which Nike relies upon), the parties who

jointly filed the Motion Seeking Press Restrictions under seal consented to Magistrate Judge Russo's authority to decide the issue.

## CONCLUSION

The District Court correctly ruled that a court order requiring a newspaper to return or destroy newsworthy materials and forbidding their use constituted a prior restraint. It determined correctly that the facts of this case do not justify a prior restraint. It correctly reviewed the Magistrate's pretrial order under the appropriate "clearly erroneous" or "contrary to law" standard, and it correctly denied Nike's request for irrelevant discovery. For these reasons, this Court should affirm the District Court's Order.

RESPECTFULLY submitted this 3rd day of September, 2024.

BARRAN LIEBMAN LLP


By *s/Edwin A. Harnden*
    Edwin A. Harnden, OSB No. 721129
    Melissa C. Oakley, OSB No. 212470
    Joshua A. Waugh, OSB No. 234293

*Attorneys for Advance Local Media LLC, d/b/a Oregonian Media Group*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Media Intervenors – Appellees Advance Local Media LLC, d/b/a Oregonian Media Group certifies that Ninth Circuit Appeal No. 24-165 is a related case because it involves a prior appeal in this case. This Court has already ordered that the arguments on the two appeals be held before the same panel on the same day.

DATED this 3rd day of September, 2024.

BARRAN LIEBMAN LLP


By *s/Edwin A. Harnden*
    Edwin A. Harnden, OSB No. 721129
    Melissa C. Oakley, OSB No. 212470
    Joshua A. Waugh, OSB No. 234293

*Attorneys for Advance Local Media LLC, d/b/a Oregonian Media Group*

## CERTIFICATE OF COMPLIANCE

## PURSUANT TO FED. R. APP. P. 27(d)(2)(A)

The undersigned certifies that this response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this response contains 6,067 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

The undersigned further certifies that this response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the response has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font, Times New Roman.

BARRAN LIEBMAN LLP


By *s/Edwin A. Harnden*
    Edwin A. Harnden, OSB No. 721129
    Melissa C. Oakley, OSB No. 212470
    Joshua A. Waugh, OSB No. 234293

*Attorneys for Advance Local Media LLC,*
*d/b/a Oregonian Media Group*