**Docket No. 24-2199**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

⎯⎯⎯⎯⎯⎯⎯⎯ • ⎯⎯⎯⎯⎯⎯⎯⎯

KELLY CAHILL; HEATHER HENDER; SARA JOHNSTON;
LINDSAY ELIZABETH,

*Plaintiffs-Appellees,*

v.

INSIDER, INC.; ADVANCE LOCAL MEDIA, LLC;
AMERICAN CITY BUSINESS JOURNALS,

*Intervenors-Appellees,*

NIKE, INC.,

*Defendant-Appellant.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

*Appeal from a Decision of the United States District Court for the District of Oregon, Portland,*
*No. 3:18-cv-01477-JR · Honorable Marco A. Hernandez*

## REPLY BRIEF OF DEFENDANT-APPELLANT NIKE, INC.

DANIEL PRINCE, CA BAR 237112
FELICIA A. DAVIS, CA Bar No. 266523
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
danielprince@paulhastings.com
feliciadavis@paulhastings.com

*Attorneys for Defendant-Appellant,*
*NIKE, Inc.*

 

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner NIKE, Inc. states that it has no parent corporation and that no publicly held corporation owns ten (10) percent or more of its stock.

## <u>ORAL ARGUMENT</u>

On July 22, 2024, this Court ordered a consolidated oral argument for this appeal and related Appeal No. 24-165.  Dkt. No. 32.1.  Given the issues raised by the two appeals, NIKE suggests that 25-minutes per side across the appeals would be sufficient and constructive.  Alternatively, if the Court hears the two appeals seriatim, NIKE would propose 15-minutes per side per argument.

# <u>TABLE OF CONTENTS</u>

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ I

ORAL ARGUMENT ........................................................................................ II

TABLE OF AUTHORITIES ............................................................................ IV

INTRODUCTION ............................................................................................ 1

JURISDICTIONAL STATEMENT .................................................................... 3

STANDARD OF REVIEW .............................................................................. 7

I.     THE DISTRICT COURT HAD AUTHORITY TO ISSUE A
CLAWBACK INJUNCTION AND BAR ON USE. .................................. 9

       A.   The Court's Control of Access to, and Dissemination of,
Sealed Discovery Materials Is Not a Prior Restraint. ................ 9

       B.   The Oregonian's Case Law Does Not Change the
Analysis. There Is No Prior Restraint Issue Here. ................... 13

       C.   The Oregonian Is a Party For Purposes of the Documents
in Its Possession. ....................................................................... 17

       D.   The District Court Could Issue the Injunction Even
Without Party Status. ................................................................. 21

       E.   Markowitz (Plaintiffs' Counsel) Supports NIKE's
Requested Injunctive Relief. ...................................................... 22

II.    THE DISTRICT COURT APPLIED THE WRONG STANDARD OF
REVIEW. ............................................................................................ 24

III.   THE DISTRICT COURT CLEARLY ERRED IN DENYING NIKE
DISCOVERY INTO THE PROTECTIVE ORDER VIOLATION ............. 27

STATEMENT OF RELATED CASES ............................................................. 29

CERTIFICATE OF COMPLIANCE ................................................................ 30

CERTIFICATE OF SERVICE ........................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Meyer*,
  755 F.3d 866 (9th Cir. 2014) ..................................................................25

*Apple, Inc. v. Samsung Elecs., Co., Ltd.*,
  No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470
  (N.D. Cal. Jan. 29, 2014) ........................................................................23

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001).........................................................................14, 16

*Cahill v. Nike, Inc.*,
  No. 3:18-CV-01477-JR, 2024 WL 3963809 (D. Or. Aug. 26, 2024) .........12, 23

*Cal. Dep't of Soc. Servs. v. Leavitt*,
  523 F.3d 1025 (9th Cir. 2008) ................................................................13

*Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*,
  137 F.3d 1420 (9th Cir. 1998) ..................................................................5

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)..............................................................................3, 5

*Center for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) ................................................................24

*Childs v. San Diego Fam. Hous. LLC*,
  22 F.4th 1092 (9th Cir. 2022) ..................................................................6

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)................................................................................3

*Columbia Broad. Sys., Inc. v. United States Dist. Court for Cent. Dist.*,
  729 F.2d 1174 (9th Cir. 1983) ................................................................15

*CPC Patent Techs. Pty v. Apple, Inc.*,
  34 F.4th 801 (9th Cir. 2022) ..................................................................24

*Eli Lilly & Co. v. Gottstein*,
  617 F.3d 186 (2d Cir. 2010) ...........................................................*passim*

*Freeman v. Bee Mach. Co.*,
  319 U.S. 448 (1943)..............................................................................20

iv

*Gannett Co. v. DePasquale*,
    443 U.S. 368 (1979)......................................................................16

*Grayzel v. St. Jude Med., Inc.*,
    162 F. App'x 954 (Fed. Cir. 2005) ....................................................5

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*,
    860 F.3d 1244 (9th Cir. 2017) ...............................................*passim*

*Haines v. Liggett Grp. Inc.*,
    975 F.2d 81 (3d Cir. 1992) ...............................................................26

*Houchins v. KQED, Inc.*,
    438 U.S. 1 (1978).............................................................................11

*In re Lavenhar*,
    808 F.3d 794 (10th Cir. 2015) ...........................................................7

*In re Zyprexa Injunction*,
    474 F.Supp.2d 385 (E.D.N.Y. 2007) ....................................*passim*

*Korczak v. Sedeman*,
    427 F.3d 419 (7th Cir. 2005) ...........................................................18

*Marino v. Ortiz*,
    484 U.S. 301 (1988).........................................................................19

*Meador v. New Times*,
    No. 93-15213, 1994 U.S. App. LEXIS 26219 (9th Cir. Sep. 16, 1994)............15

*Merchants' Heat & Light Co. v. James B. Clow & Sons*,
    204 U.S. 286 (1907).........................................................................20

*Near v. State of Minnesota ex rel. Olson*,
    283 U.S. 697 (1931).........................................................................15

