No. 24-2199

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

KELLY CAHILL, *et al.*,

*Plaintiffs-Appellees*,

v.

INSIDER INC., *et al.*,

*Media Intervenors-Appellees*,

NIKE, INC.,

*Defendant-Appellant.*

---

On Appeal from the United States District Court for the
District of Oregon, Portland
Case No. 3:18-cv-01477 (Hon. Marco A. Hernandez)

---

## PETITION OF ADVANCE LOCAL MEDIA LLC d/b/a OREGONIAN MEDIA GROUP FOR REHEARING OR REHEARING EN BANC

Grayson Clary
*Counsel of Record for*
  *Intervenor-Appellee*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

Edwin A. Harnden
Melissa C. Oakley
Joshua A. Waugh
BARRAN LIEBMAN LLP
601 SW Second Avenue, Suite 1300
Portland, OR 97204-3159
Telephone: (503) 228-0500
Facsimile: (503) 274-1212

**CORPORATE DISCLOSURE STATEMENT**

Advance Local Media LLC d/b/a/ Oregonian Media Group has no parent

corporation and no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

**Page:**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ...................................................................................iv

INTRODUCTION AND FED. R. APP. P. 35(b)(1) STATEMENT ....................... 1

STATEMENT OF THE CASE ................................................................................5

ARGUMENT .........................................................................................................8

    I.    The Panel's holding that *The Oregonian* became a party to the action by moving to unseal judicial records conflicts with clear Circuit precedent. ..................................................................................9

    II.    The Panel's holding that the District Court could impose a prior restraint on information gathered by a news organization independent of judicial process conflicts with Supreme Court and Circuit precedent. ...................................................................................12

CONCLUSION ....................................................................................................17

FORM 11. CERTIFICATE OF COMPLIANCE FOR PETITIONS FOR REHEARING/RESPONSES.................................................................................18

CERTIFICATE OF SERVICE.............................................................................19

# TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*100Reporters v. U.S. Dep't of State*,
   602 F. Supp. 3d 41 (D.D.C. 2022) ......................................................4

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992)..................................................*passim*

*Binh Hoa Le v. Exeter Fin. Corp.*,
   990 F.3d 410 (5th Cir. 2021) ...........................................................13

*Cahill v. Nike, Inc.*,
   No. 24-165, 2025 WL 841196 (9th Cir. Mar. 18, 2025) ......................5

*Daily Herald Co. v. Munro*,
   838 F.2d 380 (9th Cir. 1988) ...........................................................9

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010) ............................................................15

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133 (2d Cir. 2004) ............................................................13

*Gentile v. State Bar of Nev.*,
   501 U.S. 1030 (1991) ...............................................................14, 16

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*,
   860 F.3d 1244 (9th Cir. 2017).......................................................8, 15

*Human Rights Def. Ctr. v. U.S. Park Police*,
   126 F.4th 708 (D.C. Cir. 2025) .......................................................15

*In re Rafferty*,
   864 F.2d 151 (D.C. Cir. 1988) .......................................................4, 15

*In re Zyprexa Injunction*,
   474 F. Supp. 2d 385 (E.D.N.Y. 2007)................................................15

*Jessup v. Luther*,
227 F.3d 993 (7th Cir. 2000) ................................................................10

*Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ..........................................................2, 10

*N.Y. Times Co. v. United States*,
403 U.S. 713 (1971) ..............................................................................18

*Neb. Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ................................................................................1

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ........................................................................12, 13

*Pike v. Cnty. of San Bernardino*,
No. 17-cv-1680, 2019 WL 4390571 (C.D. Cal. Feb. 21, 2019) .........16

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ........................................................................12, 13

*Rodgers v. U.S. Steel Corp.*,
536 F.2d 1001 (3d Cir. 1976) ...................................................4, 12, 15

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
187 F.3d 1096 (9th Cir. 1999) ..........................................................2, 10

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) ......................................................................*passim*

*Shoen v. Shoen*,
48 F.3d 412 (9th Cir. 1995) ..................................................................17

*United States v. Brooklier*,
685 F.2d 1162 (9th Cir. 1982) ..........................................................2, 10