*New York Times Co. v. United States*,
    403 U.S. 713 (1971).........................................................................14

*Oakley, Inc. v. McWilliams*,
    879 F.Supp.2d 1087 (C.D. Cal. 2012) .............................................16

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971).........................................................................15

*Osband v. Woodford*,
    290 F.3d 1036 (9th Cir. 2002) ...........................................................8

*PowerShare, Inc. v. Syntel, Inc.*,
    597 F.3d 10 (1st Cir. 2010)...............................................................26

*Reynaga v. Cammisa,*
   971 F.2d 414 (9th Cir. 1992) ............................................................25

*Robert Ito Farm, Inc. v. Cnty. of Maui,*
   842 F.3d 681 (9th Cir. 2016) .......................................................7, 18

*S.E.C. v. Ross,*
   504 F.3d 1130 (9th Cir. 2007) ..........................................................20

*Salcido v. Ditomas,*
   No. 22-15294, 2022 WL 3584903 (9th Cir. Mar. 18, 2022) ..............25

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist. (San Jose),*
   187 F.3d 1096 (9th Cir. 1999) ..........................................................18

*Seattle Times Co. v. Rhinehart,*
   467 U.S. 20 (1984)................................................................*passim*

*Smith v. Daily Mail Pub. Co.,*
   443 U.S. 97 (1979) .............................................................................15

*Truckstop.net, LLC v. Sprint Corp.,*
   547 F.3d 1065 (9th Cir. 2008) .............................................................4

*Wachner v. Aramark Educ. Servs., Inc.,*
   No. CV 02-528-BR, 2003 WL 23538037 (D. Or. Dec. 12, 2003) ......4

*United States ex rel. Alexander Volkhoff, LLC v. Janssen
   Pharmaceutica N.V.,*
   945 F.3d 1237 (9th Cir. 2020) ...........................................................19

*United States v. Brown,*
   250 F.3d 907 (5th Cir. 2001) .............................................................10

*United States v. Cal-Almond Inc.,*
   102 F.3d 999 (9th Cir. 1996) ...............................................................5

*United States v. California Mobile Home Park Mgmt. Co.,*
   107 F.3d 1374 (9th Cir. 1997) ...........................................................18

*United States v. Rivera-Guerrero,*
   377 F.3d 1064 (9th Cir. 2004) .............................................................8

*Wachner v. Aramark Educ. Servs., Inc.,*
   No. CV 02-528-BR, 2003 WL 23538037 (D. Or. Dec. 12, 2003) ......4

*Will v. Hallock,*
   546 U.S. 345 (2006)...............................................................................6

*Zemel v. Rusk,*
   381 U.S. 1 (1965)..........................................................1, 9, 10, 11, 17

vi

**STATUTES**

26 U.S.C. § 1291 ............................................................................4

28 U.S.C. § 636(b)(1)(A) ..............................................24, 25, 26

28 U.S.C. § 1292(a)(1) ..........................................................2, 4, 5

**RULES**

Cir. R. 36-3(c) ...............................................................................16

Fed. R. Civ. P. 24(b) ......................................................................18

Fed. R. Civ. P. 72 ..........................................................................25

Fed. R. Civ. P. 72(a) ......................................................................25

**CONSTITUTIONAL PROVISIONS**

U.S. Const. First Amendment .............................................*passim*

**INTRODUCTION**

In its Opening Brief, NIKE argued that (1) courts have authority to remedy breaches of their orders, including by barring the use of documents or directing that such documents be "clawed back," and (2) that the orders below do not implicate a prior restraint but instead reinforce the principle that there is no unfettered right to gather information. Dkt. No. 33.1. Both points are grounded in precedent that was overlooked or ignored by the Oregonian. *Zemel v. Rusk*, 381 U.S. 1, 17 (1965); *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 35 (1984); *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 860 F.3d 1244, 1258 (9th Cir. 2017); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010); and *In re Zyprexa Injunction*, 474 F.Supp.2d 385, 427 (E.D.N.Y. 2007).

Because the Oregonian sought and received information from Plaintiffs—who it knew were bound to keep certain litigation documents confidential—the District Court *was authorized* to order the Oregonian to return the documents at issue and bar the Oregonian's reliance on, or use of, the same. This Court's authority existed regardless of whether or not the Oregonian was a party, and the Oregonian's intervention in this case bolsters that proposition.

There is no dispute that Plaintiffs' counsel breached the District Court's Protective Order *and* this Court's order that the confidential litigation documents here remain sealed during the pendency of Appeal No. 24-165. Nor is it disputed

1

that the Oregonian knew these documents were to remain sealed. 2-ER-0306, 2-ER-0306, 2-ER-0308, 3-ER-0310, 3-ER-0319. The Oregonian litigated intervention in the District Court and this Court pursuant to the Protective Order below, 3-ER-0322, 3-ER-0328, 3-ER-0499, 4-ER-0669, Appeal No. 24-165, Dkt. No. 7.2, and it intervened in Appeal No. 24-165, Dkt. No. 7.1. Yet, the Oregonian willfully and knowingly obtained sealed litigation documents from Plaintiffs' counsel. The Oregonian convinced the District Court that it had no recourse against the Oregonian and the Court below erred in finding the same. Put simply, the District Court erred in understanding the scope of its authority (it could act), it erred in its belief the Oregonian was not a party (it was), and it erred procedurally in its standard of review (it should have been *de novo*).

This Court should reverse and direct the District Court to enter a new and different order granting NIKE the injunctive relief it seeks. At a minimum, NIKE requests that the Court vacate the decision below and remand to the District Court for consideration under the appropriate *de novo* standard of review.