*United States v. Schlette*,
842 F.2d 1574 (9th Cir. 1988) ..........................................................2, 10

*Valley Broad. Co. v. U.S. Dist. Ct.*,
798 F.2d 1289 (9th Cir. 1986) ................................................................9

*Wharton v. Calderon*,
    127 F.3d 1204 (9th Cir. 1997) ............................................................... 14

**Other Authorities**

Fed. R. Civ. P. 26(b)(5) ........................................................................ 16

Matthew Kish, *Unsealed Court Records Name Top Nike Executives Accused of Sexual Harassment, Misconduct*, The Oregonian (Mar. 19, 2025),
    https://perma.cc/44LR-2MTP ............................................................. 5, 6

Michael M. Grynbaum, *The Times Is Allowed to Publish Project Veritas Documents Until a Full Appeal*, N.Y. Times (Feb. 10, 2022),
    https://bit.ly/4io991w ............................................................................. 4

Paula Schaefer, *The Future of Inadvertent Disclosure: The Lingering Need to Revise Professional Conduct Rules*,
    69 Md. L. Rev. 195 (2010) .............................................................. 4, 16

## INTRODUCTION AND FED. R. APP. P. 35(b)(1) STATEMENT

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Here, the Panel held that the District Court could force a newspaper to destroy or return documents related to a prominent trial that one of its reporters obtained without use of the court's processes. The Panel did so on the theory that the paper—by moving to unseal other judicial records in the trial—became "a party to the case and was thus subject to the district court's jurisdiction without implicating any First Amendment concerns." Opinion at 8 (Dkt. No. 93.1). That holding conflicts with the prior decisions of this Court and the Supreme Court on a question of exceptional importance. It will put the press to an impossible choice: Refrain from exercising the right of access to judicial records, or risk forfeiting the right to gather the news "through means independent of the court's processes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). That grave chilling effect is unnecessary to preserve the courts' authority over discovery disputes or attorney conduct, neither of which were implicated by a disclosure made neither in discovery nor to counsel. Rehearing is warranted here.

First, the Panel decision breaks from Circuit precedent on a question of exceptional importance to the press and public. In both the civil and criminal contexts, this Court has repeatedly held that nonparties who seek only to challenge

1

a sealing or closure order do not "become parties to the action," because a motion to unseal "ask[s] the court only to exercise that power which it already has" over its own files. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *see also San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999) (intervenors "seeking access to a judicial record in a civil case" are "[n]onparties"); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 n.2 (9th Cir. 2006) ("not parties"); *United States v. Brooklier*, 685 F.2d 1162, 1165 (9th Cir. 1982) (news outlets challenging closure in criminal proceeding are "not parties"); *United States v. Schlette*, 842 F.2d 1574, 1576 (9th Cir. 1988) (same).

The Panel's new holding would sow intra-circuit confusion on the procedures governing the right of access and have ruinous practical consequences the Panel cannot have intended. The rule that news organizations do not become parties to an action by objecting to sealing avoids entangling "information made available only for purposes of trying [a speaker's] suit," *Seattle Times Co.*, 467 U.S. at 32, with reporting accomplished "through means independent of the court's processes," *id.* at 34. Exactly to avoid any impression that its other reporting derives from privileged access to the court's files, *The Oregonian* has not had ECF access to sealed filings and has never had the power to seek discovery itself. *See* 1-ER-5–14. But under the Panel's holding, no degree of care will protect a news organization's right to gather news about a trial outside the courtroom if it also

2

intervenes to raise the right of access. From that point on, any information it publishes that might overlap with material produced in discovery—an overlap that news organizations will have no way of foreseeing, precisely because their intervention does not provide them with a party's access to discovery material— risks becoming subject to a prior restraint or triggering a chilling inquiry into its sources. *See* Opinion at 13 n.7 (vacating denial of discovery from *The Oregonian*).