## JURISDICTIONAL STATEMENT

In its Opening Brief, NIKE cited law demonstrating that this Court has jurisdiction both under 28 U.S.C. § 1292(a)(1) and the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The Oregonian, incorrectly, argues otherwise. Dkt. No. 41.1 at 8 (Internal Page, 3).[1]

As NIKE set forth, Section 1292(a)(1) "permits appeal as of right from '[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, *refusing* or dissolving *injunctions*[.]'" *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981) (citation omitted, emphasis and alterations in original); Dkt. No. 33.1 at 13 (Internal Page, 3). Because the relief sought below—*i.e.*, an order to return, bar use of, and destroy the documents—was injunctive in nature, the District Court's denial thereof confers jurisdiction on this Court. *See Eli Lilly,* 617 F.3d at 189.

In response, the Oregonian argues that the District Court's order below was a non-appealable discovery order. Dkt. No. 41.1 at 8 (Internal Page, 3). The Oregonian is incorrect.

First, while styled as a motion to request return of inadvertently disclosed materials, the motion sought an order requiring return of the documents, as well as a "promise not to disseminate that information in any way and to destroy copies in

---

[1] NIKE's docket page citations reference the page number generated by PACER when a document is filed via the Court's CM/ECF system.

3

its possession." 2-ER-0268. The injunction NIKE sought is similar to the injunction at issue in *Zyprexa* and *Eli Lilly*. *Zyprexa*, 474 F.Supp.2d at 423, *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) ("Only a minimal burden on speech results from the instant injunction since it restricts dissemination of documents only if those documents were obtained in the first instance by use of the court's processes."); *see id.* at 189 ("Eli Lilly applied for and received a series of orders *culminating in an injunction*, which barred Gottstein from disseminating the documents and required their return.") (emphasis added).

Second, NIKE sought injunctive relief pursuant to the District Court's inherent authority—not under any rules governing discovery. 2-ER-0228 ("And, '[t]he Court has inherent authority to enforce [those] orders[,]' *Wachner v. Aramark Educ. Servs., Inc.*, No. CV 02-528-BR, 2003 WL 23538037, at *3 (D. Or. Dec. 12, 2003)[.]"). This authority "carries with it the equal power to punish for a disobedience[.]" *Zyprexa,* 474 F.Supp.2d at 417-18. And, injunctions issued pursuant to a Court's inherent authority are just that—injunctions. *Eli Lilly*, 617 F.3d at 194 (rejecting argument that Court lacked inherent authority to issue injunction). The denial of an injunction is appealable. 28 U.S.C. §1292(a)(1). Thus, the Oregonian's invocation of Section 1291, and what is appealable thereunder, *see* Dkt. No. 41.1 at 8 (Internal Page, 3) (citing *Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065, 1067 (9th Cir. 2008)), misses the point. NIKE appealed under 28 U.S.C.

4

§ 1292(a)(1). The District Court's order had the "practical effect" of denying NIKE injunctive remedies, *see Carson v. American Brands, Inc.,* 450 U.S. 79, 83 (1981), and allowed the Oregonian to keep the very documents that it was not permitted to have—an outcome this Court already has concluded would constitute an irreparable injury, *see* Appeal No. 24-165, Dkt. No. 12.1. There can be little doubt that the denial of NIKE's requested relief and the Oregonian's retention of the documents is a "serious" "consequence" necessitating an "immediate appeal" as "the only effective way to challenge it," and within the jurisdiction of 28 U.S.C. §1292(a)(1). *Calderon v. U.S. Dist. Ct. for Cent. Dist. of California*, 137 F.3d 1420, 1422, n.2 (9th Cir. 1998); *United States v. Cal-Almond Inc.*, 102 F.3d 999, 1002-03 (9th Cir. 1996).

Third, courts routinely characterize orders to enforce provisions of a protective order as injunctive relief. *See, e.g., Grayzel v. St. Jude Med., Inc.*, 162 F. App'x 954, 966 (Fed. Cir. 2005) ("We, therefore, conclude that the district court did not abuse its discretion in granting the injunction to enforce the protective order."). Thus, even accepting the Oregonian's argument invoking the Protective Order, it does not negate the point that the ultimate relief sought is injunctive in nature—*i.e.*, NIKE seeks an injunction that orders the Oregonian to return the documents (a mandatory injunction) and bars its use of those documents (a prohibitory injunction).

5

Finally, the Oregonian does not meaningfully challenge NIKE's alternative argument that collateral order jurisdiction also provides for relief. The District Court's order "conclusively" determined the issues surrounding the unauthorized disclosure of confidential discovery materials, which is an issue entirely separate from the merits of the action (*i.e.*, pay and promotions claims). Dkt. No. 33.1 at 14 (Internal Page, 4). Such issues are "effectively unreviewable on appeal from a final judgment," as the injuries to nonparties that NIKE seeks to prevent already may have occurred by the time final judgment is reached in this case. This Court therefore has collateral order jurisdiction as well. *Childs v. San Diego Fam. Hous. LLC,* 22 F.4th 1092, 1095 (9th Cir. 2022) (quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006)).

## STANDARD OF REVIEW

While the parties have different views on the First Amendment question (including whether the First Amendment is even implicated), they agree that the District Court's determination of the nature and extent of any First Amendment question must be reviewed *de novo*. *Compare* Dkt. No. 41.1 at 16 (Internal Page, 11) *with* Dkt. No. 33.1 at 18 (Internal Page, 8). Beyond that, NIKE and the Oregonian disagree on the applicable standards.

The Oregonian argues that the abuse of discretion standard governs the Magistrate Judge's finding that the Oregonian is not a party. Dkt. No. 41.1 at 17 (Internal Page, 12). That is wrong. The Oregonian relies on law discussing the decision whether to *grant* intervention, but that is *not* the question. Instead, the issue is whether the Oregonian, after its intervention, became a party to the litigation. That is a question of law, which is reviewed *de novo*. *Cf. In re Lavenhar*, 808 F.3d 794, 798 (10th Cir. 2015) ("Whether First American is a "party in interest" for purposes of the Bankruptcy Code is a question of law subject to de novo review."); *Robert Ito Farm, Inc. v. Cnty. of Maui*, 842 F.3d 681, 685 (9th Cir. 2016) ("We review this purely legal question de novo.").