Second, even if *The Oregonian* could have been considered a party, the Panel decision conflicts with Supreme Court and Circuit precedent on a First Amendment question of exceptional importance. Even a party cannot be restrained from publishing information "gained through means independent of the court's processes" unless the bedrock presumption against prior restraints is overcome. *Seattle Times Co.*, 467 U.S. at 34. Here, *The Oregonian* obtained the documents at issue when Plaintiffs' counsel, speaking to one of *The Oregonian*'s reporters as a source for a story that was not about the *Cahill* litigation, inadvertently emailed them to him. *See* 2-ER-188. There is no dispute that *The Oregonian* obtained the records without invoking "the trial court's discovery processes," *Seattle Times Co.*, 467 U.S. at 32; no causal link of any kind between the disclosure and *The Oregonian*'s role in the litigation; and no nexus to the Federal Rules governing run-of-the-mill discovery disputes, which even between parties do not provide for clawback of "a misdirected letter, facsimile, or e-mail sent in a non-discovery

context," Paula Schaefer, *The Future of Inadvertent Disclosure: The Lingering Need to Revise Professional Conduct Rules*, 69 Md. L. Rev. 195, 225 (2010).

In permitting a prior restraint on information not in fact obtained by participating in discovery, the Panel opinion breaks from *Seattle Times* and creates a circuit split. *See In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988) (a party may not "use the happenstance of a discovery proceeding to place under a protective order materials not obtained through discovery"); *Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1006 (3d Cir. 1976) (any waiver of First Amendment rights in discovery limited to records obtained "by taking advantage of or a part in the discovery processes"). Until now, other federal courts have refused to take that "extraordinary step." *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022). And the Panel's holding would give litigants a dangerous incentive to drag the press into court in the hopes of suppressing reporting. *See* Michael M. Grynbaum, *The Times Is Allowed to Publish Project Veritas Documents Until a Full Appeal*, N.Y. Times (Feb. 10, 2022), https://bit.ly/4io991w (noting that Project Veritas attempted to limit reporting in litigation with the *New York Times*).

The result would be a severe chilling effect the Panel's opinion does not consider—unnecessary to preserve the court's authority to manage true discovery disputes, and inconsistent with Circuit and Supreme Court precedent. To prevent that serious First Amendment harm, rehearing or rehearing en banc is warranted.

## STATEMENT OF THE CASE

This dispute arose out of a putative class action, since settled, alleging gender discrimination at Nike, Inc.  In litigating that action in the U.S. District Court for the District of Oregon, the parties filed thousands of documents under seal under a stipulated protective order.  *See* 3-ER-361.  In light of the public interest in allegations of misconduct at one of the world's most prominent corporations, especially in its home state of Oregon, news outlets Insider, Inc. *d/b/a Business Insider*; Advance Local Media LLC *d/b/a* Oregonian Media Group ("*The Oregonian*"); and American City Business Journals, Inc. *d/b/a Portland Business Journal* (together, "Media Intervenors") filed a motion to intervene for the limited purpose of unsealing records in April 2022.  *See* 3-ER-361.

After extensive briefing, that motion was ultimately granted by the District Court in an order this Court recently affirmed.  *See Cahill v. Nike, Inc.*, No. 24-165, 2025 WL 841196, at *1 (9th Cir. Mar. 18, 2025).  The records unsealed as a result of that decision detail allegations of sexual misconduct on the part of "roughly two dozen executives" at Nike, "including some who remain at the company in senior or highly visible positions" today.  Matthew Kish, *Unsealed Court Records Name Top Nike Executives Accused of Sexual Harassment, Misconduct*, The Oregonian (Mar. 19, 2025), https://perma.cc/44LR-2MTP.

5

While Nike's appeal of the District Court's unsealing order was pending, *Oregonian* reporter Matthew Kish met with one of Plaintiffs' attorneys, Laura Salerno Owens, to seek comment on additional allegations of sexual harassment levied against Nike by a former employee not named in the lawsuit. 2-ER-241. After speaking in person, 2-ER-241, Ms. Salerno Owens followed up by email to share documents in support of her comment that she believed were already public, 2-ER-242. After realizing that some of the documents were still subject to the stipulated protective order, Ms. Salerno Owens asked for their return. 2-ER-243–45.[1] When *The Oregonian* declined, Ms. Salerno Owens filed a sealed motion seeking their return or destruction without notifying *The Oregonian*. 5-ER-902-10.