The Oregonian further argues that the abuse of discretion standard applies to the District Court's denial of NIKE's requested discovery from the Oregonian. Because the District Court denied NIKE's objections to the Magistrate Judge's

order, however, the denial is reviewed for clear error. *Osband v. Woodford*, 290 F.3d 1036, 1041-42 (9th Cir. 2002) ("We review a district court's denial of a motion to reconsider a magistrate's pretrial order under that same standard.").

The parties also disagree on whether the District Court applied the correct standard in reviewing the Magistrate's Findings and Recommendation ("Findings"), which were styled as an "Order," under the appropriate standard of review. *See infra* at Section II. However, the law provides that this Court looks at that question *de novo*. *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1067, 1071 (9th Cir. 2004) ("We review the delegation of authority to a magistrate judge de novo[;]" "we remand for the district court to apply de novo review to the magistrate judge's unauthorized order.").

## **ARGUMENT**

**I.    THE DISTRICT COURT HAD AUTHORITY TO ISSUE A CLAWBACK INJUNCTION AND BAR ON USE.**

As NIKE explained in its Opening Brief, courts have the power to enforce their orders by issuing injunctive relief (clawback injunctions and use bars) to remedy breaches of those orders.  Dkt. No. 33.1 at 30-44 (Internal Pages, 20-34).  In its Answering Brief, the Oregonian agrees that the "District Court has the inherent authority to enforce its orders."  Dkt. No. 41.1 at 18 (Internal Page, 13).  Yet, the Oregonian argues that the First Amendment provides an insurmountable shield to the exercise of that authority here, despite the Oregonian's purposeful solicitation of information from a party litigant, despite its intervention into the litigation to seek sealed documents, and despite its full knowledge of this Court's orders.  *Id.* at 18-23 (Internal Pages, 13-18).  The District Court agreed with this view, which is in error.  The First Amendment is no bar.

### **A.    The Court's Control of Access to, and Dissemination of, Sealed Discovery Materials Is Not a Prior Restraint.**

NIKE's Opening Brief provided a detailed analysis, citing Supreme Court, Ninth Circuit, and other Circuit Court authority, explaining that the First Amendment recognizes no absolute right in the press to gather information.  Dkt. No. 33.1 at 45-51 (Internal Pages, 35-41).  NIKE cited to *Zemel*, this Court's analysis in *Ground Zero*, the Second Circuit's analysis in *Eli Lilly*, and Judge

9

Weinstein's analysis in *Zyprexa*, among others. NIKE also demonstrated how that law informs the decision here. *See, e.g., id.* at 42-43 (Internal Pages, 32-33) (block quoting *Eli Lilly*). The law recognizes a distinction between the regulation of improper gathering (the issue here) and the prior restraint doctrine (the lens through which the Oregonian seeks to blur the Court's view with).

The Oregonian fails to engage meaningfully with the law NIKE cites. *Zemel* makes no appearance in its Opposition. This Court's discussion in *Ground Zero* is missing. And *Eli Lilly* and *Zyprexa* get one combined sentence reference with no analysis.

Instead, the Oregonian relies *only* on the prior restraint doctrine. Dkt. No. 41.1 at 18-20 (Internal Pages, 13-15). The Oregonian, in other words, assumes the outcome without addressing the question. Indeed, before reaching the question of whether something can constitute a prior restraint, a foundational question must be answered—namely, did the Oregonian have the right to access the sealed documents in the first instance? If the answer is no, as it is here, any order to remedy the improper access is "*distinct from prior restraints*." *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001) (emphasis added).[2]

---

[2] *Brown* explained: "To the extent the orders warned the media not to publish information illegally gleaned from confidential court files, it was justified." 250 F.3d at 915.

10

As the Court in *Zemel* held, 381 U.S. at 17, the press does not enjoy an "unrestrained right to gather information," and the press may be excluded from certain methods of information gathering. The right of access—which is really what the Oregonian claims (*e.g.,* it has a right of access to sealed documents it received in violation of court orders)—lies outside the First Amendment. *See, e.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 12 (1978) (after quoting *Zemel*, 381 U.S., at 16-17, finding that the "claimed special privilege of access [at issue was] not essential to guarantee the freedom to communicate or publish.").

As the Supreme Court explained in *Seattle Times*, "[a] litigant has no First Amendment right of access to information made available only for the purpose of trying his suit[.]" 467 U.S. at 35 (citing *Zemel,* 381. U.S. at 16-17). As a result, a court may control access to, and dissemination of, discovery materials and doing so "is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Seattle Times*, 467 U.S. at 33 (citation omitted).

The Oregonian takes a narrow view of the *Seattle Times* holding, offering that it only extends to "when a litigant compels discovery from another party to obtain information that is not publicly available." Dkt. No. 41.1 at 27 (Internal Page, 22). But the Oregonian does not address this Court's authority—identified by NIKE— which explains the import of *Seattle Times* to the facts here. Dkt. No. 41.1 at 28 (Internal Page, 23).

11

In *Ground Zero*, this Court explained that the *Seattle Times* holding does not bar access to or dissemination of "sealed documents" if those documents are "procured from an independent source[,]" 860 F.3d at 1258—*i.e.*, "documents from a source not involved in this litigation[,]" *id.* (citing *Seattle Times Co.*, 467 U.S. at 34). If the Oregonian had obtained the sealed Starfish complaints from one of the complainants who completed a questionnaire, that would be "a source *not* involved in this litigation," under *Ground Zero*, and thus the Oregonian may use such documents without court interference. *Id.* (emphasis added).

That is not what the Oregonian did. As the Oregonian admits again in its Answering Brief, its reporter, Mr. Kish, approached Ms. Salerno Owens, Plaintiffs' counsel, as a "source." Dkt. No. 41.1 at 28 (Internal Page, 23). Likewise, Markowitz confirms that Plaintiffs' counsel met with Mr. Kish "in her capacity as Plaintiffs' counsel[.]" Dkt. No. 56.1 at 10 (Internal Page, 9); *Cahill v. Nike, Inc.*, No. 3:18-CV-01477-JR, 2024 WL 3963809, at *6 (D. Or. Aug. 26, 2024) ("Counsel was under an obligation to ensure protection of the unredacted document and chose to engage in conduct with a third party, unrelated to the case, that resulted in the release of the information. Given the confidential nature of the information, counsel should have reviewed the documents before providing them to a news organization."). And the only reasonable inference as to why he approached Plaintiffs' counsel was because

she had information and documents as a result of her position as counsel. *See* 2-ER-0110.