Magistrate Judge Russo briefly granted the *ex parte* motion without hearing from *The Oregonian*, 2-ER-303, but the District Court quickly vacated that order and remanded the issue, 2-ER-280–81, after which Magistrate Judge Russo denied the motion, 1-ER-5–14. In that ruling, Magistrate Judge Russo concluded that "the Oregonian is not a party to this action," 1-ER-11, that "the Oregonian never joined in the [parties'] protective order agreement as demonstrated by the [Oregonian's] enforced lack of access to the sealed documents in the docket," 1-ER-12, and that *The Oregonian*'s conduct in receiving the documents had been lawful—a

---

[1]    Some of the documents were among those at issue in Media Intervenors' motion (and have since been unsealed), but others were not. *See* Opinion at 6 n.3.

6

conclusion based on affidavits from both Ms. Salerno Owens and Mr. Kish, 1-ER-12–13. Magistrate Judge Russo therefore concluded that requiring *The Oregonian* to return or destroy the documents would be an unlawful prior restraint. 1-ER-13.

The District Court overruled the parties' objections to that order. 1-ER-2–4. After Nike appealed, this Court denied Nike's request for emergency relief, *see* Dkt. No. 14.1, and denied Nike's petition for rehearing en banc of that order denying emergency relief, *see* Dkt. No. 23.1. But on March 18, 2025, the Panel reversed course, Opinion at 1, concluding that by intervening for the limited purpose of challenging the sealing of other judicial records in the trial, *The Oregonian* became "a party to the case and was thus subject to the district court's jurisdiction without implicating any First Amendment concerns," Opinion at 8. The Panel went on to reason that *The Oregonian* did not receive the information "through means independent of the court's processes," *Seattle Times Co.*, 467 U.S. at 34, because the records came from Plaintiffs' attorney, even though the disclosure was unrelated to *The Oregonian*'s participation in the litigation, *see* Opinion at 12. As a result, the Panel believed that "[c]ases concerning prior restraints . . . are not implicated here" and applied only "relaxed First Amendment scrutiny." Opinion at 12–13 (quoting *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*, 860 F.3d 1244, 1257–58 (9th Cir. 2017)).

This petition for rehearing followed.

## ARGUMENT

The Panel's opinion puts the press to a harsh choice between two fundamental rights. "[T]he media plays an indispensable representative role in gathering and disseminating to the public current information on trials," *Valley Broad. Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1292 (9th Cir. 1986), exercising both the right of access to judicial records, *see id.*, and the "right to gather news" beyond the courtroom, *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988). But under the Panel's holding, a newspaper that moves to unseal records puts its independent reporting at risk of prior restraint because it becomes "a party to the case and . . . thus subject to the district court's jurisdiction without implicating any First Amendment concerns"—even as to information whose disclosure had no relationship to the paper's intervention. Opinion at 8. And because virtually any information the press might gather about the events underpinning a trial will also appear somewhere in a discovery file, the Panel opinion exposes news organizations to the obvious jeopardy that—if they intervene to unseal judicial records—litigants will seek invasive discovery into their trial coverage on the theory that news they dislike might trace to discovery material. *See* Opinion at 13 n.7 (vacating denial of discovery from *The Oregonian*).

The result will be a crippling chilling effect on press coverage of important judicial proceedings, one the Panel appears not to have considered in resolving this

case. The decision reached here is unnecessary to preserve the court's authority to manage true discovery disputes, it conflicts with the precedent of this Court and the Supreme Court, and the Panel opinion warrants rehearing or rehearing en banc.