In other words, NIKE's requested relief addressed the improper manner through which the Oregonian "gathered" the information—a question, again, which is not one of prior restraint. And, once the question is properly understood, the landscape shifts. Even the Oregonian does not earnestly dispute that "courts have inherent power to enforce compliance with their lawful orders[.]" *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). *Seattle Times* recognizes that "continued court control over discovered information" and other litigation documents includes the power to remedy malfeasance. 467 U.S. at 32.

Finally, as Judge Weinstein thoughtfully explained (collecting significant authority): "[I]njunctions issued not because of the content of petitioners' expression . . . but because of . . . prior unlawful conduct" are content neutral. . . . . Because such injunctions do not enjoin speech based on its content, *they do not arouse the fears that trigger the application of constitutional 'prior restraint' principles*." *Zyprexa*, 474 F.Supp.2d at 420 (emphasis added) (citations omitted). So too here.

## B. The Oregonian's Case Law Does Not Change the Analysis. There Is No Prior Restraint Issue Here.

The Oregonian misunderstands the distinction that *Seattle Times* draws between prior restraints and orders limiting a case participant's use of litigation-

sourced discovery. Dkt. No. 41.1 at 25-28 (Internal Pages, 20-23). NIKE already addressed the Oregonian's authority in its Opening Brief. Dkt. No. 33.1 at 52-53 (Internal Pages, 42-43). Neither *New York Times Co. v. United States*, 403 U.S. 713 (1971), nor *Bartnicki v. Vopper*, 532 U.S. 514 (2001), involved the violation of a protective order resulting in the dissemination of sealed litigation documents.

The sealed litigation materials at issue in this appeal were provided to Plaintiffs' counsel pursuant to the "[r]ules authorizing discovery." *Seattle Times*, 467 U.S. at 32. But for discovery in the case below, Plaintiffs' counsel would not have had them. And, under the law, that changes the analysis. The Oregonian incorrectly presumed a prior restraint, leading to the conclusion that only the most exceptional of interests can justify their imposition. *See New York Times*, 403 U.S. at 714; *Bartnicki*, 532 U.S. at 527. In short, the Oregonian skipped over the analysis of *Seattle Times* and *Ground Zero*.[3]

Further, none of the cases invoked by the Oregonian authorize the solicitation and receipt of sealed litigation materials in knowing violation of multiple court

---

[3] As NIKE pointed to in its Opening Brief, Judge Weinstein analyzed *Bartnicki* in *Zyprexa*, and it did not slow him from granting relief. 474 F.Supp.2d at 396. He reasoned: "Several important governmental interests are served by this injunction. It allows the court to protect the privacy and property rights of litigants appearing before it, which is essential to a fair and efficient system of adjudication. By prohibiting dissemination in violation of the court order the court's ability to enforce its own orders is preserved." *Id.* at 424. In opposition, the Oregonian neither addresses nor acknowledges this analysis.

orders. Nor do those cases exclude potential remedies for such conduct, including an injunction and/or use ban.

Because it presumed a prior restraint, the Oregonian instead focuses on the "exceptional circumstances" required to overcome the First Amendment. Dkt. No. 41.1 at 20 (Internal Page, 15). Put simply, the Oregonian cites distinguishable cases, where the issue of a litigant before the Court sharing sealed litigation materials with the press was not presented. *See Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 702 (1931) (law enjoining newspapers from publishing *any* "an obscene, lewd and lascivious" or "malicious, scandalous and defamatory" "newspaper, magazine, or other periodical" was a prior restraint); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (injunction seeking to prevent distribution of *any* leaflets within city of 18,000 to solicit real estate business was a prior restraint); *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 99 (1979) (statute that prevented the publication of a juvenile's name obtained from witnesses, the police, and an assistant was a prior restraint); *Columbia Broad. Sys., Inc. v. United States Dist. Court for Cent. Dist.*, 729 F.2d 1174, 1176 (9th Cir. 1983) (temporary restraining order barring dissemination of government tapes was a prior restraint where nothing suggested receiving party "had done anything illegal or unethical in obtaining the copy.") (Goodwin, C.J., concurring); *Meador v. New Times*, No. 93-15213, 1994 U.S. App.

LEXIS 26219, at *4 (9th Cir. Sep. 16, 1994) (unpublished[4]) (injunction seeking to prevent a newspaper from printing information obtained from police report was a prior restraint); *Oakley, Inc. v. McWilliams*, 879 F.Supp.2d 1087, 1088 (C.D. Cal. 2012) (injunction seeking to enjoin a party "from repeating defamatory statements" was a prior restraint).

But when sealed discovery materials or related pleadings are at issue, there is "no First Amendment right" to publication and dissemination of those materials if obtained *from a source connected to the litigation*, so bars on use of that material do not constitute a prior restraint and do not require exceptional circumstances. *Seattle Times Co.*, 467 U.S. at 33-34 ("[T]he Court 'order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny.'") (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 399 (1979)) (Powell, J., concurring).[5]

Thus, as NIKE explained in its Opening Brief, there is a distinction between cases like *New York Times* and *Bartnicki,* on the one hand, and *Seattle Times, Ground Zero*, and *Zyprexa*, on the other hand. Dkt. No. 33.1 at 52, n.11, 52-53

---

[4] NIKE cites *Meador* only in response. It was against Circuit rules for the Oregonian to have cited it. Cir. R. 36-3(c). It is also inapposite.

[5] As a reminder, the confidential information Plaintiffs' counsel shared went beyond those in Appeal No. 24-165. They also included confidential discovery materials never attached to any pleading. Thus, regardless of the disposition in Appeal No. 24-165, this Court will remain ripe for disposition.