**I.    The Panel's holding that *The Oregonian* became a party to the action by moving to unseal judicial records conflicts with clear Circuit precedent.**

This Court's precedent is unambiguous:  Intervenors who raise only the right of access to judicial records "do not . . . seek to become parties to the action." *Beckman*, 966 F.2d at 473;[2] *accord, e.g.*, *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) (distinguishing intervention to unseal records from cases in which "the proposed intervenors seek to become a party to the action").  The Panel opinion conflicts with a number of decisions of this Court holding the same.  *See Beckman*, 966 F.2d at 473; *San Jose Mercury News, Inc.*, 187 F.3d at 1100; *Kamakana*, 447 F.3d at 1178 n.2; *Brooklier*, 685 F.2d at 1165; *Schlette*, 842 F.2d at 1576.  And it conflicts, too, with the District Court's own conclusion that it had not extended *The Oregonian* party status nor bound it to the parties' protective order.  1-ER-5–14.

The Panel opinion did not mention the District Court's interpretation of its own orders and addressed Circuit precedent only in a footnote, only to say that "certain of this court's cases indicate that some procedural requirements may differ when intervention is granted for the purpose of modifying protective orders or

---

[2]      *Beckman* repeats the point three times.  *See* 966 F.2d at 473; *id.* at 474; *id.* at 474 n.3.

sealing orders." Opinion at 9 n.5. That understates the force of this Circuit's precedent, *compare Beckman*, 966 F.2d at 474 (intervenors who seek to unseal judicial records "are not becoming parties to the litigation"), *with* Opinion at 8 ("[A] prospective intervenor becomes a party to the suit once allowed to intervene."), and the Panel opinion overlooked the most important sense in which an intervenor asserting the right of access to judicial records does not become a party: They do not participate in the discovery process, *see* 1-ER-12 (noting *The Oregonian*'s "lack of access to the sealed documents in the docket"). And the *Seattle Times* exception to the presumption against prior restraints, by its terms, is limited to parties who themselves benefited from participation in discovery. *See Seattle Times Co.*, 467 U.S. at 32 (addressing whether a party may "disseminate information that he has obtained pursuant to a court order that *both* granted him access to that information and placed restraints" on its use (emphasis added)).

In that respect, *Seattle Times* reflects a give-and-take. In litigation, a party gains access to information to which they would otherwise have no legal right "only by virtue of the trial court's discovery processes," *Seattle Times Co.*, 467 U.S. at 32, but the string attached is that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying *his* suit," *id.* (emphasis added); *see also Rodgers*, 536 F.2d at 1006 ("[T]he parties and counsel, by taking advantage of or a part in the discovery processes, implicitly waive their

10

First Amendment rights freely to disclose or disseminate the information obtained through those processes.").  None of that describes limited intervenors who seek only to unseal judicial records and who do not participate in the discovery process.  No order of the District Court "granted [*The Oregonian*] access" to the documents in question in the first place, and they were not "made available" to *The Oregonian* "only" (or even partly) "for purposes of trying [its] suit," *Seattle Times Co.*, 467 U.S. at 32, because *The Oregonian* had no "claim on the merits" before the District Court, only a standalone unsealing motion, *Beckman*, 966 F.2d at 472.  On the contrary, as Magistrate Judge Russo stressed, with the exception of a brief error on the part of the clerk not at issue here, *The Oregonian* never had ECF access to any of the discovery material in the litigation.  1-ER-7, 12.  Under the Panel's holding, then, news organizations that intervene to object to sealing or closure—playing exactly the constitutional role the First Amendment assigns them as "surrogates for the public," *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion)—waive vital First Amendment rights and get nothing in return.[3]

---

[3]     The Panel also suggested that *The Oregonian* "obtained substantial benefits" unrelated to discovery by intervening, "including the ability to litigate over access to sealed records," that would justify restraining its speech.  Opinion at 11.  But Supreme Court and Circuit precedent explain otherwise.  Because "[e]very court has supervisory power over its own records," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), a motion to intervene and unseal "ask[s] the court only to exercise that power which it already has," *Beckman*, 966 F.2d at 473.  Or to put it differently, *The Oregonian*'s intervenor status had no relationship to the court's ability to grant "affirmative relief," Opinion at 11 (citation omitted), because the

The predictable consequence will be a chilling effect on the press's willingness to raise the right of access to judicial records in the first place, and, with it, serious injury to the "public understanding of the rule of law." *Id.* (citation omitted); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (noting a "growing practice" of "stipulated sealings," where "the parties agree, the busy district court accommodates, and nobody is left in the courtroom to question" whether secrecy was justified).  Existing Circuit precedent avoided that perverse result, making clear that *The Oregonian* did not forfeit its First Amendment rights by intervening for the limited purpose of unsealing records because it did not "become [a] part[y] to the action."  *Beckman*, 966 F.2d at 473.