(Internal Pages, 42-43).   Where, as here, the Oregonian admits that it sourced the documents from *counsel to a party* who, in turn, sourced the documents through discovery pursuant to the Protective Order, the analysis and outcome must be governed by cases like *Zemel, Eli Lilly, Ground Zero*, *Zyprexa,* and the law regulating the gathering of information.   Under *Seattle Times* (as confirmed by *Ground Zero*), the District Court could and should have exerted its authority to police the improper sharing of sealed litigation documents between parties it could reach (Plaintiffs and the Oregonian).   That the District Court misunderstood its authority is grounds for reversal.

### C.   The Oregonian Is a Party For Purposes of the Documents in Its Possession.

The Oregonian seeks to distance itself from the reach of the Court's inherent authority to manage its proceedings and the litigants before it.  The Oregonian claims its intervention was for a "limited purpose," Dkt. No. 41.1 at 23 (Internal Page, 18), and thus, it cannot be a "party" to the proceeding subject to the Court's orders.  This is incorrect.  As *Eli Lilly* confirms, the Court's orders could reach the Oregonian, whether or not it was technically a party.  Dkt. No. 33.1 at 34 (Internal Page, 24) (citing *Eli Lilly*, 617 F.3d at 195).  But, as NIKE argued in its Opening Brief, the Oregonian was a party before the Court.  Dkt. No. 33.1 at 37 (Internal Page, 27).  In Opposition, the Oregonian repeats the arguments it made before the Court below. *Compare* Dkt. No. 41.1 at 23-27 (Internal Pages, 18-22) *with* 2-ER-0293-0294, 2-

17

ER-0110-0112. The Oregonian has it wrong; those who invoke the Court's aid are subject to its jurisdiction.

This Court has held that, after intervention, a would-be intervenor is a party: "After intervention, . . . the *parties* to the litigation have changed." *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1378 (9th Cir. 1997) (emphasis added). The Oregonian cannot claim that its intervention placed it within a twilight zone where it enjoyed the benefits of the Court's powers (*i.e.,* the ability to access sealed court records), but not the burdens of being a party (*i.e.,* a remedy for breaching a court order). This is not, and cannot be, the law. Rather, "[t]o intervene in a suit is to become a *party* to it[,]" *Korczak v. Sedeman*, 427 F.3d 419, 420 (7th Cir. 2005) (emphasis added), even if that party status is limited.

*Robert Ito Farm, Inc. v. Cnty. of Maui*, 842 F.3d 681 (9th Cir. 2016), is instructive. Explaining the definition and understanding of intervention, this Court explained: "[W]hen the term to intervene is used in reference to legal proceedings, it covers the right of one to interpose, in *or become a party to*, a proceeding already instituted." *Id*. at 687 (emphasis added). Whether an intervenor intervenes for a limited purpose does not change that it has, in fact, entered as a party to the proceeding. Indeed, this Court has confirmed that the *regular* rule—Fed. R. Civ. P. 24(b)—for permissive intervention applies to requests like those made by the Oregonian to modify protective orders or access litigation documents. *San Jose*

18

*Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999) ("Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)."). After the District Court granted the Media Intervenors' motion to unseal the Starfish complaints, NIKE appealed, and the Media Intervenors (including the Oregonian) told this Court that they "are properly appellees in this appeal"—*i.e.*, *parties*.[6] Case No. 24-165, Dkt. No. 7.1 at 2. Likewise, the Oregonian is a party to this appeal. The idea that the Oregonian is not a "party" seems foreign to these proceedings and the Oregonian's own conduct.

The Oregonian next argues that if it were a "party," then it should have access to the documents from the fact of the intervention alone because the Protective Order allowed parties to have confidential documents. Dkt No. 41.1 at 27 (Internal Page, 22). The Oregonian's argument misses the point. It is not that the Oregonian is subject to the Protective Order in the sense that it agreed to the exchange, use, and limitations of the Protective Order below. *Id*. at 25 (Internal Page, 20). Instead, the Court can reach the Oregonian (a "*party*" before the Court) for its participation in

---

[6] Had the Media Intervenors lost the motion to seal below, the Oregonian's position undoubtedly would have been that it *was* a party to the proceeding and thus it had a right to appeal such ruling, a right that is only afforded to parties. *See United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020) ("The rule that only parties to a lawsuit, or those that properly become parties may appeal an adverse judgment, is well-settled") (citing *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)).

19

Plaintiffs' counsel's breach of the Protective Order—of which the Oregonian was aware—that resulted in the Oregonian receiving the *very documents that were sealed by Court orders*, and the very orders that the Oregonian became a "party" to change. If the Court cannot reach the Oregonian in relation to a matter in which the Oregonian chose to intervene, then there will be far less confidence in protective orders generally and discovery costs will increase—hardly the incentives the law seeks.

In short, the Supreme Court has explained:  one who "invoke[s] the jurisdiction of the federal court [also] submit[s] to it." *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 453 (1943); *cf. Merchants' Heat & Light Co. v. James B. Clow & Sons*, 204 U.S. 286, 289 (1907) ("But by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it.") (Holmes, J.).  We normally call those individuals and entities "parties."  But regardless of the label, this Court following the High Court, has recognized the long-standing "principle that a party cannot simultaneously seek affirmative relief from a court and object to that court's exercise of jurisdiction" over it.  *S.E.C. v. Ross*, 504 F.3d 1130, 1148 (9th Cir. 2007).  Yet, the Oregonian, in effect, asked the Court below and this Court to do just that.

### D.   The District Court Could Issue the Injunction Even Without Party Status.

Party status is not necessary for an injunction to reach the Oregonian.  The Oregonian chooses not to engage with NIKE's authority—particularly, *Eli Lilly* and *Zyprexa*.  Both hold that an injunction can reach *beyond* the "parties" to a particular dispute—including "third parties who aid and abet violations of their protective orders."  *Eli Lilly*, 617 F.3d at 195; *Zyprexa*, 474 F.Supp.2d at 418.