## II. The Panel's holding that the District Court could impose a prior restraint on information gathered by a news organization independent of judicial process conflicts with Supreme Court and Circuit precedent.

Even if *The Oregonian* could be considered a party, the Panel opinion conflicts with Supreme Court and Circuit precedent by granting a prior restraint with respect to information that *The Oregonian* "gained through means independent of the court's processes." *Seattle Times Co.*, 467 U.S. at 34.  As discussed above, the documents in question were inadvertently provided to a

---

District Court would have had the same power—and duty—to review the sealing issue if Media Intervenors had filed an informal letter or nothing at all, *see Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141–42 (2d Cir. 2004).  The Panel inadvertently adopted an account of intervention that is all stick and no carrot.

reporter for *The Oregonian*—not *The Oregonian*'s counsel—by one of Plaintiffs'
attorneys, speaking to that reporter as a source. *Cf. Wharton v. Calderon*, 127 F.3d
1204, 1205 (9th Cir. 1997) ("[A] court's authority to 'protect' the attorney-client
privilege simply does not extend, at least absent some compelling circumstance, to
non-compelled, voluntary, out-of-court interviews, any more than it does to an
after-dinner conversation."). But the Panel held that the records were not "gained
through means independent of the court's processes" because *Plaintiffs* received
them in discovery. Opinion at 12 (quoting *Seattle Times Co.*, 467 U.S. at 34).

For much the same reasons discussed above, *Seattle Times* cannot bear that
reading. It recognizes a party's diminished First Amendment right to disseminate
"information made available only for purposes of trying *his* suit," not a stranger's.
*Seattle Times Co.*, 467 U.S. at 32 (emphasis added); *see also Gentile v. State Bar
of Nev.*, 501 U.S. 1030, 1052–53 (1991) (plurality opinion) (the "rationale of
*Seattle Times*" is limited to "information received through court proceedings or
special access afforded attorneys"); *id.* at 1073 (majority opinion) (under *Seattle
Times*, newspaper defendant could be restrained from "publishing material about
the plaintiffs . . . to which *it* had gained access through court-ordered discovery"
(emphasis added)). Other circuits have similarly recognized that that rationale is
limited to information obtained "by taking advantage of or a part in the discovery
processes," not a license to censor 'discovery material' in the abstract. *Rodgers*,

536 F.2d at 1006; *see also In re Rafferty*, 864 F.2d at 155; *cf. Human Rights Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 718–19 (D.C. Cir. 2025) (no inherent power to order clawback of inadvertent FOIA production to litigant).[4]  And this Court, too, previously understood the power to redress inadvertent disclosures as limited to material a party "acquired exclusively through [the] litigation." *Ground Zero Ctr.*, 860 F.3d at 1260.  Here, *The Oregonian*'s participation in the unsealing litigation played no role of any kind in its receipt of the records—events would have unfolded exactly the same way if *The Oregonian* had never intervened.

The Panel's conclusion seems to have been driven by concern that a ruling for *The Oregonian* would undermine judicial authority to manage run-of-the-mill discovery disputes.  *See* Opinion at 10 ("[T]he district court would undoubtedly have the power to order the return of any materials that Nike had mistakenly provided to Plaintiffs, such as privileged materials not subject to disclosure.").  But

---

[4]      Before the Panel, Nike relied heavily on *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010), where the Second Circuit approved an order to return discovery material directed at a non-party who obtained it through use of a "sham" subpoena issued by another jurisdiction, *id.* at 191–92.  The Panel did not rely on that argument here—for good reason; the District Court found that there was no conspiracy—and in any event a conspiracy to issue a sham subpoena is obviously not an approach to obtaining information that is "independent of the court's processes." *Seattle Times Co.*, 467 U.S. at 34.  For that matter, "[n]o newspaper or website" in the *Eli Lilly* case was "directed to do anything or to refrain from doing anything." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 393 (E.D.N.Y. 2007).