The only response the Oregonian offers is an argument that there is no evidence that the Oregonian aided and abetted any violation of the Protective Order.  Dkt. No. 41.1 at 26-27 (Internal Pages, 21-22).  The Oregonian's position has a self-serving sheen.  The Oregonian knows that the District Court did not allow deposition or document discovery from the Oregonian.  1-ER-0004.  Thus, the only evidence before the Court was the evidence the breaching party (Plaintiffs' counsel) and its receiving abettor (the Oregonian) provided.   2-ER-0283-0287, 5-ER-0882-0901.

But even those facts move the case towards *Eli Lilly* and *Zyprexa*.  The Oregonian *admits* that it approached Plaintiffs' counsel as a "source"—in other words, the Oregonian admits it approached someone who had *litigation* knowledge, triggering *Ground Zero*.  Dkt. No. 41.1 at 28 (Internal Page, 23).  The Oregonian approached Plaintiffs' counsel while the Protective Order and this Court's stay order barred the sharing of sealed documents.  5-ER-0883 ¶ 1.  The Oregonian approached Plaintiffs' counsel *seeking* information about NIKE.  2-ER-0080; 5-ER-0883 ¶¶ 2-

3.  The Oregonian met Plaintiffs' counsel during an ice storm at a coffee shop with devices in hand ready to share.  2-ER-0080, 5-ER-0889, 5-ER-0883 ¶ 5.  Plaintiffs' counsel had the documents ready to go *before* the meeting.  5-ER-0883 ¶¶ 3-4.  And, ultimately the documents ordered *not* to be shared were shared—and both the Oregonian and Plaintiffs' counsel quickly knew it.  5-ER-0884 ¶¶ 8-9.  Under *Eli Lilly, Zyprexa*, and *Ground Zero*, this Court could require the return and bar the use of the improperly shared material *even if* the Oregonian was not a party to the case.

### E.    Markowitz (Plaintiffs' Counsel) Supports NIKE's Requested Injunctive Relief.

Markowitz, although joining in NIKE's requested relief from this Court, writes its own Answering Brief to dispute the facts.  Dkt. No. 56.1.  Largely uncited, Markowitz offers several arguments to minimize the breach that one of its lawyers, the firm's President, committed.  To be clear, notwithstanding the fact that NIKE was denied discovery into the circumstances of the breach, the Magistrate Judge was unambiguous when it found that "plaintiffs' counsel violated the protective order in place in this case."  1-ER-0012.

In its order holding Plaintiffs' counsel in contempt, the Magistrate Judge explained:  "[W]hen parties engage in scorched-earth tactics, they must exercise caution especially when engaging in activity that is extracurricular to the case to avoid stepping over the line from zealous advocacy to violation of a Court order.

22

Counsel failed in that regard." *See Cahill v. Nike, Inc.*, 3:18-cv-01477-JR, 2024 WL 3963809, at *5 (D. Or. Aug. 26, 2024).

> [P]laintiffs' counsel did violate the order by disclosing unredacted material and, inadvertent or not, she did not divulge the information under the mistaken belief that the order permitted disclosure . . . . This is not an instance in which [Plaintiffs' counsel] believed the unredacted document was not confidential but, rather, an instance in which [Plaintiffs' counsel] did not ensure the material she knew to be subject to the protective order was not included in the documents provided to a third party.

*Id*. at *6.

And while Plaintiffs' counsel argues that this Court should not consider the time lapse, neither it nor the Oregonian notified NIKE or the Court of the breach immediately after it occurred, Dkt. No. 56.1 at 11 (Internal Page, 10), and the Magistrate Judge expressly considered that delay to be troubling. *Id*. (Internal Page, 10); *see also Apple, Inc. v. Samsung Elecs., Co., Ltd*., No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470, at *9 (N.D. Cal. Jan. 29, 2014) (upon learning of the protective order violation, "[Plaintiffs] should have 'immediately' picked up the phone to call [opposing counsel] and let them know that there was a problem."). Again, both Plaintiffs' counsel and the Oregonian knew that the Protective Order was in place and that a Ninth Circuit stay order prevented the sharing of the sealed Starfish complaints. 2-ER-0207 ¶ 5, 2-ER-0211-0212, 3-ER-0308.

## II.  THE DISTRICT COURT APPLIED THE WRONG STANDARD OF REVIEW.

Separate from the Court's authority, NIKE also raised a procedural argument. Because NIKE sought injunctive relief, the District Court should have treated the Magistrate Judge's "order" denying NIKE's requested relief as a recommendation and considered it *de novo* consistent with 28 U.S.C. § 636(b)(1)(A).  *E.g., CPC Pat. Techs. Pty Ltd.*, 34 F.4th at 810 ("Because the magistrate judge lacked the consent of the parties to rule on such matters, he lacked jurisdiction to enter an order denying the application, and the district court should have treated the magistrate judge's ruling at most as a non-binding recommendation subject to de novo review.").  NIKE cited cases like *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1107 (9th Cir. 2016), and many others.  Dkt. No. 33.1 at 34-35 (Internal Pages, 24-25).

In Opposition, the Oregonian does not engage with the Ninth Circuit law confirming that the District Court erred in not applying *de novo* review.  Rather, the Oregonian argues that NIKE raised no objection to the Magistrate Judge's authority to hear Plaintiffs' motion seeking return of the documents and a bar on use when Plaintiffs filed it.  *Id*. (Internal Pages, 24-25).  NIKE engaged in no such waiver and the Oregonian misreads NIKE's argument.

The Magistrate Judge was *permitted* to issue Findings on a matter precluded under Section 636(b)(1)(A) so long as, upon objection, the recommendation was considered *de novo*.  Indeed, NIKE pointed to examples of this Court reversing and

24

advising district courts of that approach when a magistrate judge exceeded her/his authority. *Allen v. Meyer*, 755 F.3d 866, 869 (9th Cir. 2014) ("On remand, the district court may address the officers' motion to dismiss in the first instance, or, alternatively, may construe the magistrate judge's order as a report and recommendation and afford the parties reasonable time to file objections."); *Salcido v. Ditomas*, No. 22-15294, 2022 WL 3584903, at *1 (9th Cir. Mar. 18, 2022) ("On remand, the district judge may treat the magistrate judge's December 27, 2021 order as a report and recommendation.").