14

that power was not at stake. For one, even as between full parties, Rule 26's clawback provision tracks the reach of *Seattle Times* in that it "provides no protection for documents disclosed outside of discovery—such as a misdirected letter, facsimile, or e-mail sent in a non-discovery context." Schaefer, *supra*, at 225 (citing Fed. R. Civ. P. 26(b)(5)(B)); *Pike v. Cnty. of San Bernardino*, No. 17-cv-1680, 2019 WL 4390571, at *4 (C.D. Cal. Feb. 21, 2019) ("[T]he rule appears to apply only in situations in which allegedly privileged information is produced <u>in discovery</u>." (emphasis original)). Counsel-to-counsel disclosures beyond the discovery context, about which the Panel expressed concern at argument, are governed not by the *Seattle Times* rationale but by the rule that "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press," *Gentile*, 501 U.S. at 1074—but here disclosure was made to a journalist, not to counsel.

None of those routine trial-management powers, then, depend on extending the District Court's power to information obtained by a reporter without reliance on the court's processes. And the consequences of doing so will be grave. If a newspaper that raises the right of access to judicial records can be forbidden to publish "discovery" in the abstract, Opinion at 12, almost any line of reporting on the events underpinning a trial will put the outlet at risk of prior restraint. The press has no way of knowing what is or isn't in the discovery file and no way of

knowing—as this case illustrates—if a question to a source will produce an answer derived from discovery material, exposing the paper to costly litigation. For that matter, it will rarely be apparent to the court from the face of trial coverage whether novel information traces in some way to discovery material—not without authorizing chilling discovery into a reporter's sources and work product, an invitation that litigants hoping to discourage critical coverage will be only too happy to accept. *Compare* Opinion at 13 n.7 (vacating denial of discovery into *The Oregonian*'s newsgathering process), *with Shoen v. Shoen*, 48 F.3d 412, 415–16 (9th Cir. 1995) ("[R]outine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process."). The net effect of the Panel decision, in that light, is that intervening to assert the right of access will come at profound legal risk to a news organization's ability to cover the case beyond the courtroom. Many members of the press will be chilled from exercising one First Amendment right or the other—at the ultimate expense of the public.

There is no support in Circuit or Supreme Court precedent for that result. The classic First Amendment rule should have governed here: No branch of government has the power to bar the press from publishing lawfully acquired, truthful information on a matter of public concern. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971). Because the Panel opinion would vitiate that

safeguard—an issue of exceptional importance at the heart of the Constitution's protections for a free press—rehearing or rehearing en banc should be granted.

## CONCLUSION

For the reasons given herein, *The Oregonian* respectfully urges that rehearing or rehearing en banc be granted.

Date: April 1, 2025

*/s/ Grayson Clary*
Grayson Clary
  *Counsel of Record*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

Edwin A. Harnden
Melissa C. Oakley
Joshua A. Waugh
BARRAN LIEBMAN LLP
601 SW Second Avenue, Suite 1300
Portland, OR 97204-3159
Telephone: (503) 228-0500
Facsimile: (503) 274-1212

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number(s):** 24-2199

I am the attorney for Advance Local Media LLC *d/b/a* Oregonian Media Group.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

**[ X ]** Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words: 4,188.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature:** *s/ Grayson Clary*                    **Date:** April 1, 2025

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                                                 *Rev. 12/01/24*

18

## CERTIFICATE OF SERVICE

I, Grayson Clary, do hereby certify that I filed the foregoing Petition for

Rehearing or Rehearing En Banc electronically with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit using the appellate ACMS

system on April 1, 2025.

Date: April 1, 2025                     */s/ Grayson Clary*
                                        Grayson Clary
                                        *Counsel of Record*
                                        REPORTERS COMMITTEE FOR
                                          FREEDOM OF THE PRESS