Under Federal Rule of Civil Procedure 72, the parties may seek review of a Magistrate Judge's analyses, but the standard of review applied by the District Court changes depending on whether the Magistrate Judge has the ultimate power to resolve a request for the type of relief sought. 28 U.S.C. § 636(b)(1)(A). Fed. R. Civ. P. 72(a). If the relief sought is not within one of the listed exceptions under Section 636(b)(1)(A), the Magistrate Judge's decision is "subject to the review of the district court for clear or legal error[,]" but the relief sought *is* within one of the listed exceptions then the Magistrate Judge's analyses is treated as "'proposed findings and recommendations' for the district court's *de novo* review." *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992). "Subsection (1)(A) specifically exempts 'motions for injunctive relief' from the category of pretrial matters upon which a magistrate may enter an order." *Id.* Thus, NIKE's argument is not that the

25

Magistrate Judge could not issue recommendations on such motion, but that the *de novo* standard governed the District Court's review because the Magistrate Judge had no authority to issue a final order denying the motion seeking an injunction. *Id.*; 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief . . . .").[7] After the Magistrate Judge issued her analyses, 1-ER-0005-0014, NIKE timely objected, 2-ER-0133-0172, an opportunity available to the Oregonian if the ruling had gone the other way (as it should have).

Finally, the Oregonian argues that the motion cannot be properly characterized as a motion for injunctive relief, as it was a request for a clawback under the Protective Order. Dkt. No. 41.1 at 30-31 (Internal Pages, 25-26). The Oregonian is again mistaken. The relief sought was an order to return the documents and to bar use of the improperly received information. This mirrored the relief sought in *Zyprexa*, 474 F.Supp.2d at 391, and affirmed in *Eli Lilly*, 617 F.3d at 194, which both courts understood to be an injunction.

---

[7] As NIKE also explained in its Opening Brief, even if the "contrary to law" standard applied, sister Circuits have interpreted that standard to be equivalent to *de novo* or plenary review of the legal conclusions—a standard which the District Court below did not apply. Dkt No. 33.1 at 60 (Internal Page, 50) (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) and *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)).

### III.   THE DISTRICT COURT CLEARLY ERRED IN DENYING NIKE DISCOVERY INTO THE PROTECTIVE ORDER VIOLATION.

The District Court did not permit discovery from the Oregonian before it ruled on the relief NIKE sought.  NIKE raised in its Opening Brief that the decision to deny discovery—particularly where the Court heavily relied on one side's version of the facts—was clear error that either could warrant reversal on its own or in conjunction with a reversal on other grounds.  Dkt. No. 33.1 at 61-63 (Internal Pages, 51-53).  The Oregonian—despite filing its own declarations and citing Plaintiffs' counsel's declaration below (2-ER-0110-0111, 2-ER-0283-0287)—opposes, arguing that discovery would be "wholly irrelevant" to the Oregonian's First Amendment rights.  Dkt. No. 41.1 at 29 (Internal Page, 24); *id*. at 27-28 (Internal Pages, 22-23).  In effect, the Oregonian concedes that facts influence the outcome here, but claims only its version of the facts should be heard (and not tested).  While NIKE maintains that the record *already* before the District Court should have resulted in the Court granting NIKE the injunctive relief it requested, *see supra* at 12-13, if the facts matter, NIKE should have been allowed to test them.[8]

---

[8] Markowitz argues, without citing to the record, that it produced 466 pages of discovery.  Dkt. No. 56.1 at 11 (Internal Page, 10).  NIKE does not know where Markowitz came up with that number, but Markowitz produced 10 screenshots of call logs, 3 screenshots of text messages, and the packet of documents that was disclosed to the Oregonian. 2-ER-0075-0081.  Markowitz otherwise attached 5 emails to Ms. Salerno Owens's declaration in support of the motion to return the documents. 2-ER-0249-0254.  Yet, Plaintiffs' counsel cannot dispute that (a) NIKE was denied depositions and any documentary discovery from the Oregonian, and

## **CONCLUSION**

Based on the foregoing, this Court should, at minimum, vacate the District Court's Order denying the clawback injunction and ban on use. The Court can then either remand for consideration under the correct standard of review or, as shown above, it could find that the clawback injunction should issue and direct the District Court to issue an order requiring the Oregonian to return the confidential litigation documents, refrain from disseminating them or the information contained therein, and destroy any copies of the documents in its possession.

Date:  September 24, 2024      Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
        DANIEL PRINCE

By: _____*s/Felicia A. Davis*_____
        FELICIA A. DAVIS

Attorneys for *Defendant-Petitioner*
NIKE, INC.

---

that (b) the records produced show that Plaintiffs' counsel *actively* planned for the meeting before it occurred—raising questions about the inadvertent production. All this could and have should have been the subject of discovery from the Oregonian—both documentary and depositions. It solicited the meeting and benefited from the breach, making the Oregonian a proper candidate for discovery.

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, Defendant-Petitioner NIKE, Inc. certifies that Ninth Circuit Appeal No. 24-165 is a related case because it involves a prior appeal in this case.  This Court has already ordered that the arguments on the two appeals be held before the same panel on the same day.

Date:  September 24, 2024

Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
          DANIEL PRINCE

Attorneys for *Defendant-Petitioner*
NIKE, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 5(c) and that this brief contains 6,576 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Date:  September 24, 2024          Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
          DANIEL PRINCE

Attorneys for *Defendant-Petitioner*
NIKE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that my firm electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 24, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date:  September 24, 2024

Respectfully submitted,

PAUL HASTINGS LLP

By: _____*s/Daniel Prince*_____
        DANIEL PRINCE

Attorneys for *Defendant-Petitioner*
NIKE, INC.